**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| ROBERT G. KIEFER, individually and on behalf of all others similarly situated,<br><br>                Plaintiff,<br><br>    v.<br><br>MORAN FOODS, INC., d/b/a SAVE A LOT LTD.;<br>                Defendant. | **AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT**<br>Jury Trial Requested |

Plaintiff Robert G. Kiefer, individually and on behalf of all others similarly situated, by his attorneys, for claims against Defendant Moran Foods, Inc. d/b/a Save-A-Lot Ltd., ("Save-A-Lot" or "Defendant") alleges as follows:

## NATURE OF THE ACTION

1.      This is an unpaid overtime case on behalf of Assistant Store Managers ("ASMs") employed in Save-A-Lot discount grocery stores nationwide.  ASMs are non-exempt employees entitled to overtime compensation for hours worked in excess of 40 in a workweek.

2.      Throughout the relevant period, it has been Save-A-Lot's policy to deprive its non-exempt ASMs of earned wages by failing to pay them time-and-a-half overtime premiums for the hours they work in excess of 40 hours in a workweek, as required by the federal and state law.  Instead, Save-A-Lot pays them roughly half-time (or less) for the hours they work in excess of 40 in a workweek.

3.      Save-A-Lot has a history of under-compensating its ASMs.  For years, Save-A-Lot misclassified grocery store assistant managers as "exempt" from federal and state overtime

protections altogether.  In response to a Department of Labor investigation in approximately 1998, Save-A-Lot changed course, properly re-classified its grocery store assistant managers as "non-exempt," and began paying them a form of overtime compensation.  This reclassification, however, only brought Defendant into partial compliance with the law, because Save-A-Lot now pays ASMs only a fraction of the overtime wages they are due.

4.     By the conduct described in this Complaint, Save-A-Lot violated and continues to violate the Fair Labor Standards Act ("FLSA") and the Connecticut Minimum Wage Act ("CMWA") by failing to pay ASMs, including Plaintiff, proper overtime wages as required by law.  These violations arise out of Save-A-Lot's uniform company-wide policies and their pattern or practice of violating wage and hour laws.  Save-A-Lot's payroll and compensation policies and practices with respect to ASMs are uniform and do not vary from ASM to ASM.

5.     Plaintiff brings this action on behalf of himself and similarly situated current and former Save-a-Lot ASMs who elect to opt-in to this action pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*, and specifically, the collective action provision of 29 U.S.C. § 216(b), to remedy violations of the overtime wage provisions of the FLSA.

6.     Plaintiff Kiefer also brings this action on behalf of himself and all similarly situated current and former Save-A-Lot ASMs in Connecticut as a class action under Federal Rule of Civil Procedure 23 to remedy violations of the CMWA, Conn. Gen. Stat. §31-76c and Regs., Conn. State Agencies §31-62-D2(c).

<u>**JURISDICTION AND VENUE**</u>

7.     This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331 and 1337, and jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1332 (the Class Action Fairness Act) and 28 U.S.C. § 1367 (supplemental jurisdiction).

8.      Plaintiff's state law claims are so closely related to Plaintiff's claims under the Fair Labor Standards Act that they form part of the same case or controversy under Article III of the United States Constitution.

9.      This Court also has jurisdiction over Plaintiff's claims under the FLSA pursuant to 29 U.S.C. § 216(b).

10.     At least one member of the proposed class is a citizen of a state different from that of Defendant.

11.     Plaintiff's claims involve matters of national or interstate interest.

12.     Upon information and belief, citizenship of the members of the proposed class is dispersed among a substantial number of states and countries.

13.     Upon information and belief, two-thirds of the members of all proposed plaintiff classes in the aggregate and the primary defendants are citizens of different states.

14.     Upon information and belief, there are more than 100 members of the proposed classes in the aggregate.

15.     Defendant is subject to personal jurisdiction in Connecticut.

16.     Defendant maintains a place of business in Connecticut.

17.     Upon information and belief, the amount in controversy in this matter exceeds the sum or value of $5,000,000, exclusive of interest and costs.

18.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

19.     Venue is proper in the United States District Court for the District of Connecticut pursuant to 28 U.S.C. § 1391.

