**EXHIBIT A**

| DOCKET NO. X04-HHD-CV-11-6023386-S : | SUPERIOR COURT |
|---|---|
| EDWARD B. ROACH, in his individual capacity and on behalf of all similarly situated employees | : JUDICIAL DISTRICT OF HARTFORD AT HARTFORD |
| | : |
| VS. | : COMPLEX LITIGATION DOCKET |
| MORAN FOODS, INC. | : OCTOBER 4, 2012 |

## MEMORANDUM OF DECISION
## ON MOTION FOR WRITTEN DETERMINATION (# 156)

The plaintiff Edward B. Roach has moved for written determination pursuant to Practice

Book § 61-4(a) of the court's ruling on cross motions of summary judgment on the issue of

whether the Fluctuating Work Week ("FWW") methodology is permitted under Connecticut law.

The defendant, Moran Foods, Inc., does not object to, and consents to the plaintiff's request.[1]

The dispute between the parties in this action involves the way in which the defendant,

Moran Foods, Inc. d/b/a Save-A-Lot Ltd. ("SAL") calculates the overtime pay for its Assistant

Sales Managers ("ASMs"), in particular the plaintiff.  There is no factual dispute that SAL uses

the FWW methodology.  As described more fully below, the FWW methodology calculates an

employee's overtime pay on a week by week basis by dividing the employee's weekly salary by

---

[1] The defendant filed a response (#158) to the plaintiff's motion for written determination in which it conditionally consented to the plaintiff's motion.  Specifically, the defendant disputes the plaintiff's reliance on and ·reference to the parties' stipulation (#135) as the defendant claims that the plaintiff has nullified the stipulation by commencing a federal action against this same defendant, albeit by a different plaintiff, on the same legal theory.  The defendant also disputes the plaintiff's representation that there is a split among the superior courts on this legal issue on the basis of his interpretation of *Stokes v. Norwich Taxi, LLC*, Superior Court, judicial district of New London at Norwich, Docket No. CV 4100689, (November 15, 2006, *Leuba, JTR.*), aff'd, 289 Conn. 465, 958 A.2d 1159 (2008). Lastly, the defendant challenges the plaintiff's representation that a ruling on the issue would be particularly important to employees and employers in the mercantile industry because of his interpretation of the mercantile wage order. These last two issues raised by the defendant were addressed by the court in its March 16, 2012 decision.  As to the stipulation, the court does not base its conclusion on any portion of the stipulation.  Thus, its validity as between the parties is irrelevant.

1



the total hours worked by the employee that week. The plaintiff claims that the FWW

methodology violates Connecticut's wage and hour laws because it does not use a standard forty

hour work week as the basis for the overtime rate calculation. Because the material facts are not

in dispute, the court was presented, through cross-summary judgment motions, with and

addressed the purely legal question of whether the FWW methodology is permitted under

Connecticut law. It is this issue that the parties now seek to have resolved pursuant to Practice

Book § 61-4(a).


## II. UNDISPUTED FACTS

The following facts are undisputed and provide the context within which the court

resolved the cross motions for summary judgment. SAL is a national discount supermarket chain

operating in 37 states, including Connecticut. SAL employs ASMs in its stores and their hours

vary week to week depending on SAL's needs. SAL classifies ASMs as non-exempt employees

for purposes of federal and state wage and hour laws. Consequently, they are entitled to receive

overtime pay for hours worked in excess of forty hours in any given week.

Roach became an ASM in January of 2011 with an annual salary of $45,000. While it was

expected that Roach's hours would vary from week to week, it was understood by Roach and SAL

that he would receive overtime pay for hours worked in excess of forty hours in a week. Since he

began working as an ASM, SAL has used the FWW methodology to calculate Roach's overtime

pay. Under that approach, SAL takes Roach's allocable weekly salary and divides that by the

number of hours worked by Roach that week. That results in Roach's "regular rate" for that

week. SAL then takes 50% of that rate and multiplies it by the hours Roach worked in excess of

40 hours to determine Roach's overtime pay for the week.

By way of example, assume that Roach's weekly salary is $900.[2] If he worked 40 hours in a week, his regular rate under the FWW methodology would be $22.50 ($900/40). If he worked 45 hours, his regular rate would be $20.00 ($900/45). In addition to his $900 regular salary, Roach would also receive overtime pay of $50.00 (.5($20) x 5hrs). By contrast, if Roach's overtime pay was calculated based on what his hourly rate would be using a forty hour work week methodology, as opposed to the FWW methodology, it would be $168.75 (1.5($22.50) x 5hrs). Not surprisingly, the more hours an ASM works the greater the difference in overtime pay calculation between the FWW methodology and a forty hour work week methodology.

There is a limit though, as SAL acknowledges, an ASM's regular rate can never drop below the applicable minimum wage. Thus, if an ASM worked 100 hours in a week, his regular rate would be $9.00, close to, but still above, the minimum wage required in Connecticut. In addition to his $900 weekly salary, the ASM would also receive overtime pay of $270 (.5($9.00) x 60). The result is that the ASM's incremental pay for the 60 hours of overtime work is $4.50 per hour. By contrast, if the ASM was paid overtime using a forty hour work week, his overtime pay would be $2025 (1.5($22.50) x 60). Under this methodology, the ASM's incremental rate of pay for each hour over 40 never changes. It is always $33.75, 1.5 times the regular rate of $22.50.

It is undisputed that Roach has received less in overtime pay as a result of SAL using the FWW than he would have received had SAL used the forty hour work week methodology. It is for this reason that Roach is challenging the legality of the FWW methodology under Connecticut

---

[2]Using $45,000 per year, Roach's weekly salary would be $865.38 ($45,000/52). For demonstrative purposes, it is easier to use round numbers.

law.

