# Exhibit B

# Wagoner, Elizabeth

| | |
|---|---|
| **From:** | Wagoner, Elizabeth |
| **Sent:** | Monday, October 15, 2012 9:57 AM |
| **To:** | 'Klein, Eve I.'; Swartz, Justin |
| **Cc:** | Michailidis, Evangelos; Rick Hayber; ediaz@hayberlawfirm.com; Dugger, Cyrus |
| **Subject:** | SAL/Kiefer ESI Protocol |
| **Attachments:** | OGDMS_401733_1.DOCX |

Eve:

We would like to propose an ESI protocol to govern document production in this case. Could you please review the attached draft protocol and let us know if you propose any revisions to it? I am happy to discuss this at your convenience this week.

Thanks,

Elizabeth Wagoner
Outten & Golden LLP
Advocates for Workplace Fairness
3 Park Avenue, 29th Floor
New York, NY 10016
Tel: (212) 245-1000 x4360
Fax: (646) 509-2087
www.outtengolden.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| ROBERT G. KIEFER, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> MORAN FOODS, INC., d/b/a SAVE A LOT LTD.; <br><br> Defendant. | ECF NO.: <br><br> 3:12-CV-00756 (JCH) |

**STIPULATION AND [PROPOSED] ORDER CONCERNING PRODUCTION
OF ELECTRONICALLY STORED INFORMATION**

WHEREAS, counsel for Plaintiff and Defendant (collectively, the "Parties," and each, a "Party") have met and conferred regarding discovery of electronically stored information ("ESI") of the Parties;

WHEREAS, the Parties have reached agreement on certain of the issues discussed regarding such discovery;

WHEREAS, the Parties have entered into this Stipulation and [Proposed] Order Concerning Production of Electronically Stored Information ("Order") to facilitate the just, speedy, and inexpensive conduct of discovery involving ESI and to promote, to the fullest extent possible, the resolution of disputes regarding the discovery of ESI without Court intervention;

IT IS HEREBY ORDERED that:

1.  All Parties are bound by and subject to the terms of this Order.

2.  <u>Definitions</u>.

    a.  "Discovery Material" is defined as all products of discovery and all information derived there from, including, but not limited to, documents, objects and things, deposition testimony, interrogatory/request for admission responses, and any copies, excerpts or summaries thereof, produced by any Party in the above-captioned matter.

    b.  Plaintiff and Defendant, as well as their officers, directors, employees, agents, and legal counsel, are referred to as the "Parties" solely for the purposes of this Protocol.

        c.      "Plaintiff" as used herein shall mean Plaintiff Robert Kiefer, as well as any other individually named plaintiff in this case or in any case that is consolidated with this matter and any other individual that opts-in to this case or any such consolidated matter.

        3.      <u>Cooperation</u>**.** The Parties shall conduct discovery in a cooperative manner, including without limitation, by reasonably drafting discovery requests and responses in accordance with Fed R. Civ. P. 1 and 26(g)(1); and producing ESI in accordance with Fed R. Civ. P. 34; and by meeting and conferring in good faith on topics such as identification of custodians of relevant ESI, potentially relevant data sources, search methodologies, and such other issues as may arise during the course of discovery.

        4.      <u>ESI Liaisons</u>.  The ESI Liaison for Defendant shall be _____.  The ESI Liaison for Plaintiff shall be Kerry-Ann Reid-Brown.  The Parties agree to work in good faith to schedule e-discovery conferences when the ESI Liaisons are available.

        5.      <u>Search Methodology</u>.

        a.      The Parties expect to employ one or more search methodologies, including possibly but without limitation the use of advanced search and retrieval technologies, to identify potentially relevant ESI.  The Parties will meet and confer and attempt in good faith to reach agreement regarding:

        i.      the method of searching and, if applicable, the words, terms, and phrases to be searched; and

        ii.      the custodians for whom ESI will be collected and searched.

        b.      Once a final search protocol has been agreed to and executed, a requesting Party may, in good faith, seek to expand the scope of the search.  Where such a request is made, the Parties will meet and confer and attempt in good faith to reach agreement as to the timing and conditions of such expansion.  If the Parties cannot reach agreement, any dispute shall be presented to the Court.

        c.      All meet and confer sessions under this paragraph will involve one of each Party's respective e-discovery liaisons.

