# Exhibit E

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| **ROBERT G. KEIFER, individually and on behalf of all others similarly situated,**      Plaintiff,<br><br>v.<br><br>**MORAN FOODS, INC., d/b/a SAVE A LOT LTD.,**      Defendant. | **CIVIL ACTION NO:**<br>**3:12-CV-00756(JCH)**<br><br><br><br><br>**SEPTEMBER 11, 2012** |

**PLAINTIFF'S FIRST INTERROGATORIES AND
REQUESTS FOR PRODUCTION OF DOCUMENTS**

Pursuant to Rules 33 and 34 of the Federal Rules of Civil Procedure, Plaintiff requests that Defendant Moran Foods, Inc., d/b/a/ Save-A-Lot Ltd. ("Save-A-Lot" or "Defendant"), respond to the foregoing interrogatories and produce the documents and electronically-stored information described below for inspection and copying within thirty days of the date of these requests at the offices of The Hayber Law Firm, LLC, 221 Main Street, Suite 502, Hartford, CT 06106, unless otherwise indicated herein. Defendant is also required to serve written responses within thirty days of the date of these requests.

**DEFINITIONS**

1.     The terms: "**Communication**", "**Document**", "**Identify**", **"Parties"**, **"Person"**, **"Concerning"**, "**All**/**each**," **"And/or" and "Number"** shall be construed in accordance with the definitions contained in L.Civ.R. 26.

2.     **"Assistant Store Manager(s)"** or **"ASM(s)"** refers to all individuals who work or worked as Assistant Store Manager(s) at for **Moran Foods d/b/a Save a Lot** during the **relevant period** (as defined below).

3. The term "**Class Members**" **refers** to all individuals who held the position of **Assistant Store Manager** in Connecticut at any time during the **relevant period** (as defined below) through the present.

4. The term **"Collective Members" refers** to all individuals who held the position of **Assistant Store Manager** at any time during the **relevant period** (as defined below) through the present.

5. "**Compensation**" means all monies and benefits, including but not limited to: salaries; hourly wages; overtime wages; commissions; raises; and bonuses; or any other employment benefit plans, including, but not limited to, pension, severance, stock, retirement, and medical plans.

6. The terms "**Defendant**," "**You,**" and "**Your**" and "**Save A Lot**" refer to Moran Foods, Inc., and include all of its subsidiaries, officers, employees, agents, consultants, attorneys, **and/or** any other persons acting for **Defendant** or on its behalf.

7. To "**describe**" a fact, thing, condition, action, or event means to state with specificity all facts, times, and dates comprising or concerning such fact, thing, condition, action, or event and to identify all persons involved in such fact, thing, condition, action or event.

8. "**Electronically stored information**" or "**ESI**" means **any document** that can be **or** has been stored in electronic form on a server, tape, electronic media such as an internal **or** external hard drive or **any** media whereby the document can be saved **and** be available for retrieval using **any** retrieval device, including but not limited to a computer **or** server.

9. The term "**hours**" includes full hours and partial hour(s).

10. "**Electronic information**" subject to disclosure includes information stored **in any medium**. Such medium include, but are not limited to:

      a.      Active, online storage locations, such as magnetic disks **and** hard drives;

      b.      Near-line storage locations, such as optical disks;

      c.      Offline storage locations **and** archives, such as removable optical disks **and** magnetic tape media;

      d.      Back-up tapes;

      e.      Floppy disks, diskettes, CDs, zip discs, jazz discs, zip drive, flash memory, DVDs, videotapes, audiotapes, Personal Digital Assistant ("PDA"), memory cards; **and**

      f.      Any other medium, including, but not limited to third-party Electronic Communications Service and Remote Computing Service providers, such as wireless cell phone companies, online electronic mail providers (e.g., Gmail, Hotmail or Facebook); **and** any website hosting providers (e.g., Typad).

12.    The "**litigation**" means the present lawsuit titled *Keifer v. Moran Foods, Inc.*, Docket No.: 3:12-CV-00756(JCH).

13.    "Payroll **Service Provider**" refers to any entity that provides services or maintains records related to employee hours worked, work schedules, wages, benefits, discipline, and/or any other information related to payroll and terms and conditions of employment.

14.    "Payroll **System**" refers to any program or system used to record employee hours worked, work schedules, wages, benefits, discipline, and/or any other information related to payroll and terms and conditions of employment.

