UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| ROBERT G. KIEFER, individually and on behalf of all others similarly situated,<br><br>                Plaintiff,<br><br>    v.<br><br>MORAN FOODS, INC., d/b/a SAVE A LOT LTD.;<br><br>                Defendant. | ECF NO.:<br><br>3:12-CV-00756 (JCH)<br><br>January 9, 2013 |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S MOTION TO COMPEL DISCOVERY**

**TABLE OF CONTENTS**

I.   Defendant Has Not Justified Its Refusal to Produce Payroll Data ...................................... 1

    A.   SAL Fails to Meet Its High Burden For Withholding the Payroll Data ................. 1

    B.   Defendant Does Not Claim that the Information in the Payroll Data
         Is Available From Another Source ........................................................................ 2

    C.   The State Court Production Was Insufficient and Incomplete .............................. 2

    D.   SAL Continues To Withhold Payroll Data It Has Already Collected For
         Opt-In Plaintiffs ..................................................................................................... 3

    E.   There Is No Support for SAL's Position That Plaintiffs Are Not "Entitled"
         to ASM Payroll Data Now ..................................................................................... 4

    F.   The Court Should Not Order Sampling ................................................................. 6

II.  SAL Has Not Cooperated With Plaintiff to Craft an Email Search Protocol ..................... 8

III. Abandonment of Half-Time Policy .................................................................................... 9

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Barton v. The Pantry, Inc.*,
  No. 04 Civ. 00748, 2006 WL 2568462 (M.D.N.C. Aug. 31, 2006) ..........................................6

*Burch v. Qwest Commc'ns. Int'l, Inc.*,
  677 F. Supp. 2d 1101 (D. Minn. 2009) ....................................................................................7

*Charles v. Nationwide Mut. Ins. Co.*,
  No. 09 Civ. 94, 2010 WL 7132173 (E.D.N.Y. May 27, 2010) ..................................................6

*Chen-Oster v Goldman, Sachs & Co.*,
  285 F.R.D. 294 (S.D.N.Y. 2012) .......................................................................................2, 5, 7

*Cranney v. Carriage Servs., Inc.*,
  No. 07 Civ. 01587, 2008 WL 2457912 (D. Nev. June 16, 2008) .............................................7

*Favale v. Roman Catholic Diocese of Bridgeport*,
  233 F.R.D. 243 (D. Conn. 2005)...............................................................................................4

*Fei v. WestLB AG*,
  No. 07 Civ. 8785, 2008 WL 7863592 (S.D.N.Y. Apr. 23, 2008) ..............................................5

*Fletcher v. Atex, Inc.*,
  156 F.R.D. 45 (S.D.N.Y. 1994) ................................................................................................2

*Guan Ming Lin v. Benihana Nat'l Corp.*,
  755 F. Supp. 2d 504 (S.D.N.Y. 2010).......................................................................................5

*Gutierrez v. Johnson & Johnson, Inc.*,
  No. 01 Civ. 5302, 2002 WL 34717245 (D.N.J. Aug. 12, 2002)................................................7

*Helmert v. Butterball*,
  No. 08 Civ. 00342, 2010 U.S. Dist. Lexis 143134 (E.D. Ark. Nov. 5, 2010) .......................7, 8

*Neary v. Metro Prop. & Cas. Ins. Co.*,
  517 F. Supp. 2d 606 ..................................................................................................................6

*Reich v. S. New Eng. Telecommc'ns. Corp.*,
  121 F.3d 58 (2d Cir. 1997).........................................................................................................9

*Schaefer-LaRose v. Eli Lilly & Co.*,
  663 F. Supp. 2d 674 (S.D. Ind. 2009) ...................................................................................7, 8

*Scott v. Aetna Servs., Inc.*,
  210 F.R.D. 261 (D. Conn. 2002)...............................................................................................6

**OTHER AUTHORITIES**

29 C.F.R. § 778.114(a)..................................................................................................................6

Fed. R. Civ. P. 26.....................................................................................................................2, 8

**I.       Defendant Has Not Justified Its Refusal to Produce Payroll Data.**

Defendant Moran Foods, Inc. d/b/a/ Save A Lot ("SAL") presents no valid reason to allow it to withhold time and payroll data ("Payroll Data") that it admits is relevant and is at the heart of Plaintiff's claims. SAL does not claim undue burden and does not deny that the data are readily accessible electronically on the payroll program SAL currently uses to process payroll.

