## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

ROBERT G. KIEFER, individually and on behalf
of all others similarly situated,

                              Plaintiff,

        v.

MORAN FOODS, INC., d/b/a SAVE A LOT
LTD.;

                              Defendant.

ECF No.
3:12-CV-00756 (WGY)

February 28, 2013

## DECLARATION OF ELIZABETH WAGONER IN OPPOSITION TO
## DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

I, Elizabeth Wagoner, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury as
follows:

1.      I am an Associate at Outten & Golden LLP, which, together with the Hayber Law

Firm, LLC, is Plaintiff's counsel herein.  I am an attorney in good standing admitted to practice

in the State of New York and *pro hac vice* before this Court.

2.      I have been one of the attorneys principally responsible for the prosecution of this

case.  The statements in this Declaration are based on my personal knowledge.

3.      I make this Declaration pursuant to Federal Rule of Civil Procedure 56(d).  The

Court should not grant Defendant's Cross-Motion for Summary Judgment because Plaintiff

adequately rebuts it in his opposition papers based on the discovery that has been taken so far.

If, however, the Court determines that Plaintiff has not adequately rebutted Defendant's motion,

this declaration supports Plaintiff's argument that the Court should defer its ruling or deny

summary judgment without prejudice because Plaintiff has not yet had an opportunity to obtain

evidence he needs to respond to Defendant's motion.

4.      This is not a situation where a plaintiff, by oversight or omission, seeks new discovery on the eve of the close of discovery.  Rather, Defendant has not produced large categories of the discovery Plaintiff has requested, forcing Plaintiff to move to compel its production on December 7, 2012.  ECF Nos. 103-105.  The Court has not yet had an opportunity to rule on Plaintiff's motion to compel.  Moreover, in pursuing its premature summary judgment motion, Defendant violated the requirements of Rule 26(a), by failing to disclose current employee witnesses it now relies upon by way of self-serving declarations.  Plaintiff never had the opportunity to depose or seek discovery from these witnesses, and Defendant continues to refuse to produce discovery pertaining to them.

**Plaintiff Sought the Discovery He Needs By Serving Discovery Requests, Filing a Motion to Compel Discovery, and Serving Deposition Notices.**

*Discovery Requests*

5.      Plaintiff propounded written document requests on September 11, 2012. Defendant's responses and document production were originally due on October 15, 2012, but Plaintiff consented to Defendant's request to extend the time to serve responses and objections to October 25, 2012, and to produce documents to November 11, 2012.

6.      Defendant served responses to Plaintiff's Interrogatories and Document Requests on October 25, 2012.[1]  Ex. 4 (Def.'s Resp. to Pl.'s Interrogatories); Ex. 12 (Def.'s Resp. to Pl.'s Doc. Reqs.).  In its responses Defendant refused to produce payroll records and paystubs responsive to Document Request No. 2[2] for the putative FLSA collective, including the ASMs who have actually opted-in to this case.  Instead, Defendant unilaterally limited its production to

---

[1]      Unless otherwise specified, all exhibits referenced herein are attached to the Declaration of Justin M. Swartz in Opposition to Defendant's Cross-Motion for Summary Judgment.

[2]      Document Request No. 2: Any and all payroll, time and attendance records for each member of the putative classes.  Ex. 12.

Plaintiff Kiefer's payroll records and paystubs.  Defendant also refused to produce documents responsive to Document Request No. 12,[3] which seeks, *inter alia*, documents about Defendant's July 2012 decision to abandon its FWW policy.  Ex. 4 (Def's Resp. to Pl.'s Doc. Reqs.).

7.     Without asking for an extension, Defendant did not produce a single policy document regarding the overtime policies and practices Plaintiff challenges until December 3, 2012, when it produced eleven (11) pages of documents regarding its "Coefficient Pay" system, along with other materials unrelated to the pay practices Plaintiff challenges.  These documents did not contain any information about how Defendant calculates ASM wages when they work fewer than 40 hours or take paid time off, a central issue in this case.  Defendant has not produced any other policy documents since then, and during meet and confer calls on December 5, 2012, Defendant's counsel said it believed no other policy documents existed.

*Email Searches*

8.     In addition, Defendant has significantly delayed production of emails or other electronically stored information ("ESI") from its corporate custodians, by failing to provide basic information about the locations, custodians and volume of ESI to be searched.  Although Plaintiff hopes that the parties will be able to finalize a search methodology in early March 2013, the significant delays that Defendant has caused in crafting a methodology mean that Plaintiff will not be able to use any emails pertaining to the parties' dispute about Defendant's policies and practices in their opposition to Defendant's Summary Judgment Motion.

