# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| ROBERT G. KIEFER, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>MORAN FOODS, INC., d/b/a SAVE A LOT LTD.;<br><br>    Defendant. | ECF NO.:<br><br>3:12-CV-00756 (WGY)<br><br>February 28, 2013 |

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adeva v. Intertek USA, Inc.*,
   No. 09 Civ. 1096, 2010 WL 97991 (D.N.J. Jan. 11, 2010) ............................................. *passim*

*Aiken v. Cty. of Hampton*,
   No. 97 Civ. 2238,1998 ...........................................................................................13

*Anderson v. Cnty. of Kershaw*,
   1999 U.S. App. LEXIS 1773 (4th Cir. Feb. 8, 1999) ............................................27

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)........................................................................................10, 12

*Brantley v. Inspectorate Am. Corp.*,
   821 F. Supp. 2d 879 (S.D. Tex. 2011) ...............................................19, 21, 22, 26

*Brumley v. Camin Cargo Control, Inc.*,
   No. 08 Civ. 1798, 2010 WL 1644066 (D.N.J. 2010)............................................13

*Burgess v. Catawba Cnty.*,
   805 F. Supp. 341 (W.D.N.C. 1992) ....................................................................10

*Caridad v. Metro-N. Commuter R.R.*,
   191 F.3d 283 (2d Cir. 1999).................................................................................15

*Cash v. Conn Appliances, Inc.*,
   2 F. Supp. 2d 884 (E.D. Tex. 1997)......................................................................27

*Chen-Oster v. Goldman, Sachs & Co.*,
   285 F.R.D. 294 (S.D.N.Y. 2012) ........................................................................15

*Clark v. Williamson Cty.*,
   No. 10 Civ. 869, 2012 WL 1222950 (W.D. Tex. Apr. 11, 2012)..........................13

*Coach Leatherware Co. v. AnnTaylor, Inc.*,
   933 F.2d 162 (2d Cir. 1991)................................................................................10

*Commercial Cleaning Servs., LLC v. Colin Serv. Sys., Inc.*,
   271 F.3d 374 (2d Cir. 2001).................................................................................29

*Degelman Indus., Ltd. v. Pro–Tech Welding & Fabrication, Inc.*,
   No. 06 Civ. 6346, 2011 WL 6754059 (W.D.N.Y. June 8, 2011) ..........................35

*Design Strategies, Inc. v. Davis*,
   367 F. Supp. 2d 630 (S.D.N.Y. 2005)..................................................................35

*Dingwall v. Friedman Fisher Assocs., P.C.*,
   3 F. Supp. 2d 215 (N.D.N.Y. 1998) ...............................................................10, 11

*Dingwall v. Friedman Fisher Assoc., P.C.*,
   1998 WL 1031497 (N.D.N.Y. Apr. 24, 1998) ................................................26, 28

*Dooley v. Liberty Mutual Ins. Co.*,
   369 F. Supp. 2d 81 (D. Mass. 2005) .........................................................21, 25, 26

*Easterling v. Conn. Dep't. of Corr.*,
   278 F.R.D. 41 (D. Conn. 2011)..........................................................................15

*Evans v. Lowe's Home Centers, Inc.*,
   No. 03 Civ. 0438, 2006 WL 1371073 (M.D. Pa. May 18, 2006) ...........................25

*Fowler v. Incor*,
   279 Fed. Appx. 590 (10th Cir. 2008) ..................................................................11

*Glatt v. Fox Searchlight Pictures, Inc.*,
   No. 11 Civ. 6784 (S.D.N.Y Nov. 21, 2012) (Ex. 28) ....................................16, 34

*Griffin v. Wake Cnty.*,
   142 F.3d 712 (4th Cir. 1998) ............................................................................13

*Hoffmann v. Sbarro, Inc.*,
   982 F. Supp. 249 (S.D.N.Y. 1997)..............................................................15, 30, 32

*Holmes v. Lorch*,
   329 F. Supp. 2d 516 (S.D.N.Y. 2004)..................................................................30

*Hunter v. Sprint Corp.*,
   453 F. Sup. 2d 59, 59 (D.D.C. 2006) ..................................................................11

*Javansalehi v. BF & Assocs.*,
   No. 10 Civ. 850, 2012 U.S. Dist. LEXIS 61549 (D. Or. May 2, 2012)...................27

*Lazoda v. Maggy*,
   900 F. Supp. 596 (N.D.N.Y. 1995) ....................................................................10

*Lujan v. Cabana Mgmt., Inc.*,
   284 F.R.D. 50 (E.D.N.Y. 2012) ..................................................................32, 34, 35

*Mayhew v. Wells*,
   125 F.3d 216 (4th Cir. 1997) ..............................................................................27

*Nat'l Union Fire Ins. Co. v. Turtur*,
   892 F.2d 199 (2d Cir. 1989)...................................................................................11

*O'Brien v. Town of Agawam*,
   350 F.3d 279 (1st Cir. 2003) ................................................................ *passim*

*Olmsted v. Residential Plus Mortg. Corp.*,
   Nos. 08 Civ 42, 08 Civ. 415, 2008 WL 5157973 (N.D. Ill. 2008) ....................................16, 33

*Quinn v. Syracuse Model Neighborhood Corp.*,
   613 F.2d 438 (2d Cir. 1980)...................................................................................29

*Rattner v. Netburn*,
   930 F.2d 204 (2d Cir. 1991)...............................................................................10, 12

*Roy v. Cnty. of Lexington*,
   141 F.3d 533 (4th Cir. 1998) ...........................................................................26, 27

*Samson v. Apollo Res, Inc.*,
   242 F.3d 629 (5th Cir. 2001) ...........................................................................26, 27

*Seneca Beverage Corp. v. Healthnow N.Y., Inc.*,
   200 F. Appx. 25 (2d Cir. 2006)...........................................................................29, 34

*Shipes v. Amurcon Corp.*,
   No. 10 Civ. 14943, 2012 WL 995362 (E.D. Mich. Mar. 23, 2012)...................................16, 33

*Teblum v. Eckerd Corp. of Fla., Inc.*,
   No. 2:03 Civ. 495, 2006 WL 288932 (M.D. Fla. Feb. 7 1997) ...............................................13

*Trebor Sportswear Co. v. The Ltd. Stores, Inc.*,
   865 F.2d 506 (2d Cir. 1989)...................................................................................29

*Valerio v. Putnam Assocs., Inc.*,
   173 F.3d 35 (1st Cir. 1999)...................................................................................27

*Ziegenfus v. John Veriha Trucking*,
   No. 10 Civ. 5946, 2012 WL 1075841 (S.D.N.Y. Mar. 28, 2012) ...........................................35

**Statutes**

29 U.S.C. § 207(e) ...................................................................................................24

Fed. R. Civ. P. 56(d) ...........................................................................................28, 29

**Other Authorities**

29 C.F.R. § 541.118 ...............................................................................................19

29 C.F.R. § 541.602 ......................................................................................................19

29 C.F.R. § 778.110(b) .................................................................................................24

29 C.F.R. § 778.114 ................................................................................................ *passim*

29 C.F.R. § 778.211 ......................................................................................................24

29 C.F.R. § 778.306 ......................................................................................................14

Local Civil Rule 56(a) ....................................................................................................4

U.S. Dep't of Labor Opinion Letter, 1991 WL 11648489 (Aug. 20, 1991) ...........19, 23

U.S. Dep't of Labor Opinion Letter, 1999 WL 1002399 (May 10, 1999) ...............19, 23

U.S. Dep't of Labor Opinion Letter, 2006 WL 1488849 (May 12, 2006) ...........14, 19, 20, 22

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................... 1

PROCEDURAL HISTORY ....................................................................................... 2

STATUS OF DISCOVERY ....................................................................................... 3

THE PARTIES ........................................................................................................... 4

STATEMENT OF FACTS ........................................................................................ 4

ARGUMENT ............................................................................................................. 9

I.    The Court Should Deny Defendant's Summary Judgment Motion Because a
      Reasonable Jury Could Find That Defendant Failed to Prove All of the Elements
      of Its Fluctuating Workweek Affirmative Defense ........................................... 9

      A.    As the Moving Party *and* the Party That Bears the Burden at Trial,
            Defendant Faces a Particularly High Hurdle On This Motion ............... 10

      B.    The FWW is a Narrow Exception With Strict Requirements ................. 11

      C.    Defendant Paid Plaintiff and Other ASMs on an Hourly Basis, Not a
            "Fixed Amount" Regardless of Hours Worked ..................................... 12

            1.    The Court Should Deny Defendant's Motion for Summary
                  Judgment Because Pay Records Demonstrate An Hourly
                  Pay Policy That is Inconsistent with the FWW ......................... 14

                  a.    Plaintiff and Other ASMs Were Paid for Less
                        Than 40 Hours When They Worked Less Than 40 Hours ............ 17

                  b.    A Sample of Connecticut Payroll Records, That
                        Defendant Claims Are "Representative," Show Pay for Less
                        Than 40 Hours ............................................................ 18

                  c.    Plaintiff Was Not Paid a Fixed Salary When He Worked
                        Fewer than 40 hours .................................................... 18

                  d.    Further Discovery Will Conclusively Demonstrate
                        Defendant's Hourly Pay Scheme .................................... 20

                  e.    Defendant's Bonus Plan is Inconsistent with the FWW
                        and Precludes Summary Judgment ................................ 21

f.    Defendant's Holiday Pay Plan is Inconsistent with the FWW and Precludes Summary Judgment ................................................. 22

2.    Defendant's PTO Policy Violates the FWW Because Defendant Cannot Prove That Its Policy Was to Pay a "Fixed Amount" Even Before ASMs Accrued PTO or After They Ran Out ............................................. 22

a.    Defendant's Computerized Payroll System Was Programmed to Violate the FWW ...................................................................... 23

b.    Defendant's Own Documents Suggest an Hourly Pay Policy ...... 24

D.    Defendant Did Not Pay ASMs For Overtime Hours at One-Half Times Their "Regular Rates" Because Defendant Calculated ASMs' Regular Rates Without Including All Compensation in the Calculation ................................................... 24

E.    Defendant Cannot Prove That There Was a Clear Mutual Understanding Between Defendant and ASMs ........................................................................ 25

