## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

ROBERT G. KIEFER, individually and on   :   CIVIL ACTION NO.
behalf of all others similarly situated,     :   3:12-CV-00756-WGY
               Plaintiff,     :
                         :
v.                          :
                         :
MORAN FOODS, INC., d/b/a     :
SAVE A LOT LTD.,     :
               Defendant.     :   May 16, 2013

### DECLARATION OF EVE I. KLEIN, ESQ.

Pursuant to 28 U.S.C, § 1746, Eve I. Klein declares that the following facts are true and correct, subject to the laws against perjury of the United States of America::

1.     I am a partner at the law firm Duane Morris LLP, counsel to Defendant Moran Foods, LLC, f/k/a Moran Foods, Inc., d/b/a Save A Lot Ltd., and am fully familiar with the facts set forth below. I submit this declaration in opposition to Plaintiff's Motion to Compel Discovery.

2.     On a May 8, 2013 telephone conference with Plaintiff's counsel Justin M. Swartz, I offered to resolve Plaintiff's motion to compel email addresses of class members by providing Mr. Swartz with the email addresses of opt-in plaintiffs who have not provided their email addresses on their Consent to Sue forms, to the extent Defendant has such information. Mr. Swartz declined my offer and maintained that he wanted all email addresses of class members, including those who have declined to opt in to the action as of that date. On a separate occasion, Mr. Swartz informed me that he wanted to contact putative class members that had not opted in to this Action via email.

3.     A true and correct copy of an email from Evangelos Michailidis to Justin Swartz dated April 24, 2013 is attached hereto as Exhibit A.

1

4.      A true and correct copy of relevant portions of the transcript of deposition of

Plaintiff Robert Kiefer is attached hereto as Exhibit B.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: New York, New York
      May 16, 2013

                                                */s/ Eve I. Klein*
                                                EVE I. KLEIN

## **CERTIFICATION**

I hereby certify that on this **16th** day of May, **2013**, a copy of the above document was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail on anyone unable to accept electronic filing. A complete, duplicate copy of this document has been forwarded directly to Judge Young in Boston, MA.

/s/ *Eve I. Klein*
Eve I. Klein, Esq.

# EXHIBIT  A

## Ruden, Eric W.

| | |
|---|---|
| **From:** | Michailidis, Evangelos |
| **Sent:** | Wednesday, April 24, 2013 9:39 PM |
| **To:** | Justin Swartz (JMS@outtengolden.com); Elizabeth Wagoner (ewagoner@outtengolden.com); Dugger, Cyrus (cdugger@outtengolden.com); rhayber@hayberlawfirm.com; 'Erick I Diaz' (ediaz@hayberlawfirm.com) |
| **Cc:** | Ruden, Eric W.; Klein, Eve I. |
| **Subject:** | Kiefer v. Moran |
| **Attachments:** | SAL-KIEFER03437-46.pdf; Sczepanski Dec 4-24-13.PDF |

Counsel:

Attached are additional documents we are producing in connection with Ms. Sczepanski's deposition tomorrow. SAL-KIEFER 03437-443 is a questionnaire SAL used to screen ASM candidates. SAL-KIEFER 03444-446 is correspondence from 1988 between SAL and the USDOL regarding the FWW.

Also, following up on my email last night, will you be advising the Court that Plaintiff withdraws that portion of his motion seeking to compel production of the payroll records within 5 days? We ask that you advise the Court so as to avoid any inaccuracies. It is your motion and we do not want to misstate your position.

As for the rest of Plaintiff's motion to compel, Plaintiff did not seek to meet and confer prior to filing. This renders Plaintiff's motion procedurally defective. Notwithstanding this point, to avoid needless motion practice, we ask that you review the following points and consider withdrawing the balance of your motion:

(1) **Licensed Stores** – We believe that Plaintiff's position on this point is completely without merit. Moran does not have ownership or control over the licensed stores. They are totally separate legal entities and their employees are not a part of the class. We have attached a copy of the declaration of Ms. Sczepanski on this point, which we plan to use in our opposition of Plaintiff does not withdraw his motion to compel. We are providing it to you in advance of tomorrow's deposition so you can question the witness fully on this subject.

