# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

**ROBERT G. KIEFER,** individually and on behalf of others similarly situated,

                        Plaintiff,

     v.

**MORAN FOODS, LLC and MORAN FOODS, INC., together d/b/a SAVE-A-LOT, LTD.,**

                        Defendants.

**No. 12-CV-756 (WGY)**

**FEBRUARY 11, 2014**

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTIONS FOR CONSOLIDATION, LEAVE TO FILE A SECOND AMENDED COMPLAINT, PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, PROVISIONAL CERTIFICATION OF THE SETTLEMENT CLASSES, APPOINTMENT OF PLAINTIFF'S COUNSEL AS CLASS COUNSEL, AND APPROVAL OF PLAINTIFF'S PROPOSED NOTICES OF SETTLEMENT

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ..................................................................................................... 1

I.      FACTUAL AND PROCEDURAL BACKGROUND...................................... 1

        A.      Nature of Plaintiffs' Claims ............................................................ 1

        B.      The Overtime Litigations ................................................................ 2

        C.      Investigation and Discovery ........................................................... 3

        D.      Settlement Negotiations .................................................................. 4

II.     *PAGANO* SHOULD BE CONSOLIDATED WITH THIS ACTION ................ 5

III.    LEAVE TO AMEND THE COMPLAINT SHOULD BE GRANTED ............ 6

IV.     SUMMARY OF THE SETTLEMENT TERMS ............................................ 7

        A.      The Settlement Fund ....................................................................... 7

        B.      Eligible Employees .......................................................................... 7

        C.      Releases............................................................................................ 8

        D.      Allocation Formula .......................................................................... 8

        E.      Attorneys' Fees, Litigation Costs, and Service Awards ................. 9

        F.      Settlement Claims Administrator.................................................... 10

V.      CLASS ACTION SETTLEMENT PROCEDURE ...................................... 10

VI.     PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE ............... 11

        A.      The Settlement is Fair, Reasonable, and Adequate................................. 13

                1.      Litigation Through Trial Would be Complex, Costly, and Long
                        (*Grinnell* Factor 1) ....................................................... 14

                2.      The Reaction of the Class Has Been Positive
                        (*Grinnell* Factor 2) ....................................................... 15

3.      Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (Grinnell Factor 3) ...................... 15

4.      Plaintiffs Would Face Real Risks if the Case Proceeded (*Grinnell* Factors 4 and 5) ............................................................ 16

5.      Maintaining the Class Through Trial Would Not Be Simple (*Grinnell* Factor 6) ........................................................ 17

6.      Defendants' Ability to Withstand a Greater Judgment Is Not Determinative (*Grinnell* Factor 7) ................................................ 17

7.      The Settlement Fund is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9) ............................................................ 18

VII.    PROVISIONAL CERTIFICATION OF THE RULE 23 CLASSES IS APPROPRIATE ..................................................................................... 19

A.      Numerosity ..................................................................................... 21

B.      Commonality ................................................................................... 21

C.      Typicality ........................................................................................ 22

D.      Adequacy of the Named Plaintiffs ................................................. 23

E.      Certification is Proper Under Rule 23(b)(3) ................................... 25

1.      Common Questions Predominate .................................... 25

2.      A Class Action Is a Superior Mechanism ...................................... 26

VIII.   PLAINTIFFS' COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL .......... 27

IX.     THE NOTICE PLAN AND DISTRIBUTION PROCESS ARE APPROPRIATE .......... 28

X.      PLAINTIFFS WILL SEEK APPROVAL OF THE FLSA SETTLEMENT .................... 30

CONCLUSION ................................................................................................ 30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aber-Shukofsky v. JPMorgan Chase & Co.*,
　755 F. Supp. 2d 441 (S.D.N.Y. 2010)....................................................................................17

*Alli v. Boston Mkt. Corp.*,
　No. 10 Civ. 4, 2011 WL 6156938 (D. Conn. Dec. 9, 2011) ........................................... *passim*

*Amchem Prods., Inc. v. Windsor*,
　521 U.S. 591 (1997).............................................................................................................25, 26

*Aros v. United Rentals, Inc.*,
　Nos. 10 Civ. 73, *et al.*, 2012 WL 3060470 (D. Conn. July 26, 2012) ...............................24, 28

*In re Austrian & German Bank Holocaust Litig.*,
　80 F. Supp. 2d 164 (S.D.N.Y. 2000)...................................................................................14, 15

*Beckman v. KeyBank, N.A.*,
　293 F.R.D. 467 (S.D.N.Y. 2013) ...............................................................................................9

*Cagan v. Anchor Sav. Bank FSB*,
　No. 88 Civ. 3024, 1990 WL 73423 (E.D.N.Y. May 22, 1990)................................................18

*Capsolas v. Pasta Res. Inc.*,
　No. 10 Civ. 5595, 2012 WL 4760910 (S.D.N.Y. Oct. 5, 2012) ..................................10, 24, 28

*City of Detroit v. Grinnell Corp.*,
　495 F.2d 448 (2d Cir. 1974)........................................................................................... *passim*

*Clark v. Ecolab Inc.*,
　Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2010 WL 1948198
　(S.D.N.Y. May 11, 2010)................................................................................10, 12, 22, 24

*Cnty. of Suffolk v. Long Island Lighting Co.*,
　710 F. Supp. 1422 (E.D.N.Y. 1989) ........................................................................................20

*Consol. Rail Corp. v. Town of Hyde Park*,
　47 F.3d 473 (2d Cir. 1995)........................................................................................................21

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*,
　502 F.3d 91 (2d Cir. 2007)........................................................................................................25

*Craig v. Rite Aid Corp.*,
　No. 08 Civ. 2317, 2013 WL 84928 (M.D. Penn. Jan. 7, 2013) .........................................24, 28

*Cuevas v. Citizens Fin. Grp.*,
    283 F.R.D. 95 (E.D.N.Y. 2012), 526 Fed. Appx. 19 (2d Cir. 2013) ...............................24, 28

*Damassia v. Duane Reade, Inc.*,
    250 F.R.D. 152 (S.D.N.Y. 2008) ...............................................................................24, 27, 28

*Dixon v. Zabka*,
    No. 11 Civ. 982, 2013 WL 2391473 (D. Conn. May 23, 2013) ............................................10

*Dorn v. Eddington Sec., Inc.*,
    No. 08 Civ. 10271, 2011 WL 382200 (S.D.N.Y. Jan. 21, 2011)...........................................16

*Edelen v. Am. Residential Servs., LLC*,
    11 Civ. 2744, 2013 WL 3816986 (D. Md. July 22, 2013)..............................................24, 28

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
    Nos. 05 Civ. 10240, 05 Civ. 10287, 05 Civ. 10515, 05 Civ. 10610, 06 Civ. 304, 06 Civ. 347,
    06 Civ. 1684, 2007 WL 2230177 (S.D.N.Y. July 27, 2007) ...............................................13

*Flores v. Anjost Corp.*,
    No. 11 Civ. 1531, 2014 WL 321831 (S.D.N.Y. Jan. 29, 2014)...............................................9

*Frank v. Eastman Kodak Co.*,
    228 F.R.D. 174 (W.D.N.Y. 2005) .................................................................................. *passim*

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995)..................................................................................................20

*Gen. Tel. Co. of the Sw. v. Falcon*,
    457 U.S. 147 (1982)............................................................................................................21

*Glatt v. Fox Searchlight Pictures, Inc.*,
    293 F.R.D. 516 (S.D.N.Y. 2013) ........................................................................................28

*Goldberger v. Integrated Res., Inc.*,
    209 F.3d 43 (2d Cir. 2000)..................................................................................................13

*In re Great Atl. & Pac. Tea Co.*,
    472 B.R. 666 (S.D.N.Y. 2012).............................................................................................17

*Green v. Wolf Corp.*,
    406 F.2d 291 (2d Cir. 1968)................................................................................................26

*Hernandez v. Merrill Lynch & Co.*,
    No. 11 Civ. 8472, 2012 WL 5862749 (S.D.N.Y. Nov. 15, 2012) ........................12, 23, 26, 29

*In re Ira Haupt & Co.*,
    304 F. Supp. 917 (S.D.N.Y. 1969).......................................................................................16

*Jacob v. Duane Reade, Inc.*,
   289 F.R.D. 408 (S.D.N.Y. 2013) ..................................................28

*Johnson v. Brennan*,
   No. 10 Civ. 4712, 2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011) ..........................9, 24, 28, 29

*Kamean v. Local 363, Int'l Bhd. of Teamsters*,
   109 F.R.D. 391 (S.D.N.Y. 1986) ..................................................22

*Lopez v. Burris Logistics Co.*,
   No. 12 Civ. 1039, 2013 WL 3337799 (D. Conn. July 3, 2013) ...........................................5

*Macedonia Church v. Lancaster Hotel, LP*,
   05 Civ. 153, 2011 WL 2360138 (D. Conn. June 9, 2011) ......................................................9

*Marisol A. v. Giuliani*,
   126 F.3d 372 (2d Cir. 1997) ...........................................................22

*Marriott v. Cnty. of Montgomery*,
   227 F.R.D. 159 (N.D.N.Y. 2005) ...................................................25

