# Exhibit A

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| ROBERT G. KIEFER, individually and on behalf of all others similarly situated,<br><br>                          Plaintiff,<br><br>     v.<br><br>MORAN FOODS, LLC and MORAN FOODS, INC., together d/b/a SAVE-A-LOT, LTD.;<br><br>                        Defendant. | No. 12 Civ. 0756 |

### JOINT STIPULATION OF GLOBAL SETTLEMENT AND RELEASE

This Joint Stipulation of Global Settlement and Release (the "Agreement") is entered into by and between Edward B. Roach ("Roach"), Robert G. Kiefer ("Kiefer"), David Pagano ("Pagano"), Markita P. Robinson, Jason Turner, Garland Osborn, Stephen Manolakis, Frank Rakowski, Dennis Sanoske, Eric Everhart, Timothy Porter, Brian Pereira, Donna Oakes, Gregg Sime, Frank Seymour, and Allen Zayas (collectively, the "Named Plaintiffs"), individually and on behalf of the classes of individuals that they seek to represent ("Class Members") and all opt-in plaintiffs; and Moran Foods, LLC and Moran Foods, Inc., together d/b/a/ Save-A-Lot, LTD. (additional d/b/a designations include Save-A-Lot, Save-A-Lot, Ltd. and Save-U-Foods) (referred to hereinafter as "Save-A-Lot") and SUPERVALU INC. (collectively, "Defendants") (Named Plaintiffs, and any Opt-in plaintiffs, Class Member or other ASMs (as defined below) who consent to this Agreement and Defendants collectively, the "Parties").

### RECITALS

WHEREAS, on March 9, 2011, Plaintiff Edward B. Roach ("Roach") filed a class action lawsuit in the Superior Court of the State of Connecticut, which was transferred to the Complex Litigation Docket in the Judicial District of Hartford, No. HHD-CV-11-6023386S (X04), captioned *Roach v. Moran Foods Inc.*, asserting class claims on behalf of current and former ASMs in the State of Connecticut in which he claimed that Defendants owe them overtime compensation under the Connecticut Minimum Wage Act ("*Roach*");

WHEREAS, between March 2011 and March 2012, the Parties engaged in substantial discovery and discovery motion practice in *Roach*, which related to the claims in *Kiefer* and *Pagano*;

WHEREAS, on September 28, 2011, Defendants filed a motion for summary judgment on one of Roach's theories of liability, which the Court granted on March 16, 2012;

WHEREAS, on May 18, 2012, Kiefer filed a class and collective action lawsuit in the United States District Court for the District of Connecticut, No. 12 Civ. 0756 (WCY), captioned *Kiefer v. Moran Foods Inc., d/b/a Save-A-Lot, LTD*, on behalf of current and former ASMs, in which he claimed that Defendants owe them overtime compensation under the FLSA, and also asserted Rule 23 class claims against Defendants under Connecticut Minimum Wage Act ("CMWA") for the alleged failure to pay them overtime compensation ("*Kiefer*");

WHEREAS, on August 1, 2012, Defendants filed a motion to dismiss *Kiefer* and/or to stay the state law claims; the Court denied the motion to dismiss and granted the motion to stay the state law claims on February 19, 2013;

WHEREAS, between August 2012 and June 2013, the Parties engaged in substantial discovery and discovery motion practice in *Kiefer*, including substantial document production, several Fed. R. Civ. P. 30(b)(6) depositions, and depositions of several Plaintiffs and opt-in plaintiffs, which related to the claims in *Roach*, and *Pagano*;

WHEREAS, on December 10, 2012, Roach appealed the Court's summary judgment order in *Roach*;

WHEREAS, on December 17, 2012, Kiefer filed a motion for FLSA conditional certification, which the Court granted on March 12, 2013;

WHEREAS, on January 28, 2013, Defendants filed a motion for summary judgment in *Kiefer*, which the Court denied on May 2, 2013;

WHEREAS, between April 5, 2013 and August 21, 2013, 890 individuals joined *Kiefer* as FLSA opt-in plaintiffs ("Opt-In Plaintiffs");

WHEREAS, on March 25, 2013, Pagano filed a class action lawsuit in the Philadelphia County Court of Common Pleas, No. 130303542, captioned *Pagano v. Supervalu Inc.*, asserting class claims on behalf of current and former ASMs in the State of Pennsylvania in which he claimed that Defendants owe them overtime compensation under the Pennsylvania Minimum Wage Act ("PMWA") ("*Pagano*"; together with *Roach* and *Kiefer*, the "Litigation");

WHEREAS, on July 30, 2013, the Court entered a discovery order in *Pagano* with a class certification discovery deadline on September 15, 2013 and, thereafter, Pagano served discovery requests on Defendants;

WHEREAS, on or around June 17, 2013, Roach, Kiefer, and Pagano, and Defendants agreed to stay the Litigation in anticipation of mediation;

WHEREAS, on June 24, 2013, Kiefer and Defendants submitted a stipulation and proposed order to the *Kiefer* Court, whereby the Parties agreed to a stay of proceedings pending mediation; and

WHEREAS, on July 18, 2013, the Defendants and Kiefer entered into an agreement tolling limitations period on the state wage and hour claims of the putative classes in the states of

Illinois, Massachusetts, New Jersey, New York, North Carolina, Maryland, Oregon, and Ohio, for whom Plaintiffs had anticipated amending their complaints ("Tolling Agreement");

WHEREAS, on or around August 29, 2013 Roach and Defendants submitted a joint letter to the Connecticut Appellate Court requesting that it continue to stay the appeal and requesting that the case be remanded to the Superior Court for approval of the settlement;

WHEREAS, on August 19 and 20, 2013, the Parties participated in two all-day mediation sessions in New York, conducted by an experienced class action mediator, Hunter Hughes of Rogers & Hardin LLP in Atlanta Georgia, and reached an accord to resolve the Litigation resulting in this Agreement;

WHEREAS, on August 29, 2013, the *Pagano* Court, upon being notified of the instant settlement, entered an order staying all existing deadlines and requiring the parties to move for preliminary approval of the settlement of *Pagano* on or before November 30, 2013;

WHEREAS, without admitting or conceding any liability or damages whatsoever, Defendants agreed to settle the Litigation on the terms and conditions set forth in this Agreement, to avoid the burden, expense, and uncertainty of continuing to litigate;

WHEREAS, prior to the mediation, Named Plaintiffs' counsel analyzed and evaluated the merits of the claims made against Defendants in the Litigation, conducted interviews with putative class and collective members, defended the depositions of the named Plaintiffs, took the depositions of three Fed. R. Civ. P. 30(b)(6) witnesses, obtained and reviewed thousands of pages of documents relating to Defendants' compensation policies, and hired an expert to analyze payroll data and time records, and recognizing the substantial risks of litigation, including the possibility that the Litigation, if not settled now, might not result in any recovery or might result in a recovery less favorable, and that any recovery would not occur for several years, and that there was a risk of future decertification where certification was granted, Named Plaintiffs and Plaintiffs' counsel are satisfied that the terms and conditions of this Agreement are fair, reasonable, and adequate and that this Agreement is in the best interests of the Named Plaintiffs, the Class Members, and the Opt-In Plaintiffs; and

WHEREAS, the purpose of this Agreement is to settle fully and finally all Released Claims (as hereinafter defined) between Named Plaintiffs and Defendants, and the claims of all individuals Named Plaintiffs sought to represent including, but not limited to, all claims asserted in the Litigation.

NOW, THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties hereto agree to a full and complete settlement of the Litigation on the following terms and conditions:

## 1.    DEFINITIONS

The defined terms set forth in this Agreement have the meanings ascribed to them below.

1.1 **Agreement.** "Agreement" means this Joint Stipulation of Global Settlement and Release.

1.2 **Acceptance Period.** "Acceptance Period" means the sixty (60) days that a Class Member has to sign and cash their Settlement Check.

1.3 **Assistant Store Managers ("ASMs").** **"ASMs"** refers to those Assistant Store Managers previously identified to Class Counsel prior to mediation who were classified as non-exempt and paid pursuant to the Fluctuating Workweek method at corporate-owned (not licensed) Save-A-Lot stores in the United States.

1.4 **Charity.** "Charity" means the National Employment Law Project.

1.5 **Class Counsel.** "Class Counsel" or "Plaintiffs' Counsel" means Outten & Golden LLP; The Hayber Law Firm, LLC; and Winebrake & Santillo, LLC. For purposes of providing any notices required under this Agreement to Class Counsel, such notices shall be sent by U.S. Mail and Email to Justin M. Swartz of Outten & Golden LLP.

