# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| **ROBERT G. KIEFER, EDWARD B. ROACH, DAVID PAGANO, MARKITA P. ROBINSON, JASON TURNER, GARLAND OSBORN, STEPHEN MANOLAKIS, FRANK RAKOWSKI, DENNIS SANOSKE, ERIC EVERHART, TIMOTHY PORTER, BRIAN PEREIRA, DONNA OAKES, GREGG SIME, FRANK SEYMOUR, AND ALLEN ZAYAS,** individually and on behalf of others similarly situated, | No. 12-CV-756 (WGY) |
|  |  |
| Plaintiffs, | JULY 21, 2014 |
| v. |  |
| **MORAN FOODS, LLC and MORAN FOODS, INC., together d/b/a SAVE-A-LOT, LTD.,** |  |
| Defendants. |  |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR CERTIFICATION OF THE SETTLEMENT CLASSES, FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT, AND APPROVAL OF THE FLSA SETTLEMENT

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

I.  Factual and Procedural Background ...................................................................... 2

    A.  Nature of Plaintiffs' Claims ....................................................................... 2

    B.  The Overtime Litigations ........................................................................... 2

    C.  Investigation and Discovery ...................................................................... 4

    D.  Settlement Negotiations ............................................................................. 4

    E.  CAFA Notices ............................................................................................ 5

II. Summary of the Settlement Terms ........................................................................ 5

    A.  The Settlement Fund .................................................................................. 5

    B.  Eligible Employees .................................................................................... 6

    C.  Releases...................................................................................................... 7

    D.  Allocation Formula .................................................................................... 7

    E.  Attorneys' Fees, Litigation Costs, and Service Awards ........................... 8

    F.  Settlement Claims Administrator............................................................... 8

ARGUMENT .................................................................................................................... 9

III. The Settlement Classes Meet the Legal Standard for Class Certification ........... 9

    A.  Numerosity................................................................................................. 9

    B.  Commonality............................................................................................ 10

    C.  Typicality ................................................................................................. 11

    D.  Adequacy of the Named Plaintiffs........................................................... 12

    E.  Certification is Proper Under Rule 23(b)(3). ........................................... 13

|  | 1. | Common Questions Predominate. ............................................................. 13 |

1.  Common Questions Predominate. ............................................................. 13

2.  A Class Action Is a Superior Mechanism. ................................................ 14

IV.  The Proposed Settlement is Fair, Reasonable, and Adequate and Should be Approved in All Respects ........................................................................................................ 15

A.  The Proposed Settlement is Procedurally Fair ...................................................... 16

B.  The Proposed Settlement is Substantively Fair ..................................................... 18

1.  Litigation Through Trial Would be Complex, Costly, and Long (Grinnell Factor 1) ..................................................................................... 18

2.  The Reaction of the Class Has Been Positive (*Grinnell* Factor 2) .......... 19

3.  Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (Grinnell Factor 3) ................................................. 20

4.  Plaintiffs Would Face Real Risks if the Case Proceeded (*Grinnell* Factors 4 and 5) .......................................................................... 21

5.  Maintaining the Class Through Trial Would Not Be Simple (Grinnell Factor 6) ..................................................................................... 22

6.  Defendants' Ability to Withstand a Greater Judgment Is Not Determinative (Grinnell Factor 7) ........................................................... 23

7.  The Settlement Fund is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (Grinnell Factors 8 and 9) ......................................................................... 24

V.  Approval of the FLSA Settlement Is Appropriate Under Federal Law ............................ 25

CONCLUSION ........................................................................................................................ 26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aber-Shukofsky v. JPMorgan Chase & Co.*,
　755 F. Supp. 2d 441 (E.D.N.Y. 2010) ...................................................................23

*Adeva v. Intertek USA, Inc.*,
　No. 09 Civ. 1096, 2010 WL 97991 (D.N.J. Jan. 11, 2010) ...................................21

*Aiken v. Cnty. of Hampton, S.C.*,
　977 F. Supp. 390 (D.S.C. 1997), *aff'd sub nom. Aiken v. Cnty. of Hampton*, 172 F.3d 43 (4th Cir. 1998) ..........................................................................................................22

*Alli v. Boston Mkt. Corp.*,
　No. 10 Civ. 4, 2011 WL 6156938 (D. Conn. Dec. 29, 2011) ......................... *passim*

*Amchem Prods., Inc. v. Windsor*,
　521 U.S. 591 (1997) ................................................................................13, 14, 15

*Ansoumana v. Gristede's Operating Corp.*,
　201 F.R.D. 81 (S.D.N.Y. 2001) ............................................................................25

*In re Austrian & German Bank Holocaust Litig.*,
　80 F. Supp. 2d 164 (S.D.N.Y. 2000), *aff'd sub nom. D'Amato*, 236 F.3d 78 ..............18, 20, 21

*Beckman v. KeyBank, N.A.*,
　293 F.R.D. 467 (S.D.N.Y. 2013) ...............................................................15, 22, 23

*Cagan v. Anchor Sav. Bank FSB*,
　No. 88 Civ. 3024, 1990 WL 73423 (E.D.N.Y. May 22, 1990)................................25

*City of Detroit v. Grinnell Corp.*,
　495 F.2d 448 (2d Cir. 1974)............................................................................ *passim*

*Clark v. Ecolab, Inc.*,
　No. 07 Civ. 8623, 2010 WL 1948198 (S.D.N.Y. May 11, 2010)..........................11

*Consol. Rail Corp. v. Town of Hyde Park*,
　47 F.3d 473 (2d Cir. 1995)....................................................................................10

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*,
　502 F.3d 91 (2d Cir. 2007)....................................................................................13

*D'Amato v. Deutsche Bank*,
　236 F.3d 78 (2d Cir. 2001)..............................................................................16, 17

*Daniels v. Michiana Metronet, Inc.*,
  No. 09 Civ. 121, 2010 WL 1781017 (N.D. Ind. May 3, 2010)..............................................22

*Denney v. Deutsche Bank AG*,
  443 F.3d 253 (2d Cir. 2006)........................................................................................9

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
  No. 05 Civ. 10240, 2007 WL 2230177 (S.D.N.Y. July 27, 2007) ........................................17

*Flores v. Anjost Corp.*,
  No. 11 Civ. 1531, 2014 WL 321831 (S.D.N.Y. Jan. 29, 2014)..............................................8

*Frank v. Eastman Kodak Co.*,
  228 F.R.D. 174 (W.D.N.Y. 2005)........................................................................ *passim*

*Gen. Tel. Co. of the Sw. v. Falcon*,
  457 U.S. 147 (1982)..................................................................................................10

*Goldberger v. Integrated Res., Inc.*,
  209 F.3d 43 (2d Cir. 2000)..........................................................................................16

*In re Great Atl. & Pac. Tea Co.*,
  472 B.R. 666 (S.D.N.Y. 2012).....................................................................................23

*Green v. Wolf Corp.*,
  406 F.2d 291 (2d Cir. 1968)........................................................................................14

*Hernandez v. Merrill Lynch & Co.*,
  No. 11 Civ. 8472, 2013 WL 1209563 (S.D.N.Y. Mar. 21, 2013) ....................................12, 14

*Hoffmann-LaRoche Inc. v. Sperling*,
  493 U.S. 165 (1989)..................................................................................................26

*In re Ira Haupt & Co.*,
  304 F. Supp. 917 (S.D.N.Y. 1969)...............................................................................21