20.     A substantial part of the events or omissions giving rise to claims in this Class

Action Complaint occurred in this District.

## THE PARTIES

*Plaintiff Robert G. Kiefer*

21.     Plaintiff Robert G. Kiefer ("Kiefer") is an adult individual who is a resident of Manchester, Connecticut.

22.     Kiefer was employed by Defendant as an ASM in Connecticut from approximately April 2011 through January 2, 2012.

23.     Kiefer is a covered employee within the meaning of the FLSA.

24.     Kiefer's written Consent to Join form is attached hereto as Exhibit A.

*Defendant Save-A-Lot*

25.     Defendant Moran Foods, Inc. is a corporation organized and existing under the laws of the state of Missouri.  It is a wholly-owned subsidiary of Supervalu Holdings, Inc., a Missouri corporation.  Defendant Moran Foods, Inc. owns and operates grocery stores in Connecticut and other states.

26.     Throughout the relevant period, Defendant has been a covered employer as that term is used in all relevant laws and, at all relevant times, employed and/or jointly employed Plaintiff and similarly situated employees.

27.     Throughout the relevant period, Defendant's annual gross volume of sales made or business done was not less than $500,000.

## COLLECTIVE ACTION ALLEGATIONS

28.     Plaintiff brings FLSA claims, the First Cause of Action, on behalf of himself and all similarly situated persons who have worked for Defendant as ASMs between May 18, 2009 and the date of final judgment in this matter who elect to opt-in to this action (the "FLSA

Collective").

29.     Defendant is liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiff and the FLSA Collective.  The FLSA claims in this lawsuit should be adjudicated as a collective action.  Upon information and belief, there are many similarly situated current and former employees of Defendant who have been underpaid in violation of the FLSA who would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join the present lawsuit. Those similarly situated employees are known to Defendant, are readily identifiable, and can be located through Defendant's records.  Notice should be sent to the FLSA Collective pursuant to 29 U.S.C. § 216(b).

## CLASS ACTION ALLEGATIONS

30.     Plaintiff Kiefer brings the Second Cause of Action, CMWA claims, under Rule 23 of the Federal Rules of Civil Procedure, on behalf of himself and a class consisting of all persons who have worked for Defendant as ASMs in Connecticut between March 9, 2009 and the date of final judgment in this matter (the "Connecticut Class").

31.     The persons in the Connecticut Class identified above are so numerous that joinder of all members is impracticable.  Although the precise number of such persons is not known to Plaintiff, the facts on which the calculation of that number can be based are presently within the sole control of Defendant.

32.     The size of the Connecticut Class is at least 40 ASMs.

33.     Defendant acted or refused to act on grounds generally applicable to the Connecticut Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Connecticut Class as a whole.

34.     This action is properly maintainable as a class action under Federal Rule of Civil

Procedure 23(b)(3).  There are questions of law and fact common to the Connecticut Class that predominate over any questions solely affecting individual members of the Connecticut Class, including but not limited to:

a.       whether Defendant fails and/or refuses to pay Plaintiff and the Connecticut Class overtime wages at a rate of one-and-one-half times their regular rate of pay for hours they work in excess of 40 hours per workweek ("time and a half") within the meaning of the CMWA;

b.       whether Defendant pays Plaintiff and the Connecticut Class a salary for whatever hours they are called upon to work in a workweek, whether few or many;

c.       whether Defendant pays Plaintiff and the Connecticut Class on an hourly basis when they work fewer than 40 hours per week;

d.       whether Defendant's uniform conduct prevents or fails to create a clear and mutual understanding as required under the FWW method of calculating overtime compensation;

e.       the nature and extent of Connecticut Class-wide injury and the appropriate measure of damages for the Connecticut Class;

f.       whether Defendant's policy of failing to pay Plaintiff and the Connecticut Class overtime wages was done willfully or with reckless disregard of the CMWA.

35.      The claims of Plaintiff are typical of the claims of the Connecticut Class he seeks to represent.  Plaintiff and the Connecticut Class work or have worked for Defendant and have been subjected to their policy and pattern or practice of paying half-time for overtime for hours worked in excess of 40 hours per week.  Defendant acted and refused to act on grounds generally applicable to the Connecticut Class, thereby making declaratory relief with respect to the Connecticut Class appropriate.