## III. PROCEDURAL HISTORY

Initially, the plaintiff's complaint consisted of one count alleging that the FWW methodology is not permitted under Connecticut law and, in the alternative, that even if the FWW is permitted, the defendant has not properly applied that methodology. The plaintiff asserted his claim individually and on behalf of similarly situated employees. The court has not yet addressed class certification because the resolution of that issue turns largely on whether the FWW methodology is permitted in Connecticut. The defendant acknowledges that if the FWW methodology is not permitted in Connecticut then class certification is likely appropriate. By contrast, if the FWW methodology is permitted then class certification is probably not appropriate because whether it was applied properly as to any particular individual is likely dependent on facts specific to that individual. For this reason, the court first considered the parties' cross motions for summary judgment on the legality of the FWW methodology in Connecticut.

The plaintiff's motion for summary judgment (#126) was denied because the court found that the FWW methodology is permitted in Connecticut. See March 16, 2012 memorandum of decision (#134) ("MOD"). The court also denied, without prejudice, the defendant's motion for summary judgment (#119) because there was a question of fact as to whether the defendant had properly applied the methodology.

Subsequently, the parties agreed that the central issue of this case is whether the FWW methodology is permitted in Connecticut. Thus, they concluded that it would benefit all to bring the issue before the appellate court as soon as possible. To accomplish this, the plaintiff then amended his complaint (#137) to separate the claim into two counts; the first claiming that the

4

defendant violated Connecticut law by applying the FWW methodology, and the second alleging that even if FWW is permitted in Connecticut, the defendant has failed to apply properly the FWW methodology.  Consequently, the defendant filed a motion for judgment (#151) as to count one of the amended complaint on the basis that the issue had been decided by the court's ruling on the cross motions for summary judgment.  On August 29, 2012, the motion for judgment was granted and judgment entered as to count one of the amended complaint.

## IV.  DISCUSSION

The plaintiff seeks an immediate appeal pursuant to § 61-4(a) which provides, in relevant part, "[t]his section applies to a trial court judgment that disposes of at least one cause of action where the judgment does not dispose of either of the following: (1) an entire complaint, counterclaim or cross complaint, or (2) all causes of action in a complaint, counterclaim or cross complaint brought by or against a party."  Section 61-4(a) continues as follows, "[w]hen the trial court renders a judgment to which this section applies, such judgment shall not ordinarily constitute an appealable final judgment.  Such a judgment shall be considered an appealable final judgment only if the trial court makes a written determination that the issues resolved by the judgment are of such significance to the determination of the outcome of the case that the delay incident to the appeal would be justified, and the chief justice or chief judge of the court having appellate jurisdiction concurs."  (Emphasis in original.)

"The jurisdiction of the appellate courts is restricted to appeals from judgments that are final . . . The policy concerns underlying the final judgment rule are to discourage piecemeal appeals and to facilitate the speedy and orderly disposition of cases at the trial court level . . ."

(Citations omitted; internal quotation marks omitted.) *Mazurek v. Great American Insurance Co.*, 284 Conn. 16, 33, 930 A.2d 682 (2007). "[T]he purpose of Section 61-4 is to create a narrow exception to our final judgment rule for those rare and special cases where interlocutory review of a trial court's pretrial ruling will resolve or greatly streamline the resolution of the entire case. In those limited circumstances, the purpose of the final judgment rule — to promote efficiency in the handling of cases by avoiding the added cost, delay and administrative burden of piecemeal litigation — is better served by granting the right to an immediate appeal than, as usual, postponing any appeal until the rights of all parties have been fully adjudicated in the trial court. Only if the trial judge, who knows the case personally and understands the interplay among its several claims, and the chief judge of the appellate court having jurisdiction, who knows the current status of his or her appellate docket, are mutually satisfied that the possible benefits of early appellate review exceed the likely costs and burdens of such review should the motion be granted. Other considerations include whether an appellate ruling would likely have the practical effect of ending the case in the trial court, so that the appellate court would not be faced with deciding the same case twice . . ." *Fortin v. Hartford Underwriters Insurance Co.*, Superior Court, judicial district of Middlesex, Complex Litigation Docket at Middletown, Docket No. X04 CV 03 0103483 (January 19, 2007, *Beach, J.*).

The plaintiff and defendant agree that the central issue in this case is the question of whether the FWW methodology is permitted in Connecticut. This court concurs. If the appellate court were to agree that the FWW methodology is permitted in Connecticut, then the only issue on remand would be whether the defendant properly applied the methodology to the plaintiff. Count one and all of the class action issues associated with it would be resolved. If, on the other hand,

6

the appellate court were to find that such methodology was not permissible under Connecticut

law, then the issues to be tried on remand would be limited to damages as to all members of the

class. For these reasons, judicial economy would be served by permitting the parties to

immediately appeal the court's ruling on count one of the amended complaint. Regardless of how

the appellate court were to rule, a decision in favor of one party would significantly streamline the

resolution of this matter and would likely have the practical effect of ending the litigation as the

subsidiary issues can most likely be resolved by stipulation or settlement. In addition, addressing

count one now will resolve an important issue of state law, not just as to the parties, but for all

similarly situated employers and employees who presently use the FWW methodology for

calculating overtime pay.

## V. CONCLUSION

For all of the foregoing reasons, this court finds that the issue resolved by its decision as to

count one of the amended complaint is of such significance to the determination of the outcome of

the case that the delay incident to the appeal would be justified.

Bright, J.