        6.      <u>Deduplication</u>.  The Parties shall make reasonable efforts to deduplicate ESI.  ESI may be deduplicated vertically within each custodian or horizontally across custodians.  ESI will be considered duplicative if it has the same content including metadata.  For example, duplicates would include copies of the same electronic file saved on the local hard drives and/or network shared drives of multiple custodians, even if different instances of the file reflect different dates created.

        7.      <u>Email Threading</u>.  In order to reduce the volume of entirely duplicative content within email threads, the Parties may utilize "email thread suppression."  As used in this agreement, email thread suppression means reducing duplicative production of email threads by producing the most recent email containing the thread of emails, as well as all attachments within the thread, and excluding emails constituting exact duplicates of emails within the produced string.  For purposes of this paragraph, only email messages in which the parent document and all

attachments are exactly the same will be considered duplicates.  Duplicative emails suppressed under this paragraph need not be reflected on the Party's privilege log.

       8.      <u>Privilege Logs And Redaction</u>.  An email thread for which a party claims a privilege may be logged in a single entry provided that such entry identifies all senders and recipients appearing at any point in the thread.

       9.      <u>Production Format For ESI</u>.

          a.      <u>General Provisions</u>.  Unless the Parties agree to a different format, documents originally collected as electronic files will be converted to Group IV single paged *.tiff image files at 300 dpi or greater.  Original document orientation will be maintained (*i.e.*, portrait to portrait and landscape to landscape).  Each *.tiff file will be assigned a unique name matching the Bates number of the corresponding page.  Such files will be grouped in folders of 1,000 *.tiff files each.  Separate folders will not be created for each document

          b.      <u>Document Text</u>.  All un-redacted electronic files must be provided with complete document-level extracted text files. In the event an electronic file contains text which is to be redacted, then OCR text files should be provided for any un-redacted portions of the documents. The extracted full text and or OCR text must be in separate document-level TXT files. These TXT files can either be provided in a separate folder or included in the same folder as their corresponding images. The number of TXT files per folder should be limited to 1,000 files.

          c.      <u>Parent-Child Relationships</u>.  Parent-child relationships (the association between emails and attachments) will be preserved.  Email attachments will be consecutively produced with the parent email record.

          d.      <u>Dynamic Fields</u>.  Documents with dynamic fields for file names, dates, and times will be processed to show the field code (*e.g.*, "[FILENAME]" or "[AUTODATE]"), rather than the values for such fields existing at the time the file is processed.

          e.      <u>Word Processing Files</u>.  All word processing files, including without limitation Microsoft Word files, will be processed to *.tiff images.  Word Processing files saved in Microsoft Office (and other similar documents created in programs for which there is an option to show tracked changes and/or comments as last saved by the custodian) will be processed to *.tiff format showing tracked changes or comments.

          f.      <u>Spreadsheet Files</u>.  Spreadsheet files, including without limitation Microsoft Excel files, will be produced as native files showing comments and similar data.  A UNC file path must be included in the ESI load file. Additionally a bates-stamped *.tiff placeholder matching the bates number of the native file, must be included in the production and reflected in the image load file.

          g.      <u>Presentation Files</u>.  Presentation files, including without limitation Microsoft PowerPoint files, will be processed to *.tiff format images showing comments, hidden slides, speakers' notes, and similar data.  The Parties will meet and confer regarding production of presentation files with alternate default settings.