15.    **"Plaintiff"** refers to the named Plaintiff, Robert G. Keifer.

16.     "**Policy**" or "**Policies**" mean each rule, procedure, or directive, formal or informal, written or unwritten, and each common understanding or course of conduct that was recognized as such by **Defendant** or persons acting or purporting to act on **Defendant's** behalf, that has been in effect at any time during the period covered by these demands.  These terms include any change of **policy**.

17.     "**Refers to**" and "**relates to**" mean evidencing, constituting, reflecting, showing, comprising, including, containing, describing, considering, discussing, regarding, setting forth, studying, analyzing, commenting upon, recommending, alluding to, or mentioning, in whole or in part.

18.     **"Relevant period"** refers to the period from May 18, 2009 through the present.

19.     **The** terms "**showing**" or **"to show"** mean depicting, displaying, demonstrating, exhibiting, reporting, presenting, **and/or** setting forth, **and** shall be construed to afford the widest possible scope of inquiry to the discovery request containing such term.

20.     "**Work**" includes, but is not limited to, **all** activities **or** tasks performed in whole **or** in part, directly **or** indirectly, for **Defendant's** benefit.

## INSTRUCTIONS

Unless otherwise indicated, the following instructions apply to, **and** are incorporated into, the definitions set forth above, **all** interrogatories and document requests, **and** these instructions:

1.      **All** requests pertain to the entirety of the **relevant period**.

2.      With respect to **each document** produced, **Plaintiff** requests that **Defendant** specify the request(s) to which the **document** is responsive.

3.      **Plaintiff** requests that **Defendant and** its counsel prevent the destruction **or** alteration of any **document** requested herein by the operation of any **electronic information** system (routine **or** otherwise) **and** put **Defendant** on notice that any destruction **or** alteration of such **document**, **or** any action that makes such **documents** more difficult **or** expensive to access **and** use, without completing a meet **and** confer process with **Plaintiff's** counsel regarding such action, will not be considered to be in "good faith" as contemplated in Fed. R. Civ. P. 37(f).  If **Defendant** does not believe that it can reasonably comply with this instruction, **Plaintiff** requests that **Defendant** contact **Plaintiff**, in writing, within 10 days from receipt of these requests, to meet **and** confer about whether immediate Court intervention is necessary.

4.      Unless otherwise indicated, **Plaintiff** requests that **Defendant** produce responsive **documents** after a meet **and** confer discussion with **Plaintiff's** counsel about the preferred format for such production.  **Plaintiff** requests that **Defendant** not unilaterally select an electronic format for production.

5.      Alternatively, if **Defendant** does not wish to meet **and** confer about the format for production of **documents**, **Plaintiff** requests such **documents** as follows:

   a.      For emails: Personal Storage Table ("PST") files (with attachments preserved) or as Tagged Image File Format ("TIFF") image with Optical Character Recognition ("OCR") (with attachments preserved) **and** corresponding Document Image Information ("DII") load file.

   b.      For email attachments: To the extent an e-mail has an attachment, the original parent-child information will be maintained in the production **and all** metadata associated with documents attached to e-mails will be captured **and** they will be produced with load files.  Attachments, except those in Excel or PowerPoint format, may

5

be produced in single-page TIFF format **and** corresponding document-level extracted text files with a DII file.

  c. For Word, WordPerfect, clipboard **or** other word processing **documents**: Native format **or** as TIFFs with OCR **and** corresponding DII load file;

  d. For Excel **or** other spreadsheets: Native format (a Bates-stamped TIFF placeholder with a link to the native file may be used as part of the production);

  e. For PowerPoint: Native format (a Bates-stamped TIFF placeholder with a link to the native file may be used as part of the production);

  f. For Hypertext Markup Language ("HTML") **documents**: Native format (a Bates-stamped TIFF placeholder with a link to the native file may be used as part of the production);

  g. For data compilations: Microsoft Excel file format **or** comma-separated variable format (a Bates-stamped TIFF placeholder with a link to the native file may be used as part of the production);

  h. For data maintained in Portable Document Format ("PDF"): Native format;

  i. For paper **documents**: TIFF images with OCR **and** corresponding DII load file;

  j. For other **documents**: a searchable, manipulable format.