Instead, SAL simply claims that Plaintiff is not "entitled" to the Payroll Data because the Court has not yet certified a Fair Labor Standards Act ("FLSA") collective or a Fed. R. Civ. P. 23 ("Rule 23") class. *See* Def.'s Opp. to Pl.'s Mot. to Compel, ECF No. 123 ("Def.'s Opp. Br.") at 3. Plaintiff respectfully submits that the Court should order SAL to produce the Payroll Data promptly so that Plaintiff can analyze it, hire an expert if necessary, take depositions, and prove his case before the March 22, 2013 discovery deadline.

**A.       SAL Fails to Meet Its High Burden For Withholding the Payroll Data.**

SAL does not (and cannot) dispute that the Payroll Data are relevant. They clearly are, because they will prove Plaintiff's claim that SAL's compensation policies precludes it from relying on the fluctuating workweek ("FWW") method of paying overtime compensation. *See* Mem. of Law in Supp. of Pl.'s Mot. to Compel Disc., ECF No. 104 ("Pl.'s Br."), 1, 6-7.

SAL does not claim that producing the Payroll Data would be an undue burden. It presents no evidence of excessive cost or disruption to its business. It would simply prefer not to go to the trouble. *See* Declaration of E. Wagoner in Support of Pl.'s Mot. to Compel Discovery, ECF No. 105 ("Wagoner Decl.") ¶ 8 (SAL does not want its employees to "go away from the business to gather this information" and will not instruct them to do so "absent a court order.") Under Fed. R. Civ. P. 26 ("Rule 26"), a party resisting "production on the basis of claimed undue burden [] must establish the factual basis for the assertion *through competent evidence*."

*Fletcher v. Atex, Inc.,* 156 F.R.D. 45, 54 (S.D.N.Y. 1994) (citing *In re "Agent Orange" Prod. Liab. Litig.,* 821 F.2d 139, 145 (2d Cir. 1987) (emphasis added).

SAL concedes that the Payroll Data can be easily downloaded from its active, currently used payroll program. Therefore, SAL cannot demonstrate that these electronic data are "not reasonably accessible." *See Chen-Oster v Goldman, Sachs & Co.*, 285 F.R.D. 294, 303-07 (S.D.N.Y. 2012) (discussing a party's burden under Rule 26 for resisting production of electronically-stored classwide pay data).

**B.  Defendant Does Not Claim that the Information in the Payroll Data Is Available From Another Source.**

Even if SAL had articulated a burden, the Payroll Data would still be discoverable because the information they contain is not available from any other source. Fed. R. Civ. P. 26(b)(2)(C). SAL does not deny that the Payroll Data are singularly critical to the merits of Plaintiff's claim that SAL's policy was to pay Plaintiff and class members on an hourly basis. Although SAL claims that it produced certain "policy documentation," *see* Def.'s Opp. Br. at 2, it does not claim that these documents say anything about SAL's pay policy when class members work fewer than 40 hours in a workweek, a central issue in the case. Def.'s Opp. Br. at 2-3.

**C.  The State Court Production Was Insufficient and Incomplete.**

SAL misses the point when it points to a limited data production it made in a similar state court case.[1] Although SAL's demonstrated ability to produce payroll data belies any claim that it cannot do so, the data it produced in state court are not sufficient for Plaintiff's purposes in this case. First, the data SAL produced in the state court action are limited to Connecticut. *See*

---

[1]  It is also not true that Plaintiff's counsel "has had possession of most of this information since 2010." Def.'s Opp. Br. at 3. The State Court Action was filed on March 9, 2011, and SAL began producing these records on August 23, 2011. *See* Wagoner Supp. Decl. Ex. G (Correspondence between R. Hayber and K. Greenberg, dated Aug. 23, 2011).

2

Def.'s Opp. Br. at 3.  Plaintiff in this case brings claims on behalf of a nationwide collective, and needs a complete data set, or at least a statistically representative, geographically diverse sample to prove SAL's nationwide pay policy and rebut SAL's argument that its policy differed from region to region or store to store.

In addition, the data SAL produced in the state court action do not contain any information after August 6, 2011, *see* Def.'s Opp. Br. Ex. 3 at 4-5.  This excludes almost a year and a half of the class period in this case.  SAL also redacted names from the state court data, preventing Plaintiff from determining what part of it belongs to Plaintiff or opt-ins in this case.[2]  Other materials Defendant produced in state court, such as personnel files, a job description, and a trainee performance assessment, do not shed light on SAL's pay policies.