9.     The history of the parties' discussions on ESI searches is as follows.  During the parties' first meet and confer conference on October 5, 2012, Defendant's counsel told Plaintiff's

---

[3]     Document Request No. 12: All documents and/or communications that refer or relate to any policies and/or procedures instituted or followed by Defendant to pay overtime wages to ASMs during the relevant period. Ex. 12.

counsel that there would be "no e-discovery" and that her client did not intend to perform searches for responsive electronically-stored information ("ESI"), including email searches. During the parties' next meet and confer conference on October 25, 2012, Defendant's counsel changed course and agreed to search for responsive ESI, but said she needed more time to obtain information about the identities of custodians and the volume of ESI to be searched.  When the parties next spoke about ESI searches November 16, 2012, Defendant told Plaintiff that it had identified some ESI custodians and had collected several gigabytes of data, and that most of this was attributable to store-level custodians.   However, Defendant's counsel still had no information during that conference about the number corporate-level custodians, who are most likely to have the policy-level information plaintiff seeks, or the volume of ESI attributable to them.  On meet and confer conferences on November 29, 2012 and December 3, 2012, Defendant told Plaintiff that it still had not obtained the information.  On December 14, 2012, Defendant produced an initial custodian list, but provided no information about the volume of ESI to be searched for each custodian.  On February 19, 2013, Defendant finally provided information about the volume of ESI attributable to each custodian, over three months after Plaintiff originally requested it.  This week, the parties agreed to run a set of test search terms on the ESI and to work collaboratively to refine the terms as necessary based on the hit report results.  The first test search has not yet been performed.

   *Motion to Compel*

   10.    On December 7, 2012, Plaintiff filed a Motion to Compel Discovery ("Plaintiff's Motion to Compel"), seeking class-wide payroll information regarding the putative nationwide FLSA collective and the Connecticut class, emails from Defendant's corporate custodians, and documents about why Defendant discontinued the overtime pay policy Plaintiff challenges in this

case in approximately July 2012, as outlined above.  *See* ECF Nos. 103-105.  This motion is *sub judice*.  *See* ECF No. 123 (Def.'s Opp. to Pl.'s Mot. to Compel.); ECF No. 130 (Pl.'s Reply. in Support of Mot. to Compel).

*Depositions*

11.     Plaintiff served a Rule 30(b)(6) Deposition Notice on Defendant on October 15, 2012.  Ex. 27 (30(b)(6) Deposition notice).

12.     Plaintiff has been forced to postpone Defendant's Rule 30(b)(6) deposition several times, because Defendant has not produced the documents and emails Plaintiff seeks in his Motion to Compel.

13.     On February 22, 2013, Plaintiff noticed the depositions of the five new and previously undisclosed witnesses whose testimony Defendant offered in support of its Motion for Summary Judgment: Jeff Rodd, David Tisdale, William Garforth, Brian Nulty, and Jason Hodge ("Defendant's Undisclosed Witnesses").  Ex. 29 (Deposition notices).  All of Defendant's Undisclosed Witnesses except Rodd are ASMs subject to the policies Plaintiff challenges in this case.  *See* ECF No. 139 (Michailidis Decl.), Ex. P (Rodd Decl.); Ex. Q (Tisdale Decl.); Ex. R (Garforth Decl.); Ex. S (Nulty Decl.); Ex. T (Hodge Decl.).

14.     Plaintiff learned about Defendant's Undisclosed Witnesses for the first time when Defendant filed its Motion for Summary Judgment.  They do not appear in Defendant's Responses to Plaintiff's Interrogatories, Ex. 4, or in its Rule 26(a) Initial Disclosures, Ex. 46.  As a result, Plaintiff has not had an opportunity to cross-examine them or take discovery on the issues they raise in their declarations, including the content of the training Defendant provided to ASMs about its pay policies and how ASMs were compensated when they worked fewer than 40 hours.