1.    Defendant's Uniform Communications About Hourly Pay Preclude Summary Judgment ................................................... 25

2.    Plaintiff's Testimony Precludes Summary Judgment .............................. 27

II.    If The Court Does Not Deny Defendant's Summary Judgment Motion On Its Merits, It Should Deny It Without Prejudice As Premature, And Allow Plaintiff To Complete Discovery ............................................................................................ 28

A.    Fed. R. Civ. P. 56(d) Precludes Summary Judgment Where The Non-Moving Party Has Not Had An Opportunity to Obtain Sufficient Discovery ............................... 29

B.    Plaintiff Comfortably Exceeds His Low Threshold Under Rule 56(d) ........................... 30

1.    Fed. R. Civ. P. 30(b)(6) Deposition ......................................................... 31

2.    Time and Payroll Records ........................................................................ 31

3.    Emails ...................................................................................................... 32

4.    Depositions of and Discovery from Defendant's Previously Undisclosed Witnesses ........................................................................... 33

5.    Discovery Regarding Defendant's Abandonment of its FWW Compensation Method ............................................................................. 34

III.    The Court Should Strike the Declarations of Defendant's Five Previously
        Undisclosed Witnesses.................................................................................................... 35

CONCLUSION....................................................................................................................... 36

## INTRODUCTION

Defendant filed this summary judgment motion right in the middle of discovery, without warning, in response to Plaintiff's motion for collective action notice (and instead of opposing Plaintiff's collective action notice motion on its merits). The Court should deny this motion because, even at this early stage of discovery, a reasonable jury could easily find that Defendant cannot prove every element of its affirmative defense. To the contrary, Plaintiff has conclusively demonstrated that Defendant cannot prove certain elements of Defendant's affirmative defense. Specifically, Defendant cannot prove that its pay policy complied with the law because Defendant did not pay Plaintiff and other workers a fixed weekly wage when they worked fewer than 40 hours. For this reason and several others, as explained below, the Court should deny Defendant's motion on its merits.

Alternatively, if the Court does not find that Plaintiff has demonstrated material issues of fact that a jury should decide, Plaintiff respectfully submits that it should not grant summary judgment for Defendant on this record because further discovery, which Plaintiff has been precluded from taking thus far, would allow Plaintiff to successfully oppose Defendant's motion. As detailed in the Declaration of Elizabeth Wagoner in Opposition to Defendant's Cross Motion for Summary Judgment ("Wagoner Decl."), this is not a situation where a plaintiff, by oversight or omission, seeks new discovery on the eve of the close of discovery. Rather, Defendant has not produced large categories of the discovery Plaintiff has requested, forcing Plaintiff to move to compel production on December 7, 2012. ECF Nos. 103-105. The Court has not yet had an opportunity to rule on Plaintiff's Motion to Compel Discovery filed on December 7, 2012 ("Motion to Compel"). Moreover, in pursuing its premature summary judgment motion, Defendant violated the requirements of Fed. R. Civ. P. Rule 26(a), by failing

to disclose current employee witnesses it now relies upon by way of self-serving declarations. Plaintiff never had the opportunity to depose or seek discovery from these witnesses, and Defendant continues to refuse to produce discovery pertaining to them.

## PROCEDURAL HISTORY

Plaintiff Robert Kiefer ("Plaintiff" of "Kiefer") filed his original Complaint on May 18, 2012, ECF No. 1, and a First Amended Complaint ("FAC") on July 31, 2012, ECF Nos. 51, 53. The FAC asserts unpaid overtime claims on behalf of a nationwide collective of similarly situated Assistant Store Managers ("ASMs" or "the putative FLSA Collective"). Specifically, Plaintiff alleges that Moran Foods Inc. d/b/a Save A Lot Ltd. ("SAL" or "Defendant") violated the FLSA by paying him less than the required time-and-a-half for overtime. FAC ¶¶ 40-43. Defendant claims that it was authorized to do so under the Fluctuating Work Week ("FWW") method of computing overtime pay. *See* 29 C.F.R. § 778.114. Plaintiff alleges that Defendant violated the most important requirement of the FWW – that ASMs receive a fixed weekly salary for all hours worked each week, even when those hours fell below 40 hours in a week. FAC ¶¶ 42-43. Instead, Defendant paid ASMs on an hourly basis and was therefore not entitled to pay the lower FWW overtime rate. *Id.* ¶ 44.

In addition to his FLSA claims, Plaintiff brings similar state law claims on behalf of ASMs from Connecticut under the Connecticut Minimum Wage Act ("CMWA") as a Fed. R. Civ. P. 23 ("Rule 23") class action ("the Rule 23 Class," and together with the putative FLSA Collective, "the Classes"). He alleges that Defendant violated the CMWA because the FWW method is not authorized under Connecticut law, and that even if it is, Defendant did not meet its requirements. FAC ¶¶ 30, 79.

On August 14, 2012, Defendant filed a Motion to Dismiss or Stay Plaintiff's Amended Complaint, ECF No. 62, and a Motion to Stay Discovery, ECF No. 63.  On February 19, 2013, the Court denied Defendant's motion to dismiss.  ECF No. 162.  The Court granted Defendant's motion to stay only as to the claims raised under the Connecticut Minimum Wage Act, pending the outcome of this summary judgment briefing.  *Id.*

On December 17, 2012, Plaintiff filed a Motion for Conditional Certification and Court-Authorized Notice Pursuant to Section 216(b) of the FLSA ("Notice Motion").  ECF Nos. 113-115.  After requesting and receiving a three-week extension to respond to Plaintiff's Notice Motion, Defendant chose not to oppose it on its merits, but to use the extra time to prepare the instant motion.  *See* ECF Nos. 138-141.  Plaintiff filed a reply in support of his Notice Motion on February 11, 2013.  ECF Nos. 154-55.  Plaintiff's Notice Motion is now fully briefed.

## STATUS OF DISCOVERY

Discovery is in its early stages because Defendant has refused to produce several categories of documents central to the policies and practices Plaintiff challenges.  These documents include class-wide payroll information regarding the putative nationwide FLSA Collective and the Connecticut Rule 23 Class, emails from SAL's corporate custodians, and documents about why SAL discontinued the overtime pay policy in approximately July 2012 that Plaintiff challenges.  Plaintiff noticed a Fed. R. Civ. P. 30(b)(6) deposition on Defendant's pay policies, among other topics, Wagoner Decl. ¶¶ 11-12, but has not taken it yet because he is waiting for Defendant to complete its document production, and for the outcome of the Motion to Compel Discovery he filed on December 7, 2012.  *Id.*, *see also* ECF Nos. 103-105.

## THE PARTIES

Defendant is a corporation organized and existing under the laws of Missouri. FAC ¶ 25. It is a wholly-owned subsidiary of Supervalu, Inc. Plaintiff's Additional Statement Of Disputed Issues Of Material Fact and Uncontested Facts ("ASF") ¶ 1. SAL is "one of the leading retailers in the U.S. hard-discount grocery retailing sector," and operates 397 grocery stores in the United States. *Id*.

Plaintiff worked for Defendant as an Assistant Store Manager ("ASM") from April 4, 2011 through January 19, 2012 in Connecticut. Plaintiff's Local Civil Rule 56(a)2 Statement ("56(a)2 Statement") ¶ 2. In addition to Plaintiff, 44 other ASMs from 11 states (Connecticut, Florida, Georgia, Illinois, Indiana, North Carolina, North Jersey, Ohio, Pennsylvania, Tennessee, and Virginia) have joined this action as Opt-In Plaintiffs pursuant to 29 U.S.C. § 216(b) ("Opt-In Plaintiffs").[1]

## STATEMENT OF FACTS

Defendant classified Kiefer and all Opt-In Plaintiffs as non-exempt employees who were entitled to overtime pay under the FLSA and the CMWA. Despite their non-exempt, overtime eligible status, from the beginning of the relevant period, May 18, 2009, until July 2012, Defendant did not pay any ASMs time-and-one-half of their regular hourly rates for hours they worked in excess of 40 in a workweek, as the FLSA usually requires. Instead, Defendant attempted to take advantage of a limited exception to the time-and-a-half requirement called the Fluctuating Workweek method of overtime compensation ("FWW"). 29 C.F.R. § 778.114. Under the FWW, an employer may pay non-exempt workers half-time for overtime if the employer meets several strict requirements, including the requirement that employees receive

---

[1]      *See* ECF Nos. 9-21, 30-31, 33, 36-37, 41, 43-45, 56-59, 69, 71, 79-80, 82-84, 89, 93-96, 98, 101, and 158.

"fixed amount as straight time pay for whatever hours [they are] called upon to work in a workweek whether few or many."  29 C.F.R. § 778.114.[2]

In July 2012, after Plaintiff filed this lawsuit, Defendant abandoned its FWW overtime compensation system and began paying ASMs time-and-a-half for overtime.  ASF ¶¶ 95-97. This policy change relieved Defendant of the obligation to pay ASMs on a salary basis, and allowed Defendant to pay ASMs by the hour.

Even before Defendant abandoned its FWW compensation system, however, its policy was to pay ASMs, including Plaintiff, on an hourly basis.  ASF ¶ 7.  At the beginning of an ASM's employment, Defendant determined the ASM's regular hourly rate of pay, entered this hourly rate into its centrally-maintained computerized payroll system, and calculated each ASM's weekly straight-time wages based on that established hourly rate.  *Id*. ¶¶ 4-6; 14-19; 21. Plaintiff's hourly rate was $21.634615.  *Id*. ¶ 22.  When he worked 40 hours in a workweek, his wage for the week was $865.38.  56(a)2 Statement ¶ 12, 14, 15; ASF ¶ 23.

Under Defendant's hourly pay policy, it simply paid ASMs for the hours they worked. ASF ¶ 21.  This policy applied even when ASMs worked fewer than 40 hours in a workweek. *Id*.  For example, consistent with Defendant's hourly pay policy, when Plaintiff worked 38 hours during the week ending April 9, 2011, Defendant paid him his $21.63 hourly rate times the 38 hours he actually worked, for a total of $822.12.  *Id*. ¶¶ 25-26. (This was less than his purported salary of $865.38).  Contrary to Defendant's characterization, Def.'s Br. at 19-20, Plaintiff

---

[2]     When an ASM worked more than 40 hours in a week, Defendant calculated ASMs' straight-time pay by multiplying the regular hourly rate listed in each ASM's payroll records by 40 hours.  Then, Defendant used the following formula to calculate ASMs' overtime premiums: ((Overtime hours worked)/(total hours worked x 2)) x (regular hourly rate x 40).  ASF ¶ 20.

worked a full workweek of five days his first week of work, which was his usually scheduled amount of days each week as an ASM.  56(a)2 Statement ¶ 12.