(2) **Emails** – Putting aside our differing views on what the Court's order says, we advised you on March 27, 2013 that Moran does not have the email addresses for the vast majority of putative class members. Moran did not communicate with its ASMs by email. The Consent to Sue form has a space for opt-ins to provide their email addresses. To date, it appears that approximately 400 of the 420 or so opt-ins have provided you with their email addresses. Obtaining email addresses directly from the opt-ins appears to be a very effective, accurate and efficient means to obtain the information you are seeking to compel Defendant to produce.

(3) **Time Records** – We previously advised you that it is very difficult and time consuming for our client to access the time records. Additionally, Plaintiff's indicated for the first time on April 12, 2013 that the format we were producing the time records in was not optimal for your review. We also advised you that we have been working diligently with our client to devise a more efficient way of accessing the records in the requested format. Nevertheless, you rushed to file a motion without having a meet and confer about this. The good news is that we have made considerable progress and anticipate that we will be able to produce the time records in a few days. Once that is resolved, we should be able to produce the time records with about the same frequency as the payroll records. If we had met and conferred, we would have updated you on all of this. It seems extremely wasteful to argue over this point when we are working very hard to try to get you what you are seeking to compel.

(4) **Records Post June 30, 2012** – Plaintiff's motion says that these records are needed to assure that Moran is paying ASMs properly.  Of course, we believe this information is totally irrelevant to this litigation.  Again, putting our differences aside on this point, we would ask that you consider an alternative means of confirming this.  Several of the opt-in plaintiffs are current employees.  As such, they have access to MIO, through which they can access their own paystubs.

Please let us know Plaintiff's position with respect to its motion  after you have completed your deposition tomorrow.

Regards,
Evan



**Evan Michailidis**
Associate

| Duane Morris LLP | **P:** +1 212 471 1864 |
| 1540 Broadway | **F:** +1 212 214 0650 |
| New York, NY 10036-4086 | **C:** +1 516 317 4544 |

E-MAIL | BIO | VCARD

2

# EXHIBIT  B

Kiefer v. Moran Foods

4/19/2013                                                    Kiefer, Robert

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

------------------------------
ROBERT G. KIEFER,                )    CIVIL ACTION NO.
individually and on behalf       )    3:12-CV-00756 (JCH)
of all others similarly          )
situated,                        )
        Plaintiff,               )
                                 )
VS                               )
                                 )
MORAN FOODS, INC., D/B/A         )
SAVE A LOT LTD.,                 )
        Defendant.               )
------------------------------

DEPOSITION OF: ROBERT G. KIEFER
DATE:          APRIL 19, 2013
HELD AT:       FEINER WOLFSON, LLC
               ONE CONSTITUTION PLAZA
               SUITE 900
               HARTFORD, CONNECTICUT

Reporter:  Sheryl L. Yeske, LSR #28
    BRANDON SMITH REPORTING & VIDEO, LLC
249 Pearl Street          Six Landmark Square
1st Floor                 4th Floor
Hartford, CT 06103        Stamford, CT
(860) 549-1850            (203) 316-8591
(800) 852-4589            (800) 852-4589