*Matheson v. T-Bone Rest., LLC*,
   No. 09 Civ. 4214, 2011 WL 6268216 (S.D.N.Y. Dec. 13, 2011) ..........................10

*Maywalt v. Parker & Parsley Petroleum Co.*,
   67 F.3d 1072 (2d Cir. 1995) ...........................................................12

*McBean v. City of New York*,
   228 F.R.D. 487 (S.D.N.Y. 2005) ...................................................25

*McMahon v. Olivier Cheng Catering & Events, LLC*,
   No. 08 Civ. 8713, 2010 WL 2399328 (S.D.N.Y. Mar. 3, 2010) .......................................24, 30

*In re Michael Milken & Assocs. Sec. Litig.*,
   150 F.R.D. 57 (S.D.N.Y. 1993) ...................................................29

*Milanese v. Rust-Oleum Corp.*,
   244 F.3d 104 (2d Cir. 2001) ...........................................................6

*Morris v. Affinity Health Plan, Inc.*,
   859 F. Supp. 2d 611 (S.D.N.Y. 2012) ......................................................... *passim*

*Noble v. 93 Univ. Place Corp.*,
   224 F.R.D. 330 (S.D.N.Y. 2004) ...................................................25

*O'Connor v. AR Res., Inc.*,
   No. 08 Civ. 1703, 2012 WL 12743 (D. Conn. Jan. 4, 2012) ..................................................14

*Odom v. Hazen Transp., Inc.*,
275 F.R.D. 400 (W.D.N.Y. 2011)..................................................................21

*Officers for Justice v. Civil Serv. Comm'n of San Francisco*,
688 F.2d 615 (9th Cir. 1982) ........................................................................18

*In re PaineWebber Ltd. P'ships Litig.*,
171 F.R.D. 104 (S.D.N.Y. 1997) ..................................................................16

*Palacio v. E*TRADE Fin. Corp.*,
No. 10 Civ. 4030, 2012 WL 1058409 (S.D.N.Y. Mar. 12, 2012) ...........13

*In re Penthouse Exec. Club Comp. Litig.*,
No. 10 Civ. 1145, 2013 WL 1828598 (S.D.N.Y. Apr. 30, 2013)..........16, 20

*Port Auth. Police Benevolent Ass'n v. Port Auth. of N.Y. & N.J.*,
698 F.2d 150 (2d Cir. 1983).........................................................................22

*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*,
237 F.R.D. 26 (E.D.N.Y. 2006) ...................................................................21

*Robidoux v. Celani*,
987 F.2d 931 (2d Cir. 1993)..........................................................................23

*Silverstein v. AllianceBernstein L.P.*,
No. 09 Civ. 5904, 2013 WL 6726910 (S.D.N.Y. Dec. 20, 2013)..........9, 10

*Torres v. Gristede's Oper. Corp.*,
No. 04 Civ. 3316, 2006 WL 2819730 (S.D.N.Y. Sept. 29, 2006) .............26

*Torres v. Gristede's Operating Corp.*,
No. 04 Civ. 3316, 2011 WL 4571792 (S.D.N.Y. Sept. 9, 2011) ...............17

*Toure v. Cent. Parking Sys.*,
No. 05 Civ. 5237, 2007 WL 2872455 (S.D.N.Y. Sept. 28, 2007) .............23

*In re Traffic Exec. Ass'n E. R.Rs.*,
627 F.2d 631 (2d Cir. 1980)..........................................................................12

*Trinidad v. Breakaway Courier Sys., Inc.*,
No. 05 Civ. 4116, 2007 WL 103073 (S.D.N.Y. Jan. 12, 2007)................23

*Velez v. Majik Cleaning Serv., Inc.*,
No. 03 Civ. 8698, 2007 WL 7232783 (S.D.N.Y. June 25, 2007)..............16

*In re Visa Check/MasterMoney Antitrust Litig*,
280 F.3d 124 (2d Cir. 2001)..........................................................................26

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005)............................................................................................11

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004)....................................................................................12, 15

*Willix v. Healthfirst, Inc.*,
    No. 07 Civ. 1143, 2011 WL 754862 (E.D.N.Y. Feb. 18, 2011).............................................10

*Yuzary v. HSBC Bank USA, N.A.*,
    No. 12 Civ. 3693, 2013 WL 5492998 (S.D.N.Y. Oct. 2, 2013) ..................................15, 24, 28

## Other Authorities

William B. Rubestein , Alba Conte & Herbert Newberg, *Newberg on Class Actions,*
    § 3.12 (5th ed. 2011) ...........................................................................................................21

Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*, § 11.22
    (4th ed. 2002) ........................................................................................10, 12, 13, 20

## INTRODUCTION

Subject to Court approval, Plaintiff Robert G. Keifer, as well as Proposed Plaintiffs Edward B. Roach, David Pagano, Markita P. Robinson, Jason Turner, Garland Osborn, Stephen Manolakis, Frank Rakowsky, Dennis Sanoske, Eric Everhart, Timothy Porter, Brian Pereira, Donna Oakes, Gregg Sime, Frank Seymour, and Allen Zayas (collectively, "Plaintiffs"), individually and on behalf of the classes of individuals that they seek to represent ("Class Members"), and Defendants Moran Foods, LLC and Moran Foods, Inc., together d/b/a Save-A-Lot, LTD. (additional d/b/a designations include Save-A-Lot, Save-A-Lot, Ltd. and Save-U-Foods) (collectively, "Save a Lot" or "Defendants") (together with Plaintiffs, the "Parties") have settled this wage and hour class and collective action for $4,500,000.

The proposed settlement satisfies all of the criteria for preliminary approval.  Plaintiff Kiefer respectfully requests that the Court (1) grant leave to file a Second Amended Complaint; (2) consolidate *Pagano v. Supervalu Inc.*, No. 13 Civ. 1846 (WGY) (D. Conn.) with this action; (3) grant preliminary approval of the Joint Stipulation of Settlement and Release ("Settlement Agreement"), Declaration of Justin M. Swartz ("Swartz Decl.") Ex. A;[1] (4) certify the proposed classes for settlement purposes; (5) appoint Outten & Golden LLP ("O&G"), The Hayber Law Firm, LLC ("HLF"), and Winebrake & Santillo, LLC ("W&S") (collectively, "Plaintiffs' Counsel") as Class Counsel; and (6) approve the proposed Notices of Class Action Settlement ("Class Notices"), Ex. C.  Defendants do not oppose this motion.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

### A.      Nature of Plaintiffs' Claims

Plaintiffs are current and former employees of Defendants who have worked as Assistant Store Managers ("ASMs").  Plaintiffs allege that Defendants violated the Fair Labor Standards

---

[1]      Unless otherwise indicated, all exhibits are attached to the Swartz Declaration.

Act ("FLSA") and state labor laws by failing to pay ASMs one and a half times their regular rate for all hours worked over 40 hours per week.  Swartz Decl. ¶ 13.

   **B.**      **The Overtime Litigations**

On March 9, 2011, Plaintiff Edward B. Roach filed a class action in the Superior Court of the State of Connecticut, asserting class claims on behalf of current and former Connecticut ASMs that Defendants' method of calculating the overtime premium pay owed to them violated the Connecticut Minimum Wage Act ("CMWA").  The action was then was transferred to the Complex Litigation Docket in the Judicial District of Hartford, No. HHD-CV-11-6023386S (X04) and captioned *Roach v. Moran Foods Inc.* ("*Roach*").  On March 28, 2011, Defendants filed a motion for summary judgment on one of Roach's theories of liability, which the court granted on March 16, 2012.  *See* Swartz Decl. ¶ 14.  On December 10, 2012, Roach appealed the court's summary judgment order in *Roach*.  *See* Swartz Decl. ¶ 16.

On May 18, 2012, Kiefer filed this class and collective action lawsuit in the United States District Court for the District of Connecticut, captioned *Kiefer v. Moran Foods Inc., d/b/a Save-A-Lot, LTD.* ("*Kiefer*"), on behalf of current and former ASMs, in which he claimed that Defendants' method of calculating the overtime premium pay owed to them violated the FLSA. He also asserted related Rule 23 class claims against Defendants under the CMWA based on the same practices.  On August 1, 2012, Defendants filed a motion to dismiss *Kiefer* and/or to stay the state law claims.  On February 19, 2013, the Court denied the motion to dismiss and granted the motion to stay the state law claims.  *See* Swartz Decl. ¶ 15.

On December 17, 2012, Kiefer filed a motion for FLSA conditional certification, which the Court granted on March 12, 2013.  On January 28, 2013, Defendants filed a motion for summary judgment in *Kiefer*, which the Court denied on May 2, 2013.  Between April 5, 2013,

and August 21, 2013, 890 individuals joined *Kiefer* as FLSA opt-in Plaintiffs.  *See* Swartz Decl. ¶ 17.

On March 25, 2013, David Pagano filed a class action lawsuit in the Philadelphia County Court of Common Pleas, No. 130303582, captioned *Pagano v. Supervalu Inc.* ("*Pagano*") (together with *Roach* and *Kiefer*, the "Litigation"), asserting class claims on behalf of current and former ASMs in the State of Pennsylvania, in which he claimed that Defendants' method of calculating the overtime premium pay owed to them violated the Pennsylvania Minimum Wage Act ("PMWA").  *See* Swartz Decl. ¶ 18.