1.6 **Claim Form.** "Claim Form" shall refer to the form that all members of Groups A, B, C and D, as hereinafter defined, must complete in order to receive payment under this Agreement, a copy of which is attached hereto as Exhibit A. The Claim Form shall be approved by the Court prior to distribution.

1.7 **Class Members.** "Class Members" are the individuals in the Groups described below, whether or not they return a claim or consent form enabling them to participate in this Agreement.

   (A) **Group A.** Individuals who filed a Consent to Join form in *Kiefer* prior to the full execution of this Agreement. Group A Class Members are required to return a Claim Form in order to participate in this Agreement.

   (B) **Group B.** Rule 23 Class Members from Illinois, Maryland, Massachusetts, Missouri, New Jersey, New York, Ohio, North Carolina, and Rhode Island, who worked at Save-A-Lot during the longer of either the appropriate state limitations period for their state's statute or the three-year FLSA period (for the period August 20, 2010 through June 30, 2012) and who are not in Group A. Group B Class Members are required to return a Claim Form in order to participate in this Agreement.

   (C) **Group C.** Rule 23 Class Members from Pennsylvania and Connecticut who are not in Group A. Group C Class Members are required to return a Claim Form in order to participate in this Agreement.

      (1) **Group C(1)** shall refer to members of Group C who are or were employed by Save-A-Lot in Connecticut from March 9, 2009 through June 30, 2012.

- 4 -

(2)     **Group C(2)** shall refer to members of Group C who are or were employed by Save-A-Lot in Pennsylvania from March 25, 2010 through June 30, 2012.

(D)     **Group D**.  All individuals not in Group A, B, or C who worked for Defendants as an ASM from August 20, 2010 through June 30, 2012.  Group D Class Members are required to return a Claim Form in order to participate in this Agreement.

1.8     **Court.**  "Court(s)" unless otherwise specified refers to the United States District Court for the District of Connecticut.

(A)     "*Kiefer* Court" shall refer to the United States District Court for the District of Connecticut, the Honorable William D. Young presiding.

(B)     "*Roach* Court" shall refer to the Superior Court of the State of Connecticut, the Honorable William H. Bright presiding.

(C)     "*Pagano* Court" shall refer to the Philadelphia Court of Common Pleas, the Honorable Mark I. Bernstein presiding.

1.9     **Days.**  "Days" means calendar days.

1.10    **Defendants.**  "Defendants" means Moran Foods LLC, and Moran Foods, Inc., d/b/a/ Save-A-Lot, LTD. (additional d/b/a designations include Save-A-Lot, Save-A-Lot, Ltd. and Save-U-Foods) and SUPERVALU INC.

1.11    **Defendants' Counsel.**  "Defendants' Counsel" means Duane Morris LLP, Eve I. Klein. For purposes of providing any notices required under this Agreement to Defendants' Counsel, such notices shall be sent by U.S. Mail and Email to Eve I. Klein of Duane Morris LLP.

1.12    **Effective Date.**  "Effective Date" shall be the last of the following dates:

(A)     If there is no timely appeal of the Court's Final Approval Order, 31 days after entry of such Order; or

(B)     If there is an appeal of the Court's Final Approval Order within 31 days of the Final Approval Order, the day after all appeals are resolved in favor of final approval.

1.13    **Employer Payroll Taxes.**  "Employer Payroll Taxes" means all taxes and withholdings an employer is required to make arising out of or based upon the payment of employment compensation in this Litigation, including but not limited to FICA, FUTA, and SUTA obligations.

1.14    **Fairness Hearing.**  "Fairness Hearing" means the hearings before the Court relating to the Motion for Final Approval.

**1.15    Final Approval Order.**  "Final Approval Order" means the Order entered by the Court after the Fairness Hearing, approving the terms and conditions of this Agreement, distribution of the Settlement Checks and Service Awards, and dismissal and final judgment of the case.

**1.16    Gross Settlement Amount.**  "Gross Settlement Amount" means the Four Million, Five Hundred Thousand and Dollars and No Cents ($4,500,000.00), which Defendants have agreed to pay to the Settlement Claims Administrator to settle the Litigation as set forth in this Agreement.  The Gross Settlement Amount fully satisfies any claims for attorneys' fees and costs approved by the Court, any and all amounts to be paid to Class Members, any Court-approved Service Awards to Named Plaintiffs, the Settlement Claims Administrator's fees and costs, and the Employer Payroll Taxes.  Defendants will not be required to pay more than the Gross Settlement Amount under any circumstances.

**1.17    Litigation.**  "Litigation," as set forth in the Introduction, means the claims pled in the *Kiefer* Second Amended Complaint alleging violations of the FLSA and the wage and hour laws of Pennsylvania, Connecticut, Illinois, Maryland, Massachusetts, Missouri, New Jersey, New York, Ohio, North Carolina, and Rhode Island, including the claims pled in the *Roach* and *Pagano* cases.

**1.18    Named Plaintiffs.**  "Named Plaintiffs," as set forth in the Introduction, means Edward B. Roach, Robert G. Kiefer, David Pagano, Markita P. Robinson, Jason Turner, Garland Osborn, Stephen Manolakis, Frank Rakowski, Dennis Sanoske, Eric Everhart, Timothy Porter, Brian Pereira, Donna Oakes, Gregg Sime, Frank Seymour, and Allen Zayas.

**1.19    Net Settlement Fund.**  "Net Settlement Fund" means the remainder of the Gross Settlement Amount after deductions for: (1) Court-approved attorneys' fees; (2) Court-approved costs and expenses; (3) Court-approved Service Awards to Named Plaintiffs; and (4) a $50,000.00 Reserve Fund (as defined below) to cover errors and omissions.

**1.20    Notice or Notices.**  "Notice" or "Notices" means the Court-approved notices of proposed settlement of the Litigation.  The Notices shall be agreed upon by the parties and submitted for Court approval along with the Preliminary Approval Motion.

   (A)    **Group A Notice.** "Group A Notice" shall refer to the Notice (including a Claim Form) to be sent to members of Group A.

   (B)    **Group B Notice.** "Group B Notice" shall refer to the Notice (including a Claim Form) to be sent to members of Group B.

   (C)    **Group C Notice.** "Group C Notice" shall refer to the Notice (including a Claim Form) to be sent to members of Group C.

   (D)    **Group D Notice**. "Group D Notice" shall refer to the Notice (including a Claim Form) to be sent to members of Group D.

1.21 **Notice Period.** "Notice Period" means the period during which members of Groups A, B, C, and D receive notice of the Settlement and have the opportunity to return Claim Forms, submit Opt-out Statements, or submit Objections.

1.22 **Objector.** "Objector" means an individual who files a valid objection to this Agreement, and may not include any individual who opts-out of this Agreement.

1.23 **Opt-out Statement.** "Opt-out Statement" is a written signed statement that an individual member of Group B or C has decided to opt-out and not be included in this Agreement.

1.24 **PA IOLTA Board.** "PA IOLTA Board" means the Pennsylvania Interest on Lawyers Trust Account Board.

1.25 **Parties.** "Parties," as set forth in the Introduction, shall mean, collectively, Named Plaintiffs and Defendants.

1.26 **Plaintiffs.** "Plaintiffs" shall mean Named Plaintiffs, and members of Groups A-D.

1.27 **Preliminary Approval Order.** "Preliminary Approval Order" means the Order entered by the Court preliminarily approving the terms and conditions of this Agreement, and directing the manner and timing of providing Notices to the Class Members.

1.28 **Qualified Settlement Fund or QSF.** "Qualified Settlement Fund" or "QSF" means the account established by the Settlement Claims Administrator for the Settlement Amount paid by Defendant. The QSF will be controlled by the Settlement Claims Administrator subject to the terms of this Agreement and the Court's Orders for Preliminary Approval and Final Approval. Interest, if any, earned on the QSF will become part of the Settlement Amount.

1.29 **Reserve Fund.** "Reserve Fund" means the $50,000 portion of the Gross Settlement Amount that the Settlement Claims Administrator shall set aside for correctable errors or omissions and shall not be included in applying the allocation formula set forth in Section 4.4.

1.30 **Retaliation Claim.** "Retaliation Claim" means the claim filed by Roach with the Connecticut Department of Labor (case number Retaliation 31-69b).