*Kamean v. Local 363, Int'l Bhd. of Teamsters*,
  109 F.R.D. 391 (S.D.N.Y. 1986) .................................................................................10

*Lynn's Food Stores, Inc. v. United States*,
  679 F.2d 1350 (11th Cir. 1982) ...................................................................................26

*Maley v. Del Global Techs. Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002)...........................................................................19

*Marisol A. v. Giuliani*,
  126 F.3d 372 (2d Cir. 1997).........................................................................................11

*Marriott v. Cnty. of Montgomery*,
  227 F.R.D. 159 (N.D.N.Y. 2005) ...........................................................................13

*McBean v. City of New York*,
  228 F.R.D. 487 (S.D.N.Y. 2005) ............................................................................14

*McKenna v. Champion Intern. Corp.*,
  747 F.2d 1211 (8th Cir. 1984) ...............................................................................26

*McMahon v. Olivier Cheng Catering & Events, LLC*,
  No. 08 Civ. 8713, 2010 WL 2399328 (S.D.N.Y. Mar. 3, 2010) ......................18, 26

*Morris v. Affinity Health Plan, Inc.*,
  859 F. Supp. 2d 611 (S.D.N.Y. 2012).......................................................11, 13, 15

*Myers v. Hertz Corp.*,
  624 F.3d 537 (2d Cir. 2010)...................................................................................23

*Noble v. 93 Univ. Place Corp.*,
  224 F.R.D. 330 (S.D.N.Y. 2004) ...........................................................................14

*O'Connor v. AR Res., Inc.*,
  No. 08 Civ. 1703, 2012 WL 12743 (D. Conn. Jan. 4, 2012) ...........................16, 18

*Odom v. Hazen Transp., Inc.*,
  275 F.R.D. 400 (W.D.N.Y. 2011)...........................................................................10

*Officers for Justice v. Civil Serv. Comm'n of S.F.*,
  688 F.2d 615 (9th Cir. 1982) .................................................................................24

*In re PaineWebber Ltd. P'ships Litig.*,
  171 F.R.D. 104 (S.D.N.Y. 1997) ...........................................................................21

*In re Penthouse Exec. Club Comp. Litig.*,
  No. 10 Civ. 1145, 2014 WL 185628 (S.D.N.Y. Jan. 14, 2014)..............................21

*Port Auth. Police Benevolent Ass'n v. Port Auth. of N.Y. & N.J.*,
  698 F.2d 150 (2d Cir. 1983)...................................................................................10

*Robidoux v. Celani*,
  987 F.2d 931 (2d Cir. 1993)...................................................................................12

*Silverstein v. AllianceBernstein, L.P.*,
  No. 09 Civ. 5904, 2013 WL 7122612 (S.D.N.Y. Dec. 20, 2013).............................8

*In re Sony SXRD Rear Projection Television Class Action Litig.*,
  No. 06 Civ. 5173, 2008 WL 1956267 (S.D.N.Y. May 1, 2008)..............................19

*Spann v. AOL Time Warner, Inc.*,
    No. 02 Civ. 8238, 2005 WL 1330937 (S.D.N.Y. June 7, 2005)............................................16

*In re Sturm, Luger, & Co., Sec. Litig.*,
    No. 03 Civ. 1293, 2012 WL 3589610 (D. Conn. Aug. 20, 2012).........................12, 20, 21, 24

*Torres v. Gristede's Corp.*,
    No. 04 Civ. 3316, 2006 WL 2819730 (S.D.N.Y. Sept. 29, 2006).........................................14

*Torres v. Gristede's Operating Corp.*,
    No. 04 Civ. 3316, 2011 WL 4571792 (S.D.N.Y. Sept. 9, 2011)...........................................23

*Toure v. Amerigroup Corp.*,
    No. 10 Civ. 5391, 2012 WL 3240461 (E.D.N.Y. Aug. 6, 2012)...........................................16

*Toure v. Cent. Parking Sys. of N.Y.*,
    No. 05 Civ. 5237, 2007 WL 2872455 (S.D.N.Y. Sept. 28, 2007).........................................12

*Trinidad v. Breakaway Courier Sys., Inc.*,
    No. 05 Civ. 4116, 2007 WL 103073 (S.D.N.Y. Jan. 12, 2007)............................................12

*Velez v. Majik Cleaning Serv., Inc.*,
    No. 03 Civ. 8698, 2007 WL 7232783 (S.D.N.Y. June 25, 2007).........................................21

*In re Visa Check/MasterMoney Antitrust Litig*,
    280 F.3d 124 (2d Cir. 2001)..........................................................................................15

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S.Ct.2541 (2011)...................................................................................................23

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005).................................................................15, 16, 17, 18

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004).........................................................................................20

*Yuzary v. HSBC Bank USA, N.A.*,
    No. 12 Civ. 3693, 2013 WL 5492998 (S.D.N.Y. Oct. 2, 2013) .............................14, 17, 19

*Zivali v. AT&T Mobility, LLC*,
    784 F. Supp. 2d 456 (S.D.N.Y. 2011)..........................................................................23

**Statutes**

28 U.S.C. § 1715(d) ..............................................................................................................5

29 U.S.C. § 216(b) ..............................................................................................................23

**Other Authorities**

29 C.F.R. § 778.114(a)................................................................................................2, 21

Fed. R. Civ. P. 30.............................................................................................................20

Fed. R. Civ. P. 23................................................................................................9, 12, 13, 15

William B. Rubenstein, Alba Conte & Herbert Newberg, Newberg on Class Actions
    § 3.12 (5th ed. 2011)..............................................................................................10

## INTRODUCTION

Plaintiffs submit this Memorandum of Law in support of their Motion for Certification of the Settlement Class, Final Approval of the Class Action Settlement, and Approval of the FLSA Settlement ("Plaintiffs' Motion for Final Approval").[1]  The Parties' $4,500,000 settlement of this wage and hour class and collective action satisfies all of the criteria for final approval.  Plaintiffs seek an order: (1) certifying the settlement classes described below; (2) approving as fair and adequate the class-wide settlement of this action, as set forth in the Joint Stipulation of Settlement and Release ("Settlement Agreement") and Addenda attached as Exhibits A-G to the Declaration of Justin M. Swartz  in Support of Plaintiffs' Motion for Certification of the Settlement Class, Final Approval of the Class Action Settlement, Approval of the FLSA Settlement, Approval of Attorneys' Fees and Reimbursement of Expenses, and Approval of Service Awards ("Swartz Decl.");[2] and (3) approving the FLSA Settlement.

On March 11, 2014, the Court took the first step in the settlement approval process by granting preliminary approval, directing that notice be mailed to Class Members, and setting the date for the final fairness hearing.  Swartz Decl. ¶ 38; ECF No. 311.  Class Members have been notified of the terms of the settlement, the monetary relief, the allocation formula, and their right to opt out of or object to the settlement.  Ex. B (Decl. of Mark Patton ("Patton Decl."), Ex. C (Rule 23 Notice); Ex. A (Group A FLSA Notice); Ex. B (Group D FLSA Notice)).  No Class Members have objected to or opted out of the settlement.  Patton Decl. ¶¶ 9-10.  With such overwhelming support, and for the reasons stated below, the Court should grant final approval.

---

[1]      Unless otherwise indicated, all capitalized terms have the definitions set forth in the Settlement Agreement.