36.     Plaintiff has retained counsel competent and experienced in complex class action employment litigation.

37.     A class action is superior to other available methods for the fair and efficient adjudication of this litigation – particularly in the context of wage litigation like the present action, where individual plaintiffs may lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant.  The members of the Connecticut Class have been damaged and are entitled to recovery as a result of Defendant's common and uniform policies, practices, and procedures.  Although the relative damages suffered by individual members of the Connecticut Class are not *de minimis*, such damages are small compared to the expense and burden of individual prosecution of this litigation.  In addition, class treatment is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendant's practices.

## CLASS-WIDE FACTUAL ALLEGATIONS

38.     All of the work that Plaintiff, the FLSA Collective, and the Connecticut Class (collectively, "the Class Members") performed has been assigned by Defendant and/or Defendant has been aware of all of the work that Plaintiff and the Class Members have performed.

39.     Upon information and belief, Defendant's business is a centralized, top-down operation controlled by Defendant.

40.     It is and has been Defendant's nationwide policy and pattern or practice to pay Class Members less than half-time for overtime instead of time-and-a-half as required by law.

41.     Defendant does not follow the strict and narrowly construed rules that allow some employers to use the fluctuating workweek method ("FWW") method to calculate overtime pay for non-exempt employees under some circumstances.

42.     Defendant's uniform conduct with respect to its ASMs does not create, and in fact prevents, a clear and mutual understanding between Defendant and the ASMs that each ASM will receive a fixed amount of pay as straight time pay for whatever hours the ASM is called upon to work in a workweek, whether few or many, or that a fixed salary is compensation (apart from overtime premiums) for the hours worked each workweek, whatever their number, by each ASM.  *See* 29 C.F.R. § 778.114 (a).  Specifically as to Kiefer and the class, the information provided at the time of hire, including the Associate Handbook, indicates that Kiefer and other ASMs will be paid "at an established hourly rate based on work documented during the week." None of the other information provided to Kiefer or the class changes this statement or explains that they would receive their fixed weekly salary even if their hours worked fall below 40.

43.     Defendant does not pay ASMs a fixed weekly salary in workweeks in which a full schedule of hours is not worked.  *See* 29 C.F.R. § 778.114(c).  Specifically as to Kiefer and the class, when they work less than forty hours, the computer system only pays them for their actual hours worked at an hourly rate calculated by dividing their weekly salary by 40.  Kiefer was paid for 38 hours of work during the week from Sunday April 3, 2011 to Saturday April 9, 2011. Defendant's system does not flag the fact of ASMs sub-40 hours or ensure that they are paid their a fixed weekly salary.

44.     Uniform written materials that Defendant provides to its ASMs indicate that Defendant pays ASMs on an hourly basis, not a fixed salary.  This includes the Associate

8

Handbook, which indicates that Kiefer and other ASMs will be paid "at an established hourly rate based on work documented during the week."

45.     Defendant informed Plaintiff and Class Members via an Associate Handbook that they would be paid at an established hourly rate based on documented work during the work week.

46.     Defendant pays ASMs on an hourly basis when they work fewer than forty hours per week.  This happened to Plaintiff Kiefer in the week ending April 9, 2011 when he worked and was paid for only 38 hours.

47.     Defendant pays ASMs on an hourly basis in holiday weeks when they actually work less than forty hours.  Specifically as to Kiefer, this happened to him during week ending November 26, 2011.  He worked 35.27 hours and was paid for that time at an hourly rate calculated by dividing his weekly pay by forty.  He also received $173.08 of "Holiday" pay, which Defendant did not include its calculation of coefficient overtime pay.  It also happened to him during week ending December 31, 2011, in which he worked and was paid for only 34.78 hours, in addition to $173.08 of "Holiday" pay, which Defendant did not include its calculation of coefficient overtime pay.

48.     Defendant pays ASMs on an hourly basis in weeks in which they take a sick day and actually work less than forty hours.  Kiefer was subject to this policy.

49.     Defendant pays ASMs on an hourly basis in weeks in which they take a vacation day and actually work less than forty hours.  Kiefer was subject to this policy.