3

    h. <u>Database Records</u>.  To the extent that any Party requests information that is stored in a database or database management system, including but not limited to records of Plaintiff's and Class Members' contact information, work telephone records, and/or log-in/log-out records, such information will be produced by querying the database for discoverable information and generating a report or a reasonably usable and exportable electronic file (for example, *.csv and/or *.xls formats) for review by the requesting Party.

    i. <u>Embedded Files</u>.  Embedded files are produced as independent document records.  Embedded files should be assigned Bates numbers that directly follow the Bates numbers on the documents within which they are embedded.

    j. <u>Time Zone</u>.  Unless otherwise agreed, all dynamic date and time fields, where such fields are processed to contain a value, and all metadata pertaining to dates and times will be standardized to Universal Coordinated Time (UTC).  The Parties understand and acknowledge that such standardization affects only dynamic fields and metadata values and does not affect, among other things, dates and times that are hardcoded text within a file.  Dates and times that are hard-coded text within a file (for example, in an email thread, dates and times of earlier messages that were converted to body text when subsequently replied to or forwarded; and in any file type, dates and times that are typed as such by users) will be produced as part of the document text in accordance with Concordance and Summation formats, below.

    k. <u>Bates Numbering</u>.  Files will be named according to the Bates number of the corresponding *.tiff image.  The Bates number will:

     i. be consistent across the production;

     ii. contain no special characters; and

     iii. be numerically sequential within a given document.

    Attachments to documents will be assigned Bates numbers that directly follow the Bates numbers on the documents to which they were attached.  If a Bates number or set of Bates numbers is skipped, the skipped number or set of numbers will be noted.  In addition, wherever possible, each *.tiff image will have its assigned Bates number electronically "burned" onto the image.

    l. <u>Load File Formats</u>.  ESI will be produced in standard Concordance load file formats and an image file that is in .OPT format.

    m. <u>Metadata to be Produced</u>.  For all documents collected from individual custodians (*i.e.*, custodial collections per paragraph 14, *infra*), the following metadata fields will be produced for each document to the extent that such information is available at the time of collection and processing, except to the extent that a document has been produced with redactions:

| Field | Sample Data | Scanned Collections | Email and E-Doc Collections | Comment |
|---|---|---|---|---|
| BEGBATES [Key Value] | ABC 000001 | Yes | Yes | First bates number of email/doc |
| ENDBATES | ABC 000008 | Yes | Yes | Last bates number of email/doc |

4

| | | | | |
|---|---|---|---|---|
| BEGATTACH | ABC 000009 | Yes | Yes | First bates number of attachment(s) |
| ENDATTACH | ABC 000015 | Yes | Yes | Last bates number of attachment(s) |
| PARENT_BATES | ABC 000001 | Yes | Yes | First bates number of parent email, if appropriate |
| CHILD_BATES | ABC 000009, ABC 000012 | Yes | Yes | First bates number of "child" attachment(s); can be more than one bates number listed; depends on number of attachments |
| CUSTODIAN | John Beech | Yes | Yes | Mailbox where the email resided |
| FROM | John Beech | N/A | Yes | For email |
| TO | Janice Birch | N/A | Yes | For email |
| CC | Frank Maple | N/A | Yes | For email |
| BCC | John Oakwood | N/A | Yes | For email |
| SUBJECT/TITLE | Changes to Access Database | N/A | Yes | Subject of the email |
| DATE_SENT | 10/10/2005 | N/A | Yes | Date the email was sent |
| TIME_SENT | 07:05 PM | N/A | Yes | Time the email was received |
| FILE_EXTEN | MSG(email) DOC (attachment – ex. Word document) | N/A | Yes | The file extension will vary depending if the image is a parent email or a child attachment |
| AUTHOR | John Beech | N/A | Yes | Attachment Metadata; Author of the original native file. |
| DATE_CREATED (C) | 10/08/2005 | N/A | Yes | For attachment – in properties. For scanned collections this is the date of document. |
| DATE_MOD (M) | 10/09/2005 | N/A | Yes | For attachment – in properties |
| DATE_ACCESSED (A) | 10/10/2005 | N/A | Yes | For attachment – in properties |
| PRINTED DATE | 10/10/2005 | N/A | Yes | Attachment metadata. Latest print date for native file. |
| FILE_SIZE | 32604160 | N/A | Yes | Size of file |
| PATH | C:\MYDOCUMENTS\ DOEJ | N/A | Yes | Path where attachment or local where local file was stored. |
| INTFILEPATH | Personal Folders/Deleted Items | N/A | Yes | Location of email |
| FULLTEXT | Yes | Yes | Yes | Text of the email or attachment or scanned document |

10. <u>Production Format for Hard Copy Documents</u>.  Hard copy documents will be produced as .tiff images with OCR.