6. **All documents** should be produced on CD-ROMs **or** DVDs.

7. For any **ESI** file that exists in encrypted format **or** is password-protected, provide the corresponding password.

8. Where electronic **documents** are maintained in native electronic format, regardless of whether they are also maintained in either paper **or** PDF format, such electronic **documents** should also be produced as set forth above.

9. **Documents** should not be zipped, compressed, encrypted, **or** otherwise restricted **or** proprietarily protected for specific use.

10. Where specialized **or** proprietary software is required to access **or** use **documents** in their native format, please supply such software.

11. **All** requests should be read to include a request for **all** metadata associated with **all documents** responsive to the request.

12. If a **document** is available to **Defendant** both in paper **and** electronic form, **Plaintiff** requests that **Defendant** produce the requested **document** in electronic form, as **described** herein.

13. With respect to **each** request, **Defendant** is requested to provide **all documents** in **Defendant's** possession, custody, **or** control that are known to **Defendant or** that **Defendant** can locate **or** discover through reasonably diligent efforts.

14. If **Defendant** cannot respond to any part of the following requests in full, please respond to the extent possible, specifying the reason **or** reasons for **Defendant's** inability to respond to the remainder of the requests.

15. If, to **Defendant's** knowledge, **documents** responsive to one **or** more requests were never in **Defendant's** possession, custody, **or** control but are **or** have been in the possession, custody, **or** control of any other **person**, please **identify all** such **persons**.

16. If any responsive **document** was formerly in **Defendant's** possession, custody, **or** control but has been eliminated from **Defendant's** possession in any way, including, but not

limited to, having been lost, destroyed, transmitted, **or** discarded, please submit a written statement as follows:

    a.    **Describe** in detail the nature of the **document and** its contents;

    b.    **Identify** the **person or persons** who authored, prepared, **or** edited the **document and**, if applicable, the **person or persons** to whom the **document** was sent;

    c.    List **all** dates when the **document** was copied, created **or** modified;

    d.    List **all** dates when the **document** was eliminated from **your** possession in any way;

    e.    State any reason(s) the **document** was eliminated from **your** possession in any way; **and**

    f.    List **all persons** that have had possession of the **document or** have had knowledge of its contents.

17.    The scope of your search for **ESI** shall include **all** forms of electronic data collection, preservation, transmission, communication **and** storage, including:

    a.    **All** data generated **and** maintained in the ordinary course of business, including data stored on mainframe computers **or** local **and** network computers **or** drives **or** servers **or** any other media where ESI can be **or** is stored;

    b.    Distributed data **or** removable data, i.e., information which resides on portable media **and** non-local drives, including home computers, laptop computers, magnetic **or** floppy discs, CD-ROMs, DVDs, zip drives, Internet repositories including e-mailed host by Internet service providers, handheld storage devices such as personal digital assistant ("PDAs"), Blackberry devices, cellular telephones, **and** flash memory drives;

      c.      Forensic copy **or** backup data, including archive **and** backup data tapes **and** discs;

      d.      Network data, including voice mail systems, e-mail servers, ISP servers, network servers, **and** fax servers;

      e.      Legacy data, i.e., retained data that has been created **or** stored by the use of software **or** hardware that has been rendered outmoded **or** obsolete;

      f.      Metadata, i.e., information regarding a particular data set which **describes** how, when **and** by whom it was collected, created, accessed **and** modified **and** how it is formatted; **and**

      g.      Residual **or** deleted data, i.e., data that is not active on a computer system, including data found on media free space, data found on media slack space **and** data within files that have been functionally deleted.

18.      If requested **documents** are maintained in a file, folder, **or** other container, please produce the file, folder, **or** other container, **or** a complete copy of same, with the **documents**.

19.      In accordance with Fed. R. Civ. P. 26(b)(5) and Local Civil Rule 26.2, if any **document** responsive to **Plaintiffs'** discovery requests is withheld pursuant to a claim of attorney-client privilege, attorney work product privilege, litigation materials privilege, **or** any other common law **or** statutory privilege **or** protection, please specify the following:

      a.      The basis for withholding such **document**;

      b.      A generic description of the **document** being withheld;

      c.      The date the information contained in the **document** was learned **or** the **document** created;

      d.      The **identity** of the individual(s) who learned the information **or** authored the **document**;

      e.      The date the **document** was transmitted **or** otherwise made available to anyone; **and**

      f.      The specific request(s) to which the withheld **document relates**.