Contrary to Defendant's claim, *see* Resp. to Notice of Supp. Auth., ECF No. 125, there was no "class discovery" in the State Court Action.  In fact, the state court explicitly precluded any class discovery.  Defendant's counsel was vigilant that all deposition questioning related directly to the state court plaintiff, instructing witnesses not to answer questions that arguably went beyond the state court plaintiff's individual circumstances.[3]

> **D.     SAL Continues To Withhold Payroll Data It Has Already Collected For Opt-In Plaintiffs.**

SAL also offers no justification for its refusal to produce even the time and payroll data for the 42 opt-in plaintiffs in this case that it admits *have been in its counsel's hands for more*

---

[2]   Defendant's counsel would not allow its corporate witness to answer questions about these records.  Supplemental Declaration of E. Wagoner in Supp. of Mot. to Compel Disc. ("Wagoner Supp. Decl.") Ex. F (Draper Tr. 164:2-169:18).

[3]   *See* Wagoner Supp. Decl. Ex. (Draper Tr. 165:15-23; 167:6-11) ("the document Mr. Hayber has marked . . . has class information beyond [the state court plaintiff] . . . So, this is not appropriate to be used at this time.  And I am not going to allow the witness to answer any questions other than with regard to [the state court plaintiff's] payroll . . . If we ever get to class discovery and if there's information that you need on a class basis that you're entitled to get at that time then a determination will be made. . .")

3

*than a month*.[4]  Instead, SAL incorrectly claims that Plaintiff offered to limit his data request to opt-in plaintiff data.

In fact, as a proposed compromise, Plaintiff asked SAL whether it would consider producing payroll records for "Plaintiff, opt-in Plaintiffs, and a representative sample of FLSA collective members." *See* Wagoner Decl. Ex. A (Pl.'s Nov. 13 Letter).  SAL responded to this proposal by offering to produce *only* opt-in plaintiff data (that it had already collected) and *only if* Plaintiff agreed to withdraw his request for nationwide data.  Wagoner Decl. ¶ 8.  Plaintiff rejected this proposal but asked SAL to produce the clearly relevant opt-in payroll reports it had already prepared for production.  SAL did not produce them.

### E. There Is No Support for SAL's Position That Plaintiffs Are Not "Entitled" to ASM Payroll Data Now.

SAL's only argument for withholding the admittedly relevant Payroll Data is that Plaintiff is not "entitled" to them prior to certification of a Rule 23 class or FLSA collective action.  Def.'s Opp. Br. at 3.  This argument should fail for several reasons.

First, Rule 26 does not contain a "pre-certification" exception.  As explained above, unless a party articulates and supports a specifically authorized objection to producing relevant information, it must produce it.  *See Favale v. Roman Catholic Diocese of Bridgeport*, 233 F.R.D. 243, 246 (D. Conn. 2005) ("The party resisting discovery bears the burden of demonstrating that its objections should be sustained.")

Second, Plaintiff is entitled to the Payroll Data to help him prove up class and collective action certification.  Courts routinely allow such discovery.  *See* Pl.'s Br. at 10.  SAL gets it backwards when it claims that the Court must certify a class *before* it may order production of

---

[4]  Three additional opt-in Plaintiffs have joined the action since Plaintiff filed his Motion to Compel.  *See* ECF Nos. 121, 122, and 124.

information that would support certification. *See Chen-Oster*, 285 F.R.D. 294 at 303-308 (ordering production of classwide pay data pre-certification); *Fei v. WestLB AG*, No. 07 Civ. 8785, 2008 WL 7863592, at *2 (S.D.N.Y. Apr. 23, 2008) ("conditional certification is not a prerequisite to the turnover of information" concerning putative class members").

Here, the Payroll Data will provide further support for the pending motion for FLSA conditional certification. If SAL argues that no collective should be conditionally certified because SAL's pay policies differed from store to store and region to region, as it has suggested already, the Payroll Data will help Plaintiff rebut this argument. In addition, the Payroll Data will be powerful evidence in support of Plaintiff's forthcoming motion for Rule 23 class certification and his opposition to SAL's likely motion to decertify a nationwide collective. Finally, a denial of conditional certification would not be a final determination. Plaintiff would still be entitled to proceed through discovery and move for certification of an FLSA collective after he has an opportunity to gather more discovery to support his collective action claims. *See Guan Ming Lin v. Benihana Nat'l Corp.*, 755 F. Supp. 2d 504, 513-15 (S.D.N.Y. 2010) (denying FLSA collective action certification "without prejudice to renewal at a later time" and granting motion for class-wide discovery) (collecting cases).