15.     On February 20, 2013, and again on February 25, 2013, Plaintiff asked Defendant to produce payroll and paystub documents for Defendant's Undisclosed Witnesses responsive to Document Request No. 2.  *See* Ex. 42 (Emails, dated Feb. 20 and 25, 2013, between E. Wagoner & E. Klein).  Defendant has refused to do so.  *See id.*

**Plaintiff Needs the Additional Discovery He Seeks to Oppose Summary Judgment.**

16.     Plaintiff needs the discovery outlined above to oppose Defendant's Motion for Summary Judgment.  Although Plaintiff believes the evidence adduced in his Local Civil Rule 56(a)2 Statement and Additional Statement of Disputed Issues of Material Fact and Undisputed Facts creates genuine issues of triable fact sufficient to oppose Defendant's motion, he expects that additional discovery will further develop the following disputed issues:

a.   The amount of Kiefer's regular rate of pay.

b.   Whether Defendant's policy or practice was to pay ASMs, including Kiefer, a regular hourly rate of pay, not a fixed weekly salary.

c.   Whether Defendant's policy or practice was to pay ASMs, including Kiefer, a regular hourly rate of pay, not a fixed weekly salary, when they worked fewer than 40 hours a week.

d.   Whether Defendant told Kiefer and other ASMs that they would be paid a fixed weekly salary when they worked fewer than 40 hours.

e.   Whether Defendant's uniform communications with ASMs about its hourly-rate pay structure precluded a "clear mutual understanding" that ASMs would be paid a fixed weekly salary.

f.   Whether Defendant's bonus holiday pay policies violate the FWW.

These disputed issues are central to Defendant's compliance with the USDOL's guidance in the FWW Interpretive Bulletin codified at 29 C.F.R. 778.114 ("USDOL Bulletin"), which sets forth the strict circumstances under which an employer may pay an employee half-time for overtime.  The USDOL Bulletin requires, among other things, that an employer and employee share a "clear mutual understanding" that the employee will receive a "fixed amount as straight

time pay for whatever hours he is called upon to work in a workweek, whether few or many,"
"even though the workweek is one in which a full schedule of hours is not worked."  29 C.F.R. §
778.114.  Where these requirements are met, as Defendant argues, the regular rate of pay on
which half-time overtime wages must be calculated "will vary from week to week and is
determined by dividing the number of hours worked in the workweek into the amount of the
salary to obtain the applicable hourly rate for the week."  *Id.*  By contrast, if a jury agrees with
Plaintiff that Defendant paid ASMs an hourly rate rather than a fixed weekly rate, then time-and-
a-half overtime is owed based on "the hourly rate actually paid the employee for the normal,
non-overtime workweek for which he is employed[.]"  29 C.F.R. 778.108 (quoting *Walling v.
Youngerman–Reynolds Hardwood Co*., 325 U.S. 419 (1945)).  The following discovery would
elicit facts that would rebut Defendant's characterization of these disputed issues in its Motion
for Summary Judgment:

   17.   Payroll Records for the Putative FLSA Collective:  Defendant has refused to
produce payroll records and paystubs responsive to Document Request No. 2 for the putative
FLSA collective.  Defendant has even refused to produce responsive documents for ASMs who
have actually opted into the case.  Plaintiff needs this discovery to demonstrate that Defendant's
policy and practice was to pay ASMs, including Kiefer, an hourly rate of pay, not a fixed weekly
salary.  Wage and hour class actions challenging the FWW calculation method rise and fall on an
analysis of how the challenged payroll practices were applied to the class – here, the failure to
pay a fixed weekly salary during weeks in which an ASM works fewer than 40 hours.  Liability
will be established through class-wide, statistical analysis of Defendant's pay records and the
extent to which they show that Defendant's policy and practice, as applied to Kiefer and all other
ASMs, was to pay ASMs wages a regular hourly rate of pay for hours under 40.  Because

Defendant admittedly did not maintain written or electronic policies or procedures on this issue, payroll data is the only source of this information.

18.     Defendant may argue that its production of a small set of redacted payroll records in a Connecticut state court action is sufficiently "representative" of the putative FLSA collective.  *See* Ex. 12 (Def.'s Resp. to Pl.'s Doc. Reqs), at 4.  This argument misses the point for several reasons.  As an initial matter, the redacted data Defendant produced in the state court action do not contain any information after August 6, 2011.  This excludes almost a year and a half of the class period in this case. Defendant also redacted names from the state court data. Because Plaintiff cannot identify these individuals, he has been unable to interview them to learn information about the circumstances around why they worked fewer than 40 hours during these weeks.