Defendant also paid other ASMs who worked fewer than 40 hours at their hourly rates for the hours they worked, consistent with Defendant's hourly pay policy.  For example, Opt-In Plaintiff Eric Everhart's ("Everhart's") regular hourly rate was $24.038500.  ASF ¶ 27.  During weeks when he worked 40 hours, Defendant paid Everhart $961.54 in straight-time wages.  *Id*. ¶ 28.  During the week ending February 28, 2010, however, Mr. Everhart worked 20.5 hours.  *Id*. ¶ 30.  Defendant paid him his regular hourly rate of $24.038500 times the 20.5 hours he actually worked, for a total of $492.79.  *Id*.

Similarly, consistent with Defendant's hourly pay policy, during the week ending August 4, 2012, Defendant paid Opt-In Plaintiff David Pagano ("Pagano") his then-hourly rate of $22.62 times the 34.2 hours he actually worked, for a total of $773.61.  *Id*. ¶¶ 36-39.  During the week of June 14, 2009, when Pagano worked 31.25 hours, Defendant paid him his then-hourly rate of $21.31690, for a total of $666.15.  *Id*. ¶¶ 33-35.  During the week ending September 4, 2010, Defendant paid Opt-In Plaintiff Cathy Dozier ("Dozier") her regular hourly rate of $16.99525 times the 9.75 hours she actually worked, for a total of $165.70.  *Id*. ¶¶ 40-43.  During the weeks ending August 18, 2012, September 1, 2012, and October 20, 2012, Defendant paid Opt-In Plaintiff Sandra Escude ("Escude") her regular hourly rate of $20.02, resulting in pay these weeks of $790.39, $784.18, and $789.39 respectively.  *Id*. ¶¶ 45-51.

An ASM whom Defendant identified in its redacted payroll records as "Employee 62" was paid a regular hourly rate of $24.408750.  *Id*. ¶ 52.[3]  During weeks when Employee 62

---

[3]     Some of the evidence of Defendant's hourly pay policy is in a small set of redacted payroll records Defendant produced in another case.  Some of the ASMs to whom Plaintiff refers are "unnamed," as Defendant points out in its brief, Def.'s Br. at 19, because Defendant refused to

worked 40 hours, Defendant paid Employee 62 $976.35 in straight-time wages.  *Id*. ¶ 53.  For the week ending October 30, 2010, Employee 62 worked 32 hours and was paid his regular hourly rate of $24.408750 per hour, for a total of $781.08.  *Id*. ¶ 54.  For the week ending February 27, 2010, Employee 62 worked 18.25 hours and was paid his regular hourly rate of $24.408750, for a total of $445.46 and, separately, 16 hours of sick pay at his regular hourly rate of $24.408750, for a total of $390.54.  *Id*. ¶ 91. This is consistent with Defendant's hourly pay policy.

In some cases, ASMs who worked fewer than 40 hours in a workweek were paid by the hour for their actual hours worked and, in addition, they received additional payments ("Additional Payments") in eight-hour increments.  *Id*. ¶¶ 8-13; 57-91.  Notwithstanding Defendant's claim that it paid ASMs on a salary basis, ASMs were not paid a 40-hour weekly wage unless they actually worked 40 hours.  *Id*.

Consistent with Defendant's hourly pay policy, the more hours an ASM worked, the more Defendant paid the ASM, even in weeks in which Defendant paid the ASM Additional Payments.  For example, Plaintiff's hourly rate during the week of Thanksgiving 2011 was $21.634615.  He worked 35.27 hours and was paid $763.05.  *Id*. ¶ 60.  On a separate line, he received eight hours of holiday pay, calculated at his regular hourly rate of $21.634615, for a total of $173.08.  *Id*.  In total, he received $936.13 for the week.  *Id*.

During the week of Christmas 2011, Kiefer worked fewer hours, 34.78 hours, and was paid at his regular hourly rate $21.634615 per hour, for a total of $752.45.  *Id*. ¶ 61.  Again, on a separate line, Kiefer received eight hours of holiday pay, calculated at his regular hourly rate of

---

provide Plaintiff with their names, forcing Plaintiff to move to compel the information.  *See* Pl.'s Reply Mem. of Law in Supp. of Mot. to Compel, ECF No. 130, at 3.  Because Plaintiff cannot identify these individuals, he has been unable to interview them to learn information about the circumstances around why they worked fewer than 40 hours during these weeks.  Wagoner Decl. ¶ 18.

$21.634615, for a total of $173.08.  *Id.* [4]  In total, he received $925.53 for the week, slightly less

than he received during Thanksgiving week when worked slightly more hours.  *Id.*  This is

consistent with Defendant's hourly pay policy.

Moreover, although Defendant allowed ASMs to accrue sick time and vacation time

("PTO"), not all ASMs had PTO.  ASMs accrued 40 hours of vacation time only after six months

of continuous active employment, 8 hours of sick time for each four months of work, beginning

after the first 4 months of employment, and one "flexible holiday" after the first full year of

employment.  *Id.* ¶ 9.   If an ASM worked fewer than 40 hours and did not have PTO time

accrued, Defendant simply paid him on an hourly basis.  *Id.* ¶¶ 7-8, 21-56.

Defendant also explicitly informed ASMs that they would be paid by the hour, not a fixed

salary.  *Id.* ¶¶ 106-113.  None of the documents Defendant provided to ASMs about its pay

policies tell ASMs that they will be paid a full 40-hour weekly wage if they work fewer than 40

hours a week.  *Id.* ¶¶ 106-110.  Instead, Defendant's Employee Handbook told ASMs that they

would be paid "an established hourly rate based on documented work."  *Id.* ¶ 109.  Plaintiff,

Pagano, and Everhart do not recall any employee of Defendant ever telling them that they would

be paid the same fixed wage if they did not work at least 40 hours.  *Id.* ¶¶ 111-113.  Kiefer and

---

[4]      Other ASMs' payroll records further demonstrate how ASMs were paid when they had
PTO time accrued.  When Opt-In Plaintiff Everhart received holiday pay during the week of
Christmas 2009, he was paid $24.038500 per hour.  He worked 19.5 hours and was paid $468.75
for that time.  *Id.* ¶ 62.  He also received 8 hours of holiday pay at the regular hourly rate, and
was paid $192.31.  *Id.* When he took a sick day during the week ending January 22, 2011, he was
paid $24.038500 per hour. *Id.* ¶ 63.  He worked 37.75 hours and was paid $907.45 for that time.
*Id.*  On a separate line on his paystub, he also received 8 hours of sick pay at his hourly rate, and
was paid $192.31.  When Opt-In Plaintiff Pagano received holiday pay during the week of
Christmas 2008, he was paid his then-hourly rate of $20.899 per hour.  *Id.* ¶¶ 64-66.  He worked
38.7 hours and was paid $797.71 for that time.  *Id.* He also received 8 hours of holiday pay at the
hourly rate, and was paid $167.12.  *Id.*  In the limited number of documents to which Plaintiff
has access, he has identified 24 other examples of Defendant's application of its PTO policies
when ASMs work under 40 hours.  *See id.* ¶¶ 67-91.

other ASMs were told they were expected to work forty-five hours a week, *id.* ¶ 99-105, and on the several occasions when Kiefer inquired of his superiors as to the legality or appropriateness of his overtime pay, he was told simply told "this is the way that we do it," and "it's hard to explain."  56(a)2 Statement ¶ 19.

Defendant's payroll system also had no prompts or alerts to indicate to a user that an ASM had worked less than 40 hours, or to otherwise instruct the manager processing payroll to pay an ASM a full weekly wage.  ASF ¶ 98.

Finally, Defendant had an established bonus program during the relevant period.  *Id.* ¶¶ 114-118.  At least 11 Opt-in Plaintiffs received bonuses.  *Id.* ¶ 116.  Defendant's bonus program entitled ASMs to bonuses calculated according to an objective formula "based on actual results and [] measured against pre-established performance objectives."  *Id.* ¶ 115.  This bonus program was part of the company's "commitment to providing [employees] with competitive compensation while improving the company's overall performance."  *Id.*  Defendant did not include the amount of its bonus payments to ASMs in its calculation of the regular rate of pay for purposes of calculating overtime. *Id.* ¶ 117.

## ARGUMENT

I.     **The Court Should Deny Defendant's Summary Judgment Motion Because a Reasonable Jury Could Find That Defendant Failed to Prove All of the Elements of Its Fluctuating Workweek Affirmative Defense.**

Even at this early stage of discovery, there is evidence that supports a finding that Defendant has not proved every element of its FWW affirmative defense.  A reasonable jury could find that Defendant's policy, which applied to Plaintiff, was not to pay ASMs a "fixed amount as straight time pay for whatever hours [they were] called upon to work in a workweek, whether few or many," as required under the FWW.  29 C.F.R. § 778.114.  Based on paystubs

Defendant issued, Defendant's own payroll records, and Defendant's own employee handbook, a reasonable jury could find that Defendant's policy and practice, which applied to Kiefer, was to pay ASMs straight-time wages at their regular hourly rates of pay when they worked fewer than 40 hours a week – not a "fixed amount."

> ### A.   As the Moving Party *and* the Party That Bears the Burden at Trial, Defendant Faces a Particularly High Hurdle On This Motion.

Defendant faces difficult roadblocks in moving for summary judgment on its FWW affirmative defense.  Because Defendant is the moving party, it can prevail only if "no reasonable jury could return a verdict" for Plaintiff.  *Coach Leatherware Co. v. AnnTaylor, Inc.*, 933 F.2d 162, 167 (2d Cir. 1991).  In making this determination, the Court must accept Plaintiff's version of the facts, make all reasonable inferences in Plaintiff's favor, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986), and resolve all ambiguities in Plaintiff's favor. *Rattner v. Netburn*, 930 F.2d 204, 209 (2d Cir. 1991).