Kiefer v. Moran Foods

```
 1    those weeks."  The first part of it, do you have any
 2    information that you can share with us that establishes
 3    the point that the defendant failed to have timekeeping
 4    and payroll records that flagged events where ASM's
 5    worked less than 40 hours?
 6         A.   I wouldn't have that knowledge.
 7         Q.   Mr. Kiefer, when did you first decide that you
 8    were going to hire an attorney to bring a claim against
 9    the company?
10         A.   After I was working with Save A Lot.
11         Q.   When?
12         A.   Month and day?  Don't know.
13         Q.   Approximately?
14         A.   February or March of the year that I had left
15    Save A Lot.
16         Q.   And that was after you left the company; is
17    that right?
18         A.   Yes.
19         Q.   And when did you first meet with an attorney?
20         A.   Around that time.
21         Q.   Who was the first attorney that you met with?
22         A.   Richard Hayber.
23         Q.   How did you find Mr. Hayber as an attorney?
24         A.   I have no complaints.
25         Q.   I'm sorry?
```

Kiefer v. Moran Foods

4/19/2013                                                                    Kiefer, Robert

```
 1        A.   I have no -- how did I find him, or where did I

 2   find him?

 3        Q.   No, I'm sorry, how did you find him?

 4        A.   I was on the computer.  And an article or

 5   something came up on Facebook saying "Were you an

 6   assistant manager for Save A Lot?"  And the question

 7   for the, in regards to what this case is about was

 8   there.  And I was no longer working for Save A Lot at

 9   that time and felt as though that it would be a good

10   thing to talk to him.

11        Q.   When you said it came up on Facebook, or did

12   you mean on the Web when you were searching?

13        A.   It was on the Web, but it was on the Facebook

14   page.  It was over in the corner.  There's a little

15   question things on there.  If you go on the page, you

16   will see it for different things.

17        Q.   Are you on Facebook personally?

18        A.   Yes.

19        Q.   Did it come up on your feed?

20        A.   It came up on the general feed.  It wasn't on

21   my page.  It wasn't directed to me at all.

22        Q.   So --

23        A.   I contacted him.

24        Q.   So, you found it by searching on the Web?

25        A.   I didn't have to search.  It was right there.
```

Kiefer v. Moran Foods

1      Q.   So, on your Facebook, it popped up?

2      A.   Not on my Facebook.  On Facebook itself.  Do

3  you want to me to explain?

4      Q.   Yes.  Go ahead.

5      A.   Okay.  If this is the Facebook page

6  (indicating), I'm pulling up a piece of paper.

7      Q.   You mean a general Facebook?

8      A.   A general page.  It would have my contacts.  It

9  would have the Facebook where it has feeds where I

10  talked to somebody, or downloaded something.  And over

11  in the corner, is, like, advertising.  And it was in

12  the advertising.  It was just a general statement.  Not

13  directed personally to me.

14      Q.   Did you then go onto Mr. Hayber's website?

15      A.   I went onto his website and contacted

16  Mr. Hayber.

17      Q.   When you went to his website, did you see any

18  information about the Roach litigation?

19      A.   I knew it was there, but it wasn't my business

20  to read it.

21      Q.   Did you see it on the website?

22      A.   I know it was there.  But I wasn't -- I don't

23  think it was on this website.  I think if I wanted to

24  research it, I could have found it by Googling it.  I

25  contacted him because I had information that I thought

```
 1    would be relevant to Save A Lot.
 2        Q.   So, you have been on Mr. Hayber's website;
 3    right?
 4        A.   Maybe once or twice.
 5        Q.   Do you see that on his website, there's like a
 6    drop down, and you can look at the various cases that
 7    he's working on?
 8        A.   I haven't done that, no.
 9        Q.   You didn't know that was on there?
10        A.   I didn't go into other people's information.
11        Q.   They're not other people.
12        A.   No.
13        Q.   On the general page?
14        A.   There could have been.  It wasn't my directive
15    in looking.  In fact, all I would -- no.  Go ahead.
16        Q.   Have you made any comments on Facebook about
17    Save A Lot?
18        A.   No.
19        Q.   Have you posted anything online about
20    Save A Lot?
21        A.   No.
22        Q.   What was the reason that you stopped working
23    for Save A Lot?
24        A.   They --
25             MS. WAGONER:  Objection.  You can answer.
```