On December 3, 2013, Pagano filed an Amended Complaint alleging a claim under the FLSA.  Defendants removed the action to the Eastern District of Pennsylvania, and Plaintiffs successfully moved to transfer the case to this Court.  *See* Swartz Decl. ¶ 19.

### C.   <u>Investigation and Discovery</u>

Before initiating these actions, Plaintiffs' Counsel conducted thorough investigations. Swartz Decl. ¶ 20; Ex. H (Hayber Decl.) ¶ 11.  This included investigation and legal research on the underlying merits of the class claims, the likelihood of obtaining liquidated damages and an extended FLSA statute of limitations, the proper measure of damages, and the likelihood of class certification.  Swartz Decl. ¶ 21; Ex. H (Hayber Decl.) ¶ 11; Ex. I (Winebrake Decl.) ¶ 3. Counsel also researched Defendants' likely affirmative defenses and their counterparts under state law.  Swartz Decl. ¶ 22; Ex. H (Hayber Decl.) ¶ 11.

The Parties completed extensive discovery.  In *Roach*, between March 2011 and March 2012, the Parties engaged in substantial discovery and discovery motion practice, which also related to the claims in *Kiefer* and *Pagano*.  *See* Swartz Decl. ¶ 23.  In *Kiefer*, between August 2012 and June 2013, the Parties also engaged in substantial discovery and discovery motion

3

practice, including substantial document production, several Fed. R. Civ. P. 30(b)(6) depositions, and depositions of several Plaintiffs and opt-in Plaintiffs, which also related to the claims in *Roach* and *Pagano*. *See* Swartz Decl. ¶ 23. In *Pagano*, on July 30, 2013, the Court entered a discovery order with a class certification discovery deadline of September 15, 2013, and thereafter Plaintiffs served discovery requests on Defendants. *See id.*

    **D.**    <u>**Settlement Negotiations**</u>

    On or around June 17, 2013, Roach, Kiefer, and Pagano, and Defendants, agreed to stay the Litigation in anticipation of mediation. *See* Swartz Decl. ¶ 24. On June 24, 2013, Kiefer and Defendants submitted a stipulation and order to the *Kiefer* Court whereby the Parties agreed to a stay of proceedings pending mediation. *See* Swartz Decl. ¶ 25. On July 18, 2013, Kiefer and Defendants entered into an agreement tolling the limitations period on the state wage and hour claims of the putative classes in the states of Illinois, Massachusetts, New Jersey, New York, North Carolina, Maryland, Oregon and Ohio, for whom Plaintiffs had anticipated amending their complaints ("Tolling Agreement"). *See id.*; ECF No. 295. On or around August 29, 2013, Roach and Defendants submitted a joint letter to the Connecticut Appellate Court requesting that it continue to stay the *Roach* appeal and requesting that the case be remanded to the Superior Court for approval of the settlement. *See* Swartz Decl. ¶ 26.

    On August 19 and 20, 2013, the Parties participated in two all-day mediation sessions in New York, conducted by an experienced class action mediator, Hunter Hughes of Rogers & Hardin LPP in Atlanta, Georgia. *See* Swartz Decl. ¶ 27. Plaintiffs' Counsel did significant work to prepare for the mediation. Swartz Decl. ¶ 28; Ex. H (Hayber Decl.) ¶ 11; Ex I (Winebrake Decl.) ¶ 3. They held several pre-mediation conference calls with the mediator, submitted a letter outlining Defendants' vulnerabilities and acknowledging risk, and compiled damage

calculations.  Swartz Decl. ¶ 28; Ex. H (Hayber Decl.) ¶ 11; *see* Ex I (Winebrake Decl.) ¶ 3.  At

the mediation, the parties came to an agreement in principle, and signed a term sheet

memorializing their agreements, which included the settlement amount.  Over the next several

months, the parties continued to negotiate additional terms of the settlement, and finalized the

Settlement Agreement on November 26, 2013.  *See* Swartz Decl. ¶ 29.

On December 5, 2013, Defendants removed *Pagano* to the United States District Court

for the Eastern District of Pennsylvania.  On December 9, 2013, the Parties moved to transfer

*Pagano* to the United States District Court for the District of Connecticut.  On December 11,

2013, that motion was granted.  On January 10, 2014, at the request of the Parties, *Pagano* was

transferred to this Court.

Along with this motion for preliminary settlement approval, Plaintiffs have moved to

consolidate *Pagano* with this case.  That motion is uncontested.

Plaintiffs have also filed an uncontested motion for leave to file a second amended

complaint that includes Pagano and Roach, among others, as additional named plaintiffs, and

adds state law Federal Rule of Civil Procedure 23 claims under the laws of Pennsylvania,

Illinois, Maryland, Massachusetts, Missouri, New Jersey, New York, Ohio, North Carolina, and

Rhode Island (together with Connecticut, the "Rule 23 States").

## II.   *PAGANO* SHOULD BE CONSOLIDATED WITH THIS ACTION

The Court should consolidate this case and *Pagano* because they raise almost identical

legal issues, and doing so would facilitate evaluation of the settlement.  Rule 42(a) permits a

court to consolidate two or more actions if they "involve a common question of law or fact."

Fed. R. Civ. P. 42(a); *see Lopez v. Burris Logistics Co.*, No. 12 Civ. 1039, 2013 WL 3337799

(D. Conn. July 3, 2013) (recognizing Rule 42 as "a valuable and important tool of judicial

administration" and consolidating actions to "eliminate unnecessary repetition and confusion")

(citations and internal quotation marks omitted).  This case and *Pagano* should be consolidated because they involve almost identical issues of law and fact.  Both cases raise unpaid overtime claims on behalf of the same category of workers, ASMs.  The central factual issues, namely, Defendants' policies and procedures with respect to the payment of overtime for its ASMs, are the same in both cases.  The legal issues, whether Defendants' pay practices met the requirements of the Fluctuating Work Week method under federal law, 29 C.F.R. § 778.114, are the same in both cases with respect to the FLSA claims.

Because of the many common issues of law and fact, and the fact that the parties negotiated a settlement that includes this action and *Pagano*, consolidation would streamline judicial evaluation of the fairness of the settlement, as well as approval of the class notice and claims procedures.  Fed. R. Civ. P. 42(a) and Rule 42(a) of the Local Rules for the District of Connecticut both allow for consolidation here.

## III.    LEAVE TO AMEND THE COMPLAINT SHOULD BE GRANTED

The Court should grant Plaintiff's uncontested motion to amend his complaint to add additional plaintiffs and their state law claims.  "Leave to file an amended complaint 'shall be freely given when justice so requires,' Fed. R. Civ. P. 15(a), and should not be denied unless there is evidence of undue delay, bad faith, undue prejudice to the non-movant, or futility."  *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  Justice requires allowing Plaintiff Kiefer to add additional plaintiffs and their claims under various state laws that are similar to the FLSA and Connecticut law claims that Kiefer brings, rather than requiring them to initiate new actions.  Defendants will not be prejudiced by the amendment and they consent to it.  Furthermore, the state law overtime claims the additional plaintiffs seek to bring are similar to the FLSA and Connecticut law claims already at issue in this action.  Plaintiff had no bad faith or dilatory motive in seeking the proposed

amendment.

## IV.   SUMMARY OF THE SETTLEMENT TERMS

### A.   <u>The Settlement Fund</u>

The Settlement Agreement creates a common fund of $4,500,000 (the "Fund"), Ex. A (Settlement Agreement) § 4.1, which covers Class Members' awards, service payments, attorneys' fees and costs, the settlement administrator's fees, and Defendant's share of payroll taxes.  Ex. A (Settlement Agreement) §§ 4.1-4.3, 4.5.

### B.   <u>Eligible Employees</u>

Eligible employees consist of four discrete groups of ASMs who worked at Defendants' stores.  Group A consists of individuals who filed a consent to join form in *Kiefer* before the full execution of this Agreement.  Group B consists of Rule 23 Class Members from Illinois, Maryland, Massachusetts, Missouri, New Jersey, New York, Ohio, North Carolina, and Rhode Island, who worked at Save-A-Lot during the longer of either the appropriate state limitations period for their state's statute or the three-year FLSA period (for the period August 20, 2010, through June 30, 2012), and who are not in Group A.  Group C consists of Rule 23 Class Members from Pennsylvania and Connecticut who are not in Group A.  Group C is divided into two subgroups.  Group C(1) consists of members of Group C who were employed by Save-A-Lot in Connecticut from March 9, 2009, through June 30, 2012.  Group C(2) consists of members of Group C who were employed by Save-A-Lot in Pennsylvania from March 25, 2010, through June 30, 2012.  Group D consists of all individuals not in Group A, B, or C, who worked for Defendants as an ASM between January 17, 2011 and June 30, 2012.  The Settlement Classes include approximately 2118 individuals.  Swartz Decl. ¶ 41.