1.31 **Reversion.** "Reversion" means the amount remaining in those portions of the Net Settlement Fund allocated to Groups A, B and D, which is unclaimed or for which checks are issued but not cashed.

1.32 **Settlement Claims Administrator.** The "Settlement Claims Administrator" will be Settlement Services, Inc., subject to the Parties and Settlement Services, Inc. entering into a retainer agreement that all Parties find satisfactory.

1.33 **Settlement Checks.** "Settlement Checks" means checks issued to Class Members for their share of the Net Settlement Fund calculated in accordance with this Agreement.

**1.34    State Sub-Classes.** "State Sub-Classes" means the state-law Rule 23 classes that Plaintiffs will include in the Kiefer Amended Complaint (as defined in paragraph 3.2 below) and which Plaintiffs will seek to have certified for purposes of settlement.

**2.    GENERAL PROVISIONS AND DUTIES OF THE PARTIES AND COUNSEL**

**2.1    Binding Agreement.**  This Agreement is a binding agreement and contains all material agreed-upon terms for the Parties to seek a full and final settlement of the Litigation.

**2.2    Settlement Claims Administrator.**

(A)    Class Counsel will select and retain the Settlement Claims Administrator, with Defendants' approval, which shall not be unreasonably withheld.  The Settlement Claims Administrator will be responsible for taking all reasonable steps to locate Class Members; mailing the Notices to Class Members; responding to Class Member inquiries; resolving disputes relating to Class Members' workweeks worked and settlement share amounts; calculating Class Members' settlement shares; reporting on the state of the Settlement to the Parties; distributing settlement payments and withholding Defendants' and Class Members' share of taxes; distributing fees, costs, and settlement awards; remitting such withheld funds to the appropriate taxing authorities; coordinating collection and compilation of Claim Forms; preparing a declaration regarding its duties in the claims administration process; and performing such other duties as the Class Counsel or the Court may direct or as are specified herein. The Settlement Claims Administrator's fees shall be paid out of the reversion.  Class Counsel will attempt to negotiate a reasonable flat fee for administration of the settlement.  If Class Counsel is unable to negotiate what it believes to be a reasonable flat fee by the time of preliminary approval of the settlement, Class Counsel will select another settlement administrator candidate, with whom Class Counsel will attempt to negotiate a reasonable flat fee.

(B)    The Parties will have equal access to the Settlement Claims Administrator and all information related to the administration of the settlement.  The Settlement Claims Administrator will provide regular reports to the Parties regarding the status of the mailing of the Notices to Class Members, receipt of Claim Forms, the claims administration process, and distribution of the Settlement Checks.

(C)    Defendants agree to cooperate with the Settlement Claims Administrator, undertake good faith efforts to provide accurate information necessary to calculate the amounts of the Settlement Checks, assist the Settlement Claims Administrator in locating Class Members, and provide other information related to the administration of the settlement.

**3.    APPROVAL AND CLASS NOTICE**

**3.1**    Within seven (7) days of the full execution of this Agreement, Plaintiffs will present the *Roach* Court and the *Pagano* Court with this Agreement, together with a proposed order, dismissing each Complaint without prejudice to re-filing if any part of this Agreement is

not approved by the Court or in the event Defendants fail to comply with any part of this Agreement.  Provided the *Pagano* and *Roach* courts, respectively, dismiss each complaint as requested , the *Pagano* and *Roach* claims will be filed as part of the Second Amended Kiefer Complaint as contemplated herein; in the event the *Pagano* or *Roach* Courts do not dismiss each complaint as requested, the Pennsylvania and/or Connecticut State Sub-Classes, will then be excluded from the Second Amended Complaint in *Kiefer* and excluded from this Agreement and the proportionate share of the Gross Settlement Amount allocated to those classes, along with a proportionate share of attorney's fees and costs, Class Administrator fees for the Pennsylvania and/or Connecticut State Sub-Classes, and the class representative fees, shall be excluded from this Agreement and those funds will be made available as the sole settlement proceeds in the *Pagano* and/or *Roach* actions, as may be applicable.  Assuming the *Pagano* and *Roach* Courts approve of this Agreement, on the Effective Date of this Agreement, Plaintiffs will dismiss the *Roach* and *Pagano* Complaints with prejudice.

3.2    **Filing of Amended Complaint.**  Within fourteen (14) days of the full execution of this Agreement, or within three (3) days of any decision being rendered by the *Pagano* and/or *Roach* courts approving of the process outlined in this Agreement if later, Plaintiffs' Counsel will seek permission to file a Second Amended Complaint in *Kiefer* ("Amended Complaint").  Plaintiffs will provide a draft of the Second Amended Complaint to Defendants for their review and consent prior to the filing of the Second Amended Complaint.

(A)    The Second Amended Complaint shall include all of the claims in the currently operative complaint and add state law Fed. R. Civ. P. 23 claims for ASMs in the following states:  Illinois, Maryland, Massachusetts, Missouri, New Jersey, New York, Ohio, North Carolina, and Rhode Island.

(B)    The Second Amended Complaint will also include claims under the Connecticut Minimum Wage Act and the Pennsylvania Minimum Wage Act, with the same class periods as pled in *Roach* and *Pagano*.

(C)    The Connecticut Minimum Wage Act claims in the Second Amended Complaint shall replace the Connecticut Minimum Wage Act claims previously pled in *Kiefer*, and the Connecticut class shall be defined identically to the class pled in *Roach*.

3.3    **Preliminary Approval Motion.**

(A)    Within twenty-one (21) days after the filing of the Second Amended Complaint, Plaintiffs will file the Preliminary Approval Motion.  In connection with the Preliminary Approval Motion, Plaintiffs will submit to the Court a proposed Notice of Settlement of Class and Collective Action Lawsuit and Fairness Hearing and a proposed Preliminary Approval Order.

(B)    The proposed Preliminary Approval Order will include the findings required by Federal Rule of Civil Procedure 23(a) and 23(b)(3).  The Preliminary Approval

Motion also will seek the setting of date(s) for individuals to opt-out of this Agreement, or provide objections to this Agreement, which date will be sixty (60) days from the mailing of the Notice to the Class Member but no later than ninety (90) days from the Preliminary Approval Order, and for a Fairness Hearing for Final Approval of the settlement before the Court at the earliest practicable date.

(C)     In the Preliminary Approval Motion, Class Counsel will inform the Court of the intended process to obtain a "Final Approval Order" that will, among other things: (1) approve the settlement as fair, adequate and reasonable; (2) incorporate the terms of the Release, as described herein; (3) dismiss the Litigation with prejudice; (4) award Class Counsel fees, costs, and expenses; and (5) award Service Awards to Named Plaintiffs as more fully set forth herein.  Plaintiffs will provide a draft of the Preliminary Approval Motion to Defendants for their review before filing it, and will consider any proposed revisions in good faith.  Defendants may, at their option, file a response to the Preliminary Approval Motion within 10 days.

(D)     If the Court fails to grant the Preliminary Approval Motion, unless the Parties jointly agree to seek reconsideration of the ruling or to seek Court approval of a renegotiated settlement, the Litigation will resume as if no settlement had been attempted.  Defendants retain the right to contest whether the Litigation should be maintained as a class action and to contest the merits of the claims being asserted in the Litigation.  If the Court fails to grant the Preliminary Approval Motion, Plaintiffs will withdraw the Second Amended Complaint without prejudice, and may apply to the Court to re-file it and Defendants may oppose its filing.

(E)     The Parties will work together, diligently and in good faith, to obtain expeditiously a Preliminary Approval Order, Final Approval Order, and Final Judgment and dismissal of the Litigation.

**3.4     Notice to Class Members**

(A)     Within ten (10) days of the Court's issuance of the Preliminary Approval Order, Defendants will provide the Settlement Claims Administrator, in electronic form, for all members of Groups A, B, C, and D (as described in Section 3.5 below) the following information:  name, Social Security Number, last known addresses, last known personal and business email addresses, all last known telephone numbers, and coefficient pay (payroll code "OTC") received within the applicable periods set forth in paragraph 1.7 above ("Class List").

(B)     The Settlement Claims Administrator shall prepare all preliminary allocations within (10) days of Defendant's provision of the information called for in Paragraph 3.4(A) and shall provide a copy of the allocations to Class Counsel and Defendants' Counsel for review prior to sending the notices called for in Paragraphs 3.4 (C) to (G) below.

(C)     Within twenty (20) days of the Court's issuance of the Preliminary Approval Order, the Settlement Claims Administrator will e-mail and mail to all members of Group A by First Class United States Mail, postage prepaid, the Court-approved Group A Notice, which shall include a Claim Form.