[2]      Unless otherwise indicated, all exhibits are attached to the Swartz Declaration.

## I.    Factual and Procedural Background

### A.    Nature of Plaintiffs' Claims

Plaintiffs are current and former employees of Defendants who have worked as Assistant Store Managers ("ASMs").  Plaintiffs allege that Defendants violated the Fair Labor Standards Act ("FLSA") and state labor laws by failing to pay ASMs one and a half times their regular rates of pay for all hours worked in excess of 40 hours per week.  Swartz Decl. ¶ 8.  Specifically, Plaintiffs allege that Defendants paid them approximately half-time for each of their overtime hours instead of time and a half.  Defendants claim that they paid Plaintiffs properly, based on the "fluctuating workweek" method of overtime compensation, 29 C.F.R. § 778.114(a). Plaintiffs contend that Defendants were not allowed to use the fluctuating workweek method because defendants did not follow its strict requirements.

### B.    The Overtime Litigations

On March 9, 2011, Plaintiff Edward B. Roach filed a class action in the Superior Court of the State of Connecticut, asserting class claims on behalf of current and former Connecticut ASMs that Defendants' method of calculating the overtime premium pay owed to them violated the Connecticut Minimum Wage Act ("CMWA").  The action was then was transferred to the Complex Litigation Docket in the Judicial District of Hartford, No. HHD-CV-11-6023386S (X04) and captioned *Roach v. Moran Foods Inc.* ("*Roach*").  On March 28, 2011, Defendants filed a motion for summary judgment on one of Roach's theories of liability, which the court granted on March 16, 2012.  *See* Swartz Decl. ¶ 9.  On December 10, 2012, Roach appealed the court's summary judgment order in *Roach*.  *See id.* ¶ 11.

On May 18, 2012, Kiefer filed this class and collective action lawsuit in the United States District Court for the District of Connecticut, captioned *Kiefer v. Moran Foods Inc., d/b/a Save-*

2

*A-Lot, LTD.* ("*Kiefer*"), on behalf of current and former ASMs, in which he claimed that

Defendants' method of calculating the overtime premium pay owed to them violated the FLSA.

He also asserted related Rule 23 class claims against Defendants under the CMWA based on the

same practices.  On August 1, 2012, Defendants filed a motion to dismiss *Kiefer* and/or to stay

the state law claims.  On February 19, 2013, the Court denied the motion to dismiss and granted

the motion to stay the state law claims.  *See* Swartz Decl. ¶ 10.

On December 17, 2012, Kiefer filed a motion for FLSA conditional certification, which

the Court granted on March 12, 2013.  *See id.* ¶ 12.  On January 28, 2013, Defendants filed a

motion for summary judgment in *Kiefer*, which the Court denied on May 2, 2013 after full

briefing and argument.  *See id.*  Between April 5, 2013, and August 21, 2013, 890 individuals

joined *Kiefer* as FLSA opt-in Plaintiffs.  *See id.*

On March 25, 2013, David Pagano filed a class action lawsuit in the Philadelphia County

Court of Common Pleas, No. 130303582, captioned *Pagano v. Supervalu Inc.* ("*Pagano*")

(together with *Roach* and *Kiefer*, the "Litigation"), asserting class claims on behalf of current and

former ASMs in the State of Pennsylvania, in which he claimed that Defendants' method of

calculating the overtime premium pay owed to them violated the Pennsylvania Minimum Wage

Act ("PMWA").  *See* Swartz Decl. ¶ 13.

On December 3, 2013, Pagano filed an Amended Complaint alleging a claim under the

FLSA.  Defendants removed the action to the Eastern District of Pennsylvania, and Plaintiffs

successfully moved to transfer the case to this Court.  *See id.* ¶ 14.

On March 11, 2014, this Court granted Plaintiffs' motion to consolidate *Pagano* with this

action, to amend the complaint, and for preliminary approval of a global settlement.  *See* ECF

No. 311.

### C. Investigation and Discovery

Before initiating these actions, Plaintiffs' Counsel conducted thorough investigations. Swartz Decl. ¶ 15. This included investigation and legal research on the underlying merits of the class claims, the likelihood of obtaining liquidated damages and an extended FLSA statute of limitations, the proper measure of damages, and the likelihood of class certification. *See id.* ¶ 16. Counsel also researched Defendants' likely affirmative defenses and their counterparts under state law. *See id.* ¶ 17.

The Parties completed extensive discovery. In *Roach*, between March 2011 and March 2012, the Parties engaged in substantial discovery and discovery motion practice, which also related to the claims in *Kiefer* and *Pagano*. *See id.* ¶ 20. In *Kiefer*, between August 2012 and June 2013, the Parties also engaged in substantial discovery and discovery motion practice, including document production, several Fed. R. Civ. P. 30(b)(6) depositions, and depositions of several Plaintiffs and opt-in Plaintiffs. The *Kiefer* discovery also related to the claims in *Roach* and *Pagano*. *See id.* In *Pagano*, on July 30, 2013, the Court entered a discovery order with a class certification discovery deadline of September 15, 2013, and thereafter Plaintiffs served discovery requests on Defendants. *See id.*

### D. Settlement Negotiations

On August 19 and 20, 2013, the Parties participated in two all-day mediation sessions in New York, conducted by an experienced class action mediator, Hunter Hughes of Rogers & Hardin LPP in Atlanta, Georgia. *See id.* ¶ 24. Plaintiffs' Counsel did significant work to prepare for the mediation. *See id.* ¶ 25. They held several pre-mediation conference calls with the mediator, submitted a letter outlining Defendants' vulnerabilities and acknowledging risk, and

compiled damage calculations. *See id.* At the mediation, the parties came to an agreement in principle, and signed a term sheet memorializing their agreement, which included the settlement amount. Over the next several months, the parties continued to negotiate additional terms of the settlement, and finalized the Settlement Agreement on November 26, 2013. *See id.* ¶ 26.

On December 5, 2013, Defendants removed *Pagano* to the United States District Court for the Eastern District of Pennsylvania. On December 9, 2013, the Parties moved to transfer *Pagano* to the United States District Court for the District of Connecticut. On December 11, 2013, that motion was granted. On January 10, 2014, at the request of the Parties, *Pagano* was transferred to this Court. This Court granted Plaintiffs' uncontested motion to consolidate *Pagano* with this case on March 11, 2014.

On March 11, 2014, the Court granted Plaintiffs' Motion to file the Second Amended Complaint ("SAC"), which includes Pagano and Roach, among others, as additional named plaintiffs, and adds state law Federal Rule of Civil Procedure 23 claims under the laws of Pennsylvania, Illinois, Maryland, Massachusetts, Missouri, New Jersey, New York, Ohio, North Carolina, and Rhode Island (together with Connecticut, the "Rule 23 States"). Plaintiffs filed the SAC on July 18, 2014.

### E. CAFA Notices

Defendants sent notices to federal and state authorities required by the Class Action Fairness Act ("CAFA") on or around February 20, 2014. *See* 28 U.S.C. § 1715(d); Swartz Decl. ¶ 40. The 90-day CAFA notice period concluded on May 21, 2014. *Id.* No federal or state authorities commented on the settlement or objected to it. *Id.*

## II. Summary of the Settlement Terms

### A. The Settlement Fund

The Settlement Agreement creates a common fund of $4,500,000 (the "Fund"), Ex. A

(Settlement Agreement) § 4.1, which covers Class Members' awards, service payments, attorneys' fees and costs, the settlement administrator's fees, and Defendant's share of payroll taxes. Ex. A (Settlement Agreement) §§ 4.1-4.3, 4.5.