50.     Defendant pays ASMs on an hourly basis for work they perform on Sundays. Kiefer was subject to this policy.

51.     Defendant's computerized payroll system is programmed to pay ASMs less than their full purported salaries in weeks when their actual hours worked are less than 40.

52.     The policies described in the preceding paragraphs do not vary from ASM to ASM, including Kiefer.

53.     As part of its regular business practice, Defendant has intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA and CMWA.  This policy and pattern or practice includes but is not limited to:

        a.      willfully failing and/or refusing to pay Class Members time-and-a-half overtime wages for all hours they work in excess of 40 hours per workweek;

        b.      willfully failing to comply with the FWW method;

        c.      willfully failing to cause Plaintiff and Class Members to understand that they will not be paid a fixed amount of pay during a workweek in which a full schedule of hours is not worked and willfully preventing such an understanding.

54.     Upon information and belief, Defendant's unlawful conduct described in this Complaint is pursuant to a corporate policy or practice of minimizing labor costs by violating the FLSA and the CMWA.

55.     Upon information and belief, Defendant was or should have been aware that state and federal law required it to pay Class Members time and a half for hours worked in excess of 40 per week.

56.     Upon information and belief Defendant was aware, or should have been, that Class Members, *inter alia*: (a) are not paid a salary for whatever hours they are called upon to work in a workweek, whether few or many; (b) are required to work a fixed weekly work period which rarely fluctuates; and (c) understand that they will not be paid a salary during a workweek in which a full schedule of hours is not worked.

57.     Defendant's failure to pay Plaintiff and the Class Members overtime wages at one-and-one-half times their regular rates of pay for work in excess of 40 hours per week was willful in at least the following ways:

        a.      It knew that it its Associate Handbook indicated that it would pay ASMs an "hourly rate" each week and that this communication would prevent its ASMs from having a "clear mutual understanding" that it would be paid a fixed weekly salary even if their weekly hours worked were below 40;

        b.      It knew that its time keeping and payroll system failed to flag events where ASMs worked fewer than 40 hours and actually paid ASMs on an hourly rate in those weeks;

        c.      It knew that it paid its ASMs on an hourly basis in Holiday weeks, even when the hours actually worked were below 40;

        d.      It knew that it paid its ASMs on an hourly basis in weeks in which ASMs took vacation or sick days, even when the hours actually worked were below 40;

        e.      Defendant was on notice that its practices were unlawful well before this lawsuit was filed but failed to immediately change their practices.

58.     Defendant's unlawful conduct has been widespread, repeated, and consistent.

## PLAINTIFF'S FACTUAL ALLEGATIONS

59.     Kiefer and the similarly situated workers regularly worked more than 40 hours per workweek, usually worked between 45 and 55 hours per week, but were not paid one and one half times their  regular rate of pay for all hours worked in excess of 40 hours in a workweek. For example, Kiefer worked 44.50 hours during the week ending Saturday April 16, 2011.  His allegedly "fixed weekly salary" was $865.38 and results in an hourly rate of $21.63.  His overtime pay should be $32.45 per hour.  Instead of being paid $146.03 for his overtime hours that week, Keifer was paid only $43.76, or $9.72 per hour.  He also worked overtime in many other weeks, including but not limited to 45 hours during the week ending April 23, 2011, 44.75 hours during the week ending April 30, 2011, 46.50 hours during the week ending May 7, 2011, to name but a few.

60.     The unlawful policies described in this Complaint applied to Kiefer and the entire class

## FIRST CAUSE OF ACTION
### Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq*.
### On behalf of Plaintiff and the FLSA Collective

61.     Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

62.     Defendant engaged in a widespread pattern, policy, and practice of violating the FLSA, as detailed in this Class Action Complaint.

63.     At all times relevant, Plaintiff and the members of the FLSA Collective were engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 206(a) and 207(a).

64.     The overtime wage provisions set forth in the FLSA apply to Defendant and

protect Plaintiff and the FLSA Collective.

65.     Defendant was an employer engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 206(a) and 207(a).

66.     At all times relevant, Plaintiff and the members of the FLSA Collective were or have been employees within the meaning of 29 U.S.C. §§ 203(e) and 207(a).