11. <u>Encryption</u>.  To maximize the security of information in transit, any media on which documents are produced may be encrypted by the producing Party.  In such cases, the producing Party shall transmit the encryption key or password to the requesting Party, under separate cover, contemporaneously with sending the encrypted media.

12. <u>Inadvertent Disclosures</u>.  The inadvertent production of any Discovery Material that would be protected from disclosure pursuant to the attorney-client privilege; the work product doctrine; state or federal law, rule, or regulation; confidentiality requirements; agreement of the Parties; or any other applicable privilege or doctrine will not constitute a waiver of the applicable protection.

If any such Discovery Material is inadvertently produced, the recipient of the Discovery Material agrees that, upon discovery or notification of such a disclosure, it will: (a) promptly return the Discovery Material and all copies of the Discovery Material in its possession; delete any versions of the Discovery Material from any database it maintains as soon as reasonably practical; (b) retrieve all electronic and paper copies of the Discovery Material provided to any third parties, including experts; and (c) destroy any notes that reveal the substance of the protected information.  In the event of disagreement, until such time as the disagreement is resolved, the receiving Party will return the Discovery Material and will not review or use the Discovery Material or its contents for any purpose, including using the contents of the Discovery Material to argue that the material is not privileged.  The Party to whom any inadvertently produced Discovery Material was returned shall retain the returned materials until the end of the case, including any appeals.

Within fourteen (14) business days after receiving notice of the inadvertent disclosure, the producing Party shall provide a log that describes the basis for the claim that the Discovery Material is privileged or otherwise protected from disclosure.  The receiving Party shall have the right to apply for an order that such Discovery Material is not protected from disclosure by any privilege.  Any Party seeking to submit to the Court a copy of a Discovery Material claimed to be privileged shall request to submit the Discovery Material under seal.  If the substance of the protected Discovery Material is discussed in a deposition prior to the time of discovery or notification of the inadvertent disclosure, the Parties agree that such testimony may not be used for any purpose.

SO STIPULATED:

**OUTTEN & GOLDEN LLP**
By:
/s/ *Justin M. Swartz*
Justin M. Swartz (PHV03853)
Cyrus E. Dugger (PHV05016)
Elizabeth Wagoner (PHV05548)
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone:  (212) 245-1000
Facsimile: (212) 977-4005
jms@outtengolden.com
cdugger@outtengolden.com
ewagoner@outtengolden.com

**THE HAYBER LAW FIRM, LLC**
Richard Hayber (CT11629)
Erick I. Díaz Vázquez (CT27023)
221 Main Street, Suite 502
Hartford, CT  06106
Telephone:  (203) 522-8888
Facsimile:  (203) 915-9555

**DUANE MORRIS LLP**

By:
/s/ *Eve I. Klein*
Eve I. Klein, Esq. (EK6747)
Evangelos Michailidis, Esq. (EM3383)
1540 Broadway
New York, NY 10036
Telephone: (212) 692-1000
Facsimile: (212) 214-0650
emichailidis@duanemorris.com
eiklein@duanemorris.com

**FEINER WOLFSON LLC**
John M. Wolfson
Fed. Bar No. (CT03538)
Benjamin M. Wattenmaker (CT26923)
One Constitution Plaza
Suite 900
Hartford, CT 06103
Telephone: (860) 713-8900

6

rhayber@hayberlawfirm.com
ediaz@hayberlawfirm.com

*Attorneys for Plaintiff, the Collective, and the Putative Class*

Facsimile: (860) 713-8905
jwolfson@feinerwolfson.com
bwattenmaker@feinerwolfson.com

*Attorneys for Defendant*

SO ORDERED:

_____   Date: _____
Hon. Janet C. Hall, U.S.D.J.

7