20.    Unless otherwise indicated in writing, the failure to produce any **documents** in response to any request herein means that such **documents** do not exist, **or** are not in **Defendant's** possession, custody, **or** control, **or** the possession, custody, **or** control of **Defendant's** agents **or** anybody acting on **Defendant's** behalf.

## INTERROGATORIES

1.    Identify each and every person who has knowledge of the facts surrounding Plaintiff's claims and your defenses in this matter. For each person identified, state the subject matter of their knowledge, describe any documents in their possession which relates to that knowledge, and provide a brief description of the facts they have knowledge of.

**RESPONSE**:

2.    Identify all evidence regarding hours worked by Plaintiff and putative class members in Defendant's retail locations during the relevant period, including records showing when they logged into and out of Defendant's computer system, time cards, phone records, emails mentioning or concerning hours worked, etc.

**RESPONSE**:

3. Provide a list identifying all Assistant Store Managers who worked for Defendant during the relevant period, including, for each individual: (1) dates of employment at Defendant; (2) office location(s) to which he or she reported; (3) last-known home address; (4) last-known telephone number(s); and (5) last-known email address(es).

**RESPONSE**:

4. Provide a list of the individuals who supervised and/or managed Assistant Store Managers who worked for Defendant during the relevant period, including, for each individual: (1) title(s); (2) dates of employment at Defendant; (3) office location(s) to which he or she reported; (4) last-known home address; (5) last-known telephone number(s); and (6) last known email address(es).

**RESPONSE**:

5. Identify all persons who have given or provided statements, declarations, or affidavits for Defendant in this matter. As to each individual, identify the person who took their statement, where it was taken, when it was taken and describe all documents reviewed or relied upon during the drafting of said statement and all notes taken or created as a result of the drafting and signing of any such statement.

**RESPONSE**:

6. Identify each and every witness with whom you, or anyone acting on your behalf, have communicated about this case, including members of the putative classes. For each such person, provide the dates of each such communication, the person communicating with the witness, the location of any meetings, and a description of all documents relating to or concerning any such meetings or communications.

**RESPONSE**:

7. Describe any and all efforts undertaken by Defendant to learn and comply with the applicable federal or state overtime laws as they pertain to Plaintiffs and members of the putative collective action, including but not limited to compliance with the fluctuating work week ("FWW") method of overtime compensation. Include in any such description the date, location and participants of any such efforts, as well as a description of any documents reviewed, relied on or created during any such efforts.

**RESPONSE:**

8. Identify any and all evidence in your possession that in any way relates to or concerns the claims and defenses in this case.

**RESPONSE:**

9. Please identify any Payroll Service Provider and/or Payroll System which Defendant has used to maintain information related to the employment, hours, compensation, and/or terms and conditions of employment of ASMs during the relevant period and the dates during which each identified Payroll Service Provider or Payroll System maintained such information.

**RESPONSE:**

10. Please provide the name, title and business address of all persons working for or on behalf of Defendant who are responsible for complying with Connecticut's wage and hour laws, including the Fair Labor Standards Act, the Connecticut Minimum Wage Act and all applicable regulations, including those referenced in the Complaint.

**RESPONSE:**

11. Please identify any person or persons who have made any complaints about the overtime pay practices identified in the Complaint since January 1, 2009.

**RESPONSE:**

12. Please identify any person or persons who have received any complaint identified in response to Interrogatory No. 11 above.

**RESPONSE:**

## VERIFICATION

I, _____, on behalf of Defendant, Moran Foods, Inc., d/b/a/ Save-A-Lot, declare under penalty of perjury that the foregoing is true and correct.

_____

_____
Print Name

_____
Title

_____
Date

## REQUESTS FOR PRODUCTION OF DOCUMENTS

1. Any and all policies and procedures which applied to Assistant Store Managers at Moran Foods, Inc. during the relevant period concerning or relating to hours worked, compensation, payroll, time and attendance, time off, sick time, vacation time, personal time, paying ASMs a salary when they worked less than 40 hours in a week, or other similar policies.