Furthermore, the Payroll Data is relevant to the merits of Plaintiff's claim and the claims of the 42 opt-in Plaintiffs even if the Court denies conditional certification. It will shed light on, if not conclusively demonstrate, what SAL's pay policy actually was because it will indicate what SAL did when class members worked fewer than 40 hours in a workweek. If SAL did not pay them a salary, and instead paid them on an hourly basis, as the few payroll records Plaintiff has seen seem to indicate, *see* Pl.'s Mem. of Law in Supp. of Mot. for Cond'l. Certification and Court-Authorized Notice Pursuant to Sec. 216(b) of the FLSA ("Pl.'s 216(b) Brief"), ECF No.

5

114, at 8-9; Decl. of J. Swartz in Support of Pl.'s 216(b) Brief ("Swartz Decl."), ECF No. 115, Exs. 13-17, SAL cannot support its failure to pay time and a half overtime compensation under the FWW method. *See* 29 C.F.R. § 778.114(a) (under FWW method, a worker must receive a "fixed amount as straight time pay for whatever hours he is called upon to work in a workweek, whether few or many"). With discovery set to close on March 22, 2013, Plaintiff needs the Payroll Data as soon as possible in order to prepare for dispositive motion practice and/or trial.

Of the four cases SAL cites in support of its argument, *see* Def.'s Opp. Br. at 5-6, two do not address the scope of pre-certification discovery at all. *See Neary v. Metro Prop. & Cas. Ins. Co.*, 517 F. Supp. 2d 606, 620; *Scott v. Aetna Servs., Inc.*, 210 F.R.D. 261, 264 (D. Conn. 2002). In the third, the court denied class-wide discovery pre-certification based on the $1.5 million expense to the defendant of redacting the largely privileged records the plaintiff sought. *See Charles v. Nationwide Mut. Ins. Co.*, No. 09 Civ. 94, 2010 WL 7132173, at *8-9 (E.D.N.Y. May 27, 2010). Because SAL has not even attempted to articulate a burden, this case is inapposite. In the fourth case, the court's limitation on discovery of class contact information was based on the scheduling order in that case, which provided for an "initial" pre-certification discovery phase. *See Barton v. The Pantry, Inc.*, No. 04 Civ. 00748, 2006 WL 2568462, at *1-2 (M.D.N.C. Aug. 31, 2006). By contrast, here there is no phased discovery.

### F. The Court Should Not Order Sampling.

The Court should not allow SAL to produce only a sample of the Payroll Data. Def.'s Opp. Br. at 7. First, the time has passed for the parties to attempt to agree on a sampling method, which likely would require the help of statistical experts and possibly Court intervention. At this point, about two months from the end of discovery, it would cause too much delay.

In addition, as is usually true with payroll records, SAL does not deny that it would be

6

more difficult to identify and segregate any agreed-upon sample than to simply to produce it all. *See* Pl.'s Br. at 7-8; *see also Chen-Oster*, 285 F.R.D. at 304 (explaining complexity of identifying a stratified sample).

Also, as explained above, a small sample of records may be insufficient for Plaintiff to demonstrate SAL's policy with respect to compensating class members for sub-40 hour workweeks because they might not include many instances where class members worked fewer than 40 hours. The Payroll Data is relevant in the aggregate. *Cf., e.g., Gutierrez v. Johnson & Johnson, Inc.*, No. 01 Civ. 5302, 2002 WL 34717245, at *4-5 (D.N.J. Aug. 12, 2002) (rejecting defendant's attempt to "artificially limit the data available to plaintiffs" because broader discovery "will present a more complete and reliable picture of the effects of . . . practices.")

The cases on which SAL relies in support of its argument for sampling are not germane to Plaintiff's argument that he needs the Payroll Data to demonstrate SAL's policy. *See* Def.'s Opp. Br. at 7-8; *Schaefer-LaRose v. Eli Lilly & Co.*, 663 F. Supp. 2d 674, 699-70 (S.D. Ind. 2009) *aff'd*, 679 F.3d 560 (7th Cir. 2012), *Cranney v. Carriage Servs., Inc.*, No. 07 Civ. 01587, 2008 WL 2457912, *2-3 (D. Nev. June 16, 2008), and *Helmert v. Butterball*, No. 08 Civ. 00342, 2010 U.S. Dist. Lexis 143134, *1-5 (E.D. Ark. Nov. 5, 2010).[5] These cases address an entirely separate issue: whether a plaintiff must to produce large numbers of opt-ins for depositions or respond to interrogatories addressed to each of them. To determine whether representative sampling was appropriate in that context, each court undertook an analysis of the burden to the party opposing individual opt-in discovery under the standard set forth in Fed. R. Civ. P. 26(b)(2)(C). *Schaefer-LaRose*, 663 F. Supp. 2d at 699-70, *Cranney*, 2008 WL 2457912 at *2-3,

---

[5] *Burch v. Qwest Commc'ns. Int'l, Inc.*, 677 F. Supp. 2d 1101, 1113 (D. Minn. 2009), on which SAL also relies, does not contain any discovery rulings or any analysis of the standard for limiting discovery under Rule 26.