19.     Although Kiefer's payroll spreadsheet, the redacted, time-limited Connecticut class payroll records, and the limited number of paystubs Opt-in Plaintiffs have located demonstrate that Defendant paid ASMs on an hourly basis when they worked fewer than 40 hours per week, payroll data for the putative FLSA collective would demonstrate that this pay practice was Defendant's policy that applied to all ASMs, including Kiefer.  Defendant denies that this policy existed, but refuses to produce the class-wide payroll information Plaintiff needs to prove it.

20.     Unredacted payroll records for the FLSA collective would also allow Plaintiff to draw connections between Defendant's policy and practice of paying ASMs at an hourly rate and its paid time off ("PTO") banking policies.  Defendant's Employee Handbook indicates that when ASMs begin their employment, they will not have any PTO time for vacation or sick leave "banked," because they must accrue it over time.  *See* Ex. 5 (Employee Handbook) at 11 (ASMs

receive 40 hours of vacation time only after six months of continuous active employment); at 14 (pursuant to the "Hourly Associate Sick Pay Schedule," ASMs receive 8 hours of sick time after the first 4 months of employment and accrue 8 hours after each subsequent 4-month period).  It appears that where an ASM worked fewer than 40 hours a week because of illness or some other reason in the early months of employment, Defendant simply paid him based on his hourly rate of pay, because there was no PTO banked.  This is based on his review of a limited number of Opt-in Plaintiff paystubs that indicate that Defendant paid ASMs on an hourly basis where they had no PTO time available.

21.    Abandonment of Half-Time Policy: Defendant also refuses to produce documents responsive to Document Request No. 12,[4] which seeks, *inter alia*, documents about Defendant's July 2012 decision to abandon its half-time for overtime policy.  However, documents discussing why ASMs should be paid time-and-a-half for overtime are at the heart of this case.  *See* Ex. 28 (*Glatt v. Fox Searchlight Pictures, Inc.*, No. 11 Civ. 6784, Transcript of Oral Argument, ECF No. 73 (S.D.N.Y. Nov. 21, 2012) (Peck, M.J.)) at 17:2-5 (ordering production of documents going to an employer's decision to start paying proper wages to employees, because they are "relevant [] if there's a smoking gun . . . that says now that we realize we've violated the law for the last ten years in not paying them [and] we're going to start paying them[.]")  These documents may contain evidence that Defendant decided to abandon its half-time policy two months after Plaintiff filed this lawsuit because it knew that its practices violated the FWW requirements.

---

[4]    Document Request No. 12: All documents and/or communications that refer or relate to any policies and/or procedures instituted or followed by Defendant to pay overtime wages to ASMs during the relevant period. Ex. 12.

22.     <u>Email Discovery</u>: Defendant has caused significant delays in process of crafting an email search methodology.  To the extent email correspondence responsive to these requests rebuts Defendant's factual statements about its pay methodology, Plaintiff is entitled to obtain and use it to oppose Defendant's summary judgment motion.  For example, a policy document Defendant produced indicates that when an ASM worked fewer than 40 hours, the Payroll Department was to contact the store to "find out what happen [sic]." *See* Ex. 10 (Save-A-Lot Processing Work Transition – Payroll).  This indicates that there are likely to be communications between Defendant or Payroll Department employees discussing pay for ASMs who worked fewer than 40 hours a week.  Considering Defendant's admitted lack of written policy materials, emails could well be a valuable source of written information about Defendant's implementation of its payroll policies.  Emails from senior management, employees whose job duties involve payroll, and emails discussing Defendant's reaction to instances where an employee worked less than forty hours a week, would help Plaintiff demonstrate that Defendant's characterization of the facts on its motion for summary judgment is inaccurate.

*Depositions of Defendant's Witnesses*

23.     Rule 30(b)(6) Deposition: Plaintiff's Rule 30(b)(6) notice seeks corporate testimony about eight topics related to Defendant's implementation of its pay policies for ASMs, in particular when ASMs worked fewer than 40 hours.  This information is not written down in any document Defendant has produced, so corporate witnesses may be the only source of this information.  Plaintiff will develop evidence on the following matters germane to disputed issues of material fact at the 30(b)(6) deposition:

a.      Defendant has not produced any documents that explain how its payroll system calculated wages for ASMs when they worked fewer than 40 hours per week.