The summary judgment standard holds added significance here because Defendant bears the ultimate burden of proof at trial on its FWW affirmative defense.  *Dingwall v. Friedman Fisher Assocs., P.C.*, 3 F. Supp. 2d 215, 221 (N.D.N.Y. 1998).  Because the FWW is "an exception to the normal rights of the employee," Defendant must prove "that all the requirements for applying the method are present."  *Id.*; *see also Burgess v. Catawba Cnty.*, 805 F. Supp. 341, 348 (W.D.N.C. 1992) (defendant bears burden of establishing that it complied with FWW regulations).  Summary judgment is particularly difficult where the moving party shoulders the burden of proof because "it must establish that there is no genuine issue of material fact to be decided regarding *any essential element* of that party's claim."  *Lazoda v. Maggy*, 900 F. Supp. 596, 601 (N.D.N.Y. 1995) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)) (emphasis added).  To avoid summary judgment, Plaintiff simply needs to "generate[]

uncertainty," *Nat'l Union Fire Ins. Co. v. Turtur*, 892 F.2d 199, 203 (2d Cir. 1989), as to any fact material to any element of Defendant's FWW defense.

Here, Plaintiff does more than "generate uncertainty" about the necessary elements of Defendant's FWW defense. Even based on the limited discovery Plaintiff has been able to obtain so far, there is sufficient evidence on which a jury could reject Defendant's FWW defense. In fact, there is sufficient evidence for the Court to grant summary judgment in Plaintiff's favor. At the very least, Plaintiff demonstrates that a reasonable jury could decide that Defendant has not established at least one element of its defense.

**B.      The FWW is a Narrow Exception With Strict Requirements.**

The fluctuating workweek method "is an exception to the normal rights of the employee and thus the employer bears the burden of proving that all the requirements for applying the method are present." *O'Brien v. Town of Agawam*, 350 F.3d 279, 294 (1st Cir. 2003) (FLSA exceptions are to be interpreted narrowly against the employer); *Dingwall*, 3 F. Supp. 2d at 221 (FWW "method is an exception to the normal rights of the employee and thus the employer bears the burden of proving that all the requirements for applying the method are present."); *Fowler v. Incor*, 279 Fed. Appx. 590, 597 (10th Cir. 2008) (exceptions or exemptions to the FLSA are to be construed narrowly against the employer). The FLSA "strictly limits" the application of the FWW and requires employers to prove each required element, in order to prevent an employer from "manipulating an employee's 'regular rate'" for its own advantage. *Hunter v. Sprint Corp.*, 453 F. Sup. 2d 59, 59 (D.D.C. 2006).[5]

---

[5]      Contrary to the purpose of the FLSA, the fluctuating workweek method creates a financial incentive for employers to require overtime work rather than hire new employees. Perversely, the more overtime hours employees work, the less expensive labor becomes.

To lawfully pay non-exempt workers half-time for overtime under the FWW, an employer must meet the strict requirements set forth in 29 C.F.R. § 778.114(a).  "[A]n employer may not simply elect to pay the lower overtime rate."  *O'Brien*, 350 F.3d at 288.

The elements of the FWW affirmative defense are as follows:

(1)     Workers' hours must "fluctuate from week to week;"

(2)     Workers employed "on a salary basis" must receive "a fixed amount as straight time pay for whatever hours [they are] called upon to work in a workweek, whether few or many;"

(3)     The worker and the employer must form a "clear mutual understanding" that the fixed salary is compensation "for the hours worked each workweek, whatever their number;" and

(4)     The worker must receive extra compensation for overtime hours "for all overtime hours worked at a rate not less than one-half his regular rate of pay."

*See* 29 C.F.R. § 778.114(a).

### C.     Defendant Paid Plaintiff and Other ASMs on an Hourly Basis, Not a "Fixed Amount" Regardless of Hours Worked.

The Court should deny Defendant's summary judgment motion because, viewing all facts in the light most favorable to Plaintiff and drawing all inferences and ambiguities in Plaintiff's favor, *Anderson,* 477 U.S. at 255 (1986), *Rattner,* 930 F.2d at 209, a jury could reasonably determine that Defendant's policy was *not to* pay ASMs, including Plaintiff, "a fixed amount" when they worked fewer than 40 hours in a workweek.  The evidence shows that Defendant's policy was to pay ASMs on an *hourly basis*, not on a fixed "salary basis," as required for the FWW.

The limited payroll records Defendant has produced suggest that Defendant's policy was to pay ASMs for the actual hours they worked when they worked fewer than 40 hours in a workweek.  ASF ¶¶ 7-8, 21-56.  This policy violates the FWW because it does not provide a "fixed amount . . . for whatever hours [they are] called upon to work in a workweek, whether few

or many." 29 C.F.R. § 778.114(a). The "fixed amount" requirement means that "the fixed salary must be paid *regardless of hours worked*." *Brumley v. Camin Cargo Control, Inc.*, No. 08 Civ. 1798, 2010 WL 1644066, at *4 (D.N.J. 2010) (emphasis added); *O'Brien*, 350 F.3d at 287-90 (emphasis added) ("[I]t is not enough that the [employees] receive a fixed *minimum* sum each week; . . . the [employer] must pay each [employee] a *'fixed amount as straight time pay* for whatever hours he is called upon to work in a workweek, *whether few or many*).

Defendant does not dispute that an employer violates the FWW by paying workers for their actual hours worked when they work fewer than 40 hours. In fact, even the cases Defendant cites acknowledge that an employer may not pay employees less than a full weekly salary when they work fewer than 40 hours in a week. *See, e.g.*, *Aiken v. Cty. of Hampton*, No. 97 Civ. 2238,1998 WL 957458, at *3-4 (4th Cir. Sept. 22, 1998) (no FWW violation because the employer always paid employees the full weekly salary, even if an employee had no paid leave time accrued); *Clark v. Williamson Cty.*, No. 10 Civ. 869, 2012 WL 1222950, at *5 (W.D. Tex. Apr. 11, 2012) (no violation of the FWW because employees "received [a fixed] salary even if they worked less than 40 hours"); *Griffin v. Wake Cnty.*, 142 F.3d 712, 716-17 (4th Cir. 1998) (emphasis added) (no FWW violation because plaintiffs had "not identified *a single instance* of the [employer] paying an [employee] less than his full weekly salary for a week in which he performed any regular work"); *Teblum v. Eckerd Corp. of Fla., Inc*., No. 2:03 Civ. 495, 2006 WL 288932, at *5 (M.D. Fla. Feb. 7, 1997) ("It is apparent that Defendant provided Plaintiff . . .with a constant weekly salary, which is one of the primary purposes of the FWW.").

Defendant asks the Court to find that Defendant complied with the FWW method despite Plaintiff's evidence to the contrary. The Court should decline to usurp the jury's role and deny Defendant's motion for summary judgment.

1.    **The Court Should Deny Defendant's Motion for Summary Judgment Because Pay Records Demonstrate An Hourly Pay Policy That is Inconsistent with the FWW.**

The payroll records that Plaintiff has been able to obtain so far suggest that Defendant's policy was to pay ASMs on an hourly basis.  Defendant's hourly pay policy is evident from Plaintiff's and the Opt-in Plaintiffs' paystubs, payroll data pertaining to Plaintiff Kiefer, Defendant's Employee Handbook, the Coefficient Calculator that Defendant gave to all ASMs, and the deposition of Defendant's corporate designee and an associated limited set of payroll data that Defendant produced in another litigation.  ASF ¶¶ 7-8, 21-91, 98, 106-113.  A jury could reasonably determine that even this small sample of documents demonstrates that Defendant's nationwide policy was to pay ASMs, including Plaintiff, on an hourly basis, not a "fixed amount."

Defendant is wrong that the Court should only look at Plaintiff's own pay records, and ignore other evidence of Defendant's hourly pay policy, when evaluating Plaintiff's claim.  This lawsuit challenges Defendant's nationwide compensation policy, to which Defendant subjected Plaintiff.  Payroll records of ASMs other than Plaintiff are relevant to proving Defendant's hourly pay policy.  The FWW analysis turns on the compensation policies to which an employee was subjected, not just on a particular employee's pay records.  If an employer makes deductions from employees' purported weekly salaries, "the practice of making such deductions would raise questions as to the validity of the compensation plan."  U.S. Dep't of Labor Opinion Letter, 2006 WL 1488849 (May 12, 2006) (citing 29 C.F.R. § 778.306(b)).[6]

---

[6]      Pursuant to 29 C.F.R. § 778.306:

(a) The reductions in pay described in § 778.304(a)(4) are not, properly speaking, "deductions" at all. If an employee is compensated at a fixed salary for a fixed workweek and if this salary is reduced by the amount of the average hourly earnings for each hour lost by the employee in a

In many contexts, it is difficult to determine an employer's policy by looking at a single worker's (or even a few workers') pay data.  For example, in *Hoffmann v. Sbarro, Inc.*, in the FLSA exemption context, the court properly refused to limit its inquiry to the named plaintiff's circumstances.  The court held that the plaintiff's admission that his "own paychecks were never docked" not dispositive because, without "evidence of how many employees were subject to reductions in their compensation . . . or over what period of time such deductions occurred . . . it would be impossible for the Court to determine whether . . . defendant had an actual practice of . . . improper deductions."  *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 254 (S.D.N.Y. 1997) (Sotomayor, J.)[7]  The relevant question was what was the employer's *policy*.

---

short workweek, the employee is, for all practical purposes, employed at an hourly rate of pay. This hourly rate is the quotient of the fixed salary divided by the fixed number of hours it is intended to compensate. If an employee is hired at a fixed salary of $200 for a 40–hour week, his hourly rate is $5. When he works only 36 hours he is therefore entitled to $180. The employer makes a "deduction" of $20 from his salary to achieve this result. The regular hourly rate is not altered.

(b) When an employee is paid a fixed salary for a workweek of variable hours (or a guarantee of pay under the provisions of section 7(f) of the Act, as discussed in §§ 778.402 through 778.414), the understanding is that the salary or guarantee is due the employee in short workweeks as well as in longer ones and "deductions" of this type are not made. Therefore, in cases where the understanding of the parties is not clearly shown as to whether a fixed salary is intended to cover a fixed or a variable workweek the practice of making "deductions" from the salary for hours not worked in short weeks will be considered strong, if not conclusive, evidence that the salary covers a fixed workweek.