Any member of Group A, B, C or D who wishes to receive a portion of the Settlement Fund must complete a Claim Form.  Ex. A (Settlement Agreement) § 3.5(A).  Unclaimed funds

distributed to members of Group A, B and D will revert to Defendants. *Id.* § 4.1(E). Unclaimed funds distributed to members of Group C will be redistributed to members of Group C who have timely cashed their settlement checks, or if the amount of unclaimed funds remaining is too small to practically be redistributed among class members, in the Claims Administrator's discretion, unclaimed funds attributable to members of Group C(1) shall be distributed to the designated Charity, the National Employment Law Project, under the *cy pres* doctrine, and unclaimed funds attributable to members of Group C(2) shall be distributed to the Pennsylvania IOLTA, per statute. *Id.* § 4.1(F).

### C.      Releases

All Class Members who sign and return a Claim Form ("Settlement Class Members") and cash their settlement checks release Defendants from their FLSA claims. *Id.* § 5.1(B). Each member of Groups B and C who does not timely opt out pursuant to this Agreement also releases Defendants from all state claims asserted in the Litigation, or that could have been asserted in the Litigation, based on the facts alleged in the Second Amended Complaint, through June 30, 2012. Ex. A (Settlement Agreement) § 5.1(A). In addition, all Named Plaintiffs will execute general releases. *Id.* § 5.1(C).

### D.      Allocation Formula

Settlement Class Members will be paid pursuant to an allocation formula that reflects the relative value of their claims, and is based on the actual amount of overtime coefficient each Settlement Class Member was paid, whether the Settlement Class Member opted in to the action before settlement, and in which state the Settlement Class Member worked. *Id.* § 4.4(C). The Parties have also agreed to set aside $50,000 as a reserve fund to cover any correctable errors or omissions. *Id.* § 4.1(C).

**E.**     **Attorneys' Fees, Litigation Costs, and Service Awards**

Plaintiffs will apply for up to one-third of the Fund as attorneys' fees.[2]  Plaintiffs will

also seek reimbursement of their actual litigation costs and expenses from the Fund.  Ex. A

(Settlement Agreement) § 4.2.  The Court need not decide attorneys' fees and costs now,

however.  Pursuant to Fed. R. Civ. P. 23(h) and 54(d)(2), after class settlement notice issues,

Plaintiffs will move for attorneys' fees and costs along with their Motion for Final Approval of

the Settlement.

Plaintiffs will apply for service awards of $10,000 for Named Plaintiffs Kiefer and

Pagano, who, along with Roach, participated most actively in the Litigation.  Plaintiffs will apply

for a service award of $30,000 for Named Plaintiff Roach, which will compensate him for his

participation in the Litigation and for settling his additional retaliation claims.  Finally, Plaintiffs

will apply for service awards of $2,000 each for Named Plaintiffs Markita P. Robinson, Jason

Turner, Garland Osborn, Stephen Manolakis, Frank Rakowski, Dennis Sanoske, Eric Everhart,

Timothy Porter, Brian Pereira, Donna Oakes, Gregg Sime, Frank Seymour, and Allen Zayas.

Ex. A (Settlement Agreement) § 4.3(A).[3]  These numbers reflect the relative amounts of work

---

[2]     This is a typical fee award in the Second Circuit.  *See Macedonia Church v. Lancaster Hotel, LP*, 05 Civ. 153, 2011 WL 2360138, at *14 (D. Conn. June 9, 2011) ("Class Counsel's request for 33-1/3% of the Settlement Fund is typical in class action settlements in the Second Circuit.") (collecting cases); *see also Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 477 (S.D.N.Y. 2013) ("Class Counsel's request for 33% of the Fund is reasonable and consistent with the norms of class litigation in this circuit.") (citation and internal quotation marks omitted); *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 623 (S.D.N.Y. 2012) ("Class and Plaintiff's Counsel's request for one-third of the Fund is reasonable and consistent with the norms of class litigation in this circuit.") (citation and internal quotation marks omitted); *Johnson v. Brennan*, No. 10 Civ. 4712, 2011 WL 4357376, at *19 (S.D.N.Y. Sept. 16, 2011) ("A fee of 33% of the Settlement Fund is reasonable and consistent with the norms of class litigation in this circuit.") (citation and internal quotation marks omitted).

[3]     These are modest service awards in the Second Circuit.  *See, e.g., Flores v. Anjost Corp.*, No. 11 Civ. 1531, 2014 WL 321831, at *9-10 (S.D.N.Y. Jan. 29, 2014) (approving $25,000 service awards to each of five named plaintiffs in wage and hour class action); *Silverstein v.*

each Named Plaintiff contributed to the Litigation.  The Court need not rule on the proposed

service awards now.  Plaintiffs will move for Court approval of the service awards

simultaneously with Plaintiffs' Motion for Final Approval of the Settlement.

### F.    Settlement Claims Administrator

The parties have agreed to retain Settlement Services, Inc. ("SSI") to administer the

settlement.  Swartz Decl. ¶ 38.  Courts routinely approve SSI as a claims administrator in cases

like this one.  *See, e.g.*, *Dixon v. Zabka*, No. 11 Civ. 982, 2013 WL 2391473, at *2 (D. Conn.

May 23, 2013); *Clark v. Ecolab Inc.*, Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2010 WL

1948198, at *8 (S.D.N.Y. May 11, 2010).  SSI's fees will be paid first from any reversion to

Defendants and then from the Fund.  Ex. A (Settlement Agreement) § 2.2.

## V.    CLASS ACTION SETTLEMENT PROCEDURE

The well-defined class action settlement procedure includes three distinct steps:

1.    Preliminary approval of the proposed settlement after submission to the Court of a
      written motion for preliminary approval;

2.    Dissemination of mailed and/or published notice of settlement to all affected class
      members; and

3.    A final settlement approval hearing at which class members may be heard regarding the
      settlement, and at which argument concerning the fairness, adequacy, and reasonableness
      of the settlement may be presented.

*See* Fed. R. Civ. P. 23(e); *see also* Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*

("*Newberg*"), §§ 11.22, *et seq.* (4th ed. 2002).  Plaintiffs request that the Court take the first step

*AllianceBernstein L.P.*, No. 09 Civ. 5904, 2013 WL 6726910, at *10 (S.D.N.Y. Dec. 20, 2013)
(granting service awards of $25,000 each to two named plaintiffs in wage and hour class action);
*Capsolas v. Pasta Res. Inc.*, No. 10 Civ. 5595, 2012 WL 4760910, at *9 (S.D.N.Y. Oct. 5, 2012)
(granting service award of $20,000 to class representative in wage and hour class action
settlement); *Matheson v. T-Bone Rest., LLC*, No. 09 Civ. 4214, 2011 WL 6268216, at *9
(S.D.N.Y. Dec. 13, 2011) (granting service award of $45,000 in wage and hour class action
settlement and discussing cases); *Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143, 2011 WL 754862,
at *7 (E.D.N.Y. Feb. 18, 2011) (granting service award of $30,000 in wage and hour class action
settlement and listing cases).

– granting preliminary approval of the Settlement Agreement, provisionally certifying the

Settlement Classes, approving Plaintiffs' Proposed Notices, and authorizing Plaintiffs to send it.

      The Parties respectfully submit the following proposed schedule for final resolution of

this matter for the Court's consideration and approval:

1.      Defendants will provide the Claims Administrator with an updated Class Contact List ("Class List") within 10 days after the Court grants Plaintiff's Motion for Preliminary Approval of Settlement.  Ex. A (Settlement Agreement) § 3.4(A).

2.      The Claims Administrator will prepare all preliminary allocations within 10 days of Defendants' provision of the Class List and will provide a copy of the allocations to Class Counsel and Defendants' Counsel for review.  Ex. A (Settlement Agreement) § 3.4(B).

3.      Within 20 days after the Court grants Plaintiff's Motion for Preliminary Approval of Settlement, the Claims Administrator will e-mail and mail to all members of Groups B and C the Court Approved Notice for those Groups.  Ex. A (Settlement Agreement) §§ 3.4(E), (F).

4.      Any member of Groups A, B, C and D who wishes to receive a portion of the Settlement Fund must complete a Claim Form.  The Claim Form must be postmarked no later than sixty (60) days from the mailing of the Notice to the Group member and no later than ninety (90) days from the Preliminary Approval Order.  Ex. A (Settlement Agreement) § 3.5(A).

5.      Each Group B or C Settlement Class Member will have 60 days after the date a Settlement Notice is mailed to him/her to opt out of the settlement or object to it ("Notice Period").  Ex. A (Settlement Agreement) § 3.5(B).

6.      A final fairness hearing will be held at the Court's convenience.

7.      Plaintiffs will file a Motion for Final Approval of Settlement no later than 10 days before the Fairness Hearing.  Ex. A (Settlement Agreement) § 3.7.

8.      The "Effective Date" of the settlement will be 31 days after the entry of the Court's Final Approval Order, or if an appeal has been filed, the day after all appeals are resolved in favor of final approval.  Ex. A (Settlement Agreement) § 1.12.

9.      The Claims Administrator will disburse settlement checks to the Settlement Class Members within 10 days of the Effective Date.  Ex. A (Settlement Agreement) § 3.12.