(D)     Within twenty (20) days of the Court's issuance of the Preliminary Approval Order, the Settlement Claims Administrator will e-mail and mail to all members of Group B by First Class United States Mail, postage prepaid, the Court-approved Group B Notice, which shall include a Claim Form.

(E)     Within twenty (20) days of the Court's issuance of the Preliminary Approval Order, the Settlement Claims Administrator will e-mail and mail to all members of Group C by First Class United States Mail, postage prepaid, the Court-approved Group C Notice, which shall include a Claim Form.

(F)     Within twenty (20) days of the Court's issuance of the Preliminary Approval Order, the Settlement Claims Administrator will e-mail and mail to all members of Group D by First Class United States Mail, postage prepaid, the Court-approved Group D Notice of Settlement of Collective Action Lawsuit, which shall include a Claim Form.

(G)     If a Class Member worked in more than one state during the relevant period, and is therefore a member of more than one Group, the Class Member will receive notices for each Group of which she or he is a member.

(H)     The Settlement Claims Administrator will take all reasonable steps to obtain the correct address of any Class Members for whom a Notice is returned by the post office as undeliverable and shall attempt re-mailings as described in this Agreement.  The Settlement Claims Administrator will notify Class Counsel and Defendants' Counsel of any Notice sent to a Class Member that is returned as undeliverable after the first mailing, as well as any such Notice returned as undeliverable after any subsequent mailing(s) as set forth in this Agreement.  The Settlement Claims Administrator shall not attempt more than two (2) mailings and emailings of the Notice to any Class Member, without Court-approval, and no mailing or emailing shall occur more than thirty (30) days after the first mailing to Class Members.

**3.5    Claim Forms and Opt-outs.**

(A)     Any member of Groups A, B, C and D who wishes to receive a portion of the Settlement Fund must complete a Claim Form.  The Claim Form must be postmarked no later than sixty (60) days from the mailing of the Notice to the Group member and no later than ninety (90) days from the Preliminary Approval Order.

(B)     Members of Groups B and C who choose to opt-out of the settlement as set forth in this Agreement must mail via First Class United States Mail, postage prepaid, a written, signed statement to the Settlement Claims Administrator that states he or

she is opting out of the settlement, and include his or her name, job title, address, and telephone numbers and state, "I opt out of the Save-A-Lot wage and hour settlement" ("Opt-out Statement"). To be valid, an Opt-out Statement must be postmarked within sixty (60) days from the mailing of the Notice to the Class Member and no later than ninety (90) days from the Preliminary Approval Order.

(C)   If a Class Member returns both a Claim Form and an Opt-out Statement, the Opt-out Statement shall govern, unless the Class Member clarifies his or her intentions during the Claims Period. Class Counsel shall make reasonable efforts to ascertain such a Class Members' intentions.

(D)   Members of Groups B and C whose first mailing is returned to the Settlement Claims Administrator as undeliverable will be allowed to opt-out or object up to sixty (60) days from the date of the second mailing but no later than ninety (90) days from the Preliminary Approval Order. The Settlement Claims Administrator shall not attempt more than two (2) mailings or emailings of the Notice to any Class Member, without Court approval, and no mailing or emailing shall occur more than thirty (30) days after the first mailing to Class Members.

(E)   The Settlement Claims Administrator shall keep accurate records of the dates on which it sends all Notices.

(F)   The Settlement Claims Administrator will stamp the postmark date on the original of each Claim Form and Opt-out Statement that it receives and shall serve copies of each Claim Form and Opt-out Statement on Class Counsel and Defendants' Counsel not later than seven (7) days after receipt thereof, and sooner if practicable. The Settlement Claims Administrator will also, within three (3) days of the end of the Notice Period, file with the Clerk of Court, stamped copies of any Opt-out Statements received from members of Groups B and C. The Settlement Claims Administrator will, within twenty-four (24) hours of the end of the Notice Period, send a final list of all Claim Forms and Opt-out Statements to Class Counsel and Defendants' Counsel by both email and overnight delivery. The Settlement Claims Administrator will retain the stamped originals of all Claim Forms and Opt-out Statements and originals of all envelopes accompanying Claim Forms and Opt-out Statements in its files until such time as the Settlement Claims Administrator is relieved of its duties and responsibilities under this Agreement.

(G)   Any member of Groups B and C who do not properly submit an Opt-out Statement pursuant to this Agreement, will be deemed to have accepted the settlement and the terms of this Agreement including the release of FLSA and state-law claims as defined in Section 5.1, *infra*.

**3.6   Objections to Settlement.**

(A)   Members of Groups B and C who wish to object to the proposed settlement must do so in writing. To be considered, a written objection must be mailed to the

Settlement Claims Administrator via First-Class United States Mail, postage prepaid, and be received by the Settlement Claims Administrator by a date certain sixty (60) days from the mailing of the Notice to the Rule 23 Class Member and no later than ninety (90) days from the Preliminary Approval Order.  The written objection must include the words, "I object to the settlement in the Save-A-Lot overtime case" as well as all reasons for the objection.  Any reasons not included in the written objection will not be considered by the Court.  The written objection must also include the name, address, and telephone numbers for the member of Group B or C (and E where applicable) making the objection.  The Settlement Claims Administrator will stamp the date received on the original and send copies of each objection to Class Counsel and Defendants' Counsel by email and overnight delivery no later than three (3) days after receipt thereof.  Class Counsel will file the date-stamped originals of any and all objections with the Court within three (3) days after the end of the Notice Period.

(B)     A member of Group B or C who files objections to the settlement ("Objector") also has the right to appear at the Fairness Hearing either in person or through counsel hired by the Objector.  An Objector who wishes to appear at the Fairness Hearing must state his or her intention to do so in writing on his or her written objections at the time he or she submits his or her written objections by including the words, "I intend to appear at the Fairness Hearing" in his or her written objection.  An Objector may withdraw his or her objections at any time.  Class Counsel may contact any objector to discuss the reasons for the objection and attempt to resolve it.  No Class Member may appear at the Fairness Hearing unless he or she has filed a timely objection that complies with all procedures provided in this section and the previous section.  No Class Member may present an objection at the Fairness Hearing based on a reason not stated in his or her written objection.  A Class Member who has submitted an Opt-out Statement may not submit objections to the Settlement and any objection submitted by a Class Member who has submitted an Opt-out Statement will not be considered by the Court.

(C)     The Parties may file with the Court written responses to any filed objections no later than two (2) days before the Fairness Hearing.

**3.7     Motion for Judgment and Final Approval.**  Not later than ten (10) days before the Fairness Hearing, Plaintiffs will submit a Motion for Judgment and Final Approval, a draft of which will be sent to and approved by Defendants before being filed with the Court.

**3.8     Entry of Judgment.**  At the Fairness Hearing, the Parties will request that the Court, among other things, (a) certify the State Sub-Classes (Groups B and C) for purposes of settlement, (b) enter Judgment in accordance with this Agreement, (c) approve the settlement and Agreement as final, fair, reasonable, adequate, and binding on all members of Groups B and C who have not timely opted out pursuant to Section 3.5, (d) approve the FLSA settlement, and (e) dismiss the Litigation with prejudice.

- 13-

3.9     **Effect of Failure to Grant Final Approval.**  In the event the Court fails to enter Judgment in accordance with this Agreement or such Judgment does not become Final as defined herein, the Parties shall resume the Litigation unless the Parties jointly agree to: (1) seek reconsideration or appellate review of the decision denying entry of Judgment, or (2) attempt to renegotiate the settlement and seek Court approval of the renegotiated settlement.  In the event any reconsideration and/or appellate review is denied, or a mutually agreed-upon settlement is not approved:

    (A)     The Litigation will proceed as if no settlement had been attempted.  In that event, the class certified for purposes of settlement shall be decertified, and Defendants may contest whether this Litigation should be maintained as a class action and contest the merits of the claims being asserted by Plaintiffs in this action. Plaintiffs will withdraw the Amended Complaint without prejudice, and may apply to the Court to re-file it and Defendants may oppose its filing.

    (B)     The Court will direct notice to be provided to all members of Groups A, B, C, and D that the Agreement did not receive final approval and that, as a result, no payments will be made to Class Members under the Agreement.  Such notice shall be emailed and mailed by the Settlement Claims Administrator via First Class United States Mail, postage prepaid, to the addresses used by the Settlement Claims Administrator in mailing the Notice of Proposed Settlement of Class Action Lawsuit and Fairness Hearing and Notice of Proposed Settlement of Collective Action Lawsuit and Fairness Hearing. The Parties shall split the cost of this notice equally.