### B. Eligible Employees

Eligible employees consist of four discrete groups of ASMs who worked at Defendants' stores. Group A consists of individuals who filed a consent to join form in *Kiefer* before the full execution of this Agreement. Group B consists of Rule 23 Class Members from Illinois, Maryland, Massachusetts, Missouri, New Jersey, New York, Ohio, North Carolina, and Rhode Island, who worked at Save-A-Lot during the longer of either the appropriate state limitations period for their state's statute or the three-year FLSA period (for the period August 20, 2010, through June 30, 2012), and who are not in Group A. Group C consists of Rule 23 Class Members from Pennsylvania and Connecticut who are not in Group A. Group C is divided into two subgroups. Group C(1) consists of members of Group C who were employed by Save-A-Lot in Connecticut from March 9, 2009, through June 30, 2012. Group C(2) consists of members of Group C who were employed by Save-A-Lot in Pennsylvania from March 25, 2010, through June 30, 2012. Group D consists of all individuals not in Group A, B, or C, who worked for Defendants as an ASM between January 17, 2011 and June 30, 2012. The Settlement Classes include approximately 2110 individuals. Patton Decl. ¶ 3.

Under the Settlement Agreement, any member of Group A, B, C or D who wishes to receive a portion of the Settlement Fund must complete a Claim Form. Ex. A (Settlement Agreement) § 3.5(A). Unclaimed funds allocated to members of Group A, B and D will revert to Defendants. *Id.* § 4.1(E). Unclaimed funds allocated to members of Group C will be redistributed to members of Group C who have timely cashed their settlement checks, or if the

amount of unclaimed funds remaining is too small to practically be redistributed among class members, in the Claims Administrator's discretion, unclaimed funds attributable to members of Group C(1) shall be distributed to the designated Charity, the National Employment Law Project, under the *cy pres* doctrine, and unclaimed funds attributable to members of Group C(2) shall be distributed to the Pennsylvania IOLTA, per statute.  *Id.* § 4.1(F).

### C.     Releases

All Class Members who sign and return a Claim Form ("Settlement Class Members") and cash their settlement checks release Defendants from their FLSA claims.  *Id.* § 5.1(B).  Each member of Groups B and C who does not timely opt out pursuant to this Agreement also releases Defendants from all state claims asserted in the Litigation, or that could have been asserted in the Litigation, based on the facts alleged in the Second Amended Complaint, through June 30, 2012. Ex. A (Settlement Agreement) § 5.1(A).  In addition, all Named Plaintiffs will execute general releases.  *Id.* § 5.1(C).  Members of Group A, who are not in Groups B or C and who do not participate in the settlement, and members of Group D who do not participate in the settlement, do not release any claims.

### D.     Allocation Formula

Settlement Class Members will be paid pursuant to an allocation formula that reflects the relative value of their claims, and is based on the actual amount of overtime coefficient each Settlement Class Member was paid (according to Defendants' payroll records), whether the Settlement Class Member opted in to the action before settlement, and in which state the Settlement Class Member worked.  *Id.* § 4.4(C).  Any Group A Class Member who would otherwise receive less than $100 under the allocation formula will receive $100 as their allocation from the Net Settlement Fund, and any Group B, C or D Class Member who would

otherwise receive less than $25 under the allocation formula will receive $25 as their allocation from the Net Settlement Fund.  Ex. A (Addendum 1) ¶¶ 3-4.  The Parties have also agreed to set aside $50,000 as a reserve fund to cover any correctable errors or omissions.  *Id.* § 4.1(C).

### E.  Attorneys' Fees, Litigation Costs, and Service Awards

Class Counsel have filed a Motion for Attorneys' Fees and Reimbursement of Expenses and a Motion for Approval of Service Awards simultaneously with this Motion.

### F.  Settlement Claims Administrator

The parties retained Settlement Services, Inc. ("SSI") to administer the settlement. Swartz Decl. ¶ 41.  SSI has been approved to administer many wage and hour class action settlements.  *See, e.g.*, *Flores v. Anjost Corp.*, No. 11 Civ. 1531, 2014 WL 321831, at *7 (S.D.N.Y. Jan. 29, 2014); *Silverstein v. AllianceBernstein, L.P.*, No. 09 Civ. 5904, 2013 WL 7122612, at *7 (S.D.N.Y. Dec. 20, 2013).   On April 18, 2014, SSI mailed the Court-approved Notices to approximately 2110 Class Members whose names and addresses were provided by Defendants.  Patton Decl. ¶ 4.  After the Notices were mailed, SSI received 274 Notices returned as undeliverable by the Post Office without updated addresses.  *Id.* ¶ 6.  SSI performed a locator trace for all notices returned as undeliverable.  SSI found no new addresses for 54 Class Members.  *Id.*  SSI re-mailed Notices to all Class Members for whom it located new addresses. *Id.*

The Rule 23 Notice advised Rule 23 Class Members, among other things, that they could object to or exclude themselves from the settlement.  Patton Decl. Ex. C (Rule 23 Notice).  No Class Members have objected to or opted out of the Settlement.  Patton Decl. ¶¶ 8-10.

Class Members claimed approximately 80.5% of the Net Settlement Fund.

Approximately 1245 Class Members returned claim forms.[3]  *Id.* ¶ 10.

## ARGUMENT

**III.    The Settlement Classes Meet the Legal Standard for Class Certification.**

When faced with a proposed class action settlement, courts first examine whether the settlement class can be certified.  *Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006).  On March 11, 2014, the Court preliminarily certified the settlement class.  The Court should now grant final certification because the settlement class meets all of the requirements of Federal Rule of Civil Procedure 23 ("Rule 23").  Plaintiffs respectfully request that the Court certify the Rule 23 Class for purposes of effectuating the settlement.

Under Rule 23, a class action may be maintained if all of the prongs of Rule 23(a) are met, as well as one of the prongs of Rule 23(b).  Rule 23(a) requires that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).  Rule 23(b)(3) requires the Court to find that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  *Id.* at (b)(3).

### A.    Numerosity

"[N]umerosity is presumed at a level of 40 members."  *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).  Plaintiffs satisfy this requirement in each of the Rule 23 States (Illinois, Maryland, Massachusetts, Rhode Island, New York, Missouri, New

---

[3]    Of these, 20 claims were untimely.  Patton Decl. ¶ 10.  Defendants have reserved their right to contest these claims.

Jersey, Ohio, North Carolina, Connecticut and Pennsylvania) because there are approximately 40 or more class members in each of these states.[4]  ECF No. 316 (Second Amended Complaint) ¶¶ 87-88, 95-96, 105-06, 115-16, 125-26, 135-36, 145-46, 156-57, 163-64, 173-74, 183-84.

###     B.     Commonality

The proposed settlement classes also satisfy the commonality requirement, the purpose of which is to test "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."  *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982).  Although the claims need not be identical, they must share common questions of fact or law.  *Port Auth. Police Benevolent Ass'n v. Port Auth. of N.Y. & N.J.*, 698 F.2d 150, 153-54 (2d Cir. 1983).  The proper question is whether there is a "unifying thread" among the claims to warrant class certification.  *Kamean v. Local 363, Int'l Bhd. of Teamsters*, 109 F.R.D. 391, 394 (S.D.N.Y. 1986).  Courts construe the commonality requirement liberally.  *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 181 (W.D.N.Y. 2005) (citation omitted).