67.     Defendant employed Plaintiff and the members of the FLSA Collective as an employer and/or a joint employer.

68.     Defendant failed to pay Plaintiff and the members of the FLSA Collective the overtime wages to which they are entitled under the FLSA.

69.     Defendant's violations of the FLSA, as described in this Class Action Complaint, have been willful and intentional as described above

70.     Defendant did not make a good faith effort to comply with the FLSA with respect to their compensation of Plaintiff and the members of the FLSA Collective.

71.     Because Defendant's violations of the FLSA were willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

72.     As a result of Defendant's violations of the FLSA, Plaintiff and the members of the FLSA Collective have suffered damages by being denied overtime wages in accordance with the FLSA in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. §§ 201 *et seq.*

## SECOND CAUSE OF ACTION
### Connecticut Minimum Wage Act
### Conn. Gen. Stat. §31-76c; Regs., Conn. State Agencies §31-62-D2(c).
### On behalf of Plaintiff and the Connecticut Class

73.     Plaintiff re-alleges and incorporates by reference all allegations in all preceding

paragraphs.

74.     Defendant has engaged in a widespread pattern, policy, and practice of violating the CMWA, as detailed in this Class Action Complaint.

75.     At all relevant times, Defendant has been, and continues to be, an "employer" within the meaning of the CMWA.

76.     At all relevant times, Defendant has employed, and/or continues to employ, Plaintiff and each of the members of the prospective Connecticut Class, within the meaning of the CMWA.

77.     Defendant has failed to pay Plaintiff and the members of the Connecticut Class the overtime wages to which they are entitled under the CMWA.

78.     At all relevant times, Defendant has had a policy and practice of failing and refusing to pay time and a half overtime pay to Plaintiff and the Connecticut Class.

79.     The fluctuating work week method is impermissible under the CMWA.

80.     As a result of Defendant's failure to pay time and a half overtime wages earned and due at by Plaintiff and the Connecticut Class, Defendant has violated, and continues to violate, the CMWA.

81.     Defendant's failure to pay time and a half overtime wages to Plaintiff and the Connecticut Class is willful.

82.     As a result of Defendant's violations of the CMWA, Plaintiff and the members of the Connecticut Class have suffered damages by being denied overtime wages in accordance with the CMWA in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to the CMWA

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of all other similarly situated persons, prays for the following relief:

        A.      That, at the earliest possible time, Plaintiff be allowed to give notice of this collective action, or that the Court issue such notice, to all persons who are presently, or have at any time during the three years immediately preceding the filing of this suit, been employed by Defendant as Assistant Store Managers.  Such notice shall inform them that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they were denied proper wages;

        B.      Designation of Plaintiff as class representative, and counsel of record as Class Counsel;

        C.      Unpaid overtime under the FLSA and the CMWA;

        D.      Liquidated damages permitted under the FLSA and the CMWA;

        E.      Issuance of a declaratory judgment that the practices complained of in this Class Action Complaint are unlawful under the CMWA;

        F.      Appropriate equitable and injunctive relief to remedy Defendant's violations, including but not necessarily limited to an order enjoining Defendant from continuing their unlawful practices;

        G.      Pre-Judgment and Post-Judgment interest, as provided by law;

        H.      Attorneys' fees and costs of suit, including expert fees; and

        I.      Such other injunctive and equitable relief as the Court may deem just and proper.

## <u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial

by jury on all questions of fact raised by the Complaint.

Dated:      Hartford, Connecticut
            July 31, 2012

                  Respectfully submitted,

                  **THE HAYBER LAW FIRM, LLC**

By:

         _/s/ *Richard E. Hayber*_____
         Richard E. Hayber
         Bar No.: CT11629
         221 Main Street, Suite 502
         Hartford, Connecticut 06106
         Telephone: (860) 522-8888

         **OUTTEN & GOLDEN LLP**
         Justin M. Swartz (*pro hac vice* )
         Elizabeth Wagoner (*pro hac vice* )
         3 Park Avenue, 29th Floor
         New York, New York 10016
         Telephone:  (212) 245-1000

         ***Attorneys for Plaintiff and the Putative Class***