**RESPONSE:**

2. Any and all payroll, time and attendance records for each member of the putative classes.

**RESPONSE:**

3. Any and all personnel files for each member of the putative classes.

**RESPONSE:**

4. Any and all documentation regarding any attempt or effort made by Defendant to learn and comply with federal and Connecticut's statutes and regulations regarding the payment of overtime pay.

**RESPONSE:**

5. Any and all documentation regarding the creation and implementation of Defendant's overtime pay policy applied to Plaintiff and other similar employees.

**RESPONSE:**

6. Any and all complaints by any employee about Defendant's overtime pay policy.

**RESPONSE:**

7. All documents and communications regarding Defendant's use of the "fluctuating workweek" overtime calculation method with respect to ASMs.

**RESPONSE**:

8.      All documents that refer or relate to Defendant's use of any Payroll Service Provider or Payroll System to track or maintain information related to the employment, hours, compensation, and/or terms and conditions of employment of ASMs during the relevant period, such as manuals, handbooks or other documents that explain how data is received by the Payroll Service Provider or entered into the Payroll system and how any software or system(s) used process, track, store and maintain said ASM information.

**RESPONSE:**

9.      All documents and/or communications that refer or relate to Defendant's policies and/or procedures regarding tracking the hours ASMs worked during the relevant period, including, but not limited to, emails or other correspondence between Defendant and any ASM.

**RESPONSE:**

10.     All documents and/or communications that refer or relate to Defendant's policies and/or procedures regarding tracking or recording in Defendant's Payroll System paid time off for ASMs, including, but not limited to, vacation, sick, holiday, or personal time.

**RESPONSE:**

11.     All documents and/or communications that refer or relate to any policies and/or procedures instituted or followed by Defendant to ensure that ASMs were paid a fixed weekly salary during the relevant period.

**RESPONSE:**

12.     All documents and/or communications that refer or relate to any policies and/or procedures instituted or followed by Defendant to pay overtime wages to ASMs during the relevant period.

**RESPONSE:**

13. All documents and/or communications that refer or relate to any policies and/or procedures instituted or followed by Defendant in the event an ASM worked fewer than 40 hours during the relevant period.

**RESPONSE:**

14. All documents provided to ASMs which relate to hours worked, attendance, tardiness, and Defendant's policies and/or procedures related to sick, personal, and vacation time.

**RESPONSE:**

15. Defendant's "New England Attendance Policy," and related attendance policies for other geographic regions.

**RESPONSE:**

16. Defendant's document retention policy and/or electronic record-keeping policy.

**RESPONSE:**

17. All documents which have been available to ASMs on the "My Information Online" computer system during the relevant period.

**RESPONSE:**

18. All documents retained by Michael Draper that refer or relate to interviews and/or orientations conducted with any ASM or putative class members.

**RESPONSE:**

Plaintiff, Robert G. Keifer, in his individual capacity and on behalf of all similarly situated employees


By: *__Erick I. Díaz Vázquez__*
Erick I. Díaz Vázquez
**The Hayber Law Firm, LLC**
Fed No.: ct27023
221 Main Street, Suite 502
Hartford CT 06106
Phone: (860) 522-8888
Fax:    (860) 218-9555



**OUTTEN & GOLDEN LLP**
Justin M. Swartz (*pro hac vice*)
Elizabeth Wagoner (*pro hac vice*)
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone:  (212) 245-1000

*Attorneys for Plaintiff and the Class*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above was mailed or electronically delivered on **September 11, 2012** to all counsel and pro se parties of record:

Via Certified Mail No.:
Eve I. Klein
Evangelos Michailidis
Duane Morris, LLP
1540 Broadway
New York NY 10036-4086
EIKlein@duanemorris.com
EMichailidis@duanemorris.com

John M. Wolfson
Benjamin Wattenmaker
Feiner Wolfson, LLC
One Constitution Plaza, Suite 900
Hartford CT 06103
jwolfson@feinerwolfson.co
bwattenmaker@feinerwolfson.com
dwhite@feinerwolfson.com

Anthony J. Pantuso, III
Quinn Law Firm, LLC.
204 S. Broad Street
Milford, CT  06460
apantuso@quinn-lawfirm.com

Justin M. Swartz
Elizabeth Wagoner
Outten & Golden
3 Park Avenue, 29th Floor
New York, NY  10016
jms@outtengolden.com
ewagoner@outtengolden.com

***Erick I. Díaz Vázquez***
Erick I. Díaz Vázquez