7

*Helmert*, No. 08 Civ. 00342 at *1-5.

Here, SAL has not articulated a burden. Plaintiff is also not seeking the kind of individualized opt-in discovery that was at issue in those cases; he simply seeks a data dump of electronic payroll from a centralized currently active database into a spreadsheet.

## II.     SAL Has Not Cooperated With Plaintiff to Craft an Email Search Protocol.

SAL also does not articulate a burden under Rule 26 that would allow it to resist email discovery. Instead, it simply argues that email "is not likely to have much if any impact on the issues in this case," and that "there is not expected to be much, if any, email traffic regarding the same." Def.'s Opp. Br. at 9-10. SAL does not describe any investigation it undertook to come to this self-serving conclusion.

To the contrary, emails are likely to contain relevant evidence that does not exist anywhere else. First, a document that Defendant produced on December 3, 2012 indicates that when an ASM worked fewer than 40 hours, the Payroll Department was to contact the store to "find out what happen[sic]." *See* Swartz Decl., ECF No. 115, Ex. 10 (Save-A-Lot Processing Work Transition – Payroll). This indicates that there are likely to be communications between SAL or Payroll Department employees discussing pay for ASMs who worked fewer than 40 hours a week. Considering SAL's admitted lack of written policy materials, *see* Def.'s Opp. Br. at 3, emails could well be a valuable source of written information about SAL's implementation of its payroll policies. Second, there may be corporate-level communications that will help establish what SAL's policy was, as well as its state of mind as to whether it was legal or illegal.

SAL admits it has done almost nothing to make it possible to craft an ESI search protocol, even though responsive emails were due almost three months ago and discovery closes in a little over two months. It admits that it took the very first step in the ESI search process on

8

December 14, 2012, Def.'s Opp. Br. at 10, a week after Plaintiff filed his motion to compel, by belatedly producing a list of email custodians without any explanation for how they were selected.

Defendant's insistence that Plaintiff depose its 30(b)(6) witnesses before it produces emails is not appropriate. Plaintiff should have an opportunity to obtain relevant communications about SAL's implementation of its payroll policies before he deposes SAL's witnesses on these topics.

### III.     Abandonment of Half-Time Policy.

SAL does not argue that it would be burdensome to produce discovery about its decision to change the practice that Plaintiff challenges in this case. Although it claims that Plaintiff's request is "harassing," it does not explain why. These materials are relevant because information about how and why SAL abandoned its unlawful policies and started paying time and a half for overtime could shed light on how it applied its overtime policies during the class period and allow counsel to compare the current (presumably) lawful policy to the former unlawful policy with deposition witnesses.

It would also help determine whether SAL's violations were in good faith or willful. *See Reich v. S. New Eng. Telecommc'ns. Corp.*, 121 F.3d 58, 71 (2d Cir. 1997) ("Good faith" requires an employer to prove that it took "active steps to ascertain the dictates of the FLSA and then move[d] to comply with them.").

Dated:      New York, New York
            January 8, 2013

                                        Respectfully submitted,

                                        /s/ *Justin M. Swartz*
                                        **OUTTEN & GOLDEN LLP**
                                        Justin M. Swartz (*pro hac vice*)

9

Cyrus E. Dugger (*pro hac vice*)
Elizabeth Wagoner (*pro hac vice*)
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone:  (212) 245-1000
Facsimile: (212) 977-4005
jms@outtengolden.com
cdugger@outtengolden.com
ewagoner@outtengolden.com

**THE HAYBER LAW FIRM, LLC**
Richard Hayber
Erick I. Díaz Vázquez
221 Main Street, Suite 502
Hartford, CT  06106
Telephone:  (203) 522-8888
Facsimile:  (203) 915-9555
rhayber@hayberlawfirm.com
ediaz@hayberlawfirm.com

**CERTIFICATION OF SERVICE**

I hereby certify that on January 9, 2013, a copy of Plaintiffs' **Reply Memorandum of Law in Support of Motion to Compel Discovery** was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system and by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

                                                                           _/s/ Justin M. Swartz_