10

Corporate witness testimony on this issue will allow Plaintiff to develop support for his

position that Defendant's payroll system was set to pay ASMs, including Kiefer, an

hourly regular rate of pay, not a fixed weekly salary.

        b.      As discussed *supra*, Plaintiff believes that under Defendant's PTO plan,

ASMs were paid on an hourly basis when they did not have sufficient PTO time banked

for sick time, vacation days, or other forms of leave.  Defendant has no written materials

that explain its policies in this scenario.  Plaintiff needs to depose a corporate witness

about the payroll records that are the subject of Plaintiff's motion to compel to develop

evidence to support Plaintiff's factual dispute on this issue.

24.      Plaintiff also needs evidence about Defendant's bonus plan, to determine whether

it is compatible with the FWW methodology.  Evidence that Plaintiff has collected from Opt-in

Plaintiffs demonstrates that Defendant paid ASMs yearly or bi-yearly bonuses based on objective

criteria, but did not incorporate the bonus payments into ASMs' regular rates of pay in

calculating overtime wages.  Several courts have held that an employer's failure to incorporate a

bonus payment into the regular rate of pay renders the payment scheme incompatible with the

fluctuating workweek, because the salary from which overtime payments are calculated is not

"fixed."  *See* Pl.'s Opp. to Def.'s Cross-Motion at 22-23, 26-27.  Plaintiff needs to depose

Defendant's witnesses about its bonus payment policies to obtain evidence about this policy and

practice.  Plaintiff also needs to depose corporate witnesses about Defendant's policy and

practice of paying of additional holiday pay to ASMs who worked on national holidays, which is

incompatible with the FWW methodology.  *Id.* at 32-33.

25.      Defendant may argue that Plaintiff had an opportunity to develop testimony about

Defendant's policies in a deposition his counsel took of one of Defendant's Human Resources

employees, Michael Draper.  However, during that deposition, Defendant's counsel would not

allow its corporate witness to answer questions about the Defendant's limited, redacted payroll

record production.  *See* Supplemental Declaration of E. Wagoner in Supp. of Mot. to Compel

Disc., ECF No. 130, Ex. F (Draper Tr. 164:2-169:18).

      26.    <u>Defendant's Undisclosed Witnesses</u>: Plaintiff should have an opportunity to

cross-examine Defendant's Undisclosed Witnesses to develop testimony that supports Plaintiff's

position about Defendant's pay policies.  For example, each of Defendant's Undisclosed

Witnesses claims he understood that "I would be paid a fixed weekly salary each week no matter

how many or few hours I worked during the week, whether more or less than 40."  Ex. Q

(Tisdale Decl.) ¶ 5; Ex. R (Garforth Decl.) ¶ 5; Ex. S (Nulty Decl.) ¶ 5; Ex. T (Hodge Decl.) ¶ 5.

However, Plaintiff has no way to know whether these witnesses were actually paid on an hourly

basis when they worked fewer than 40 hours, as Kiefer was.  Plaintiff believes that these

witnesses were subject to the same hourly-pay policy to which Kiefer was subject, which would

preclude a clear mutual understanding on this issue.  However, Plaintiff cannot demonstrate this

without these witnesses' payroll records and their testimony about them.   This would further

develop the parties' factual dispute about the amount of ASMs' regular rate of pay, Defendant's

policies and practices around ASM pay for hours under 40, and whether it was possible to have a

clear mutual understanding about ASM wages for hours worked under 40 in light of Defendant's

hourly pay policy.

      27.    Since filing its Motion for Summary Judgment, Defendant has pressed forward

with discovery, attempting to schedule Plaintiff's deposition, and threatening to move to compel

documents responsive to the discovery requests it served on Plaintiff and all 44 Opt-in Plaintiffs

who have already joined this action.  It even requested an extension of time to file its motion to

compel.  ECF No. 166.  Defendant's continued discovery efforts while the parties brief this

motion are the best evidence that this motion is premature.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: February 28, 2013
       New York, New York

                                 Respectfully submitted,

                                 /s/ Elizabeth Wagoner
                                 Elizabeth Wagoner
                                 **OUTTEN & GOLDEN LLP**
                                 3 Park Avenue, 29th Floor
                                 New York, New York 10016
                                 Telephone:  212-245-1000
                                 Facsimile: (212) 977-4005

## **CERTIFICATION OF SERVICE**

I hereby certify that on March 1, 2013, a copy of the above document was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system and by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.  A complete, duplicate copy of this document has been forwarded directly to Judge Young in Boston, MA.

 s/ Elizabeth Wagoner
Elizabeth Wagoner