[7]      Classwide statistical evidence is a common method of proving employers' policies in many other contexts.  *See, e.g., Caridad v. Metro-N. Commuter R.R.*, 191 F.3d 283, 292 (2d Cir. 1999) (ordering production of information for nationwide class where liability was established via classwide statistical proof) (*abrogated in part on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011)); *Easterling v. Conn. Dep't. of Corr.*, 278 F.R.D. 41, 46 (D. Conn. 2011) (ordering defendant to produce classwide data where liability could be "established via class-wide, statistical proof") (citing *United States v. City of New York*, 276 F.R.D. 22, 35 (E.D.N.Y. 2011)); *Chen-Oster v. Goldman, Sachs & Co.*, 285 F.R.D. 294, 304 (S.D.N.Y. 2012) (granting plaintiffs request for class-wide data and noting Plaintiffs argument that "data is relevant *in the aggregate* to perform the applicable analyses to show . . .  challenged policies").

Here, in the FWW context, Defendant cannot possibly meet its burden of proving that it paid Plaintiff and other ASMs pursuant to a policy that complies with the FWW without showing Plaintiff and the Court the pay records that demonstrate that policy.  Defendant's unwillingness to turn over its nationwide ASM pay records, and its failure to present them to the Court, should raise an inference that Defendant has something to hide, and doom this motion.

Plaintiff has attempted to obtain more information about Defendant's payroll policies. For example, he moved to compel production of Defendant's complete payroll records. Wagoner Decl. ¶¶ 10, 17.  The parties are also in the process of negotiating an email production protocol, the results of which will likely provide more information about Defendant's payroll policies and their implementation.  Wagoner Decl. ¶¶ 8-10.[8]  Plaintiff also moved to compel documents related to Defendant's abandonment of its FWW compensation method in July 2012. *Id*.  These documents will likely shed light on the reasons that Defendant stopped paying half-time for overtime, including that Defendant knew that it was implementing the policy illegally.[9]

---

[8]     When an ASM worked fewer than 40 hours, Defendant claims that its payroll department was supposed to contact the store to "find out what happen [sic]."  Wagoner Decl. ¶ 22.  This indicates that there are likely to be communications discussing pay for ASMs who worked fewer than 40 hours a week.  Such communications can be evidence of an unlawful policy. *See Olmsted v. Residential Plus Mortg. Corp.*, Nos. 08 Civ 42, 08 Civ. 415, 2008 WL 5157973 at *3 (N.D. Ill. 2008) (email from supervisor implying that defendant did not pay overtime wages was evidence of common policy or plan); *Shipes v. Amurcon Corp.*, No. 10 Civ. 14943, 2012 WL 995362, at *6 (emails can be evidence of a policy that violates the FLSA).

[9]     Another court recently compelled production of documents related to an employer's decision to abandon a challenged compensation practice because it would be relevant "if there's a smoking gun . . . that says now that we realize we've violated the law for the last ten years in not paying them [and] we're going to start paying them."  Declaration of Justin Swartz in Opposition to Def.'s Cross Motion for Summary Judgment ("Swartz Decl.") Ex. 28 (*Glatt v. Fox Searchlight Pictures, Inc.*, No. 11 Civ. 6784, Transcript of Oral Argument, ECF No. 73 (S.D.N.Y. Nov. 21, 2012) (Peck, M.J.) at 17:2-5).

The Rule 30(b)(6) deposition that Plaintiff noticed will also likely provide further proof of Defendant's hourly pay policy.

In any event, as explained below, a factfinder could easily conclude that Defendant does not pay ASMs consistent with the FWW.  If Plaintiff is given a chance to complete discovery, he will conclusively demonstrate that Defendant violated the law.

> **a.   Plaintiff and Other ASMs Were Paid for Less Than 40 Hours When They Worked Less Than 40 Hours.**

Defendant paid ASMs on an hourly basis, less than their 40-hour weekly wage, when they worked less than 40 hours.  The paystubs that Plaintiff and Opt-In Plaintiffs retained from their employment demonstrate that they were paid on an hourly basis based on their regular rates of pay when they worked fewer than 40 hours a week.[10]

For example, Opt-In Plaintiff Eric Everhart's regular hourly rate was $24.038500.  During weeks when he worked 40 hours, he was paid $961.54 in straight-time wages.  *Id*. ¶¶ 27-28.  During the week of February 21, 2010, Mr. Everhart worked 20.5 hours per week.  *Id*. ¶ 27.  Defendant paid him his regular hourly rate of $24.038500 times the 20.5 hours he actually worked, for a total of $492.79.  *Id*. ¶¶ 27-30.

Similarly, during the week of July 22, 2012, Opt-In Plaintiff David Pagano was paid his then-regular hourly rate of $22.62 times the 34.2 hours he actually worked, for a total of $773.61.  *Id*. ¶¶ 36-39.  During the week of June 14, 2009, Mr. Pagano worked 31.25 hours, and was paid his then-regular hourly rate of $21.31, for a total of $666.15.  *Id* ¶¶ 32-35.

---

[10]   Despite serving document requests and interrogatories on Defendant for time and payroll records for the putative FLSA collective, Defendant has refused to produce time and payroll records for any of them.  Wagoner Decl. ¶ 5-6,

### b.  A Sample of Connecticut Payroll Records, That Defendant Claims Are "Representative," Show Pay for Less Than 40 Hours.

Defendant has refused to produce payroll records for the putative FLSA collective, and takes the position that a limited sample of payroll records that it produced in 2011 for some members of the putative FLSA collective who worked in Connecticut are "representative" of the entire class.  Wagoner Decl. ¶ 18.  In these records, there are several examples of Defendant's hourly pay scheme.  For example, an ASM whom Defendant has identified as "Employee 62" was paid a regular hourly rate of $24.40875.  *Id.* ¶¶ 52-56.  During weeks when she worked 40 hours, she was paid $976.40 in straight-time wages.  *Id.*  During the week February 27, 2010, this ASM worked 18.25 hours, and received compensation for 16 hours of accrued sick PTO.  *Id.* ¶ 91.  Defendant only paid him for the time worked and her PTO, a total of 34.25 hours, at his regular hourly rate of $24.40875, for a total of $836.00.  Plaintiff has identified 38 other similar instances.  *See id.* ¶¶ 25, 30, 35, 39, 43, 48-50, 55, 60-63, 66-91.  SAL's position that these records are "representative" suggests that if it had produced the entire data set that Plaintiff sought in his Motion to Compel, Wagoner Decl. ¶ 18, there would be even more evidence that Defendant paid ASMs based on their regular hourly rate of pay, not a fixed weekly salary, when they worked fewer than 40 hours a week.  This is even more likely in light of Defendant's corporate representative's testimony that Defendant's payroll processing system had no controls in place to ensure that ASMs were paid a fixed amount when they worked fewer than 40 hours.  ASF ¶ 98.

### c.  Plaintiff Was Not Paid a Fixed Salary When He Worked Fewer than 40 hours.

In any event, even if the Court looks only at Plaintiff's own payroll records and declines to consider all of the other evidence of an hourly pay policy that violates the FWW method, it

should deny summary judgment because it paid Plaintiff on an hourly basis.  Plaintiff was paid $822.12 (less than his purported salary of $865.38), when he worked 38 hours during the first week of his employment. 56(a)2 Statement ¶ 3.   This is evidence of an hourly pay scheme that does not comply with the FWW.

Defendant is wrong that hourly pay during the first week of employment is permissible. Def.'s Br. at 19 ("an employer is not obligated to pay an employee his full weekly salary during his first and last weeks of employment.").  The FWW has no such exception.  In order for the FWW to apply, workers must simply be paid their full "salary even though the workweek is one in which a full schedule of hours is not worked." 29 C.F.R. § 778.114(b) (a 37.5 hour "short week" must be paid at the full weekly salary); *cf. Brantley v. Inspectorate Am. Corp.*, 821 F. Supp. 2d 879, 892 (S.D. Tex. 2011) (defendant violated FWW by "making impermissible salary deductions for sick leave and vacation leave during the first 90 days of . . . employment.").

Defendant confuses the "salary basis test" for white collar exemptions from overtime (administrative, executive, professional), *see* 29 C.F.R. § 541.602, with the FWW "fixed amount" requirement.  29 C.F.R. § 778.114(a).  The U.S. Department of Labor has long held that the salary basis test for exemption purposes *does not apply to the FWW analysis*, and that the FWW test is stricter. U.S. Dep't of Labor Opinion Letter, 1991 WL 11648489 (Aug. 20, 1991) (emphasis added) ("The discussion of 'salary basis of payment' contained in section 541.118 of Regulations, Part 541, refers to the salary requirements for employees who may qualify for exemption from the minimum wage and overtime pay requirements under section 13(a)(1) of the FLSA, and *not to the salary requirements under the fluctuating workweek method of compensation*."); U.S. Dep't of Labor Opinion Letter, 1999 WL 1002399 (May 10, 1999) (the discussion of "salary basis of payment" contained in 29 C.F.R. § 541.118, refer[s] to the salary

requirements for employees who may qualify for exemption[s] from the minimum wage and overtime pay requirements . . . *not to the salary requirements under the fluctuating workweek method of compensation*.") (emphasis added); U.S. Dep't of Labor Op. Letter, 2006 WL 1488849 (May 12, 2006) (emphasis added) (29 C.F.R. Part 541 white collar "salary basis" exemptions do not apply to FWW methodology described at 29 C.F.R. § 778.114). In any event, contrary to Defendant's representations, Kiefer worked a full schedule of five days during his first week of work at SAL, his usual amount of workdays as an ASM. 56(a)2 Statement ¶ 12.

> **d.   Further Discovery Will Conclusively Demonstrate Defendant's Hourly Pay Scheme.**

Although the limited "representative" payroll records Plaintiff has obtained are sufficient to create an issue of fact as to whether it was Defendant's policy to pay ASMs a "fixed amount," or by the hour, further payroll data production would clarify the record. Plaintiff has attempted to obtain payroll records for the FLSA collective, *see* Pl.'s Mot to Compel, ECF Nos. 103-105; *see also* Wagoner Decl. ¶¶ 6-10, which will paint a more complete picture of Defendant's pay policy, and provide further support for a finding that Defendant has not met its burden to prove that its policy was to pay ASMs a "fixed amount."