## VI.    PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE

      The law favors compromise and settlement of class action suits.  *Wal-Mart Stores, Inc. v.*

*Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (noting the "strong judicial policy in favor of

settlements, particularly in the class action context") (citation and internal quotation marks omitted); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("[T]here is an overriding public interest in settling class action litigation, and it should therefore be encouraged."); *see also Newberg* § 11.41 ("The compromise of complex litigation is encouraged by the courts and favored by public policy.").

The approval of a proposed class action settlement is a matter of discretion. *See Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1078-79 (2d Cir. 1995). "[C]ourts should give proper deference to the private consensual decision of the parties . . . [and] should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation. . . ." *Clark*, 2009 WL 6615729, at *3 (citation and internal quotation marks omitted); *see also Alli v. Boston Mkt. Corp.*, No. 10 Civ. 4, 2011 WL 6156938, at *1, *3 (D. Conn. Dec. 9, 2011) (granting preliminary approval of proposed class action settlement).

Preliminary approval requires only an "initial evaluation" of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties. *Clark*, 2009 WL 6615729, at *3 (citing *Newberg* § 11.25). To grant preliminary approval, the Court need only find that there is "'probable cause' to submit the [settlement] to class members and hold a full-scale hearing as to its fairness." *In re Traffic Exec. Ass'n E. R.Rs.*, 627 F.2d 631, 634 (2d Cir. 1980); *Newberg* § 11.25 (noting that "[i]f the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness . . . and appears to fall within the range of possible approval," the court should permit notice of the settlement to be sent to class members) (quoting *Manual for Complex Litigation* (Third) § 30.41). [4]

---

[4]     Courts often grant preliminary settlement approval without requiring a hearing or a court appearance. *See, e.g.*, *Hernandez v. Merrill Lynch & Co.*, No. 11 Civ. 8472, 2012 WL 5862749, at *1 (S.D.N.Y. Nov. 15, 2012) (granting preliminary approval based on plaintiffs' memorandum

"Fairness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184 (W.D.N.Y. 2005) (citations omitted). "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, Nos. 05 Civ. 10240, 05 Civ. 10287, 05 Civ. 10515, 05 Civ. 10610, 06 Civ. 304, 06 Civ. 347, 06 Civ. 1684, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007).

Preliminary approval is the first step in the settlement process. It simply allows notice to issue and for Class Members to object or opt out of the settlement. After the notice period, the Court will be able to evaluate the settlement with the benefit of Class Members' input.

### A. The Settlement is Fair, Reasonable, and Adequate.

In evaluating a class action settlement, courts in the Second Circuit generally consider the nine factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000) ("*Grinnell*"). Although the Court's task on a motion for preliminary approval is merely to perform an "initial evaluation," *Newberg* § 11.25, to determine whether the settlement falls within the range of possible final approval, or "the range of reasonableness," *id.* at § 11.26, it is useful for the Court to consider the criteria on which it will ultimately judge the settlement.

The *Grinnell* factors are (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages;

---

of law, attorney declaration, and exhibits); *Palacio v. E*TRADE Fin. Corp.*, No. 10 Civ. 4030, 2012 WL 1058409, at *1 (S.D.N.Y. Mar. 12, 2012) (same); *Alli*, 2011 WL 6156938, at *3 (same).

(6) the risks of maintaining the class action through trial;  (7) the ability of the defendants to

withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of

the best possible recovery; and (9) the range of reasonableness of the settlement fund to a

possible recovery in light of all the attendant risks of litigation.  *Grinnell*, 495 F.2d at 463.  All of

the *Grinnell* factors weigh in favor of approval of the Settlement Agreement, and certainly in

favor of preliminary approval.

### 1.    Litigation Through Trial Would be Complex, Costly, and Long (*Grinnell* Factor 1).

By reaching a favorable settlement prior to the resolution of dispositive motions or trial,

Plaintiffs seek to avoid significant expense and delay, and instead ensure recovery for the class.

"Most class actions are inherently complex and settlement avoids the costs, delays and multitude

of other problems associated with them."  *In re Austrian & German Bank Holocaust Litig.*, 80 F.

Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d

Cir. 2001); *see also O'Connor v. AR Res., Inc.*, No. 08 Civ. 1703, 2012 WL 12743, at *4 (D.

Conn. Jan. 4, 2012) (finding first factor weighed in favor of approving settlement,  although case

was "not particularly legally or factually complex, [because] there would still be a significant

amount of work and effort to prepare the case for trial").  This case is no exception, with

approximately 2118 Class Members and claims under federal and multiple state laws.

Further litigation here would cause additional expense and delay.  If the Court denies the

motion for preliminary settlement approval, the *Roach* appeal regarding the permissibility of the

FWW overtime pay method in Connecticut will have to be decided, discovery will have to

resume, and most likely, fact-intensive trials will be necessary to determine the validity of

Defendants' overtime payment methods to ASMs.  A trial would be lengthy and complex and

would consume tremendous time and resources for the Parties and the Court.  Any judgment

14

would likely be appealed, further extending the litigation.  The settlement, on the other hand, makes monetary relief available to Class Members in a prompt and efficient manner.  Therefore, the first *Grinnell* factor weighs in favor of approval.

### 2.    The Reaction of the Class Has Been Positive (*Grinnell* Factor 2).

Notice of the settlement and its details has not yet issued to the class.  The Court should more fully analyze this factor after notice issues and Class Members are given the opportunity to opt out or object.  At this early stage in the process, the Named Plaintiffs have expressed their approval of the settlement by signing the Settlement Agreement.  Swartz Decl. ¶ 40.   Therefore, this factor weighs in favor of approval.  *Yuzary v. HSBC Bank USA, N.A.*, No. 12 Civ. 3693, 2013 WL 5492998, at *6 (S.D.N.Y. Oct. 2, 2013).

### 3.    Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (Grinnell Factor 3).

The Parties have completed ample discovery to recommend settlement.  The proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating."  *In re Warfarin*, 391 F.3d at 537.  "[T]he pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . [, but] an aggressive effort to ferret out facts helpful to the prosecution of the suit."  *In re Austrian*, 80 F. Supp. 2d at 176 (citation and internal quotation marks omitted).  The Parties' discovery here meets and exceeds this standard.  The Parties have completed significant discovery in all three cases.  Specifically, Plaintiffs' Counsel have reviewed numerous documents, taken several Rule 30(b)(6) depositions, and defended the depositions of several Plaintiffs and opt-in Plaintiffs.  Swartz Decl. ¶ 23.  In addition, the Plaintiffs have reviewed and analyzed data sufficient to calculate damages, including information about the number of employee workweeks in the class period and class member salary information.  *Id.* ¶ 28.   This factor favors preliminary approval.

15

*See In re Penthouse Exec. Club Comp. Litig.*, No. 10 Civ. 1145, 2013 WL 1828598, at *4

(S.D.N.Y. Apr. 30, 2013) (finding, in case where significant discovery had occurred, that

"Plaintiffs' Counsel did substantial work identifying, investigating, prosecuting, and settling

Plaintiffs' and Class Members' claims"); *Dorn v. Eddington Sec., Inc.*, No. 08 Civ. 10271, 2011

WL 382200, at *3 (S.D.N.Y. Jan. 21, 2011) (same).

### 4.  Plaintiffs Would Face Real Risks if the Case Proceeded (*Grinnell* Factors 4 and 5).

Although Plaintiffs believe their case is strong, it is subject to considerable risk.

"Litigation inherently involves risks."  *In re PaineWebber Ltd. P'ships Litig.,* 171 F.R.D. 104,

126 (S.D.N.Y. 1997).  Indeed, "[i]f settlement has any purpose at all, it is to avoid a trial on the

merits because of the uncertainty of the outcome."  *In re Ira Haupt & Co.*, 304 F. Supp. 917, 934

(S.D.N.Y. 1969); *see also Velez v. Majik Cleaning Serv., Inc.*, No. 03 Civ. 8698, 2007 WL

7232783, at *6 (S.D.N.Y. June 25, 2007).

A trial on the merits would involve significant risks for Plaintiffs as to both liability and

damages.  Plaintiffs would have to overcome Defendants' defense that they appropriately paid

ASMs overtime pursuant to the fluctuating workweek method set forth in 29 C.F.R. 778.114(a),

and the corresponding provisions under applicable state laws.  Defendants also argue that, if the

Court were to find liability, no liquidated damages should be awarded and a two-year statute of

limitations should apply.  *See* ECF No. 185.  While Plaintiffs believe that they could ultimately

establish both liability and damages, this may require significant factual development at trial.

Plaintiffs' Counsel are experienced and realistic, and understand that the resolution of liability

issues, the outcome of the trial, and the inevitable appeals process are inherently uncertain in

terms of outcome and duration.  The proposed settlement alleviates these uncertainties.  This

factor therefore weighs in favor of approval.

### 5.      Maintaining the Class Through Trial Would Not Be Simple (*Grinnell* Factor 6).

The risk of obtaining class certification and maintaining it through trial also is present. The Court has not certified any Rule 23 Classes yet, and the Parties anticipate that such a determination would be reached only after intense, exhaustive briefing.  In opposing class certification, Defendants likely would argue that individualized questions preclude class certification.  Risk, expense, and delay permeate such processes.  Settlement eliminates this risk, expense, and delay.  Swartz Decl. ¶¶ 34, 36.