    (C)     The Gross Settlement Amount will revert to Defendant.

    (D)     Any costs incurred by the Settlement Claims Administrator will be borne equally by the Parties.

3.10    **Claim Forms, Releases and Consents to Join.**

    (A)     All members of Group A who return a Claim Form, all members of Groups B and C who do not timely return an Opt-out Statement and who return a Claim Form, and all members of Group D who return a Claim Form, will be issued a Settlement Check by the Settlement Claims Administrator.

    (B)     The Claim Forms sent to members of Groups A, B, C, and D shall be include the applicable release language as provided for in Sections 5.1(A), (B) or (C) below and shall contain the following language:

        **"CONSENT TO JOIN AND FINAL RELEASE OF CLAIMS:**

I consent to join in the case entitled *Kiefer v Moran Foods Inc.*, No. 12 Civ. 0756, now pending in the United States District Court for the District of Connecticut, and agree to be bound by the Settlement Agreement described in the notice I received.  I irrevocably and unconditionally waive, release, extinguish, acquit, and forever discharge all state and federal claims asserted in the *Kiefer* litigation or that could have been asserted in the

*Kiefer* litigation based on the facts asserted in the litigation.  By the act of cashing my settlement check, I acknowledge that this release is fully binding on me.

_____     Dated:_____
Signature

3.11   All Settlement Checks will contain the release language in Section 3.10 (B) above on the backs of the checks in the endorsement area.

3.12   All Settlement Checks will be mailed to Class Members within ten (10) days after the Effective Date, and attorneys' fees and costs checks mailed to Class Counsel by the Settlement Claims Administrator within ten (10) days after the Effective Date.

3.13   The Court will retain jurisdiction over the case following the Effective Date for one hundred and eighty (180) days in order to enforce terms of this Agreement and issue appropriate related orders.

3.14   Upon the Effective Date, the Tolling Agreement shall be voided and revoked *nunc pro tunc.*

**4.     SETTLEMENT PAYMENTS AND AWARDS**

**4.1     Settlement Amount.**

(A)     Defendants agree to pay the Gross Settlement Amount of Four Million Five Hundred Thousand Dollars and No Cents ($4,500,000.00), which shall fully resolve and satisfy any claim for attorneys' fees and costs approved by the Court, any and all amounts to be paid to Class Members, any Court-approved Service Awards to Named Plaintiffs as more fully set forth herein, the Settlement Claims Administrator's fees and costs, and the Employer Payroll Taxes described in Sections 1.13 and 4.2-4.5.  Defendants will not be required to pay more than the Gross Settlement Amount of Four Million Five Hundred Thousand Dollars and No Cents ($4,500,000.00) under any circumstances.

(B)     By no later than fourteen (14) days after the full execution of this Agreement, Defendants shall deposit the Gross Settlement Amount of Four Million Five Hundred Thousand Dollars and No Cents ($4,500,000.00) into the QSF.

(C)     Before applying the allocation formula set forth in Section 4.4, the Settlement Claims Administrator shall set aside the Reserve Fund of Fifty Thousand Dollars and No Cents ($50,000.00) from the QSF to cover any correctable errors or omissions (including but not limited to incorrect data provided by Defendants). Class Counsel shall have discretion to authorize payments from the Reserve Fund and to determine allocation of the Reserve Fund, with Defendants' consent, which will not be unreasonably withheld.  If the Reserve Fund is not sufficient to cover any correctable errors or omissions, and satisfy any claim for relief allowed

pursuant to Fed. R. Civ. P. 60(b)(1) or 60(d), any additional amounts shall come from the Reversion. Any funds remaining in the Reserve Fund once the Settlement Claims Administrator completes its distribution will be redistributed among the Class Members who have timely cashed their checks or, if the amount remaining is small enough that a redistribution is not sensible in the discretion of the Class Counsel, the unclaimed monies will be remitted to the Charity under the *cy pres* doctrine.

(D)     Any otherwise valid late claims shall be held until after Final Approval and then paid, on a pro rata basis, from the Reversion after payment of the Claims Administrators' fees and the Employer Payroll Taxes are paid from the Reversion. If the Reversion is exhausted, such claims shall be paid from the Reserve Fund described in paragraph 4.1(C), above, if any remains. If the Reversion is exhausted and the Reserve Fund is exhausted, late claims will be disallowed. The Settlement Claims Administrator has final authority to determine whether claims are timely according to the terms of this Settlement Agreement. If, upon the Effective Date, the amount of the Reversion and the amount remaining in the Reserve Fund are not sufficient to cover the Claims Administrator's fees and the employer's share of payroll taxes, the deficit shall be deducted from the amount available to Class Members, and the Claims Administrator shall re-calculate all Class Members' settlement awards accordingly.

(E)     The amount of any Settlement Checks issued to members of Groups A, B, and D that are uncashed or any other monies which are undistributed to Class Members one hundred and eighty (180) days after the Acceptance Period ends will revert to Defendants, except as provided in paragraph 4.1(F).

(F)     The amount of any Settlement Checks issued to members of Group C that are uncashed one hundred and eighty (180) days after any Final Approval Order will not revert to Defendants and will be redistributed among the members of Group C who have timely cashed their checks or, if the amount remaining is small enough that a redistribution is not sensible in the discretion of the Class Counsel, the unclaimed monies attributable to members of Group C(1) will be remitted to the Charity under the *cy pres* doctrine and the unclaimed monies attributable to members of Group C(2) will be remitted to the PA IOLTA, per applicable statute. Any such charitable remittance shall be made by check in the name of the Claims Administrator with no reference to the Defendants.

**4.2     Settlement Amounts Payable as Attorneys' Fees and Costs and Expenses.**

(A)     At the Fairness Hearing and in the Motion for Final Approval, Class Counsel will petition the Court for an award of attorneys' fees of no more than one-third of the Gross Settlement Amount and, in addition, for reimbursement of their actual litigation costs and expenses, including expert fees, to be paid from the QSF. All of the fees, costs, and expenses Class Counsel incurred were for the benefit of all Class Members in all three cases that comprise the Litigation. After depositing the Settlement Amount with the Settlement Claims Administrator for the QSF,

Defendants shall have no additional liability for Class Counsel's attorneys' fees and costs.

(B)     The substance of Class Counsel's application for attorneys' fees and costs is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Litigation.  The outcome of any proceeding related to Class Counsel's application for attorneys' fees and costs shall not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Final Approval.

**4.3     Service Awards to Certain Plaintiffs.**

(A)     In return for services rendered to the Class Members and the risks they took in acting as named plaintiffs, at the Fairness Hearings, Named Plaintiffs Kiefer and Pagano will each apply to the Court to receive Ten Thousand Dollars and No Cents ($10,000.00) as a Service Award.  Named Plaintiff Roach will apply to the Court to receive Thirty Thousand Dollars and No Cents ($30,000.00) as a Service Award and as compensation for the settlement of the Retaliation Claim.  Named Plaintiffs Markita P. Robinson, Jason Turner, Garland Osborn, Stephen Manolakis, Frank Rakowski,  Dennis Sanoske, Eric Everhart, Timothy Porter, Brian Pereira, Donna Oakes, Gregg Sime, Frank Seymour, and Allen Zayas will each apply to the Court to receive Two Thousand Dollars and No Cents ($2,000.00) as Service Awards.  Defendants will not oppose such applications. All Service Awards will be paid from the QSF.

(B)     The applications for Service Awards are to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Litigation.  The outcome of the Court's ruling on the application for Service Awards will not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Final Approval or for Final Judgment and Dismissal.

**4.4     Net Settlement Fund and Allocation to Class Members.**

(A)     Within fourteen (14) days after the end of the Notice Period, the Settlement Claims Administrator shall take the following steps:

(1)     Use the calculation formula described in paragraph 4.4 (C) below to calculate the Settlement Award for each Class Member who is entitled to a Settlement Check under paragraph 3.10 (A).

(2)     Determine the sum of all Settlement Awards ("Total Payout Amount") by adding together all Settlement Awards.

(3)     Determine the amount of the Reversion by subtracting the Total Payout Amount from the Net Settlement Fund.

(4)     Calculate the Employer Payroll Taxes.

(5)    Determine the Claims Administrator's fees based on the Parties' agreement with the Claims Administrator.