This case involves numerous common issues.  Plaintiffs and Class Members all bring the identical claims that Defendants failed to pay them overtime wages in violation of state wage and hour laws by utilizing the fluctuating workweek or, if the fluctuating workweek is a lawful

---

[4]     Although one state class, Rhode Island's, is comprised of approximately 32 people, *see* ECF No. 316 (Second Amended Complaint) ¶ 156, the numerosity requirement is still met, given the relatively small size of the individual claims in this action and the economies achieved by avoiding multiple suits.  *See* 3 William B. Rubenstein, Alba Conte & Herbert Newberg, Newberg on Class Actions § 3.12 (5th ed. 2011); *see also Odom v. Hazen Transp., Inc.*, 275 F.R.D. 400, 407 (W.D.N.Y. 2011) (certifying class of 16 workers in wage and hour class action, after considering "judicial economy arising from the avoidance of a multiplicity of actions . . . financial resources of class members, [and] the ability of claimants to institute individual suits.") (quoting *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993)).

method of paying overtime, by improperly applying it. *See Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 615-16 (S.D.N.Y. 2012) (commonality satisfied where, among other allegations, plaintiffs claimed that defendant had policy of not paying all class members overtime pay); *Alli v. Boston Mkt. Corp.*, No. 10 Civ. 4, 2011 WL 6156938, at *2 (D. Conn. Dec. 29, 2011) (common questions included whether "class members were properly classified as exempt from overtime requirements"); *Clark v. Ecolab, Inc.*, No. 07 Civ. 8623, 2010 WL 1948198, at *3 (S.D.N.Y. May 11, 2010) (common issues included "whether [defendant] failed to pay [p]laintiffs and the . . . [c]lass [m]embers overtime premium pay for all hours they worked over 40 in a workweek; and . . . whether [defendant] maintained accurate time records of the hours [p]laintiffs and the state settlement [c]lass [m]embers worked") (citation omitted).

### C.     Typicality

Rule 23 requires that the claims of the representative party be typical of the claims of the class.  "Like the commonality requirement, typicality does not require the representative party's claims to be identical to those of all class members." *Frank*, 228 F.R.D. at 182.  Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) (internal quotation marks and citations omitted).  "[M]inor variations in the fact patterns underlying individual claims" do not defeat typicality when the defendants direct "the same unlawful conduct" at the named plaintiffs and the class. *Robidoux*, 987 F.2d at 936-37.  Courts evaluate typicality "with reference to the company's actions, not with respect to particularized defenses it might have against certain class members." *Trinidad v. Breakaway Courier Sys., Inc.*, No. 05 Civ. 4116, 2007 WL 103073, at *6 (S.D.N.Y. Jan. 12, 2007) (quoting *Wagner v. NutraSweet Co.*, 95 F.3d 527, 534 (7th Cir. 1996)).

Plaintiffs' claims arise from the same factual and legal circumstances that form the bases of the Class Members' claims. Defendants paid all Plaintiffs and Class Members using the same method pursuant to the same company policy and pattern or practice. Plaintiffs also claim the same injuries as do Class Members – that Defendants failed to properly pay them for overtime hours worked. Accordingly, Plaintiffs satisfy the typicality requirement. *See Hernandez v. Merrill Lynch & Co.*, No. 11 Civ. 8472, 2013 WL 1209563, at*3 (S.D.N.Y. Mar. 21, 2013) (typicality satisfied where "[p]laintiffs' [overtime] claims arose from the same factual and legal circumstances that form the bases of the [c]lass [m]embers' claims") (citing *Morris*, 859 F. Supp. 2d at 616); *Alli*, 2011 WL 6156938, at *2 (same).

### D. Adequacy of the Named Plaintiffs

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The adequacy requirement exists to ensure that the named representative will 'have an interest in vigorously pursuing the claims of the class, and . . . have no interests antagonistic to the interests of other class members.'" *Toure v. Cent. Parking Sys. of N.Y.*, No. 05 Civ. 5237, 2007 WL 2872455, at *7 (S.D.N.Y. Sept. 28, 2007) (quoting *Denney*, 443 F.3d at 268 ) (internal quotation marks omitted). Plaintiffs meet the adequacy requirement because there is no evidence that Plaintiffs have interests that are antagonistic to or at odds with those of Class Members. *See In re Sturm, Luger, & Co., Sec. Litig.*, No. 03 Civ. 1293, 2012 WL 3589610, at*10 (D. Conn. Aug. 20, 2012) (adequacy met where there was no evidence that lead plaintiffs' and class members' interests are in conflict); *Morris*, 859 F. Supp. 2d at 616 (no evidence that named plaintiffs' and class members' interests were at odds); *Alli*, 2011 WL 6156938, at *2 (same). Plaintiffs' Counsel also meet the adequacy requirement of Rule 23(a)(4) because they have substantial experience prosecuting and settling

employment class actions, including wage and hour class actions, and are well-versed in wage and hour law and class action law. *See* Swartz Decl. ¶¶ 3-7; Hayber Decl. ¶¶ 4-14; Winebrake Decl. ¶¶ 5-23.

### E.    Certification is Proper Under Rule 23(b)(3).

Rule 23(b)(3) requires that common questions of law or fact "predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).

### 1.    Common Questions Predominate.

To establish predominance, Plaintiffs must demonstrate that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole . . . predominate over those issues that are subject only to individualized proof." *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 107-08 (2d Cir. 2007) (quoting *In re Visa Check/MasterMoney Antitrust Litig*, 280 F.3d 124, 136 (2d Cir. 2001)). The essential inquiry is whether "liability can be determined on a class-wide basis, even when there are some individualized damage issues." *Marriott v. Cnty. of Montgomery*, 227 F.R.D. 159, 173 (N.D.N.Y. 2005) (quoting *In re Visa Check*, 280 F.3d at 139). Simply because a defense may arise and affect different class members differently does not defeat predominance. *See Noble v. 93 Univ. Place Corp.*, 224 F.R.D. 330, 339 (S.D.N.Y. 2004) (quoting *In re Visa Check*, 280 F.3d at 138). Where plaintiffs are "unified by a common legal theory" and by common facts, predominance is satisfied. *McBean v. City of New York*, 228 F.R.D. 487, 502 (S.D.N.Y. 2005). The predominance requirement is "designed to determine whether 'proposed classes are

sufficiently cohesive to warrant adjudication by representation.'" *Frank*, 228 F.R.D. at 183

(quoting *Amchem*, 521 U.S. at 623).

Here, Class Members' common factual allegations and legal theory – that Defendants

violated federal and state law by failing to pay them proper overtime wages – predominate over

any variations among Class Members. *See Yuzary v. HSBC Bank USA, N.A.*, No. 12 Civ. 3693,

2013 WL 5492998, at *4 (S.D.N.Y. Oct. 2, 2013) (finding plaintiffs' common factual allegations

and common legal theory predominate over any factual or legal variations among class members

in wage and hour case); *Hernandez*, 2013 WL 1209563, at *4 (same); *Alli*, 2011 WL 6156938, at

*2 (same); *Diaz*, 2010 WL 5507912, at *3 (same); *Torres v. Gristede's Corp.*, No. 04 Civ. 3316,

2006 WL 2819730, at *16 (S.D.N.Y. Sept. 29, 2006) (plaintiffs "introduced sufficient proof that

Defendants engaged in a common practice to deny employees overtime pay," and "this issue

predominates over any individual calculations of overtime wages").