Defendant has not even produced the payroll records for the 44 ASMs *who have already joined the case*. Even their payroll records would shed more light on Defendant's pay policy because additional examples of hourly pay would further undermine Defendant's claim that its policy was to pay ASMs a "fixed amount" no matter how many hours they worked. Plaintiff has attempted to obtain these documents. *See* Wagoner Decl. at 6-10.

### e.   Defendant's Bonus Plan is Inconsistent with the FWW and Precludes Summary Judgment.

Defendant's bonus plan is inconsistent with the FWW.  An employer that pays its workers bonuses cannot pay overtime based on the FWW because bonuses are inconsistent with the "fixed amount" requirement.  *O'Brien*, 350 F.3d at 295 ("bonus payments, for purposes of the FLSA," are "payments made in addition to the regular earnings of an employee"); *Adeva v. Intertek USA, Inc.*, No. 09 Civ. 1096, 2010 WL 97991, at *3 (D.N.J. Jan. 11, 2010) (granting summary judgment in plaintiffs' favor because employer was "precluded from using the FWW method of payment [because] premiums and bonuses run afoul of the 'fixed salary' requirement of 29 C.F.R. § 778.114(a)."); *id.* (emphasis added) ("If the regulation merely required that employees received a minimum salary every week, which could be increased by such bonuses, then [the d]efendants' argument would have substantial force.  The regulation, however, *contains no such thing*.  Consequently, the Court holds that Defendants are precluded from using the FWW method of payment as such premiums and bonuses *run afoul of the "fixed salary" requirement*).[11]

Here, according to Defendant's 2010 Bonus Plan, ASF ¶¶ 114-118, ASMs were entitled to bonuses according to a formula "based on actual results and . . . measured against pre-established performance objectives," *id.* ¶ 115, which is part of the company's "commitment to

---

[11]   Other cases, involving other types of additional "premium" pay further support the principal that courts should construe the FWW strictly and that "fixed amount" means "fixed amount."  *Adeva*, 2010 WL 97991 at *3; *Dooley*, 369 F. Supp. 2d at 86  (holding that payment of a premium rate for weekend work precludes application of the FWW); *Brantley v. Inspectorate Am. Corp.*, 821 F. Supp. 2d 879, 890 (S.D. Tex. 2011) (holding "[T]he applicable case law shows that Defendant's payment of off-shore, holiday and day-off premiums to Plaintiffs violated the fixed salary requirement for applying the FWW method" and "it is now clear that an employer that pays salary premiums may not apply the FWW.").

providing [employees] with competitive compensation while improving the company's overall performance." *Id.* In addition, Pagano received a $4,117 bonus for 2009, but there is no evidence that Defendant included this bonus when calculating Pagano's regular rate. *Id.* ¶ 117.

Plaintiff has attempted to obtain more ASM payroll records, which would demonstrate Defendant's bonus compensation policy and allow a further analysis of whether it violates the FWW. Wagoner Decl. ¶ 17. The Fed. R. Civ. P. 30(b)(6) deposition Plaintiff noticed on October 15, 2012 will also provide additional information on Defendant's bonus policy. Wagoner Decl. ¶ 23.

> **f.      Defendant's Holiday Pay Plan is Inconsistent with the FWW and Precludes Summary Judgment.**

Defendant's holiday pay policy also provides additional payments that are inconsistent with the FWW. In Defendant's handbook, ASMs are promised an additional eight hours of pay for scheduled holidays *even when they work those days*. "If scheduled to work on the actual day of the holiday, you must actually also work that day to qualify for holiday pay." ASF ¶ 9-13. The additional eight hours is an additional payment, on top of an ASM's wage for working that day, and, just like bonus payments, is inconsistent with FWW. *See Adeva*, 2010 WL 97991, at *3 (granting summary judgment in plaintiffs' favor because employer was "precluded from using the FWW method of payment [because] premiums and bonuses run afoul of the 'fixed salary' requirement of 29 C.F.R. § 778.114(a).").

> **2.      Defendant's PTO Policy Violates the FWW Because Defendant Cannot Prove That Its Policy Was to Pay a "Fixed Amount" Even Before ASMs Accrued PTO or After They Ran Out.**

Defendant's method of paying ASMs for vacation and sick pay ("Paid Time Off" or "PTO") also precludes summary judgment. Defendant has not proved that its PTO policy complies with the FWW because there is no evidence that Defendant's policy requires it to pay

ASMs their full 40-hour weekly wages when they had exhausted all of their PTO, or had not yet earned any.  A policy that allows an employer to pay for less than 40 hours when an employee has no PTO available violates the FWW.  *Brantley*, 821 F. Supp. 2d at 892 ("[A]lthough Defendant informed Plaintiffs of the FWW method, they made impermissible salary deductions for sick leave and vacation leave during the first 90 days of an Inspector's employment; U.S. Dep't of Labor Opinion Letter, 2006 WL 1488849, at *1 (May 12, 2006) ("[I]t is the longstanding position of the Wage and Hour Division that an employer utilizing the fluctuating workweek method of payment may not make deductions from an employee's salary for absences occasioned by the employee . . . . Therefore, it is our opinion that your client may not make full day deductions from the salary of its fluctuating workweek employees when the employee has exhausted his or her sick leave bank or has not yet earned enough leave to cover the absence); ."); U.S. Dep't of Labor Opinion Letter, 1999 WL 1002399 (May 10, 1999) ("[D]eductions may be made from vacation or sick leave banks because of absences for personal reasons or illness, as long as no deductions are made from an employee's salary); U.S. Dep't of Labor Opinion Letter, 1991 WL 11648489, at *1 (Aug. 20, 1991) ("Where there is no paid leave to substitute for employee absences, the employer may not make deductions from the employee's guaranteed fixed salary under the fluctuating workweek method of compensation.").

### a.   Defendant's Computerized Payroll System Was Programmed to Violate the FWW.

As further evidence of Defendant's hourly pay policy, Defendant programmed its computerized payroll system to pay ASMs for the number of hours they work, even when they work fewer than 40 hours in a week, and put in place no system to ensure that ASMs wages were adjusted to pay them for 40 hours.  ASF ¶¶ 4, 7-13, 98.  Plaintiff obtained deposition testimony about this issue in another case, where discovery was explicitly limited to the named plaintiff in

that case. Wagoner Decl. ¶ 25. Plaintiff has attempted to obtain more information about Defendant's automated payroll system and payroll process, some of which is the subject of the Fed. R. 30(b)(6) deposition Plaintiff noticed. Wagoner Decl. ¶¶ 10, 17.

> **b.** **Defendant's Own Documents Suggest an Hourly Pay Policy.**

Defendant's employee handbook tells ASMs that they earn "an established *hourly rate* based on documented work" rather than a fixed salary. ASF ¶ 109 (emphasis added). The handbook does not tell ASMs that they will be paid a fixed amount if they work fewer than 40 hours. *Id*. The paystubs Defendant issued to ASMs from its centralized Shared Services office made clear that ASMs were paid at a regular hourly rate for the hours they actually worked when their hours fell below 40. *Id.* ¶¶ 5, 7-8, 14-19, 21-56. If they received PTO pay, that was also calculated based on the regular hourly rate. *Id.* ¶¶ 9, 14-19, 57-91.

> **D.** **Defendant Did Not Pay ASMs For Overtime Hours at One-Half Times Their "Regular Rates" Because Defendant Calculated ASMs' Regular Rates Without Including All Compensation in the Calculation.**

Plaintiff presents evidence that Defendant calculated ASMs' "regular rates" wrong and, as a result, did not pay them for overtime hours at one-half times their regular rates. Employers must include any bonus compensation as part of total compensation when calculating a worker's "regular rate." A worker's "regular rate" generally includes "all remuneration for employment paid to, or on behalf of, the employee[.]" 29 U.S.C. § 207(e). With few statutory exceptions not applicable here, *see* 29 U.S.C. § 207(e)(1)-(8), everything of value provided to the employee must be included in the employee's "regular rate" for overtime purposes. *See O'Brien,* 350 F.3d at 295 (quoting 29 C.F.R. § 778.208) ("[B]onus payments, for purposes of the FLSA, are 'payments made in addition to the regular earnings of an employee'"). This includes non-discretionary bonuses. *See* 29 C.F.R. § 778.110(b); 29 C.F.R. § 778.211 (nondiscretionary

24

bonuses "must be included" within the calculation of an employee's "regular rate of pay").

Defendant's bonus plan must be included in the regular rate because it is non-discretionary as

contemplated by 29 C.F.R. § 778.211(b) ("If the employer promises in advance to pay a bonus,

he has abandoned his discretion with regard to it . . . [and it] would not be excluded from the

regular rate . . . ."); *O'Brien,* 350 F.3d at 289; *Adeva*, 2010 WL 97991, at *3 ("[P]remiums and

bonuses run afoul of the 'fixed salary' requirement of 29 C.F.R. § 778.114(a)."); *see also Dooley*

*v. Liberty Mutual Ins. Co.*, 369 F. Supp. 2d 81, 86 (D. Mass. 2005).

        Defendant has not met its burden to prove that it accounted for ASMs' bonuses (paid

pursuant to objective factors in a published bonus plan), ASF ¶¶ 114-118, when it calculated

their regular rates for FWW purposes.  In fact, in the limited Opt-In paystub data Plaintiff has,

there is no evidence of Defendant including bonus pay in the regular rate calculation, despite the

fact that at least 11 ASMs received bonuses during the relevant period.  ASF ¶ 116.  Plaintiff has

attempted to obtain additional information regarding Defendant's pay practices, including

bonuses, through Defendant's payroll records.  Wagoner Decl. ¶ 24.