In addition, were the case to proceed, Defendants likely would challenge the determination that Plaintiffs may proceed on their FLSA claims on behalf of a collective pursuant to 29 U.S.C. § 216(b).  Settlement eliminates the risk and delay inherent in this process. Swartz Decl. ¶¶ 34, 36.  As such, this factor weighs in favor of approval.

### 6.      Defendants' Ability to Withstand a Greater Judgment Is Not Determinative (*Grinnell* Factor 7).

There is no evidence here pertaining to whether Defendants could withstand a greater judgment or not.  Swartz Decl. ¶ 35.  In recent years, however, even some of the largest institutions have failed, leaving the class with no recourse.  *See, e.g.*, *Aber-Shukofsky v. JPMorgan Chase & Co.*, 755 F. Supp. 2d 441, 443, 446-51 (S.D.N.Y. 2010) (finding plaintiffs' wage and hour claims against Washington Mutual's successors in interest to be barred).  Other companies in Defendants' industry, the grocery store industry, have filed for bankruptcy, *see In re Great Atl. & Pac. Tea Co.*, 472 B.R. 666, 668-69 (S.D.N.Y. 2012), or threatened bankruptcy, *see Torres v. Gristede's Operating Corp.*, No. 04 Civ. 3316, 2011 WL 4571792, at *1 (S.D.N.Y. Sept. 9, 2011).  However, even if Defendants could withstand a greater judgment, a "defendant['s] ability to withstand a greater judgment, standing alone, does not suggest that the

17

settlement is unfair." *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian*, 80 F. Supp. 2d at 178 n.9). Therefore, this factor is neutral and does not preclude the Court from granting preliminary approval.

> **7.   The Settlement Fund is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9).**

Defendants have agreed to settle this case for a substantial amount, $4,500,000. Swartz Decl. ¶ 37. The amount represents substantial value given the attendant risks of litigation, even though recovery could be greater if Plaintiffs attained class certification, overcame motions to decertify the class or collective, succeeded on all claims at trial, and survived an appeal.

The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'" *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian*, 80 F. Supp. 2d at 178). "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). "[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinnell Corp.*, 495 F.2d at 455 n.2. "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair." *Officers for Justice v. Civil Serv. Comm'n of San Francisco*, 688 F.2d 615, 628 (9th Cir. 1982); *see also Cagan v. Anchor Sav. Bank FSB*, No. 88 Civ. 3024, 1990 WL 73423, at *12-13 (E.D.N.Y. May 22, 1990) (approving $2.3 million class settlement over objections that the "best possible recovery would be approximately $121 million").

Here, the settlement provides much more than "a fraction of the potential recovery." The settlement represents a substantial recovery for Class Members, particularly in light of the risks of litigation. These risks included the risk of losing class certification, having the collective action decertified, losing on the merits, and losing on appeal, in addition to the risk of Defendants prevailing on their exemption arguments. Swartz Decl. ¶¶ 34, 36. Weighing the benefits of the settlement against the available evidence and the risks associated with proceeding in the litigation, the settlement amount is reasonable.

* * *

The *Grinnell* factors all weigh in favor of issuing preliminary approval of the settlement. In the event that a substantial number of objectors come forward with meritorious objections, the Court can reevaluate its determination. Because the settlement, on its face, is "'fair, adequate, and reasonable, and not a product of collusion,'" *Frank*, 228 F.R.D. at 184 (quoting *Joel A. v. Giuliani*, 218 F.3d 132, 138-39 (2d Cir. 2000)), the Court should grant preliminary approval.

## VII.  PROVISIONAL CERTIFICATION OF THE RULE 23 CLASSES IS APPROPRIATE.

Plaintiffs respectfully request that the Court provisionally certify the following Rule 23 classes (collectively, the "Settlement Classes"):

> all current and former employees of Defendants who have worked as ASMs from June 17, 2010 through June 30, 2012, in Illinois, Maryland, Massachusetts and Rhode Island; from June 17, 2007 through June 30, 2012 in New York; from August 20, 2010 through June 30, 2012 in Missouri, New Jersey, Ohio, and North Carolina; from March 9, 2009, through June 30, 2012 in Connecticut, and from March 25, 2010, through June 30, 2012 in Pennsylvania

under Federal Rule of Civil Procedure 23(e) for purposes of effectuating the settlement. As discussed below, the Settlement Classes meet all of the requirements for class certification for settlement purposes, and Defendants do not oppose provisional certification for settlement

19

purposes only.  Ex. A (Settlement Agreement) §§ 3.3(C), (E), 5.3, 7.1; *see also Newberg* § 11.27

("When the court has not yet entered a formal order determining that the action may be

maintained as a class action, the parties may stipulate that it be maintained as a class action for

the purpose of settlement only."); *Cnty. of Suffolk v. Long Island Lighting Co.*, 710 F. Supp.

1422, 1424 (E.D.N.Y. 1989) ("It is appropriate for the parties to a class action suit to negotiate a

proposed settlement of the action prior to certification of the class."), *aff'd in part, rev'd in part*

*on other grounds*, 907 F.2d 1295 (2d Cir. 1990).

Provisional settlement class certification and appointment of class counsel have several

practical purposes, including avoiding the costs of litigating class status while facilitating a

global settlement, ensuring notification of all Class Members of the terms of the proposed

Settlement Agreement, and setting the date and time of the final approval hearing.  *See In re*

*Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 790-92 (3d Cir.

1995) (noting practical purposes of provisionally certifying settlement class); *In re Penthouse,*

2013 WL 1828598, at *3 (conditionally certifying wage and hour settlement class and granting

preliminary approval of settlement).

Under Rule 23(a), a class action may be maintained if all of the prongs of Rule 23(a) are

met, as well as one of the prongs of Rule 23(b).  Rule 23(a) requires that:

(1)     the class is so numerous that joinder of all members is impracticable;

(2)     there are questions of law or fact common to the class;

(3)     the claims or defenses of the representative parties are typical of the claims or defenses of
        the class; and

(4)     the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  Rule 23(b)(3) requires the court to find that "questions of law or fact

common to class members predominate over any questions affecting only individual members,

and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  *Id.* at (b)(3).  In the Second Circuit, "Rule 23 is given liberal rather than restrictive construction, and courts are to adopt a standard of flexibility" in evaluating class certification.  *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 31 (E.D.N.Y. 2006) (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997)).

### A.   <u>Numerosity</u>

"[N]umerosity is presumed at a level of 40 members."  *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).  Plaintiffs satisfy this requirement in each of the Rule 23 States (Illinois, Maryland, Massachusetts, Rhode Island, New York, Missouri, New Jersey, Ohio, North Carolina, Connecticut and Pennsylvania) because there are approximately 40 or more class members in each of these states.[5]  Ex. B (Second Amended Complaint) ¶¶ 87-88, 95-96, 105-06, 115-16, 125-26, 135-36, 145-46, 156-57, 163-64, 173-74, 183-84.

### B.   <u>Commonality</u>

The proposed settlement classes also satisfy the commonality requirement, the purpose of which is to test "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."  *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982).  Although the claims need not be

---

[5]      Although one state class, Rhode Island's, is comprised of approximately 32 people, *see* Ex. B (Second Amended Complaint) ¶ 156, the numerosity requirement is still met, given the relatively small size of the individual claims in this action and the economies achieved by avoiding multiple suits.  *See* 3 William B. Rubenstein, Alba Conte & Herbert Newberg, Newberg on Class Actions § 3.12 (5th ed. 2011); *see also Odom v. Hazen Transp., Inc.*, 275 F.R.D. 400, 407 (W.D.N.Y. 2011) (certifying class of 16 workers in wage and hour class action, after considering "judicial economy arising from the avoidance of a multiplicity of actions . . . financial resources of class members, [and] the ability of claimants to institute individual suits.") (quoting *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993)).

identical, they must share common questions of fact or law.  *Port Auth. Police Benevolent Ass'n v. Port Auth. of N.Y. & N.J.*, 698 F.2d 150, 153-54 (2d Cir. 1983).  The proper question is whether there is a "unifying thread" among the claims to warrant class certification.  *Kamean v. Local 363, Int'l Bhd. of Teamsters*, 109 F.R.D. 391, 394 (S.D.N.Y. 1986).  Courts construe the commonality requirement liberally.  *Frank*, 228 F.R.D. at 181 (citation omitted).

This case involves numerous common issues.  Plaintiffs and Class Members all bring the identical claims that Defendants failed to pay them overtime wages in violation of state wage and hour laws by utilizing the fluctuating workweek or, if the fluctuating workweek is a lawful method of paying overtime, by improperly applying it.  *See Morris*, 859 F. Supp. 2d at 615-16 (commonality satisfied where, among other allegations, plaintiffs claimed that defendant had policy of not paying all class members overtime pay); *Alli*, 2011 WL 6156938, at *2 (common questions included whether "class members were properly classified as exempt from overtime requirements"); *Clark*, 2010 WL 1948198, at *3 (common issues included "whether [defendant] failed to pay [p]laintiffs and the . . . [c]lass [m]embers overtime premium pay for all hours they worked over 40 in a workweek; and . . . whether [defendant] maintained accurate time records of the hours [p]laintiffs and the state settlement [c]lass [m]embers worked").