(6)    Determine the amount of the Reversion that should be returned to Defendants by subtracting the Employer Payroll Taxes and Claims Administrator Fees from the Reversion.

(7)    If the Reversion is insufficient to cover the Employer Payroll Taxes and Claims Administrator Fees, the remainder shall be deducted from the remaining Reserve Fund.

(8)    If, upon the Effective Date, the amount of the Reversion and the amount remaining in the Reserve Fund are not sufficient to cover the Claims Administrator's fees and the employer's share of payroll taxes, the deficit shall be deducted from the amount available to Class Members, and the Claims Administrator shall re-calculate all Class Members' settlement awards accordingly.

(B)    The allocation to Class Members for Settlement Checks will be made from the Net Settlement Fund.

(C)    A Class Member's proportionate share of the Net Settlement Fund ("Settlement Award") will be determined by the Settlement Claims Administrator, which shall take the following steps in performing the calculation:

(a)    First, Based on the data provided by Defendants, the Settlement Claims Administrator shall determine the total coefficient pay (payroll code "OTC") received by each Class Member during the relevant period.

(b)    Second, to determine each Class Member's number of "Settlement Points":

(1)    For Group A: Multiply each Class Member's OTC by 7.

(2)    For Group B: Multiply each Class Member's OTC by 4.

(3)    For Group C: Multiply each Class Member's OTC by 5.

(4)    For Group D: Multiply each Class Member's OTC by 4.

(c)    Third, add all Settlement Points together to obtain the "Settlement Point Denominator."

(d)    Fourth, divide each Class Member's Settlement Points by the Settlement Point Denominator to obtain each Class Member's "Portion of the Net Settlement Fund."

(e)  Fifth, multiply each Class Member's Portion of the Net Settlement Fund by the Net Settlement Fund to determine each Class Member's "Settlement Award."

(D)  The Parties will work together to alter the allocation formula in order to obtain Court approval, if the Court denies approval based on the allocation formula set forth herein.  Additionally, the Parties will work together to put the allocation formula described above in user-friendly terms in the Notices being distributed to Class Members.

**4.5     Tax Characterization.**

(A)  For tax purposes, 50% of payments allocated to Class Members pursuant to Section 4.4 shall be treated as back wages and 50% of such payments shall be treated as interest and/or liquidated damages.

(B)  Payments treated as back wages pursuant to Section 3.5(A) shall be made net of all applicable employment taxes, including, without limitation, federal, state and local income tax withholding and the employee share of the FICA tax, and shall be reported to the Internal Revenue Service ("IRS") and the payee under the payee's name and social security number on an IRS Form W-2.  Payments treated as interest and/or liquidated damages pursuant to Section 3.5(A) shall be made without withholding and shall be reported to the IRS and the payee, to the extent required by law, under the payee's name and social security number on an IRS Form 1099.  Payment of attorneys' fees and costs pursuant to Section 4.2 shall be made without withholding and reported to the IRS for each Class Member on an IRS Form 1099, under their name, social security number and/or taxpayer identification number.

(C)  Each class member Notice shall contain the following language:  "A proportionate share of any attorneys' fees awarded to Class Counsel will be reported to the IRS as income to each Class Member.  Although neither Class Counsel nor the Claims Administrator can provide you with tax advice, it is likely that this will have no tax consequences to most class members.  YOU SHOULD CONSULT A TAX ADVISOR for advice about the tax treatment of your settlement award, show your tax advisor this notice, and ask your tax advisor whether attorneys' fees reportable as income to you are fully deductible "above the line" deductions under IRC §62(e) because they are settlements of Fair Labor Standards Act and state labor law claims."  The foregoing language should also be included with each settlement check.

(D)  Within thirty (30) days after the issuance of the Preliminary Approval Order, the Settlement Claims Administrator shall inform the Parties of an estimate of all state and federal payroll taxes imposed by applicable law, including, without limitation, the Employer Payroll Taxes with respect to the amounts treated as wages pursuant to Section 4.5(A).  All Employer Payroll Taxes shall be paid from the Reversion or, if the Reversion is insufficient, from the Reserve Fund.

If, upon the Effective Date, the amount of the Reversion and the amount remaining in the Reserve Fund are not sufficient to cover the Claims Administrator's fees and the employer's share of payroll taxes, the deficit shall be deducted from the amount available to Class Members, and the Claims Administrator shall re-calculate all Class Members' settlement awards accordingly.

(E)     The employee portion of all applicable income and payroll taxes will be the responsibility of the individual Class Member receiving a Settlement Check or Service Award.  The Settlement Claims Administrator will withhold and remit the employee portion of income and payroll taxes to the applicable tax authorities.

## 5.     RELEASE

### 5.1   Release of Claims.

By operation of the entry of the Judgment and Final Approval, and except as to such rights or claims as may be created by this Agreement,

(A)     Each member of Groups B and C who does not timely opt-out pursuant to this Agreement forever and fully releases Defendants and each of their respective present, former and future parents, shareholders, owners, subsidiaries, affiliates, related companies, divisions, directors, trustees, officers, employees, attorneys, heirs, successors and assigns (collectively, the "Company Releasees"), from all state claims asserted in the Litigation or that could have been asserted in the Litigation based on the facts alleged in the Second Amended Complaint through June 30, 2012, which includes off-the-clock claims, unpaid overtime wages, attorneys' fees, and costs (the "Released Rule 23 Claims");

(B)     In addition to the Released Rule 23 Claims, by signing the claim forms and/or cashing the Settlement Checks (whether or not endorsed), all Members of all groups forever and fully release Defendants and the Company Releasees from all FLSA and state wage and hour law claims asserted in the Litigation or that could have been asserted in the Litigation based on the facts alleged in the Second Amended Complaint through June 30, 2012, which includes off-the-clock claims, unpaid overtime wages, attorneys' fees, and costs ("Released FLSA Claims").

(C)     In additional to foregoing, all Named Plaintiffs receiving a Service Award shall agree to forever and fully release Defendants and the Company Releasees from any and all claims, causes of action, complaints, lawsuits or liabilities of any kind (collectively "Released Employment Claims") as described below which they or their heirs, agents, administrators or executors have or may have against the Company Releasees, including but not limited to the following:

(i)     any Claims having anything to do with employment or the termination of employment from the Defendants or dealings with the Company Releasees;

(ii)   any Claims under the Employee Retirement Income Security Act ("ERISA");

(iii)   any Claims of discrimination and/or harassment based on age, sex, race, religion, color, creed, disability, handicap, failure to accommodate, citizenship, national origin, ancestry, sexual orientation, gender identity, genetic information, or any other factor protected by Federal, State or Local law as enacted or amended (such as the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq ("ADEA").; Title VII of the Civil Rights Act of 1964; the Americans with Disabilities Act; Section 1981 of the Civil Rights Act of 1866; the Genetic Information Non-Discrimination Act; and any state, city or local human rights law and any Claims for retaliation under any of the foregoing laws;

(iv)   any Claims regarding leaves of absence including, but not limited to, any Claims under the Family and Medical Leave Act or any state leave laws;

(v)   any Claims under the Sarbanes-Oxley Act or the Dodd-Frank Act;

(vi)   any Claims under the Worker Adjustment and Retraining Notification Act ("WARN") or any state law or local ordinance that may require advance notice of a plant closing or mass layoff;

(vii)   any Claims arising under the Uniformed Services Employment and Reemployment Rights Act ("USERRA") or any state law governing military leave;

(viii)   any Claims for violation of public policy;

(ix)   any whistleblower or retaliation Claims;

(x)   any other statutory, regulatory, common law or other Claims of any kind, including, but not limited to, Claims for breach of contract, libel, slander, fraud, wrongful discharge, promissory estoppel, equitable estoppel and misrepresentation, and/or

(xi)   any Claims attorneys' fees, costs, emotional distress or pain and suffering.

Nothing herein shall prevent Named Plaintiffs from filing a claim with the Equal Employment Opportunity Commission or the National Labor Relations Board and nothing shall prevent those agencies from investigating any claim or matter, provided further that Named Plaintiffs agree that they herein waive any monetary or other relief of a personal nature as a result of any claim filed or asserted by them or any other person with those or any other federal, state or local agencies.

It is important that Named Plaintiffs understand that this General Release includes all Released Employment Claims, Released Rule 23 Claims and Released FLSA, known or unknown by them, that they may have already asserted or raised as well as those that they have never asserted or raised.