## 2.      A Class Action Is a Superior Mechanism.

The second part of the Rule 23(b)(3) analysis compares whether "the class action device

[is] superior to other methods available for a fair and efficient adjudication of the controversy."

*Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968); *Amchem*, 521 U.S. at 617 ("The policy at

the very core of the class action mechanism is to overcome the problem that small recoveries do

not provide the incentive for any individual to bring a solo action prosecuting his or her rights.")

(internal citation omitted). Rule 23(b)(3) sets forth a non-exclusive list of factors pertinent to

judicial inquiry into the superiority of a class action, including: the class members' interests in

individually controlling the prosecution or defense of separate actions; whether individual class

members wish to bring, or have already brought, individual actions; and the desirability of

concentrating the litigation of the claims in the particular forum.  Fed. R. Civ. P. 23(b)(3).[5]

Concentrating the litigation in this Court is desirable because a significant portion of the allegedly wrongful conduct occurred within its jurisdiction, and many of Defendants' stores are located here.  Especially with the consolidation of this action with the two state court cases, the class device will achieve economies of scale, conserve judicial resources, preserve public confidence in the integrity of the judicial system by avoiding the waste and delay of repetitive proceedings, and prevent inconsistent adjudications of similar claims. *See Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 474 (S.D.N.Y. 2013); *Morris*, 859 F. Supp. 2d at 617; *Alli*, 2011 WL 6156938, at *2.  A class action is the best mechanism to fairly and efficiently resolve Class Members' claims.

## IV.    The Proposed Settlement is Fair, Reasonable, and Adequate and Should be Approved in All Respects.

Rule 23(e) requires court approval for a class action settlement to insure that it is procedurally and substantively "fair, reasonable and adequate."  Fed. R. Civ. P. 23(e).  To determine procedural fairness, courts examine "the negotiating process leading to the settlement."  *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001).  To determine substantive fairness, courts determine whether the settlement's terms are fair, adequate, and reasonable according to the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974), *abrogated*

---

[5]    Another factor, whether the case would be manageable as a class action at trial, is not of consequence in the context of a proposed settlement.  *See Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a [trial] court need not inquire whether the case, if tried, would present intractable management problems, . . . for the proposal is that there be no trial."); *Frank*, 228 F.R.D. at 183 ("The court need not consider the [manageability] factor, however, when the class is being certified solely for the purpose of settlement.").  Moreover, denying class certification on manageability grounds is "disfavored" and "should be the exception rather than the rule."  *In re Visa Check*, 280 F.3d at 140 (citation omitted).

*on other grounds by Goldberger v. Integrated Res., Inc*., 209 F.3d 43 (2d Cir. 2000).

Courts examine procedural and substantive fairness in light of the "strong judicial policy in favor of settlement[]" of class action suits. *Wal-Mart Stores*, 396 F.3d at 116 (internal quotation marks omitted); *O'Connor v. AR Res., Inc.*, No. 08 Civ. 1703, 2012 WL 12743, at *3 (D. Conn. Jan. 4, 2012) (same); *see also Spann v. AOL Time Warner, Inc.*, No. 02 Civ. 8238, 2005 WL 1330937, at *6 (S.D.N.Y. June 7, 2005) ("[P]ublic policy favors settlement, especially in the case of class actions."). When, as here, "a settlement is negotiated prior to class certification, . . . it is subject to a higher degree of scrutiny in assessing its fairness." *D'Amato*, 236 F.3d at 85; *Spann*, 2005 WL 1330937, at *5. Even under high scrutiny, procedural and substantive considerations support approving the proposed settlement.

### A.      The Proposed Settlement is Procedurally Fair.

The proposed settlement is procedurally fair because it was reached through vigorous, arm's-length negotiations and after experienced counsel had evaluated the merits of Plaintiffs' claims. *See Toure v. Amerigroup Corp.*, No. 10 Civ. 5391, 2012 WL 3240461, at *3 (E.D.N.Y. Aug. 6, 2012) (finding settlement to be "procedurally fair, reasonable, adequate, and not a product of collusion" after plaintiffs conducted a thorough investigation and enlisted the services of an experienced employment law mediator); *O'Connor v. AR Res., Inc.*, No. 08 Civ. 1703, 2012 WL 12743, at *4 (D. Conn. Jan. 4, 2012) (procedural fairness found when "settlement was reached after the Plaintiffs conducted a thorough investigation and evaluation of the claims and was the product of an arm's length negotiation between the parties"). "A presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116 (internal quotation marks omitted); *see also D'Amato,* 236 F.3d at 85.

"Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240, 2007 WL 2230177, at \*4 (S.D.N.Y. July 27, 2007).

Here, the settlement was reached after Class Counsel conducted a thorough investigation and significant litigation, and evaluated the claims and defenses, and after extensive arm's-length negotiations between the parties. Swartz Decl. ¶¶ 15-29. The parties participated in a two-day mediation session with an experienced employment mediator. Swartz Decl. ¶ 24. Plaintiffs' Counsel did significant work to prepare for the mediation, including, among other things, holding several pre-mediation conference calls with the mediator, submitting a letter outlining Defendant's vulnerabilities and acknowledging risk, providing the mediator with copies of Plaintiffs' moving and reply papers in connection with their motion for summary judgment, and compiling damage calculations. Swartz Decl. ¶ 25; *see Yuzary*, 2013 WL 5492998 at \*5 (finding settlement to be "procedurally fair, reasonable, adequate, and not a product of collusion" where the parties conducted a thorough investigation and evaluated the claims and defenses, and after arm's-length negotiations).

At the mediation, the parties came to an agreement in principle, and signed a term sheet memorializing their agreements, which included the settlement amount. Over the next several months, the parties continued to negotiate additional terms of the settlement, which they memorialized in the Settlement Agreement. *See* Swartz Decl. ¶ 26. These arm's-length negotiations involved counsel and mediators well-versed in wage and hour law, raising a presumption that the settlement achieved meets the requirements of due process. *See Wal-Mart Stores*, 396 F.3d at 116; *McMahon v. Olivier Cheng Catering & Events, LLC*, No. 08 Civ. 8713, 2010 WL 2399328, at \*4 (S.D.N.Y. Mar. 3, 2010).

**B.      The Proposed Settlement is Substantively Fair.**

In *Grinnell*, the Second Circuit provided the analytical framework for evaluating the

substantive fairness of a class action settlement.  495 F.2d at 448.  The *Grinnell* factors guide

district courts in making this determination.  They are (1) the complexity, expense and likely

duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the

proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the

risks of establishing damages;  (6) the risks of maintaining the class action through trial; (7) the

ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the

settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the

settlement fund to a possible recovery in light of all the attendant risks of litigation.  *Grinnell*,

495 F.2d at 463.  All of the *Grinnell* factors weigh in favor of final approval of the Settlement

Agreement.

**1.      Litigation Through Trial Would be Complex, Costly, and Long
              (Grinnell Factor 1).**

By reaching a favorable settlement prior to the resolution of dispositive motions or trial,

Plaintiffs seek to avoid significant expense and delay, and instead ensure recovery for the class.