        **E.      Defendant Cannot Prove That There Was a Clear Mutual Understanding
                 Between Defendant and ASMs.**

                **1.      Defendant's Uniform Communications About Hourly Pay Preclude
                         Summary Judgment.**

        Defendant's uniform communications with ASMs about its compensation structure

preclude the "clear mutual understanding" that the FWW methodology requires.  None of

Defendant's corporate communications tell ASMs that they will be paid a fixed weekly salary

regardless of the number of hours they work.  *See Evans v. Lowe's Home Centers, Inc.*, No. 03

Civ. 0438, 2006 WL 1371073 (M.D. Pa. May 18, 2006), at *4-5 (evidence of "clear mutual

understanding" sufficient for collective certification includes corporate communications such as

employee handbooks and paychecks).  To the contrary, Defendant's employee handbook tells ASMs that they earn "an established *hourly rate* based on documented work" rather than a fixed salary.  ASF ¶ 109 (emphasis added).  No one explained to ASMs that they would receive a full weekly salary if they worked fewer than 40 hours per week.  *Id.* ¶¶ 110-113.  None of the documents that Defendant gave to ASMs tells them that they will be paid a fixed amount if they work fewer than 40 hours.  *Id.* ¶¶ 106-110.  Instead, it was made clear to ASMs they were expected to work forty-five hours each week.  *Id.* ¶¶ 99-105.  *Dingwall v. Friedman Fisher Assoc., P.C.*, 1998 WL 1031497, at *6 (N.D.N.Y. Apr. 24, 1998) (emphasis added) (internal quotations marks omitted) (fluctuating workweek method fails where "[t[here is no evidence in the record that plaintiff *clearly understood* that his salary was intended to compensate him for any hours worked . . . [where] employee manual[] . . . states that [s]taff personnel are normally expected to work a 40 hour week with the exception of preestablished holidays." ); *see also Brantley*, 821 F. Supp. 2d at 892 (no "clear mutual understanding" because "although Defendant informed Plaintiffs of the FWW method, they made impermissible salary deductions for sick leave and vacation leave during the first 90 days of an Inspector's employment."); *Dooley*, 369 F. Supp. 2d at 87 (no clear mutual understanding even if no docking in paystub if employer "would not have paid a 'fixed salary'" if the employee worked below forty hours).

The paystubs Defendant issued from its centralized "Shared Services" office also made clear that ASMs were paid only for the hours they actually worked when their hours fell below 40.  ASF ¶¶ 3-6, 21-51, 57-91.  These materials preclude a clear mutual understanding that ASMs were paid a fixed weekly salary, because they received every indication that they were not.

Defendant's cases are inapposite.  In *Javansalehi v. BF & Assocs.*, N No. 10 Civ. 850, 2012 U.S. Dist. LEXIS 61549, at *26 (D. Or. May 2, 2012), *Samson v. Apollo Res, Inc.*, 242 F.3d 629, 636 (5th Cir. 2001), *Anderson v. Cnty. of Kershaw*, 1999 U.S. App. LEXIS 1773, at *3-7 (4th Cir. Feb. 8, 1999), *Valerio v. Putnam Assoc's., Inc.*, 173 F.3d 35, 40 (1st Cir. 1999), *Roy v. Cnty. of Lexington*, 141 F.3d 533, 547-48 (4th Cir. 1998), *Mayhew v. Wells*, 125 F.3d 216, 219 (4th Cir. 1997), and *Cash v. Conn Appliances, Inc.*, 2 F. Supp. 2d 884, 900-01 (E.D. Tex. 1997), it was undisputed that the employers actually paid the employees a fixed weekly salary, even when they worked fewer than 40 hours per week.[12]  As a result, these courts found that the employees had clear understanding that they would receive a fixed weekly salary for hours below 40.  A clear mutual understanding on that question is impossible here, because ASMs did not receive a fixed salary for hours under 40.  It is also undisputed that Defendant did not provide ASMs with any written materials that told ASMs they would receive a fixed weekly salary for hours under 40.  ASF ¶¶ 106-110.

## 2.  Plaintiff's Testimony Precludes Summary Judgment.

Kiefer's affidavit creates material issues of fact on the "clear mutual understanding" requirement.  Kiefer was paid an hourly rate of pay during his first week of work and on occasions when he took PTO time.  56(a)2 Statement ¶¶ 12, 14, 15.  He stated that when Defendant's witness, Michael Kiefer, explained Defendant's overtime compensation structure to him, he never told him that he would be paid a fixed amount when he worked fewer than 40 hours a week.  *Id.* ¶ 10; ASF ¶ 111.  Instead, Kiefer was explicitly told that he was expected to

---

[12]    In *Conn* and *Samson*, employees did not receive a fixed weekly salary for hours under 40 only in cases of failure to report for scheduled work hours.  *Conn*, 2 F. Supp. 2d at 900-01; *Samson*, 242 F.3d at 638-39.  Where the employer scheduled an employee to work fewer than 40 hours, he still received the full weekly salary.  Here, Defendant admits that it did not pay Kiefer a full weekly salary for his first 38-hour week of work, even though Kiefer was scheduled to work, and did work, 38 hours that week.  56(a)2 Statement ¶ 12.

work forty-five hours a week.  ASF ¶¶ 99-105; *Dingwall*, 1998 WL 1031497, at *6.  And on the several occasions when Kiefer inquired to his superiors as to the legality or appropriateness of his overtime pay, he was simply told "that's how they do it here," and "it's hard to explain." 56(a)2 Statement ¶ 20.   Over the course of his employment, no other employee of Defendant explained that he would be paid a fixed amount for hours under 40.  *Id.*; ASF ¶ 111.

## II.   If The Court Does Not Deny Defendant's Summary Judgment Motion On Its Merits, It Should Deny It Without Prejudice As Premature, And Allow Plaintiff To Complete Discovery.

Defendant moved for summary judgment right in the middle of discovery, while Plaintiff's motion to compel discovery, ECF No. 103, and Plaintiff's Motion for Court-authorized FLSA notice, ECF No. 113 were pending, and before Defendant even took Plaintiff's deposition.  It filed its premature summary judgment motion without warning and drafted it during the extension the Court granted it to respond to Plaintiff's motion for Court-authorized notice.

Meanwhile, since filing its Motion for Summary Judgment Defendant has pressed forward with discovery, attempting to schedule Plaintiff's deposition, and threatening to move to compel documents responsive to the discovery requests it served on Plaintiff and all 44 Opt-in Plaintiffs who have already joined this action.  Wagoner Decl. ¶ 27.  It even requested an extension of time to file its motion to compel.  Wagoner Decl. ¶ 27.  Defendant's continued discovery efforts while the parties brief this motion are the best evidence that this motion is premature.   A party that still needs more discovery should not move for summary judgment.

Defendant's summary judgment motion is without merit and the Court should deny it with prejudice.  Alternatively, the Court should deny it without prejudice, allow notice to issue to the FLSA collective so that other ASMs can join the action and protect their claims, and allow

the parties to finish discovery and file cross-motions for summary judgment on a complete record.

**A.      Fed. R. Civ. P. 56(d) Precludes Summary Judgment Where The Non-Moving Party Has Not Had An Opportunity to Obtain Sufficient Discovery.**

Courts disfavor premature summary judgment motions.  Under Fed. R. Civ. P. 56(d) (formerly Fed. R. Civ. P. 56(f) ("Rule 56(d)"), courts may defer or deny a premature summary judgment motion, allow the non-moving party time to obtain the discovery necessary to oppose the summary judgment motion, and issue other appropriate orders.  Fed. R. Civ. P. 56(d).  Summary judgment should not be granted against a party unless he has had "a reasonable opportunity to elicit information within the control of his adversaries."  *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir. 1980).  When the non-moving party advises the court that it needs discovery to defend the motion, "the court should defer decision of the motion until the party has had the opportunity to take discovery and rebut the motion."  *Commercial Cleaning Servs., LLC v. Colin Serv. Sys., Inc.*, 271 F.3d 374, 386 (2d Cir. 2001).  The purpose of Rule 56(d) is to prevent parties from being "railroaded" into presenting their case without an adequate "opportunity to discover information that is essential to [opposing] the motion for summary judgment."  *Trebor Sportswear Co. v. The Ltd. Stores, Inc.*, 865 F.2d 506, 511 (2d Cir. 1989) (internal quotations marks and citations omitted).

A party does not bear a difficult burden on a Rule 56(d) application.  A party must simply "point to *potential facts* that *might* raise an issue of material fact, that it has been unable to obtain without discovery."  *Seneca Beverage Corp. v. Healthnow N.Y., Inc.*, 200 F. App'x 25, 28 (2d Cir. 2006) (emphasis added) (reversing grant of summary judgment and remanding for further proceedings).  Because Rule 56(d) is "a safeguard against premature grants of summary judgment" it must "be applied with a spirit of liberality."  *Id.*

**B.     Plaintiff Comfortably Exceeds His Low Threshold Under Rule 56(d).**

Plaintiff adequately demonstrates that he needs further discovery and that he has tried to get it.  In considering a Rule 56(d) determination, courts should consider 1) the nature of the uncompleted discovery; 2) how the facts sought are reasonably expected to create a genuine issue of material fact; 3) what efforts the affiant has made to obtain those facts; and 4) why those efforts were unsuccessful.  *Holmes v. Lorch*, 329 F. Supp. 2d 516, 529 (S.D.N.Y. 2004) (quotation marks and citations omitted).  Here, the Wagoner Declaration addresses each of these factors.

Plaintiff seeks discovery that is directly relevant to Defendant's FWW affirmative defense and will preclude Defendant from prevailing on it.  The discovery Plaintiff seeks includes payroll records, emails, and documents about why Defendant abandoned its half-time for overtime policy.  Wagoner Decl. ¶¶ 16-26.  Plaintiff also seeks to take a Fed. R. Civ. P. 30(b)(6) deposition on eight topics.  *Id.* ¶ 23.  He also seeks to depose the five individuals whom Defendant disclosed for the first time when it submitted their declarations in support of its summary judgment motion.  *Id.* 26.

Plaintiff has made an adequate effort to obtain all of this information.  He served document requests notices of deposition, and filed a Motion to Compel payroll records, email discovery, and documents about Defendant's abandonment of its half-time overtime policies.  Wagoner Decl. ¶¶ 5-15.  Plaintiff has been unsuccessful in obtaining this discovery because Defendant has refused to produce it or, in the case of email discovery, the parties are still engaged in a meet and confer process.  *Id.*

### 1.      Fed. R. Civ. P. 30(b)(6) Deposition.

On October 15, 2012, Plaintiff noticed a Fed. R. Civ. P. 30(b)(6) deposition on eight topics, almost all of which are relevant to elements of Defendant's FWW affirmative defense. Wagoner Decl. ¶¶ 11-12.  Plaintiff has not yet taken the deposition because he has not received all of the documents responsive to his requests, some of which he moved to compel on December 7, 2012.  *Id*. ¶¶ 10-12.