### C.    Typicality

Rule 23 requires that the claims of the representative party be typical of the claims of the class.  "Like the commonality requirement, typicality does not require the representative party's claims to be identical to those of all class members."  *Frank*, 228 F.R.D. at 182.  Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."  *Marisol A.*, 126 F.3d at 376 (internal quotations omitted).  "[M]inor variations in the fact patterns underlying

22

individual claims" do not defeat typicality when the defendants direct "the same unlawful conduct" at the named plaintiffs and the class. *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993).  Courts evaluate typicality "with reference to the company's actions, not with respect to particularized defenses it might have against certain class members." *Trinidad v. Breakaway Courier Sys., Inc.*, No. 05 Civ. 4116, 2007 WL 103073, at *6 (S.D.N.Y. Jan. 12, 2007) (quoting *Wagner v. NutraSweet Co.*, 95 F.3d 527, 534 (7th Cir. 1996)).

Plaintiffs' claims arise from the same factual and legal circumstances that form the bases of the Class Members' claims.  Defendants paid all Plaintiffs and Class Members using the same method pursuant to the same company policy and pattern or practice.  Plaintiffs also claim the same injuries as do Class Members – that Defendants failed to properly pay them for overtime hours worked.  Accordingly, Plaintiffs satisfy the typicality requirement.  *See Hernandez*, 2012 WL 5862749, at *3 (typicality satisfied where "[p]laintiffs' claims for overtime pay [arose] from the same factual and legal circumstances that form[ed] the bases of the [c]lass [m]embers' claims"); *Morris*, 859 F. Supp. 2d at 616 (same); *Alli*, 2011 WL 6156938, at *2 (same).

### D.     Adequacy of the Named Plaintiffs

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "The adequacy requirement exists to ensure that the named representative will 'have an interest in vigorously pursuing the claims of the class, and . . . have no interests antagonistic to the interests of other class members.'"  *Toure v. Cent. Parking Sys.*, No. 05 Civ. 5237, 2007 WL 2872455, at *7 (S.D.N.Y. Sept. 28, 2007) (quoting *Denney v. Deutsche Bank AG,* 443 F.3d 253, 268 (2d Cir. 2006)).  Plaintiffs meet the adequacy requirement because there is no evidence that Plaintiffs have interests that are antagonistic to or at odds with those of Class Members.  *See Morris*, 859 F. Supp. 2d at 616 (no

23

evidence that named plaintiffs' and class members' interests were at odds); *Alli*, 2011 WL

6156938, at *2 (same).  Plaintiffs' Counsel also meet the adequacy requirement of Rule

23(a)(4).[6]

---

[6]     O&G attorneys "have substantial experience prosecuting and settling employment class actions, including wage and hour class actions[,] and are well-versed in wage and hour and class action law," *Johnson*, 2011 WL 1872405, at *2 (internal quotation marks omitted); *accord Yuzary*, 2013 WL 1832181, at *4; *see also Capsolas*, 2012 WL 1656920, at *2 (O&G attorneys "have years of experience prosecuting and settling wage and hour class actions, and are well-versed in wage and hour law and in class action law"); *Alli*, 2011 WL 6156938, at *2 (O&G counsel are "qualified and experienced in the issues raised in" wage and hour overtime litigation); *McMahon v. Olivier Cheng Catering & Events, LLC*, No. 08 Civ. 8713, 2010 WL 2399328 at *6 (S.D.N.Y. Mar. 3, 2010) (O&G "are experienced employment lawyers with good reputations among the employment law bar . . . [and] have prosecuted and favorably settled many employment law class actions, including wage and hour class actions"); *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 158 (S.D.N.Y. 2008) (O&G lawyers have "an established record of competent and successful prosecution of large wage and hour class actions, and the attorneys working on the case are likewise competent and experienced in the area"); and have served as lead counsel on numerous class and collective actions, including *Capsolas*, 2012 WL 1656920, at *2 (appointing O&G as class counsel); *Johnson*, 2011 WL 1872405, at *2 (same); and *Clark*, 2009 WL 6615729 at *5 (same), among others.
    HLF lawyers also are experienced in prosecuting wage and hour class and collective actions and have been appointed class counsel numerous times based on that experience.  *See, e.g.*, *Aros v. United Rentals, Inc.*, Nos. 10 Civ. 73, *et al.*, 2012 WL 3060470, at *6 (D. Conn. July 26, 2012) (HLF and O&G consist of "experienced employment lawyers with good reputations among the employment law bar.  They have prosecuted and favorably settled many employment law class actions, including wage and hour class actions."); *Alli*, 2012 WL 1356478, at *2 (appointing Richard E. Hayber of the HLF as class counsel; finding counsel to be "experienced").
    W&S lawyers also are "qualified, experienced and capable" in wage and hour class action litigation and have been appointed class counsel based on that experience.  *See, e.g., Craig v. Rite Aid Corp.*, No. 08 Civ. 2317, 2013 WL 84928, at *8, *12 (M.D. Penn. Jan. 7, 2013) ("Class Counsel are experienced wage and hour class action litigators with decades of accomplished complex class action experience between them and that the Class Members have benefitted tremendously from able counsel's representation"); *Edelen v. Am. Residential Servs., LLC*, 11 Civ. 2744, 2013 WL 3816986, at *3, *7 (D. Md. July 22, 2013) (appointing W&S as class counsel; finding "plaintiff's attorneys are qualified, experienced, and capable" as shown "by their background in litigating wage-and-hour class action lawsuits"); *Cuevas v. Citizens Fin. Grp.*, 283 F.R.D. 95, 101 (E.D.N.Y. 2012) (recognizing that W&G has "been appointed class counsel for dozens for wage and hour class claims across the country"), *vacated on other grounds*, 526 Fed. Appx. 19 (2d Cir. 2013).

### E.        Certification is Proper Under Rule 23(b)(3)

Rule 23(b)(3) requires that common questions of law or fact "predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).

### 1.        Common Questions Predominate

To establish predominance, Plaintiffs must demonstrate that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole . . . predominate over those issues that are subject only to individualized proof." *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 107-08 (2d Cir. 2007). The essential inquiry is whether "liability can be determined on a class-wide basis, even when there are some individualized damage issues." *Marriott v. Cnty. of Montgomery*, 227 F.R.D. 159, 173 (N.D.N.Y. 2005) (quoting *In re Visa Check/MasterMoney Antitrust Litig*, 280 F.3d 124, 139 (2d Cir. 2001)). Simply because a defense may arise and affect different class members differently does not defeat predominance. *See Noble v. 93 Univ. Place Corp.*, 224 F.R.D. 330, 339 (S.D.N.Y. 2004) (quoting *In re Visa Check/MasterMoney*, 280 F.3d at 138). Where plaintiffs are "unified by a common legal theory" and by common facts, predominance is satisfied. *McBean v. City of New York*, 228 F.R.D. 487, 502 (S.D.N.Y. 2005). The predominance requirement is "designed to determine whether 'proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Frank*, 228 F.R.D. at 183 (quoting *Amchem*, 521 U.S. at 623).

Here, Class Members' common factual allegations and legal theory – that Defendants violated federal and state law by failing to pay them proper overtime wages – predominate over

25

any variations among Class Members.  *See Hernandez*, 2012 WL 5862749, at *4 (common

factual allegations and legal theory predominated over variations in wage and hour

misclassification case); *Alli*, 2011 WL 6156938, at *2 (same); *Torres v. Gristede's Oper. Corp.*,

No. 04 Civ. 3316, 2006 WL 2819730, at *16 (S.D.N.Y. Sept. 29, 2006) (plaintiffs "introduced

sufficient proof that Defendants engaged in a common practice to deny employees overtime

pay," and "this issue predominates over any individual calculations of overtime wages").

### 2.    A Class Action Is a Superior Mechanism

The second part of the Rule 23(b)(3) analysis compares whether "the class action device

[is] superior to other methods available for a fair and efficient adjudication of the controversy."

*Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968); *Amchem*, 521 U.S. at 617 ("The policy at

the very core of the class action mechanism is to overcome the problem that small recoveries do

not provide the incentive for any individual to bring a solo action prosecuting his or her rights.")

(internal citation omitted).  Rule 23(b)(3) sets forth a non-exclusive list of factors pertinent to

judicial inquiry into the superiority of a class action, including: the class members' interests in

individually controlling the prosecution or defense of separate actions; whether individual class

members wish to bring, or have already brought, individual actions; and the desirability of

concentrating the litigation of the claims in the particular forum. Fed. R. Civ. P. 23(b)(3).[7]

Concentrating the litigation in this Court is desirable because a significant portion of the

---

[7]    Another factor, whether the case would be manageable as a class action at trial, is not of
consequence in the context of a proposed settlement.  *See Amchem*, 521 U.S. at 620
("Confronted with a request for settlement-only class certification, a [trial] court need not inquire
whether the case, if tried, would present intractable management problems, . . . for the proposal
is that there be no trial."); *Frank*, 228 F.R.D. at 183 ("The court need not consider the
[manageability] factor, however, when the class is being certified solely for the purpose of
settlement.").  Moreover, denying class certification on manageability grounds is "disfavored"
and "should be the exception rather than the rule."  *In re Visa Check/MasterMoney Antitrust
Litig*, 280 F.3d 124, 140 (2d Cir. 2001) (citation omitted).

allegedly wrongful conduct occurred within its jurisdiction, and many of Defendants' stores are located here.  Especially with the consolidation of this action with the two state court cases, the class device will achieve economies of scale, conserve judicial resources, preserve public confidence in the integrity of the judicial system by avoiding the waste and delay of repetitive proceedings, and prevent inconsistent adjudications of similar claims.  *See Morris*, 859 F. Supp. 2d at 617; *Alli*, 2011 WL 6156938, at \*2; *Damassia*, 250 F.R.D. at 161, 164.  A class action is the best mechanism to fairly and efficiently resolve Class Members' claims.