(D)     Each release shall also include the following language, "should any Class Member commence an action against Defendants in violation of the provisions of the release, they shall be required to disgorge all monies paid to them hereunder as a condition precedent of maintaining such action", with the exception of any claim challenging the good faith basis of the release under the ADEA.

(E)     Roach will withdraw the Retaliation Claim with prejudice within five (5) days after the Effective Date.

**5.2**     **Effect of Failure to Cash a Settlement Check.**  Class Members will have sixty (60) days from the date of mailing to cash their Settlement Checks.  Class Members will be informed of this "Acceptance Period" in the Notices and on the Settlement Checks.  The Settlement Claims Administrator shall notify the Parties in writing of the official beginning of the Acceptance Period, which the Settlement Claims Administrator shall determine consistent with this Agreement.  Class Members in Groups A, B, C, and D who do not return timely validly completed Claim Forms and class members in all groups who do not cash their settlement checks within the allotted time shall not release FLSA claims.

**5.3**     **Non-Admission of Liability.**  Defendants have agreed to the terms of settlement herein without in any way acknowledging any fault or liability, and with the understanding that terms have been reached because this settlement will (i) avoid the further expense and disruption of Defendants' business due to the pendency and expense of litigation, and (ii) put the claims in the Litigation finally to rest.  Nothing in this agreement shall be deemed or used as an admission of liability by Defendants, or as an admission that a class should be certified for any purpose other than settlement purposes.

## 6.     CONFIDENTIALITY

**6.1**     Neither Class Counsel nor the Named Plaintiffs will make any public announcement or contact members of the media regarding the Litigation or this Agreement.

**6.2**     Class Counsel will update their respective websites to include the following language "The parties have amicably resolved the matter.  Please contact Justin M. Swartz, Juno Turner, or Naomi Sunshine for information about the settlement process."  Such information shall be posted no earlier than the date on which the Court grants Preliminary Approval.

**6.3**     If the Parties, Class Counsel or Defendants' Counsel are contacted by the press before the matter is approved by the court, they will state "Defendants and Plaintiffs reached a settlement in principle, which the parties found to be acceptable, related to the method of pay for ASMs.  The settlement must still be approved by the Court before it is final, which is expected to be within the next few months."  Defendants may add, at their

option, "Throughout the case, the Defendants have denied the allegations in this matter and the decision to settle was a business decision by the Defendants so that they could put the matter behind them."

6.4 If the Parties, Class Counsel or Defendants' Counsel are contacted by the press after the matter is approved by the Court, they will state "Defendants and Plaintiffs reached a settlement, which the parties found to be acceptable, related to the method of pay for ASMs. The settlement has been approved by the Court and is in the process of being implemented [or was implemented if after the fact]." Defendants may add, at their option, "Defendants have denied the allegations in this matter and the decision to settle was a business decision by the Defendants so they could put the matter behind them."

## 7. INTERPRETATION AND ENFORCEMENT

7.1 **Cooperation Between the Parties; Further Acts.** The Parties shall reasonably cooperate with each other and shall use their reasonable best efforts to obtain the Court's approval of this Agreement and all of its terms. Each party, upon the request of any other party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

7.2 **No Assignment.** Class Counsel and Named Plaintiffs, on behalf of the individual Class Members, represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Litigation, or any related action.

7.3 **Entire Agreement.** This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement.

7.4 **Binding Effect.** This Agreement shall be binding upon the Parties and, with respect to the Named Plaintiffs and members of Groups A-E, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys and assigns.

7.5 **Arms' Length Transaction; Materiality of Terms.** The Parties have negotiated all the terms and conditions of this Agreement at arms' length. All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement, unless otherwise expressly stated.

7.6 **Captions.** The captions or headings of the Sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

7.7 **Construction.** The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties. Each party participated jointly in the drafting of

this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

7.8     **Blue Penciling.**  If any provision of this Agreement is held by a court of competent jurisdiction to be void, voidable, unlawful or unenforceable, the remaining portions of this Agreement will remain in full force and effect, provided that if a determination is made that any release is invalid enabling a Class Member to maintain a claim or action, upon such determination that Class Member will be required to disgorge all payments made to him or her hereunder as a condition precedent to proceeding with the claim or action.

7.9     **Governing Law.**  This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of Connecticut, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

7.10    **Continuing Jurisdiction.**  The Court shall retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby.

7.11    **Waivers, etc. to Be in Writing.**  No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval.  Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

7.12    **CAFA Notice.**  Defendants shall timely provide notices as required by the Class Action Fairness Act ("CAFA") and provide copies of such notices to Class Counsel simultaneous with providing such notice.

7.13    **When Agreement Becomes Effective; Counterparts.**  This Agreement shall become effective upon its execution.  The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same instrument.

7.14    **Signatures of Named Plaintiffs.**  This Agreement is valid and binding if signed by Defendants' authorized representative and at least one Named Plaintiff and any Named Plaintiff's failure to sign the Agreement does not nullify the Agreement.

7.15    **Facsimile and Email Signatures.**  Any party may execute this Agreement by causing its counsel to sign on the designated signature block below and transmitting that signature page via facsimile or email to counsel for the other party.  Any signature made and

transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.

**WE AGREE TO THESE TERMS,**

DATED: __11/26__, 2013        **MORAN FOODS, LLC and MORAN FOODS, INC.**

By: _____

Its: __President And CEO__

DATED: _____, 2013        **SUPERVALU INC.:**

By: _____

Its: _____

DATED: _____, 2013        **ROBERT G. KIEFER**

_____

DATED: _____, 2013        **EDWARD B. ROACH**

_____

transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.

**WE AGREE TO THESE TERMS,**

DATED: _____, 2013                **MORAN FOODS, LLC and MORAN FOODS, INC.**

By: _____

Its: _____

DATED: 11/26 2013                **SUPERVALU INC.:**

By: _____

Its: _General Counsel and Executive Vice President_

DATED: _____, 2013                **ROBERT G. KIEFER**

_____

DATED: _____, 2013                **EDWARD B. ROACH**

_____

transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.

**WE AGREE TO THESE TERMS,**

DATED: _____, 2013                    **MORAN FOODS, LLC and MORAN FOODS, INC.**

By: _____

Its: _____

DATED: _____, 2013                    **SUPERVALU INC.:**

By: _____

Its: _____

DATED: 11/26 2013                    **ROBERT G. KIEFER**

_____

**EDWARD B. ROACH**

_____

transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.

**WE AGREE TO THESE TERMS,**

DATED: _____, 2013          **MORAN FOODS, LLC and MORAN FOODS, INC.**

By: _____

Its: _____

DATED: _____, 2013          **SUPERVALU INC.:**

By: _____

Its: _____

DATED: _____, 2013          **ROBERT G. KIEFER**

_____

DATED: *11-27*, 2013          **EDWARD B. ROACH**

_____

- 25-

DATED: 12/2, 2013      **DAVID PAGANO**

DATED: _____, 2013      **MARKITA P. ROBINSON**

DATED: _____, 2013      **JASON TURNER**

DATED: _____, 2013      **GARLAND OSBORN**

DATED: _____, 2013      **STEPHEN MANOLAKIS**

DATED: _____, 2013      **FRANK RAKOWSKI**

DATED: _____, 2013      **DENNIS SANOSKE**

DATED: _____, 2013      **ERIC EVERHART**

DATED: _____, 2013          **DAVID PAGANO**

_____

DATED: _____, 2013          **MARKITA P. ROBINSON**

_Marlita Robinson_

DATED: 12/1, 2013          **JASON TURNER**

_____

DATED: _____, 2013          **GARLAND OSBORN**

_____

DATED: _____, 2013          **STEPHEN MANOLAKIS**

_____

DATED: _____, 2013          **FRANK RAKOWSKI**

_____

DATED: _____, 2013          **DENNIS SANOSKE**

_____

DATED: _____, 2013          **ERIC EVERHART**

_____

DATED: _____, 2013          **DAVID PAGANO**

_____

DATED: _____, 2013          **MARKITA P. ROBINSON**

_____

DATED: 12/9/, 2013           **JASON TURNER**

_____

DATED: _____, 2013          **GARLAND OSBORN**

_____

DATED: _____, 2013          **STEPHEN MANOLAKIS**

_____

DATED: _____, 2013          **FRANK RAKOWSKI**

_____

DATED: _____, 2013          **DENNIS SANOSKE**

_____

DATED: _____, 2013          **ERIC EVERHART**

_____

DATED: _____, 2013          **DAVID PAGANO**

_____

DATED: _____, 2013          **MARKITA P. ROBINSON**

_____

DATED: _____, 2013          **JASON TURNER**

_____

DATED: _12/9__, 2013         **GARLAND OSBORN**

_Garland Osborn_____

DATED: _____, 2013          **STEPHEN MANOLAKIS**

_____

DATED: _____, 2013          **FRANK RAKOWSKI**

_____

DATED: _____, 2013          **DENNIS SANOSKE**

_____

DATED: _____, 2013          **ERIC EVERHART**

_____

DATED: _____, 2013          **DAVID PAGANO**

 