"Most class actions are inherently complex and settlement avoids the costs, delays and multitude

of other problems associated with them."  *In re Austrian & German Bank Holocaust Litig.*, 80 F.

Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub nom. D'Amato*, 236 F.3d 78; *see also O'Connor*,

2012 WL 12743, at *4 (finding first factor weighed in favor of approving settlement, although

case was "not particularly legally or factually complex, [because] there would still be a

significant amount of work and effort to prepare the case for trial").  This case is no exception,

with approximately 2110 Class Members and claims under federal and multiple state laws.  In

addition, this settlement resolved three separate lawsuits, two of which were pending in state

courts.  *See* Exhibit A (Settlement Agreement) 1-3.  *See Yuzary*, 2013 WL 5492998, at *1-3 (granting final approval of settlement resolving three separate lawsuits involving claims under the laws of three states and the FLSA).  .

Further litigation here would cause additional expense and delay.  If the settlement is not approved, the *Roach* appeal regarding the permissibility of the FWW overtime pay method in Connecticut will have to be decided, discovery will resume, *Pagano* will be sent back to Pennsylvania, and fact-intensive trials will be necessary to determine the validity of Defendants' overtime payment methods to ASMs.  These trials would be lengthy and complex and would consume tremendous time and resources for the Parties and the Court.  Any judgment would likely be appealed, further extending the litigation.  The settlement, on the other hand, makes monetary relief available to Class Members in a prompt and efficient manner in one forum. Therefore, the first *Grinnell* factor weighs in favor of approval.

### 2.    The Reaction of the Class Has Been Positive (*Grinnell* Factor 2).

"It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy."  *Maley v. Del Global Techs. Corp.,* 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002) (citation omitted).  The lack of class member objections "may well evidence the fairness of a settlement."  *In re Sony SXRD Rear Projection Television Class Action Litig.*, No. 06 Civ. 5173, 2008 WL 1956267, at *6 (S.D.N.Y. May 1, 2008) (quoting *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 425 (S.D.N.Y. 2001)).

Here, the Notices sent to Class Members included an explanation of the allocation formula and an estimate of each Class Member's award.  Patton Decl. Ex. C (Rule 23 Notice) ¶ 8; Patton Decl. Ex. A (Group A Notice) ¶ 8; Patton Decl. Ex. B (Group D Notice) ¶ 8.  The Rule

23 Notice also informed Rule 23 Class Members of their right to object to or exclude themselves from the settlement and explained how to do so. Patton Decl. Ex. C (Rule 23 Notice) ¶¶ 12, 17-18, 21. No Class Member has either objected to or opted out of the settlement. Patton Decl. ¶¶ 8-10. This favorable response demonstrates that the class approves of the settlement, which further supports final approval. *See In re Sturm, Luger, & Co.*, 2012 WL 3589610, at*5 ("[T]he absence of objectants may itself be taken as evidencing the fairness of a settlement.") (quoting *Ross v. A.H. Robins*, 700 F. Supp. 682, 684 (S.D.N.Y. 1988)).

### 3. Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (Grinnell Factor 3).

The Parties have completed ample discovery to recommend settlement. The proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004) (citation and internal quotation marks omitted). "[T]he pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . [, but] an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian*, 80 F. Supp. 2d at 176 (citation and internal quotation marks omitted). The Parties' discovery here meets and exceeds this standard. The Parties have completed significant discovery in all three cases. Specifically, Plaintiffs' Counsel have reviewed numerous documents, taken several Rule 30(b)(6) depositions, and defended the depositions of several Plaintiffs and opt-in Plaintiffs. Swartz Decl. ¶ 18. In addition, the Plaintiffs have reviewed and analyzed data sufficient to calculate damages, including information about the number of employee workweeks in the class period and class member salary information. *Id.* ¶ 25. This factor favors final approval. *See In re Penthouse Exec. Club Comp. Litig.*, No. 10 Civ. 1145, 2014 WL 185628, at *6 (S.D.N.Y. Jan. 14, 2014) (finding that this factor favors final approval in case where significant discovery had

occurred); *In re Sturm*, 2012 WL 3589610, at *4 (finding informal discovery "sufficient to provide a clear view of the strengths and weaknesses of their cases and of the adequacy of the settlement") (citation and internal quotation marks omitted).

### 4.    Plaintiffs Would Face Real Risks if the Case Proceeded (*Grinnell* Factors 4 and 5).

Although Plaintiffs believe their case is strong, it is subject to considerable risk. "Litigation inherently involves risks." *In re PaineWebber Ltd. P'ships Litig.,* 171 F.R.D. 104, 126 (S.D.N.Y. 1997). Indeed, "[i]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *In re Ira Haupt & Co.*, 304 F. Supp. 917, 934 (S.D.N.Y. 1969); *see also Velez v. Majik Cleaning Serv., Inc.*, No. 03 Civ. 8698, 2007 WL 7232783, at *6 (S.D.N.Y. June 25, 2007). In weighing the risks of establishing liability and damages, a court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *In re Austrian*, 80 F. Supp. 2d at 177 (citation and internal quotation marks omitted).

A trial on the merits would involve significant risks for Plaintiffs as to both liability and damages. Plaintiffs would have to overcome Defendants' defense that they appropriately paid ASMs overtime pursuant to the fluctuating workweek method set forth in 29 C.F.R. § 778.114(a), and the corresponding provisions under applicable state laws.

There is no controlling caselaw on several of the relevant issues. For example, Plaintiffs argue that because Defendants paid ASMs holiday pay, the ASMs did not receive a fixed weekly salary. Although they cite *Adeva v. Intertek USA, Inc.*, No. 09 Civ. 1096, 2010 WL 97991, at *3 (D.N.J. Jan. 11, 2010), which granted summary judgment to plaintiffs on the issue of the fluctuating workweek because of the defendant's payment of holiday pay, the Court is not bound to follow it and Defendants can cite caselaw to the contrary, *see, e.g.*, *Aiken v. Cnty. of Hampton,*

*S.C.*, 977 F. Supp. 390, 397 (D.S.C. 1997), *aff'd sub nom. Aiken v. Cnty. of Hampton*, 172 F.3d 43 (4th Cir. 1998) (hourly pay for holidays insufficient to establish that plaintiffs were not paid on a salary basis).[6]

Defendants also argue that, if the Court were to find liability, no liquidated damages should be awarded and a two-year statute of limitations should apply. *See* ECF No. 185. While Plaintiffs believe that they could ultimately establish both liability and damages, this may require significant factual development at trial. Plaintiffs' Counsel are experienced and realistic, and understand that the resolution of liability issues, the outcome of the trial, and the inevitable appeals process are inherently uncertain in terms of outcome and duration. *See Beckman*, 293 F.R.D. at 475-76. The proposed settlement alleviates these uncertainties. This factor therefore weighs in favor of approval.