The 30(b)(6) deposition will allow Plaintiff to learn about how Defendant implements its payroll policies and whether they comply with the FWW.  For example, the records Plaintiff has collected from Plaintiff and several of the Opt-in Plaintiffs demonstrate that under Defendant's PTO plan, ASMs were paid on an hourly basis when they did not have sufficient PTO time banked for sick time, vacation days, or other forms of leave.  Wagoner Decl. ¶¶ 23-24. Defendant has no written materials that explain its policies on these issues.  *Id*.

### 2.      Time and Payroll Records.

Plaintiff requested Defendant's time and payroll records, which are relevant to its FWW affirmative Defendant's payroll records on September 11, 2012, and moved to compel production of them on December 7, 2012.  Wagoner Decl. ¶¶ 7, 10.  The Court has not yet ruled on Plaintiff's motion.

The time and payroll records are relevant to Defendant's FWW defense because they will demonstrate that Defendant's policy and practice was to pay Plaintiff and other ASMs an hourly rate of pay, not a fixed weekly salary.  Wage and hour class actions challenging the FWW calculation method rise and fall on an analysis of how the challenged payroll practices were applied to the class – here, the failure to pay a fixed weekly salary during weeks in which an ASM works fewer than 40 hours.  Liability will be established through class-wide, statistical

analysis of Defendant's time and payroll records and the extent to which they show that Defendant's policy and practice, as applied to Kiefer and all other ASMs, was to pay ASMs wages at a regular hourly rate of pay for hours under 40.  *Cf. Hoffmann*, 982 F. Supp. at 255 (without "evidence of how many employees were subject to reductions in their compensation . . . or over what period of time such deductions occurred . . . it would be impossible for the Court to determine whether . . . defendant had an actual practice of . . . improper deductions.").

Because Defendant admittedly did not maintain written or electronic policies or procedures on this issue, payroll data is the only source of this information.  *See Lujan v. Cabana Mgmt., Inc.*, 284 F.R.D. 50, 70-71 (E.D.N.Y. 2012) (noting critical nature of payroll discovery in FLSA litigation).  Although Kiefer's payroll spreadsheet, the redacted, time-limited Connecticut class payroll records, and the limited number of paystubs Opt-Ins have located demonstrate that Defendant paid ASMs on an hourly basis when they worked fewer than 40 hours per week, payroll data for the putative FLSA collective would demonstrate that this pay practice was Defendant's policy that applied to all ASMs, including Kiefer.  Defendant denies that this policy existed, but refuses to produce the class-wide payroll information Plaintiff needs to prove it.

### 3.    Emails.

Plaintiff also requested relevant emails from key custodians.  SAL has significantly delayed production of emails or other electronically stored information ("ESI") from its corporate custodians, by failing to provide basic information about the locations, custodians and volume of ESI to be searched.  *See* Wagoner Decl. ¶¶ 8-9.  Although Plaintiff hopes that the parties will be able to finalize a search methodology in March 2013, the significant delays that Defendant has caused in crafting a methodology mean that Plaintiff will be unable to use any

information about Defendant's policies and practices with respect to disputed issues in their opposition to Defendant's summary judgment motion.

To the extent email correspondence responsive to these requests rebuts Defendant's factual statements about its pay methodology, Plaintiff is entitled to obtain and use it to oppose Defendant's Summary Judgment Motion.  Because Defendant has few written materials that explain its payroll policies, *see* Wagoner Decl. ¶¶ 8, 22-23, emails could well be a valuable source of written information about SAL's implementation of its payroll policies.  *Shipes*, 2012 WL 995362, at *6 (emails can be evidence of a policy that violates the FLSA).  Additionally, there may be corporate-level communications that will help establish what SAL's policy was, as well as its state of mind as to whether it was legal or illegal.  *Olmsted*, 2008 WL 5157973, at *3 (email from supervisor implying that defendant did not pay overtime wages was evidence of common policy or plan).

### 4.    Depositions of and Discovery from Defendant's Previously Undisclosed Witnesses.

Plaintiff has noticed the depositions of the five new and previously undisclosed witnesses whose testimony Defendant offered in support of its Motion for Summary Judgment: Jeff Rodd, David Tisdale, William Garforth, Brian Nulty, and Jason Hodge ("Defendant's Undisclosed Witnesses").  Wagoner Decl. ¶ 13.  All of Defendant's Undisclosed Witnesses except Rodd are ASMs subject to the policies Plaintiff challenges in this case.  *Id*.

Plaintiff learned about Defendant's Undisclosed Witnesses for the first time when Defendant filed its Motion for Summary Judgment.  Wagoner Decl. ¶ 14.  As a result, Plaintiff has not had an opportunity to cross-examine them or take discovery into the issues they raise in their declarations, including the content of the training Defendant provided to ASMs about its pay policies and how ASMs were compensated when they worked fewer than 40 hours.  *Id*.

*Lujan*, 284 F.R.D. at 72 ("[T]he failure to disclose the identities of these declarants was not harmless, as defendants' omission deprived plaintiffs of the opportunity to take depositions and receive document discovery related to the declarants.").

Plaintiff also asked Defendant to produce payroll documents for Defendant's Undisclosed Witnesses responsive to Document Request No. 2.  Wagoner Decl. ¶ 15.  Defendant has refused to do so.  *Id.*

Plaintiff should have an opportunity to cross-examine Defendant's Undisclosed Witnesses to develop testimony that supports Plaintiff's position about Defendant's pay policies. For example, each of ASM Undisclosed Witnesses claims he understood that "I would be paid a fixed weekly salary each week no matter how many or few hours I worked during the week, whether more or less than 40."  Wagoner Decl. ¶ 26.  However, Plaintiff has no way to know whether these witnesses were actually paid on an hourly basis when they worked fewer than 40 hours, as Kiefer was.  *Id.*

>    **5.    Discovery Regarding Defendant's Abandonment of its FWW Compensation Method.**

Defendant also refuses to produce documents about its July 2012 decision to abandon its half-time for overtime policy.  The documents will likely shed light on the reasons that Defendant stopped paying half-time for overtime, including that Defendant knew that it was implementing the policy illegally.  *See* Swartz Decl. Ex. 28, *Glatt*, No. 11 Civ. 6784, Transcript of Oral Argument, at 17:2-5 (document related to a pay policy change are relevant "if there's a smoking gun . . . that says now that we realize we've violated the law for the last ten years in not paying them [and] we're going to start paying them[.]"); *cf. Seneca Beverage Corp.*, 200 Fed. Appx. at 28 ("[S]ubsequent actions . . . whether known to [non-movant] at the time or not-may illuminate the parties' contemporaneous understanding.").

**III.   The Court Should Strike the Declarations of Defendant's Five Previously Undisclosed Witnesses.**

The Court should strike the declarations of the five witnesses Defendant submitted in support of its summary judgment motion, Wagoner Decl. ¶¶ 13-15, because Defendant had never previously disclosed their identities and refuses to provide any discovery about them.  Fed. R. Civ. P. 26 requires parties to identify all individuals "likely to have discoverable information . . . that the disclosing party may use to support its claims or defenses" and to supplement disclosure "in a timely manner" as needed.  To satisfy its Rule 26 duty, a party must "make an unequivocal statement" that it will rely upon an individual to support or oppose a motion.  *See Lujan*, 284 F.R.D. at 73.

If a party omits a witness from its disclosures, the party cannot rely on that witness's testimony.  Fed. R. Civ. P. 37(c)(1).  "Rule 37(c)(1)'s preclusionary sanction is automatic absent a determination of either substantial justification or harmlessness."  *Design Strategies, Inc. v. Davis*, 367 F. Supp. 2d 630, 634 (S.D.N.Y. 2005) (internal citations omitted) *aff'd*, 469 F.3d 284 (2d Cir. 2006).  Courts routinely strike testimony of previously undisclosed witnesses.  *See, e.g.*, *Lujan*, 284 F.R.D. at 72 (striking declarations of undisclosed witnesses); *Ziegenfus v. John Veriha Trucking*, No. 10 Civ. 5946, 2012 WL 1075841, at *6-8 (S.D.N.Y. Mar. 28, 2012) (excluding potentially affidavits because plaintiff never identified witnesses as persons with relevant information); *Degelman Indus., Ltd. v. Pro–Tech Welding & Fabrication, Inc.,* No. 06 Civ. 6346, 2011 WL 6754059, at *2 (W.D.N.Y. June 8, 2011) (same) *adopted in* 2011 WL 6752565, at *4 (W.D.N.Y. Dec. 23, 2011).

## CONCLUSION

For all of the foregoing reasons the Court should deny Defendant's motion on its merits.

In the alternative, the Court should deny Defendant's motion without prejudice and allow

Plaintiff to finish discovery.  The Court should also strike the declarations of Defendant's

Previously Undisclosed Witnesses.

Dated:        New York, New York
              February 28, 2013

                                        /s/ *Justin M. Swartz*
                                        **OUTTEN & GOLDEN LLP**
                                        Justin M. Swartz (*pro hac vice*)
                                        Cyrus E. Dugger (*pro hac vice*)
                                        Elizabeth Wagoner (*pro hac vice*)
                                        3 Park Avenue, 29th Floor
                                        New York, New York 10016
                                        Telephone:  (212) 245-1000
                                        Facsimile: (212) 977-4005
                                        jms@outtengolden.com
                                        cdugger@outtengolden.com
                                        ewagoner@outtengolden.com

                                        **THE HAYBER LAW FIRM, LLC**
                                        Richard Hayber
                                        Erick I. Díaz Vázquez
                                        221 Main Street, Suite 502
                                        Hartford, CT  06106
                                        Telephone:  (203) 522-8888
                                        Facsimile:  (203) 915-9555
                                        rhayber@hayberlawfirm.com
                                        ediaz@hayberlawfirm.com

                                        *Attorneys for Plaintiff, the Collective, and the Class*

## **CERTIFICATION OF SERVICE**

I hereby certify that on March 1, 2013, the above document was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system and by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.  A complete, duplicate copy of this document has been forwarded directly to Judge Young in Boston, MA.

 */s/ Justin M. Swartz*
Justin M. Swartz