## VIII.   PLAINTIFFS' COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL

Plaintiffs' Counsel should be appointed as Class Counsel under Rule 23(g), which governs the standards and framework for appointing class counsel.  Rule 23 (g) sets forth four criteria: (1) "the work counsel has done in identifying or investigating potential claims in the action;" (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;" (3) "counsel's knowledge of the applicable law; and" (4) "the resources that counsel will commit to representing the class[.]"  Fed. R. Civ. P. 23(g)(1)(A); *see also Damassia*, 250 F.R.D. at 165.  The Court may also consider any other matter pertinent to counsel's ability to fairly and adequately represent the class.  Fed. R. Civ. P. 23(g)(1)(B).

Plaintiffs' Counsel meet all of these criteria.  Plaintiffs' Counsel have done substantial work identifying, investigating, prosecuting, and settling Plaintiffs' and Class Members' claims.  Swartz Decl. ¶¶ 20-33; Ex. H (Hayber Decl.) ¶ 11; Ex I (Winebrake Decl.) ¶ 3.  Plaintiffs' Counsel have substantial experience prosecuting and settling employment class actions, including wage and hour class actions, and the lawyers assigned to this matter are well-versed in class action and wage and hour law and are well-qualified to represent the class.  Swartz Decl. ¶¶ 6-12; Ex. H (Hayber Decl.) ¶¶ 5-10; Ex I (Winebrake Decl.) ¶¶ 4-8.  Courts in this district and elsewhere have repeatedly found counsel to be adequate class counsel in wage and hour class

actions.[8]

## IX.   THE NOTICE PLAN AND DISTRIBUTION PROCESS ARE APPROPRIATE

The Proposed Notices, which are attached to the Settlement Agreement as Exhibit C,

comply with due process and Federal Rule of Civil Procedure 23.  Notice must provide:

the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language:

(i)      the nature of the action;
(ii)     the definition of the class certified;
(iii)    the class claims, issues, or defenses;
(iv)     that a class member may enter an appearance through an attorney if the member so desires;
(v)      that the court will exclude from the class any member who requests exclusion;
(vi)     the time and manner for requesting exclusion; and
(vii)    the binding effect of a class judgment on members under Rule 23(c)(3).

---

[8]      *See Aros*, 2012 WL 3060470, at *6 (O&G and HLF "are experienced employment lawyers with good reputations among the employment law bar"); *Alli*, 2011 WL 6156938, at *3 (O&G counsel are "qualified and experienced in the issues raised in" wage and hour overtime litigation); *see also Glatt v. Fox Searchlight Pictures, Inc.*, 293 F.R.D. 516, 538 (S.D.N.Y. 2013) (appointing O&G class counsel under Rule 23(g)); *Jacob v. Duane Reade, Inc.*, 289 F.R.D. 408, 423 (S.D.N.Y. 2013) (stating that O&G "have shown themselves to be vigorous representatives of the putative class"); *Yuzary*, 2013 WL 1832181, at *4 (S.D.N.Y. Apr. 30, 2013) ("O&G attorneys have substantial experience prosecuting and settling employment class actions, including wage and hour class actions, and are well-versed in wage and hour and class action law.") (citation and internal quotation marks omitted); *Capsolas*, 2012 WL 1656920, at *2 (O&G attorneys "have years of experience prosecuting and settling wage and hour class actions, and are well-versed in wage and hour law and in class action law"); *Johnson*, 2011 WL 1872405, at *2 (O&G "have substantial experience prosecuting and settling employment class actions, including wage and hour class actions[,] and are well-versed in wage and hour and class action law."); *Damassia*, 250 F.R.D. at 158 (O&G lawyers have "an established record of competent and successful prosecution of large wage and hour class actions, and the attorneys working on the case are likewise competent and experienced in the area").

HLF lawyers also have been found to be adequate class counsel based on wage and hour experience.  *See Aros*, 2012 WL 3060470, at *6 (appointing HLF as class counsel); *Alli*, 2012 WL 1356478, at *2 (same).

W&S lawyers also are "qualified, experienced and capable" in wage and hour class action litigation and have been appointed class counsel based on that experience.  *Edelen*, 2013 WL 3816986, at *3, *7 (appointing W&S as class counsel); *Craig*, 2013 WL 84928, at *8, *12 (same); *Cuevas*, 283 F.R.D. at 101 (same).
.

Fed. R. Civ. P. 23(c)(2)(B).

The Proposed Notices satisfy each of these requirements.  They also describe the terms of the settlement, inform the class about the allocation of attorneys' fees, and provide specific information regarding the date, time, and place of the final approval hearing.  Courts have approved class notices even when they provided only general information about a settlement. *See In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 60 (S.D.N.Y. 1993) (class notice "need only describe the terms of the settlement generally"); *see also Hernandez*, 2012 WL 5862749, at *4-5; *Johnson*, 2011 WL 1872405, at *3.  The detailed information in the Proposed Notices far exceeds this bare minimum and fully complies with the requirements of Rule 23(c)(2)(B).

The Rule 23 Notice, which informs Class Members of their right to opt out of and object to the settlement, will be sent to members of Group A who worked in a Rule 23 state, as well as to members of Groups B and C.  *See* Ex. C(1).  The Group A non-Rule 23 State Notice will be sent to those members of Group A who did not work in a Rule 23 State.  *See* Ex. C(2).  The Group D Notice will be sent to members of Group D.  *See* Ex. C(3).

The Settlement Agreement provides that the Notices will be emailed and mailed by the Claims Administrator to the last known address of each Settlement Class Member within 20 days of the Court's issuance of the Preliminary Approval Order.  Ex. A (Settlement Agreement) §§ 3.4(B)-(F).  The Claims Administrator will take reasonable steps to obtain the correct addresses of any Class Member whose notice is returned as undeliverable and will attempt re-mailing.  *Id.* § 3.4(H).  As discussed above, the Proposed Notices contain information about how to exclude oneself or object to the settlement.  Each Rule 23 Class Member will have 60 days from the date of mailing (and no later than 90 days from the date of the Court's order granting preliminary

29

approval) to submit opt-out requests or to comment on or object to the settlement.  Ex. A

(Settlement Agreement) §§ 3.5(B), (D), 3.6.  The Claims Administrator will mail Class

Members their payments within 10 business days after the Effective Date.  *Id.* § 3.12.

## X.   PLAINTIFFS WILL SEEK APPROVAL OF THE FLSA SETTLEMENT

Plaintiffs will seek approval of the settlement of the FLSA claims with their final

approval motion.  The standard for approval of a FLSA settlement is lower than for a Rule 23

settlement because a FLSA settlement does not implicate the same due process concerns.  *See*

*McMahon*, 2010 WL 2399328, at *6 ("The standard for approval of an FLSA settlement is lower

than for a Rule 23 settlement because an FLSA settlement does not implicate the same due

process concerns as does a Rule 23 settlement.").  When Plaintiffs file their motion for final

approval of the settlement, they will seek approval of the FLSA settlement.

## <u>CONCLUSION</u>

For the reasons set forth above, Plaintiffs respectfully request that the Court grant their

Motion for Preliminary Approval of Settlement and enter the Proposed Order.

Dated: February 11, 2014
     New York, New York

                       Respectfully submitted,

                       **OUTTEN & GOLDEN LLP**

                       /s/ *Justin M. Swartz*
                       Justin M. Swartz (admitted *pro hac vice*)
                       JMS@outtengolden.com
                       Juno Turner (admitted *pro hac vice*)
                       jturner@outtengolden.com
                       3 Park Avenue, 29th Floor
                       New York, New York 10016
                       Telephone:  (212) 245-1000
                       Facsimile:  (212) 977-4005

                       **The Hayber Law Firm, LLC**
                       Richard Eugene Hayber (ct 11629)

rhayber@hayberlawfirm.com
Erick I. Díaz Vázquez (ct 27023)
ediaz@hayberlawfirm.com
221 Main Street, Suite 502
Hartford, CT 06106
Telephone:  (860) 522-8888
Facsimile:  (860) 218-9555

**Winebrake & Santillo, LLC**
Peter Winebrake (admitted *pro hac vice*)
pwinebrake@winebrakelaw.com
715 Twining Rd
Dresher PA, 19025
Telephone:  (215) 884-2491
Facsimile: (215) 884-2492

**Attorneys for Plaintiffs, the
Collective, and the Putative Class**

31