 

DATED: _____, 2013          **MARKITA P. ROBINSON**

 

 

DATED: _____, 2013          **JASON TURNER**

 

 

DATED: _____, 2013          **GARLAND OSBORN**

 

DATED: 11-26 2013          **STEPHEN MANOLAKIS**

_Stephen Manolakis_

DATED: _____, 2013          **FRANK RAKOWSKI**

 

 

DATED: _____, 2013          **DENNIS SANOSKE**

 

 

DATED: _____, 2013          **ERIC EVERHART**

DATED: _____, 2013          **DAVID PAGANO**

                              _____

DATED: _____, 2013          **MARKITA P. ROBINSON**

                              _____

DATED: _____, 2013          **JASON TURNER**

                              _____

DATED: _____, 2013          **GARLAND OSBORN**

                              _____

DATED: _____, 2013          **STEPHEN MANOLAKIS**

                              _____

DATED: 11/30, 2013            **FRANK RAKOWSKI**

                              _____

DATED: _____, 2013          **DENNIS SANOSKE**

                              _____

DATED: _____, 2013          **ERIC EVERHART**

                              _____

DATED: _____, 2013          **DAVID PAGANO**

_____

DATED: _____, 2013          **MARKITA P. ROBINSON**

_____

DATED: _____, 2013          **JASON TURNER**

_____

DATED: _____, 2013          **GARLAND OSBORN**

_____

DATED: _____, 2013          **STEPHEN MANOLAKIS**

_____

DATED: _____, 2013          **FRANK RAKOWSKI**

_____

DATED: _12.2_, 2013          **DENNIS SANOSKE**

_____

DATED: _____, 2013          **ERIC EVERHART**

_____

DATED: _____, 2013          **DAVID PAGANO**

_____

DATED: _____, 2013          **MARKITA P. ROBINSON**

_____

DATED: _____, 2013          **JASON TURNER**

_____

DATED: _____, 2013          **GARLAND OSBORN**

_____

DATED: _____, 2013          **STEPHEN MANOLAKIS**

_____

DATED: _____, 2013          **FRANK RAKOWSKI**

_____

DATED: _____, 2013          **DENNIS SANOSKE**

_____

DATED: *11-27*, 2013          **ERIC EVERHART**

_____

DATED: _12- 1_, 2013          **TIMOTHY PORTER**

_Timothy S Porter_

DATED: _____, 2013          **BRIAN PEREIRA**

_____

DATED: _____, 2013          **DONNA OAKES**

_____

DATED: _____, 2013          **GREGG SIME**

_____

DATED: _____, 2013          **FRANK SEYMOUR**

_____

DATED: _____, 2013          **ALLEN ZAYAS**

_____

DATED: _____, 2013          **TIMOTHY PORTER**

_____

DATED: 12/11, 2013          **BRIAN PEREIRA**

_____

DATED: _____, 2013          **DONNA OAKES**

_____

DATED: _____, 2013          **GREGG SIME**

_____

DATED: _____, 2013          **FRANK SEYMOUR**

_____

DATED: _____, 2013          **ALLEN ZAYAS**

_____

DATED: _____, 2013     **TIMOTHY PORTER**

_____

DATED: _____, 2013     **BRIAN PEREIRA**

_____

DATED: 11/31, 2013     **DONNA OAKES**

*Donna M. Oakes*
_____

DATED: _____, 2013     **GREGG SIME**

_____

DATED: _____, 2013     **FRANK SEYMOUR**

_____

DATED: _____, 2013     **ALLEN ZAYAS**

_____

DATED: _____, 2013          **TIMOTHY PORTER**

_____


DATED: _____, 2013          **BRIAN PEREIRA**

_____


DATED: _____, 2013          **DONNA OAKES**

_____


DATED: 12/5, 2013          **GREGG SIME**

_____


DATED: _____, 2013          **FRANK SEYMOUR**

_____


DATED: _____, 2013          **ALLEN ZAYAS**

_____

DATED: _____, 2013          **TIMOTHY PORTER**

_____

DATED: _____, 2013          **BRIAN PEREIRA**

_____

DATED: _____, 2013          **DONNA OAKES**

_____

DATED: _____, 2013          **GREGG SIME**

_____

DATED: 12/1, 2013          **FRANK SEYMOUR**

DATED: _____, 2013          **ALLEN ZAYAS**

_____

DATED: _____, 2013        **TIMOTHY PORTER**

_____


DATED: _____, 2013        **BRIAN PEREIRA**

_____


DATED: _____, 2013        **DONNA OAKES**

_____


DATED: _____, 2013        **GREGG SIME**

_____


DATED: _____, 2013        **FRANK SEYMOUR**

_____


DATED: 12/2, 2013          **ALLEN ZAYAS**

_____

## ADDENDUM

Pursuant to Section 7.11 of the JOINT STIPULATION OF GLOBAL SETTLEMENT AND RELEASE (the "Agreement"), entered into between Edward B. Roach, Robert G. Kiefer, David Pagano, Markita P. Robinson, Jason Turner, Garland Osborn, Stephen Manolakis, Frank Rakowski, Dennis Sanoske, Eric Everhart, Timothy Porter, Brian Pereira, Donna Oakes, Gregg Sime, Frank Seymour, and Allen Zayas (collectively, "Plaintiffs"), individually and on behalf of the classes of individuals that they seek to represent and all opt-in plaintiffs; and Moran Foods, LLC and Moran Foods, Inc., together d/b/a/ Save-A-Lot, LTD. (additional d/b/a designations include Save-A-Lot, Save-A-Lot, Ltd. and Save-U-Foods) and SUPERVALU INC. (collectively, "Defendants") (together with Plaintiffs, the "Parties"), the Parties agree to the following addendum to the Agreement:

For the purpose of applying the allocation formula in Section 4.4 of the Agreement,

1. The relevant period for members of Group A (as defined in Section 1.7(A) of the Agreement), shall be as follows:

   a. For Group A class members who opted in prior to April 8, 2013, the relevant period shall begin three years prior to the actual date that the class member's consent to join was filed and shall end on June 30, 2012.

   b. For Group A class members who opted on or after April 8, 2013, the relevant period shall begin on April 8, 2010 and shall end on June 30, 2012.

2. The relevant period for members of Group D (as defined in Section 1.7(D) of the Agreement) shall begin on January 17, 2011 and shall end on June 30, 2012.

3. Any class member in Group A who would, according to the allocation formula in Section 4.4 of the Agreement, receive a settlement payment of less than One-Hundred Dollars ($100.00) shall receive $100.00 as an allocation from the Net Settlement Fund.

**THE PARTIES AGREE TO THE TERMS OF THIS ADDENDUM:**

_____          _____
Justin M. Swartz                     Eve I. Klein

Outten & Golden LLP                  Duane Morris LLP
Justin M. Swartz                     Eve I. Klein
Juno Turner                          Evangelos Michailidis
3 Park Avenue, 29th Floor            1540 Broadway
New York, NY 10016                   New York, NY 10036
(212) 245-1000                       (212) 692-1000
(212) 977-4005 fax                   (212) 214-0650 fax

DM2\4751149.1

The Hayber Law Firm, LLC
Richard Hayber
Erick I. Diaz
221 Main Street, Suite 502
Hartford, CT 06106
(203) 522-8888
(203) 915-9555 fax

Winebrake & Santillo, LLC
Pete Winebrake, Esq.
 (formerly The Winebrake Law Firm, LLC)
Twining Office Center, Suite 211
715 Twining Road
Dresher, PA  19025
Ph: (215) 884-2491
Fx: (215) 884-2492

*Attorneys for Plaintiffs*

Feiner Wolfson LLC
John M. Wolfson
One Constitution Plaza, Suite 900
Hartford, CT 06103
(860) 713-8900
(860) 713-8905 fax

*Attorneys for Defendant Moran Foods, LLC,*
*d/b/a Save-A-Lot Ltd.*

DM2\4751149.1