### 5. Maintaining the Class Through Trial Would Not Be Simple (Grinnell Factor 6).

The risk of obtaining class certification and maintaining it through trial also is present. The Court has not certified any Rule 23 Classes yet, and the Parties anticipate that such a determination would be reached only after intense, exhaustive briefing. In opposing class certification, Defendants could argue that individualized questions preclude class certification. For example, Defendants would likely argue that because not all Class Members received purportedly impermissible bonuses, and not all Class Members were paid less than their salaries, that there were no common factual issues, and that *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011), precludes class certification. Although Plaintiffs disagree with these arguments,

---

[6]     Similarly, although Plaintiffs contend that SAL's failure to pay ASMs' full salary for their first and last week's employment violates the fluctuating workweek, the court in *Daniels v. Michiana Metronet, Inc.*, No. 09 Civ. 121, 2010 WL 1781017, at *6 (N.D. Ind. May 3, 2010) rejected that argument.

other defendants have prevailed on arguments like these.  *See Beckman*, 293 F.R.D. at  480 (listing numerous wage and hour cases in this Circuit where courts have denied Rule 23 motions and decertified FLSA collectives); *see also Myers v. Hertz Corp.*, 624 F.3d 537, 549-51 (2d Cir. 2010) (affirming denial of class certification in wage and hour case ).  Risk, expense, and delay permeate such processes.  Settlement eliminates this risk, expense, and delay.  Swartz Decl. ¶ 33.

In addition, were the case to proceed, Defendants likely would challenge the determination that Plaintiffs may proceed on their FLSA claims on behalf of a collective pursuant to 29 U.S.C. § 216(b).  *See, e.g.*, *Zivali v. AT&T Mobility, LLC*, 784 F. Supp. 2d 456, 470 (S.D.N.Y. 2011) (granting defendant's motion to decertify collective action).  Settlement eliminates the risk and delay inherent in this process.  Swartz Decl. ¶ 34.  As such, this factor weighs in favor of approval.

### 6. Defendants' Ability to Withstand a Greater Judgment Is Not Determinative (Grinnell Factor 7).

There is no evidence pertaining to whether Defendants could withstand a greater judgment.  Swartz Decl. ¶ 31.  In recent years, however, even some of the largest institutions have failed, leaving the class with no recourse.  *See, e.g.*, *Aber-Shukofsky v. JPMorgan Chase & Co.*, 755 F. Supp. 2d 441, 443, 446-51 (E.D.N.Y. 2010) (finding plaintiffs' wage and hour claims against Washington Mutual's successors in interest to be barred).  Other companies in Defendants' industry, the grocery store industry, have filed for bankruptcy, *see In re Great Atl. & Pac. Tea Co.*, 472 B.R. 666, 668-69 (S.D.N.Y. 2012), or threatened bankruptcy, *see Torres v. Gristede's Operating Corp.*, No. 04 Civ. 3316, 2011 WL 4571792, at *1 (S.D.N.Y. Sept. 9, 2011).  However, even if Defendants could withstand a greater judgment, a "defendant['s] ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian*, 80 F. Supp. 2d at 178 n.9).  Therefore, this

factor is neutral and does not preclude the Court from granting preliminary approval.

**7.** **The Settlement Fund is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (Grinnell Factors 8 and 9).**

Defendants have agreed to settle this case for a substantial amount, $4,500,000. Swartz Decl. ¶ 36. The amount represents substantial value given the attendant risks of litigation, even though recovery could be greater if Plaintiffs attained class certification, overcame motions to decertify the class or collective, succeeded on all claims at trial, and survived an appeal.

The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'" *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian*, 80 F. Supp. 2d at 178). "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). "[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinnell Corp.*, 495 F.2d at 455 n.2. "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair." *Officers for Justice v. Civil Serv. Comm'n of S.F.*, 688 F.2d 615, 628 (9th Cir. 1982); *see In re Sturm*, 2012 WL 3589610, at *7 (approving settlement amount that represented "approximately 3.5% of Lead Plaintiff's 'most aggressive estimate of maximum provable damages'"); *see also Cagan v. Anchor Sav. Bank FSB*, No. 88 Civ. 3024, 1990 WL 73423, at *12-13 (E.D.N.Y. May 22, 1990) (approving $2.3 million class settlement over objections that the "best possible recovery would be approximately $121 million").

Here, the settlement provides much more than "a fraction of the potential recovery." By Class Counsel's estimation, the $4,500,000 settlement represents approximately 47% of the class's total potential lost wages (approximately $9.5 million) during the applicable statute of limitations period. The settlement represents a substantial recovery for Class Members, particularly in light of the risk of losing both collective and class certification, having a collective action decertified, losing on the merits, and losing on appeal. Swartz Decl. ¶ 35.

Here, Class Members will each receive an average net settlement payment (net of attorneys' fees and costs, service awards, claims administration fees, and reserve for errors and omissions) of approximately $1,816.19. Patton Decl. ¶ 10. Weighing the benefits of the settlement against the available evidence and the risks associated with proceeding in the litigation, the settlement amount is reasonable.

The settlement represents a substantial recovery for Class Members, particularly in light of the risks of litigation. Weighing the benefits of the settlement against the available evidence and the risks associated with proceeding in the litigation, the settlement amount is reasonable.

## V. Approval of the FLSA Settlement Is Appropriate Under Federal Law.

Plaintiffs also request that the Court approve the settlement of their FLSA claims. They have brought their FLSA claims as a collective action. Unlike the procedure under Rule 23, collective members must affirmatively opt into the litigation in order to join it. *See Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 84-85 (S.D.N.Y. 2001). Because, under the FLSA, "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date," FLSA collective actions do not implicate the same due process concerns as Rule 23 actions. *McKenna v. Champion Intern. Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984), *abrogated on other grounds by Hoffmann-LaRoche Inc. v. Sperling*, 493 U.S. 165 (1989); *see also McMahon*, 2010 WL 2399328, at *6. Accordingly, the high standard for

approval of a class action under Rule 23 does not apply to an FLSA settlement.

Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes. *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 n.8 (11th Cir. 1982); *McMahon*, 2010 WL 2399328, at *6. Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. *Lynn's Food Stores*, 679 F.2d at 1353-54. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement. *Id.* at 1354; *McMahon*, 2010 WL 2399328, at *6. Because the Settlement Agreement resolves a *bona fide* dispute and was reached after vigorous arm's-length settlement negotiations, it should be approved.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court: (1) certify the settlement classes; (2) grant final approval of the class settlement; and (3) approve the FLSA settlement.

Dated: July 21, 2014
New York, New York

Respectfully submitted,

**OUTTEN & GOLDEN LLP**

/s/ *Justin M. Swartz*
Justin M. Swartz (admitted *pro hac vice*)
JMS@outtengolden.com
Juno Turner (admitted *pro hac vice*)
jturner@outtengolden.com
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone: (212) 245-1000
Facsimile: (212) 977-4005

**The Hayber Law Firm, LLC**
Richard Eugene Hayber (ct 11629)

26

rhayber@hayberlawfirm.com
Erick I. Díaz Vázquez (ct 27023)
ediaz@hayberlawfirm.com
221 Main Street, Suite 502
Hartford, CT 06106
Telephone:  (860) 522-8888
Facsimile:  (860) 218-9555

**Winebrake & Santillo, LLC**
Peter Winebrake (admitted *pro hac vice*)
pwinebrake@winebrakelaw.com
715 Twining Rd
Dresher PA, 19025
Telephone:  (215) 884-2491
Facsimile: (215) 884-2492

**Attorneys for Plaintiffs, the
Collective, and the Putative Class**

## **CERTIFICATION OF SERVICE**

I hereby certify that on July 21, 2014, a copy of the within document was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system and by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. A complete, duplicate copy of this document will be forwarded directly to Judge Young in Boston, MA. Parties may access this filing through the Court's CM/ECF System.

 */s/ Justin M. Swartz*
Justin M. Swartz