**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| **ROBERT G. KIEFER, EDWARD B. ROACH, DAVID PAGANO, MARKITA P. ROBINSON, JASON TURNER, GARLAND OSBORN, STEPHEN MANOLAKIS, FRANK RAKOWSKI, DENNIS SANOSKE, ERIC EVERHART, TIMOTHY PORTER, BRIAN PEREIRA, DONNA OAKES, GREGG SIME, FRANK SEYMOUR, AND ALLEN ZAYAS,** individually and on behalf of others similarly situated, | No. 12-CV-756 (WGY) |
| Plaintiffs, | |
| v. | JULY 21, 2014 |
| **MORAN FOODS, LLC and MORAN FOODS, INC., together d/b/a SAVE-A-LOT, LTD.,** | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR**
<u>**APPROVAL OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES**</u>

## **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................... 1

I.     Class Counsel Are Entitled to a Reasonable Fee of One Third of the Settlement Fund...... 2

II.    The Percentage Method is Preferred for Awarding Attorneys' Fees in Common Fund
       Cases in the Second Circuit ....................................................................................... 3

       A.     The *Goldberger* Factors Support an Award of 33% of the Fund ........................... 7

       B.     Class Counsel's Time and Labor ........................................................................ 8

       C.     Magnitude and Complexity of the Litigation...................................................... 12

       D.     Risk of Litigation .......................................................................................... 13

       E.     Quality of Representation ................................................................................ 15

       F.     Fee in Relation to the Settlement ..................................................................... 16

       G.     Public Policy Considerations ........................................................................... 18

III.   The Lodestar Cross Check Further Supports an Award to Class Counsel of
       One-Third of the Settlement Fund .............................................................................. 19

IV.    Class Counsel Are Entitled to Reimbursement of Expenses Under the Settlement
       Agreement ............................................................................................................... 22

CONCLUSION ................................................................................................................... 22

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A.H. Phillips, Inc. v. Walling*,
    324 U.S. 490 (1945).................................................................................................19

*Aiken v. Cnty. of Hampton*,
    977 F. Supp. 390 (D.S.C. 1997)...........................................................................14

*Alleyne v. Time Moving & Storage Inc.*,
    264 F.R.D. 41 (E.D.N.Y. 2010).............................................................................6

*Alli v. Boston Mkt. Corp.*,
    No. 10 Civ. 4, 2012 WL 1356478 (D. Conn. Apr. 17, 2012) ..........................16, 17

*In re Am. Bank Note Holographics, Inc.*,
    127 F. Supp. 2d 418 (S.D.N.Y. 2001)....................................................................4

*Ansoumana v. Gristede's Operating Corp.*,
    201 F.R.D. 81 (S.D.N.Y. 2001) ...........................................................................13

*In re Arakis Energy Corp.*,
    No. 95 Civ. 3431, 2001 WL 1590512 (E.D.N.Y. Oct. 31, 2001) ...........................7

*Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany*,
    22 F.3d 182, 191 (2d Cir. 2008).............................................................................4

*Aros v. United Rentals, Inc.*,
    No. 10 Civ. 73, 2012 WL 3060470 (D. Conn. July 26, 2012)........................ *passim*

*Barrentine v. Arkansas-Best Freight Sys., Inc.*,
    450 U.S. 728 (1981)...............................................................................................12

*Beckman v. Keybank, N.A.*,
    293 F.R.D. 467 (S.D.N.Y. Apr. 29, 2013)........................................15, 17, 20, 22

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980)...............................................................................................6

*In re Boesky Sec. Litig.*,
    888 F. Supp. 551 (S.D.N.Y. 1995)........................................................................20

*Buccellato v. AT&T Operations, Inc.*,
    No. 10 Civ. 463, 2011 WL 3348055 (N.D. Cal. June 30, 2011) ...........................21

*Caitflo, L.L.C. v. Sprint Commc'ns Co. L.P.*,
   No. 11 Civ. 00497, 2013 WL 3243114 (D. Conn. June 26, 2013) ...........................................4

*In re Cardinal Health Inc. Sec. Litig.*,
   528 F. Supp. 2d 752 (S.D. Ohio 2007) ...................................................................................21

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974)....................................................................................................13

*Collins v. Olin Corp.*,
   No. 03 Civ. 945, 2010 WL 1677764 (D. Conn. Apr. 21, 2010) ...............................................4

*In re Comverse Tech., Inc. Sec. Litig.*,
   No. 06 Civ. 1825, 2010 WL 2653354 (E.D.N.Y. Jun. 24, 2010) ...........................................18

*Cosgrove v. Sullivan*,
   759 F. Supp. 166 (S.D.N.Y. 1991).........................................................................................21

*Dahingo v. Royal Caribbean Cruises, Ltd.*,
   312 F. Supp. 2d 440 (S.D.N.Y. 2004).......................................................................................6

*Daniels v. Michiana Metronet, Inc.*,
   No. 09 Civ. 121, 2010 WL 1781017 (N.D. Ind. May 3, 2010)...............................................14

*Davis v. J.P. Morgan Chase & Co.*,
   827 F. Supp. 2d 172 (W.D.N.Y. 2011) .............................................................................17, 20

*deMunecas v. Bold Food, LLC*,
   No. 09 Civ. 440, 2010 WL 3322580 (S.D.N.Y. Aug. 23, 2010) ........................................4, 19

*Deposit Guar. Nat'l Bank v. Roper*,
   445 U.S. 326 (1980)................................................................................................................19

*Diaz v. E. Locating Serv., Inc.*,
   No. 10 Civ. 04082, 2010 WL 5507912 (S.D.N.Y. Nov. 29, 2010) ..........................................6

*Dixon v. Zabka*,
   No. 11 Civ. 982, 2013 WL 2391473 (D. Conn. May 23, 2013) ...............................................3

*In re Enron Corp. Sec., Derivative & ERISA Litig.*,
   586 F. Supp. 2d 732 (S.D. Tex. 2008) ...................................................................................21

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
   No. 05 Civ. 10240, 2007 WL 2230177 (S.D.N.Y. July 27, 2007) ...........................................5

*In re Fine Host Corp. Sec. Litig.*,
   MDL No. 1241, 2000 WL 33116538 (D. Conn. Nov. 8, 2000) .............................................19

iv

*Frank v. Eastman Kodak Co.*,
   228 F.R.D. 174 (W.D.N.Y. 2005)...................................................................................13, 19

*In re Gilat Satellite Networks, Ltd.*,
   No. 02 Civ. 1510, 2007 WL 2743675 (E.D.N.Y. Sept. 18, 2007)..........................................16

*In re Global Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) ...........................................................................................5

*Goldberger v. Integrated Res. Inc.*,
   209 F.3d 43 (2d Cir. 2000)............................................................................................... *passim*

*Hernandez v. Merrill Lynch & Co.*,
   No. 11 Civ. 8472, 2013 WL 1209563 (S.D.N.Y. Mar. 21, 2013) ...........................................17

*Hicks v. Stanley*,
   No. 01 Civ. 10071, 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ....................................18, 20

*In re Indep. Energy Holdings PLC Sec. Litig.*,
   2003 WL 22801724 ...............................................................................................................22

*In re Interpublic Sec. Litig.*,
   2004 WL 2397190 ...................................................................................................................5

*J.I. Case Co. v. Borak*,
   377 U.S. 426 (1964)................................................................................................................19

*Khait v. Whirlpool Corp.*,
   No. 06 Civ. 6381, 2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010)............................................19

*In re Lloyd's Am. Trust Fund Litig.*,
   No. 96 Civ. 1262, 2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002) ........................................21

*Maley v. Del Global Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. Jan. 29, 2002) ......................................................................21

*Masters v. Wilhelmina Model Agency, Inc.*,
   473 F.3d 423 (2d Cir. 2007)..................................................................................................6, 7

*McDaniel v. County of Schenectady*,
   595 F.3d 411 (2d Cir. 2010)....................................................................................................3

*Myers v. Hertz Corp.*,
   624 F.3d 537 (2d Cir. 2010)...................................................................................................15

*New England Carpenters Health Benefits Fund v. First Databank, Inc.*,
   No. 05 Civ. 11148, 2009 WL 2408560 (D. Mass. Aug. 3, 2009)............................................21

*Parker v. Jekyll and Hyde Entm't Holdings, L.L.C.*,
    No. 08 Civ. 7670, 2010 WL 532960 (S.D.N.Y. Feb. 9, 2010) ...........................................7, 20

*Parker v. Time Warner Entertainment Co., L.P*,
    631 F. Supp. 2d 242, 265-66 (E.D.N.Y. 2009) .......................................................................7

*In re Penthouse Exec. Club Compensation Litig.*, No. 10 Civ. 1145,
    2014 WL 185628 (S.D.N.Y. Jan. 14, 2014) .....................................................................6, 17

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985) ..............................................................................................................19

*In re Polaroid ERISA Litig.*,
    2007 WL 2116398 ..................................................................................................................5

*In re Priceline.com, Inc. Sec. Litig.*,
    No. 00 Civ. 1884, 2007 WL 2115592 (D. Conn. July 20, 2007)...........................................17

*In re Prudential Sec. Inc. Ltd. P'ship Litig.*,
    912 F. Supp. 97 (S.D.N.Y. 1996)........................................................................................12

*In re Ramp Corp. Sec. Litig.*,
    No. 05 Civ. 6521, 2008 WL 58938 (S.D.N.Y. Jan. 3, 2008)................................................5

*Reyes v. Altamarea Grp., LLC*,
    No. 10 Civ. 6451, 2011 WL 4599822 (S.D.N.Y. Aug. 16, 2011) .......................................3, 12

*In re Rite Aid Sec. Litig.*,
    362 F. Supp. 2d 587 (E.D. Pa. 2005) ..................................................................................21

*Sand v. Greenberg*,
    No. 08 Civ. 7840, 2010 WL 69359 (S.D.N.Y. Jan. 7, 2010)...........................................3, 19

*Savoie v. Merchants Bank*,
    166 F.3d 456 (2d Cir. 1999)...........................................................................................5, 20

*Sewell v. Bovis Lend Lease, Inc.*,
    No. 09 Civ. 6548, 2012 WL 1320124 (S.D.N.Y. Apr. 16, 2012)................................... *passim*

*Shortt v. New Milford Police Dep't*,
    562 A.2d 7 (Conn. 1989) ......................................................................................................19

*Steiner v. Am. Broad. Co.*,
    248 F. App'x 780 (9th Cir. 2007) ........................................................................................20

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*,
    258 F. Supp. 2d 254 (S.D.N.Y. 2003)...................................................................................4

*In re Sturm, Luger, & Co., Sec. Litig.*,
   No. 03 Civ. 1293, 2012 WL 3589610 (D. Conn. Aug. 20, 2012)..............................................2

*In re Sumitomo Copper Litig.*,
   74 F. Supp. 2d 393 (S.D.N.Y. 1999).................................................................................4, 18

*Taft v. Ackermans*,
   No. 02 Civ. 7951, 2007 WL 414493 (S.D.N.Y. Jan. 31, 2007)........................................15, 18

*Tiro v. Public House Invs., LLC*,
   No. 11 Civ. 7679, 2013 WL 4830949 (S.D.N.Y. Sept. 10, 2013)..........................................22

*Toure v. Amerigroup Corp.*,
   No. 10 Civ. 5391, 2012 WL 3240461 (E.D.N.Y. Aug. 6, 2012) ............................................17

*Varljen v. H.J. Meyers & Co.*,
   No. 97 Civ. 6742, 2000 WL 1683656 (S.D.N.Y. Nov. 8, 2000) ..............................................6

*In re Veeco Instruments Inc. Sec. Litig.*,
   No. 05 MDL 1695, 2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007) ...........................................18

*Velez v. Majik Cleaning Serv., Inc.*,
   No. 03 Civ. 8698, 2007 WL 7232783 (S.D.N.Y. June 25, 2007)......................................5, 16

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002) ...............................................................................................20

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011)...........................................................................................................15

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005)...............................................................................................3, 4, 5

*Waters v. Int'l Precious Metals Corp.*,
   190 F.3d 1291 (11th Cir. 1999) ................................................................................................6

*Williams v. MGM-Pathe Communs. Co.*,
   129 F.3d 1026 (9th Cir. 1997) ..................................................................................................6

*Willix v. Healthfirst, Inc.*,
   No. 07 Civ. 1143, 2011 WL 754862 (E.D.N.Y. Feb. 18, 2011).............................................17

*Yuzary v. HSBC Bank USA, N.A.*,
   No. 12 Civ. 3693, 2013 WL 5492998 (S.D.N.Y. Oct. 2, 2013) ........................................17, 20

## <u>INTRODUCTION</u>

In connection with Plaintiffs' Motion for Certification of the Settlement Class, Final Approval of the Class Action Settlement, and Approval of the FLSA Settlement ("Motion for Final Approval"), filed simultaneously with this motion,[1] Class Counsel, Outten & Golden LLP ("O&G"), The Hayber Law Firm, and Winebrake and Santillo, LLP, respectfully move this Court for an award of attorneys' fees in the amount of $1,500,000, or one-third of the Settlement Fund (the "Fund"), and reimbursement of $67,150.62 in out-of-pocket expenses that Class Counsel incurred in successfully prosecuting this action.

Over the past three years, Class Counsel has spent over 4087 attorney, paralegal, and support staff hours prosecuting this case.  Decl. of Justin M. Swartz  in Support of Plaintiffs' Mot. for Certification of the Settlement Class, Final Approval of the Class Action Settlement, Approval of the FLSA Settlement, Approval of Attorneys' Fees and Reimbursement of Expenses, and Approval of Service Awards ("Swartz Decl.") ¶ 43; Decl. of Richard Hayber in Supp. of Pls.' Mot. for Approval of Attorneys' Fees and Reimbursement of Expenses ("Hayber Decl.") ¶ 22; Decl. of P. Winebrake in Supp. of Pls.' Mot. for Approval of Attorneys' Fees and Reimbursement of Expenses ("Winebrake Decl.") ¶ 27.

Class Counsel's efforts to date have been without compensation, and their entitlement to payment has been wholly contingent upon achieving a good result.  Swartz Decl. ¶ 48.  For the reasons set forth below, Class Counsel respectfully submit that the attorneys' fees and expense reimbursement they seek are fair and reasonable under the applicable legal standards, and should be awarded in light of the contingency risk undertaken and the result achieved in this case.

---

[1]    For a detailed account of the factual and procedural background of this case, Class Counsel refer the Court to the Memorandum of Law in Support of Plaintiffs' Motion for Final Approval, and the Swartz Decl. ¶¶ 9-29.

I.      **Class Counsel Are Entitled to a Reasonable Fee of One Third of the Settlement Fund.**

Class Counsel are entitled to reasonable attorneys' fees to compensate them for their work in recovering unpaid overtime wages on behalf of the class.  The Settlement Agreement, which has been preliminarily approved by the Court, provides that "Class Counsel will petition the Court for an award of attorneys' fees of no more than one-third of the Gross Settlement Amount, and, in addition, for reimbursement of their actual litigation costs and expenses . . . ." Ex. A (Settlement Agreement) ¶ 4.2(A).[2]  In addition, the Court-approved Notices that were sent to all Class Members stated the following:

> Class Counsel will ask the Court to approve payment of up to one-third of the settlement fund for attorneys' fees.  These fees would compensate Class Counsel for investigating the facts, litigating the case, and negotiating the settlement. Class Counsel will also ask the Court to approve payment of their out-of-pocket costs of no more than $70,000.

Ex. C (Rule 23 Notice) ¶ 16; Ex. A (Group A Notice) ¶ 13; Ex. B (Group D Notice) ¶ 13.  No Class Member has objected to the requested attorneys' fees or expense reimbursement.  Decl. of Mark Patton ("Patton Decl.") ¶¶ 8-10.  The lack of objections is some indication of the reasonableness of the requested award and weighs in favor approving it.  *See In re Sturm, Luger, & Co., Sec. Litig.*, No. 03 Civ. 1293, 2012 WL 3589610, at*5 (D. Conn. Aug. 20, 2012) ("[T]he absence of objectants may itself be taken as evidencing the fairness of a settlement.") (quoting *Ross v. A.H. Robins*, 700 F. Supp. 682, 684 (S.D.N.Y. 1988)). The request for 33% of the Fund plus expenses is reasonable and well within the range approved by courts in similar cases.

---

[2]      Unless otherwise indicated, all exhibits are attached to the Swartz Declaration.

**II.    The Percentage Method is Preferred for Awarding Attorneys' Fees in Common Fund Cases in the Second Circuit.**

In wage and hour class action lawsuits, public policy favors a common fund attorneys' fee award.  *Aros v. United Rentals, Inc.*, No. 10 Civ. 73, 2012 WL 3060470, at *5 (D. Conn. July 26, 2012); *Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548, 2012 WL 1320124, at *13 (S.D.N.Y. Apr. 16, 2012); *Reyes v. Altamarea Grp., LLC*, No. 10 Civ. 6451, 2011 WL 4599822, at *7 (S.D.N.Y. Aug. 16, 2011).  Where relatively small claims can only be prosecuted through aggregate litigation, and the law relies on prosecution by "private attorneys general," attorneys who fill that role must be adequately compensated for their efforts.  *Aros*, 2012 WL 3060470, at *5 (Statutory attorneys' fees are meant to "encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel.") (quoting *Sand v. Greenberg*, No. 08 Civ. 7840, 2010 WL 69359, at *3 (S.D.N.Y. Jan. 7, 2010)); *Dixon v. Zabka*, No. 11 Civ. 982, 2013 WL 2391473, at *2 (D. Conn. May 23, 2013) (same).  If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk.  *Aros*, 2012 WL 3060470.  "But for the separate provision of legal fees, many violations of the Fair Labor Standards Act would continue unabated and uncorrected."  *Sand*, 2010 WL 69359, at *3.

Although there are two ways to compensate attorneys for successful prosecution of statutory claims – the lodestar method and the percentage of the fund method, *McDaniel v. County of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010) – the trend in this Circuit is to use the percentage of the fund method in common fund cases like this one, *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005); *Sewell*, 2012 WL 1320124, at *10.

There are several reasons that courts prefer the percentage method.  First, the percentage method "directly aligns the interests of the class and its counsel" because it provides an incentive

to attorneys to resolve the case efficiently and to create the largest common fund out of which payments to the class can be made. *Wal-Mart Stores*, 396 F.3d at 121 (internal quotation marks omitted); *Caitflo, L.L.C. v. Sprint Commc'ns Co. L.P.*, No. 11 Civ. 00497, 2013 WL 3243114, at *2 (D. Conn. June 26, 2013); *Collins v. Olin Corp.*, No. 03 Civ. 945, 2010 WL 1677764, at *6 (D. Conn. Apr. 21, 2010).

The percentage method is also closely aligned with market practices because it "mimics the compensation system actually used by individual clients to compensate their attorneys." *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 397 (S.D.N.Y. 1999); *see also Sewell*, 2012 WL 1320124, at *10 ("[The percentage] method is similar to private practice where counsel operates on a contingency fee, negotiating a reasonable percentage of any fee ultimately awarded."); *Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 262 (S.D.N.Y. 2003) (the percentage method "is consistent with and, indeed, is intended to mirror, practice in the private marketplace where contingent fee attorneys typically negotiate percentage fee arrangements with their clients"); *In re Am. Bank Note Holographics*, *Inc.*, 127 F. Supp. 2d 418, 432 (S.D.N.Y. 2001) (the court should "determine what the lawyer would receive if he were selling his services in the market rather than being paid by court order"). This rationale is consistent with the Second Circuit's decision in *Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany*, where the Court held that a "presumptively reasonable fee" takes into account what a "reasonable, paying client" would pay. 522 F.3d 182, 191 (2d Cir. 2008). While *Arbor Hill* is not controlling because it does not address a common fund fee petition, it supports use of the percentage of the fund method. *deMunecas v. Bold Food, LLC*, No. 09 Civ. 440, 2010 WL 3322580, at *9 (S.D.N.Y. Aug. 23, 2010).

Second, the percentage of the fund method promotes early resolution, and removes the

incentive for plaintiffs' lawyers to engage in wasteful litigation in order to increase their billable hours. It "provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Wal-Mart Stores*, 396 F.3d at 121 (internal quotation marks omitted); *see also In re Ramp Corp. Sec. Litig.*, No. 05 Civ. 6521, 2008 WL 58938, at *2 n.2 (S.D.N.Y. Jan. 3, 2008); *In re Polaroid ERISA Litig.*, 2007 WL 2116398, at *2; *Velez v. Majik Cleaning Serv., Inc.*, No. 03 Civ. 8698, 2007 WL 7232783, at *7 (S.D.N.Y. June 25, 2007). The percentage method discourages plaintiffs' lawyers from running up their billable hours, one of the most significant downsides of the lodestar method. *Savoie v. Merchants Bank*, 166 F.3d 456, 460-61 (2d Cir. 1999) ("It has been noted that once the fee is set as a percentage of the fund, the plaintiffs' lawyers have no incentive to run up the number of billable hours for which they would be compensated under the lodestar method."); *Karpus v. Borelli* ("*In re Interpublic Sec. Litig.*"), Nos. 02 Civ. 6527, 03 Civ. 1194, 2004 WL 2397190, at *11 (S.D.N.Y. Oct. 26, 2004).

Third, the percentage method preserves judicial resources because it "relieves the court of the cumbersome, enervating, and often surrealistic process of evaluating fee petitions." *In re Interpublic Sec. Litig.*, 2004 WL 2397190, at *11 (quoting *Savoie*, 166 F.3d at 461 n.4). The "primary source of dissatisfaction [with the lodestar method] was that it resurrected the ghost of Ebenezer Scrooge, compelling district courts to engage in a gimlet-eyed review of line-item fee audits." *Goldberger v. Integrated Res. Inc.*, 209 F.3d 43, 48-49 (2d Cir. 2000); *see also In re Ramp Corp. Sec. Litig.*, 2008 WL 58938, at *2 n.2; *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240, 2007 WL 2230177, at *16 (S.D.N.Y. July 27, 2007). While courts still use the lodestar method as a "cross check" when applying the percentage of the fund method, they are not required to scrutinize the fee records as rigorously. *Goldberger*, 209 F.3d at 50; *see In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 468 (S.D.N.Y. 2004) (using

5

an "implied lodestar" for the lodestar cross check); *Varljen v. H.J. Meyers & Co.*, No. 97 Civ. 6742, 2000 WL 1683656, at \*5 (S.D.N.Y. Nov. 8, 2000) (using an "unexamined lodestar figure" for the lodestar cross check).

In applying the common fund method, the Supreme Court, the Second Circuit, and other Circuit Courts, have held that it is appropriate to award attorneys' fees as a percentage of the entire maximum gross settlement fund, even where amounts to be paid to settlement class members who do not file claims will revert to the Defendants.  *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 480-81 (1980); *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 436-37 (2d Cir. 2007); *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1296-97 (11th Cir. 1999); *Williams v. MGM-Pathe Communs. Co*., 129 F.3d 1026, 1027 (9th Cir. 1997) (reversing district court award of 33 percent of the claimed fund and awarding attorneys' fees of 33 percent of the available fund); *see also In re Penthouse Exec. Club Compensation Litig.*, No. 10 Civ. 1145, 2014 WL 185628, at \*11 (S.D.N.Y. Jan. 14, 2014); *Diaz v. E. Locating Serv., Inc.*, No. 10 Civ. 04082, 2010 WL 5507912, at \*8 (S.D.N.Y. Nov. 29, 2010); *Alleyne v. Time Moving & Storage Inc.*, 264 F.R.D. 41, 59 (E.D.N.Y. 2010) ("[T]he value of legal service rendered in the creation of a settlement fund [is not] diminished by the failure of beneficiaries to cash in, regardless of what happens to the surplus.").

In *Masters*, the Second Circuit recognized that "[t]he entire Fund, and not some portion thereof, is created through the efforts of counsel at the instigation of the entire class.  An allocation of fees by percentage should therefore be awarded on the basis of the total funds made available whether claimed or not."  473 F.3d at 437; *Aros*, 2012 WL 3060470, at \*5; *see also, e.g.*, *Dahingo v. Royal Caribbean Cruises, Ltd.*, 312 F. Supp. 2d 440, 442-43 (S.D.N.Y. 2004) (noting that attorneys' fees equivalent to one-third of common fund had been approved

notwithstanding the fact that a significant portion of fund was unclaimed and reverted to defendants).

Courts have occasionally declined to award a percentage of the entire settlement fund in settlements providing for a reversion for reasons not applicable here.  For example, in *Parker v. Time Warner Entertainment Co., L.P*, the court did not follow *Masters* because no fund or fixed amount of money had been established, and it was "clear from the outset" that a small number of claims would be filed.  631 F. Supp. 2d 242, 265-66 (E.D.N.Y. 2009).  Moreover, the *Parker* court relied on a case that predated *Masters – In re Arakis Energy Corp.*, No. 95 Civ. 3431, 2001 WL 1590512 (E.D.N.Y. Oct. 31, 2001) – where plaintiffs' counsel sought an award that would have been more than 100% of the amount actually paid to class members.  *Id.* at *14.  Even there, the Court awarded plaintiffs' counsel 25% of the entire available fund, which resulted in a multiplier of 1.2 times plaintiffs' counsel's lodestar.  *Id.* at *15.  Here, the value of the claims made by Class Members to date is approximately $2,261,155.18, which constitutes more than 80 percent of the Settlement Fund.  Patton Decl. ¶ 10.  Moreover, Class Counsel seeks an award that is considerably less than the amount actually paid to the Class and approximately equal to their actual lodestar.  Swartz Decl. ¶ 47.

## A.   The *Goldberger* Factors Support an Award of 33% of the Fund.

Reasonableness is the touchstone for determining attorneys' fees.  In *Goldberger*, the Second Circuit articulated six factors for courts to consider in determining the reasonableness of fee applications:

(1)     the time and labor expended by counsel;
(2)     the magnitude and complexities of the litigation;
(3)     the risk of litigation;
(4)     the quality of representation;
(5)     the requested fee in relation to the settlement; and
(6)     public policy considerations.

7

209 F.3d at 50 (internal quotation marks omitted).  All of the *Goldberger* factors weigh in favor of granting approval of Class Counsel's fee application.

### B.        Class Counsel's Time and Labor.

Class Counsel spent significant effort to achieve the $4.5 million settlement.  Before the initiation of these actions, Plaintiffs conducted a thorough investigation into the merits of the potential claims and defenses.  Swartz Decl. ¶ 15.  This included investigation and legal research on the underlying merits of the class claims, the likelihood of obtaining liquidated damages and an extended FLSA statute of limitations, the proper measure of damages, and the likelihood of class certification.  *Id.* ¶ 16.  Counsel also researched Defendants' likely affirmative defenses and their counterparts under state law.  *Id.* ¶ 17.   Plaintiffs focused their investigation and legal research on the underlying merits of Class Members' claims, the damages to which they were entitled, and the propriety of class certification.  *Id.* ¶ 16.  Class Counsel also conducted in-depth interviews with each of the Plaintiffs to determine the hours that they worked, the wages they were paid, and other information relevant to their claims.  *Id.* ¶ 18.  Class Counsel also obtained and reviewed numerous documents from Plaintiffs related to their employment with Save-a-Lot, including pay records, offer letters, employee handbooks, and other related documents.  *Id.* ¶ 19.

Prior to reaching a settlement with SAL, Plaintiffs engaged in complex litigation on three different fronts. On March 9, 2011, Plaintiff Edward B. Roach filed a class action in the Superior Court of the State of Connecticut, asserting class claims on behalf of current and former Connecticut ASMs that Defendants' method of calculating the overtime premium pay owed to them violated the Connecticut Minimum Wage Act ("CMWA").  The action was then was transferred to the Complex Litigation Docket in the Judicial District of Hartford, No. HHD-CV-11-6023386S (X04) and captioned *Roach v. Moran Foods Inc.* ("*Roach*").  On March 28, 2011,

Defendants filed a motion for summary judgment on one of Roach's theories of liability, which the court granted on March 16, 2012. *See* Swartz Decl. ¶ 9. On December 10, 2012, Roach appealed the court's summary judgment order in *Roach*. *See* Swartz Decl. ¶ 11.

On May 18, 2012, Kiefer filed this class and collective action lawsuit in the United States District Court for the District of Connecticut, captioned *Kiefer v. Moran Foods Inc., d/b/a Save-A-Lot, LTD.* ("*Kiefer*"), on behalf of current and former ASMs, in which he claimed that Defendants' method of calculating the overtime premium pay owed to them violated the FLSA. He also asserted related Rule 23 class claims against Defendants under the CMWA based on the same practices. On August 1, 2012, Defendants filed a motion to dismiss *Kiefer* and/or to stay the state law claims. On February 19, 2013, the Court denied the motion to dismiss and granted the motion to stay the state law claims. *See* Swartz Decl. ¶ 10.

On December 17, 2012, Kiefer filed a motion for FLSA conditional certification, which the Court granted on March 12, 2013. On January 28, 2013, Defendants filed a motion for summary judgment in *Kiefer*, which the Court denied on May 2, 2013. Between April 5, 2013, and August 21, 2013, 890 individuals joined *Kiefer* as FLSA opt-in Plaintiffs. *See* Swartz Decl. ¶ 12.

On March 25, 2013, David Pagano filed a class action lawsuit in the Philadelphia County Court of Common Pleas, No. 130303582, captioned *Pagano v. Supervalu Inc.* ("*Pagano*") (together with *Roach* and *Kiefer*, the "Litigation"), asserting class claims on behalf of current and former ASMs in the State of Pennsylvania, in which he claimed that Defendants' method of calculating the overtime premium pay owed to them violated the Pennsylvania Minimum Wage Act ("PMWA"). *See* Swartz Decl. ¶ 13.

On December 3, 2013, Pagano filed an Amended Complaint alleging a claim under the FLSA.  Defendants removed the action to the Eastern District of Pennsylvania, and Plaintiffs successfully moved to transfer the case to this Court.  *See* Swartz Decl. ¶ 14.

The Parties completed extensive discovery.  In *Roach*, between March 2011 and March 2012, the Parties engaged in substantial discovery and discovery motion practice, which also related to the claims in *Kiefer* and *Pagano*.  *See* Swartz Decl. ¶ 20.  In *Kiefer*, between August 2012 and June 2013, the Parties also engaged in substantial discovery and discovery motion practice, including substantial document production, several Fed. R. Civ. P. 30(b)(6) depositions, and depositions of several Plaintiffs and opt-in Plaintiffs, which also related to the claims in *Roach* and *Pagano*.  *See id.*  In *Pagano*, on July 30, 2013, the Court entered a discovery order with a class certification discovery deadline of September 15, 2013, and thereafter Plaintiffs served discovery requests on Defendants.  *See id.*

 On August 19 and 20, 2013, the Parties participated in two all-day mediation sessions in New York, conducted by an experienced class action mediator, Hunter Hughes of Rogers & Hardin LPP in Atlanta, Georgia.  *See* Swartz Decl. ¶ 24.  Plaintiffs' Counsel did significant work to prepare for the mediation.  Swartz Decl. ¶ 25; Winebrake Decl. ¶ 4.  They held several pre-mediation conference calls with the mediator, submitted a letter outlining Defendants' vulnerabilities and acknowledging risk, and compiled damage calculations.  Swartz Decl. ¶ 25. At the mediation, the parties came to an agreement in principle, and signed a term sheet memorializing their agreements, which included the settlement amount.  Over the next several months, the parties continued to negotiate additional terms of the settlement, and finalized the Settlement Agreement on November 26, 2013.  *See* Swartz Decl. ¶ 26.

On December 5, 2013, Defendants removed *Pagano* to the United States District Court

for the Eastern District of Pennsylvania.  On December 9, 2013, the Parties moved to transfer *Pagano* to the United States District Court for the District of Connecticut.  On December 11, 2013, that motion was granted.  On January 10, 2014, at the request of the Parties, *Pagano* was transferred to this Court.  On February 12, 2014, Plaintiffs filed their motion for preliminary approval of the settlement, accompanied by a motion to consolidate *Pagano* with *Kiefer*, and for permission to file a Second Amended Complaint in the consolidated cases.  ECF No. 305.  On March 11, 2014, the Court granted both motions.  ECF No. 311.  On July 18, 2014, Plaintiffs filed a second amended complaint including Pagano and Roach, among others, as additional named plaintiffs, and adding state law Federal Rule of Civil Procedure 23 claims under the laws of Pennsylvania, Illinois, Maryland, Massachusetts, Missouri, New Jersey, New York, Ohio, North Carolina, and Rhode Island (together with Connecticut, the "Rule 23 States").

In performing these tasks, Class Counsel expended approximately 4087 hours of attorney, paralegal, and staff member time – an aggregate lodestar of $1,512,247.00.  Swartz Decl.  ¶¶ 43, 47; Hayber Decl. ¶ 22; Winebrake Decl. ¶ 27.  These hours are reasonable for a case like this one and were compiled from contemporaneous time records maintained by each attorney, paralegal, and support staff participating in the case.  Swartz Decl. ¶ 45; Hayber Decl. ¶ 22; Winebrake Decl. ¶ 26.  Class Counsel used a small team of attorneys at any one time in order to minimize duplication of efforts and maximize billing judgment and made every effort to have the work performed by the attorney or paralegal with the lowest hourly rate who was able to effectively perform it.  Swartz Decl. ¶ 50.

Moreover, the requested fee is not based solely on time and effort already expended, rather, it is also meant to compensate Class Counsel for time that will be spent administering the settlement in the future.  Swartz Decl. ¶ 51;  *see Aros*, 2012 WL 3060470, at *6 ("The fee Class

Counsel requests is also reasonable because they will continue to perform work on behalf of the Class but will not make a supplemental fee application."); *Reyes*, 2011 WL 4599822, at *8 ("The fact that Class Counsel's fee award will not only compensate them for time and effort already expended, but for time that they will be required to spend administering the settlement going forward also supports their fee request" of 33% of the fund).

In Class Counsel's experience, administering class settlements of this nature and size requires a substantial and ongoing commitment. Swartz Decl. ¶ 51. For example, since the Notice was sent out, Class Counsel and staff have responded to numerous class members' questions about the terms of the settlement and the amount of their settlement award. *Id.* As is common in wage and hour class actions, Class Counsel expects to respond to more Class Member inquiries after final approval, especially after checks are issued. *Id.*

### C.   Magnitude and Complexity of the Litigation.

The size and difficulty of the issues in a case are significant factors to be considered in making a fee award. *Goldberger*, 209 F.3d at 50; *In re Prudential Sec. Inc. Ltd. P'ship Litig.*, 912 F. Supp. 97, 100 (S.D.N.Y. 1996). Courts have recognized that wage and hour cases involve complex legal issues. "FLSA claims typically involve complex mixed questions of fact and law . . . . These statutory questions must be resolved in light of volumes of legislative history and over four decades of legal interpretation and administrative rulings." *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 743 (1981).

Among FLSA cases, the most complex type is the "hybrid" action brought here, where state wage and hour violations are brought as an "opt out" class action pursuant to Federal Rule of Civil Procedure 23 in the same action as the FLSA "opt in" collective action pursuant to 29 U.S.C. § 216(b). Because the same set of operative facts are being applied and analyzed under

12

both statutory frameworks, justice is served and consistency and efficiency are achieved by having the litigation in one forum.  *See Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 90 (S.D.N.Y. 2001).

This case hinged on several mixed questions of fact and law.  In particular, the parties disputed the facts surrounding SAL's policy of paying according to the fluctuating work week method, which Plaintiffs alleged was improperly applied.  The parties disputed both the facts of the policy and whether the policy, as applied to Class Members, was lawful.  These mixed factual and legal questions support approval of Class Counsel's attorneys' fee request.  *See Sewell*, 2012 WL 1320124, at *12; *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 189 (W.D.N.Y. 2005) (mixed questions of fact and law supported court's award of attorneys' fees representing 40% of the common fund).

### D.     Risk of Litigation.

The risk of litigation is also an important factor in determining a fee award.  Uncertainty that an ultimate recovery will be obtained is highly relevant in determining the reasonableness of an award.  *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 470 (2d Cir. 1974), *abrogated on other grounds by Goldberger*, 209 F.3d 43 (2d Cir. 2000).  "[D]espite the most vigorous and competent of efforts, success is never guaranteed."  *Id.* at 471.

Class Counsel undertook to prosecute this action without any assurance of payment for their services, litigating this case on a wholly contingent basis in the face of significant risk. Swartz Decl. ¶ 52.  Class and collective wage and hour cases of this type are, by their very nature, complicated and time-consuming.  *Id.*  Any lawyer undertaking representation of large numbers of affected employees in such actions inevitably must be prepared to make a tremendous investment of time, energy, and resources.  *Id.*  Due also to the contingent nature of

the customary fee arrangement, lawyers are asked to be prepared to make this investment with the very real possibility of an unsuccessful outcome and no fee of any kind. *Id.* Class Counsel stood to gain nothing in the event the case was unsuccessful. *Id.*

Moreover, the circumstances of this case presented hurdles to a successful recovery. Plaintiffs would have to overcome Defendants' defense that they appropriately paid ASMs overtime pursuant to the fluctuating workweek method set forth in 29 C.F.R. 778.114(a), and the corresponding provisions under applicable state laws. Although Plaintiffs believed they could establish liability, not all courts considering the types of violations that Plaintiffs alleged have ruled in plaintiffs' favor. *See, e.g.*, *Daniels v. Michiana Metronet, Inc.*, No. 09 Civ. 121, 2010 WL 1781017, at *6 (N.D. Ind. May 3, 2010) (defendant's failure to pay full salary for first and last weeks' employment did not violate fluctuating work week); *Aiken v. Cnty. of Hampton*, 977 F. Supp. 390, 397 (D.S.C. 1997) (Defendant's use of hourly pay for holidays did not violate fluctuating work week.). Defendants also argue that, if the Court were to find liability, no liquidated damages should be awarded and a two-year statute of limitations should apply. *See* ECF No. 185. Finally, Defendants would likely have moved to decertify the FLSA collective and would have opposed Plaintiffs' motion for class certification. In opposing class certification, Defendants could argue that individualized questions preclude class certification. For example, Defendants would likely argue that because not all Class Members received purportedly impermissible bonuses, and not all Class Members were paid less than their salaries, that there were no common factual issues, and that *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011), precludes class certification. Although Plaintiffs disagree with these arguments, other defendants have prevailed on arguments like these. *See Beckman*, 293 F.R.D. at 480 (listing numerous wage and hour cases in this Circuit where courts have denied Rule 23 motions and

decertified FLSA collectives); *see also Myers v. Hertz Corp.*, 624 F.3d 537, 549-51 (2d Cir.

2010) (affirming denial of class certification in wage and hour case).  Risk, expense, and delay

permeate such processes.  Settlement eliminates this risk, expense, and delay.  Swartz Decl. ¶¶

33-34.

**E.      Quality of Representation.**

"To determine the 'quality of the representation,' courts review, among other things, the

recovery obtained and the backgrounds of the lawyers involved in the lawsuit."  *Taft v.*

*Ackermans*, No. 02 Civ. 7951, 2007 WL 414493, at *10 (S.D.N.Y. Jan. 31, 2007) (citing *In re*

*Global Crossing*, 225 F.R.D. at 467).

The recovery obtained was substantial.  Defendant agreed to pay a total of $4.5 million to

settle this litigation.  By Class Counsel's estimation, the settlement amount represents

approximately 47% of the class's lost overtime wages over the liability period.[3]  Class Members

who did not opt out and who submit a Claim Form will receive a proportional share of the Fund

based on the number of weeks they worked, whether they previously filed a FLSA consent to

join, and whether they worked in a Rule 23 state.  Weighing the benefits of the settlement against

the risks associated with proceeding in the litigation, the settlement is reasonable.  The settlement

amounts will be available to class members without the uncertainty and delay of trial.

Class Counsel has substantial experience prosecuting large-scale wage and hour class and

collective actions.  Swartz Decl. ¶¶ 4-6 (listing cases); Hayber Decl. ¶¶ 9-10 (listing cases);

Winebrake Decl. ¶¶ 10, 14 (listing cases).  Class Counsel's skill and experience litigating wage

and hour cases were directly responsible for the favorable settlement and weigh in favor of

---

[3]       For further details on the assumptions Class Counsel made to perform these calculations,
Class Counsel refers the Court to the Memorandum of Law in Support of Plaintiffs' Motion for
Final Approval and the Swartz Decl. ¶¶ 9-29.

granting the requested fees.  Swartz Decl. ¶ 7; *see Aros*, 2012 WL 3060470, at *6 (holding that

O&G and The Hayber Law Firm "have prosecuted and favorably settled many employment law

class actions, including wage and hour class actions"); *Velez*, 2007 WL 7232783, at *7 (holding

that "Lead Counsel's experience representing plaintiffs in class actions" supported a 31%

contingency fee award).

**F.**      **Fee in Relation to the Settlement.**

Courts also consider the size of the settlement to ensure that the percentage awarded does

not constitute a "windfall."  *See, e.g.*, *Goldberger*, 209 F.3d at 52; *In re Gilat Satellite Networks,*

*Ltd.*, No. 02 Civ. 1510, 2007 WL 2743675, at *16 n.41 (E.D.N.Y. Sept. 18, 2007).  "[T]he

percentage used in calculating any given fee award must follow a sliding-scale and must bear an

inverse relationship to the amount of the settlement."  *In re Gilat*, 2007 WL 2743675, at *16 n.41

(quoting *In re Indep. Energy Holdings PLC Sec. Litig.*, No. 00 Civ. 6689, 2003 WL 22244676, at

*6 (S.D.N.Y. Sept. 29, 2003)) (internal quotation marks omitted).  Where the size of the fund is

relatively small, courts typically find that requests for a greater percentage of the fund are

reasonable.  *See, e.g.*, *id.* at *16 n.41 (finding a 30% fee would not constitute a windfall "[g]iven

the modest size of the [$20 million] settlement"); *see also Alli v. Boston Mkt. Corp.*, No. 10 Civ.

4, 2012 WL 1356478, at *3 (D. Conn. Apr. 17, 2012) (awarding attorneys' fees of 33.33% of

approximately $1 million settlement fund).

The size of the $4.5 million settlement weighs in favor of granting the requested fee

award of 33% of the common fund.  *See, e.g.*, *Alli*, 2012 WL 1356478, at *3 (awarding one-third

of an approximately $1 million settlement in a FLSA and CMWA case).  Courts in this Circuit

have routinely granted requests for approximately one-third of the fund in cases with settlement

funds similar to or substantially larger than this one. S*ee, e.g.*, *In re Priceline.com, Inc. Sec.*

16

*Litig.*, No. 00 Civ. 1884, 2007 WL 2115592, at *2, *5 (D. Conn. July 20, 2007) (approving fee of

30% of $80 million settlement); *see also In re Penthouse*, 2014 WL 185628, at *4, *8-9, *12

(awarding 27.1875% of settlement, amounting to $2.175 million in fees in misclassification

case); *Yuzary v. HSBC Bank USA, N.A.*, No. 12 Civ. 3693, 2013 WL 5492998, at *10, *12

(S.D.N.Y. Oct. 2, 2013) (awarding 31.7% of fund, which amounted to $4,953,125 in fees, in

misclassification case); *Beckman v. Keybank, N.A.*, 293 F.R.D. 467, 481 (S.D.N.Y. Apr. 29,

2013) (awarding class counsel 33% fee award in a $4.9 million settlement of a federal and state

wage and hour misclassification case; lodestar multiplier of 6.3); *Toure v. Amerigroup Corp.*,

No. 10 Civ. 5391, 2012 WL 3240461, at *5 (E.D.N.Y. Aug. 6, 2012) (awarding one-third of

approximately $4.45 million fund in misclassification case); *Hernandez v. Merrill Lynch & Co.*,

No. 11 Civ. 8472, 2013 WL 1209563, at *8-10 (S.D.N.Y. Mar. 21, 2013) (awarding 33% of a $7

million settlement in a FLSA and NYLL misclassification case); *Davis  v. J.P. Morgan Chase &

Co.*, 827 F. Supp. 2d 172, at 178, 187 (W.D.N.Y. 2011) (awarding 33% fee in $42 million

settlement; lodestar multiplier of 5.3 approved); *Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143,

2011 WL 754862, at *6-7 (E.D.N.Y. Feb. 18, 2011) (awarding one-third of approximately

$7.675 million settlement fund in FLSA and state-law wage and hour action).

While courts sometimes apply a "sliding-scale" approach by lowering the percentage

awarded in "megafund" cases, in order to prevent a windfall to plaintiffs' attorneys, the $4.5

million fund in this case does not trigger such an issue.  *See In re Comverse Tech., Inc. Sec.

Litig.*, No. 06 Civ. 1825, 2010 WL 2653354, at *1, *3-4 (E.D.N.Y. Jun. 24, 2010) (noting that

some courts apply "sliding-scale" approach in megafund cases, but declining to apply it in case

involving $225 million settlement); *In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 1695,

2007 WL 4115808, at *7 (S.D.N.Y. Nov. 7, 2007) ("[A] fee of 30% of the $5.5 million

settlement fund is consistent with fees awarded in . . . similar class action settlements of comparable value . . . [and] does not create a windfall."); *Taft*, 2007 WL 414493, at *1, *10 ("Thirty percent of a larger settlement fund could constitute a windfall; however, a settlement fund of [$15.175 million] does not create such an issue."); *Hicks v. Stanley*, No. 01 Civ. 10071, 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005) ("A settlement amount of $10 million does not raise the windfall issue in the same way as would a $100 million settlement, and a 30% fee does not produce such a windfall.").  A fee of 33% of the fund is reasonable and "consistent with the norms of class and collective litigation in this circuit."  *Aros*, 2012 WL  3060470, at *6.

### G.   Public Policy Considerations.

Public policy considerations weigh in favor of granting Class Counsel's requested fees. In rendering awards of attorneys' fees, "the Second Circuit and courts in this district also have taken into account the social and economic value of class actions, and the need to encourage experienced and able counsel to undertake such litigation."  *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d at 399 (collecting cases).

The FLSA and the CMWA are remedial statutes designed to protect the wages of workers.  *See A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945) (recognizing the FLSA's objective – ensuring that every employee receives "a fair day's pay for a fair day's work") (internal quotation marks omitted); *Aros*, 2012 WL 3060470, at *4 ("Adequate compensation for attorneys who protect wage and hour rights furthers the remedial purposes of the FLSA."); *Sand*, 2010 WL 69359, at *3 ("But for the separate provision of legal fees, many violations of the Fair Labor Standards Act would continue unabated and uncorrected."); *Shortt v. New Milford Police Dep't*, 562 A.2d 7, 15 (Conn. 1989) (CMWA is "a remedial statute").

Courts have recognized that fee awards in cases like this serve the dual purposes of

encouraging "private attorneys general" to seek redress for violations and discouraging future misconduct of a similar nature. *See Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338-39 (1980); *Aros*, 2012 WL 3060470, at *5; *Khait v. Whirlpool Corp.*, No. 06 Civ. 6381, 2010 WL 2025106, at *8 (E.D.N.Y. Jan. 20, 2010). Class actions are also an invaluable safeguard of public rights. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809-10 (1985); *J.I. Case Co. v. Borak*, 377 U.S. 426, 433-34 (1964). Particularly where, as here, the settlement fund is relatively small, an award of attorneys' fees ensures that "plaintiffs' claims [will] likely . . . be heard." *Frank*, 228 F.R.D. at 189. If courts denied sufficient attorneys' fees "no attorneys . . . would likely be willing to take on . . . small-scale class actions[.]" *Id.*; *see Aros*, 2012 WL 3060470, at *4; *deMunecas*, 2010 WL 3322580, at *8; *Sand*, 2010 WL 69359, at *3.

### III.     The Lodestar Cross Check Further Supports an Award to Class Counsel of One-Third of the Settlement Fund.

Following *Goldberger*, the trend in the Second Circuit has been to apply the percentage method and loosely use the lodestar method as a "baseline" or as a "cross check." *Goldberger*, 209 F.3d at 50. The Second Circuit "encourage[s] the practice of requiring documentation of hours as a 'cross check' on the reasonableness of the requested percentage." *Id.*; *see also In re Fine Host Corp. Sec. Litig.*, MDL No. 1241, 2000 WL 33116538, at *3 (D. Conn. Nov. 8, 2000). As part of the cross check, the lodestar is determined by multiplying the hours reasonably expended on the case by a reasonable hourly rate. *Hicks*, 2005 WL 2757792, at *8. In calculating the lodestar for cross check purposes, the "hours documented by counsel need not be exhaustively scrutinized by the district court." *Goldberger*, 209 F.3d at 50. Rather, "the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case . . . ." *Id.*

Courts then consider whether a multiplier is warranted based on factors, such as: (1) "the

contingent nature of the expected compensation for services rendered;" (2) "the consequent risk of non-payment viewed as of the time of filing the suit;" (3) "the quality of representation;" and (4) "the results achieved." *In re Boesky Sec. Litig.*, 888 F. Supp. 551, 562 (S.D.N.Y. 1995); *see also Goldberger*, 209 F.3d at 47; *Savoie*, 166 F.3d at 460; *Parker v. Jekyll and Hyde Entm't Holdings, L.L.C.*, No. 08 Civ. 7670, 2010 WL 532960, at *2 (S.D.N.Y. Feb. 9, 2010).

Class Counsel's request for one-third of the Fund – $1,500,000.00 – is slightly less than "lodestar." "Courts regularly award lodestar multipliers of up to eight times the lodestar, and in some cases, even higher multipliers." *Beckman*, 293 F.R.D. at 481 (citations omitted) (finding multiplier of 6.3 reasonable); *see Steiner v. Am. Broad. Co.*, 248 F. App'x 780, 783 (9th Cir. 2007) (multiplier of 6.85 "falls well within the range of multipliers that courts have allowed") (citations omitted); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1052 (9th Cir. 2002) (listing nationwide class action settlements where multiplier ranged up to 19.6 times lodestar); *Yuzary*, 2013 WL 5492998, at *11 (awarding multiplier of 7.6 in wage and hour misclassification class action); *Sewell*, 2012 WL 1320124, at *13 ("Courts commonly award lodestar multipliers between two and six." (citations omitted)); *Davis*, 827 F. Supp. 2d at 185-86 (awarding multiplier of 5.3 in wage and hour class action); *In re Lloyd's Am. Trust Fund Litig.*, No. 96 Civ. 1262, 2002 WL 31663577, at *27 (S.D.N.Y. Nov. 26, 2002) (a "multiplier of 2.09 is at the lower end of the range of multipliers awarded by courts within the Second Circuit" (citation omitted)); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 358, 371 (S.D.N.Y. Jan. 29, 2002) ("modest multiplier" of 4.65 in wage and hour class action was "fair and reasonable"); *Cosgrove v. Sullivan*, 759 F. Supp. 166, 167 n. 1, 169 (S.D.N.Y. 1991) (awarding multiplier of 8.74); *see also Buccellato v. AT&T Operations, Inc.*, No. 10 Civ. 463, 2011 WL 3348055, at *2 (N.D. Cal. June 30, 2011) (awarding multiplier of 4.3 in wage and hour class action); *New England Carpenters*

*Health Benefits Fund v. First Databank, Inc.*, No. 05 Civ. 11148, 2009 WL 2408560, at *2 (D.

Mass. Aug. 3, 2009) (awarding multiplier of 8.3); *In re Enron Corp. Sec., Derivative & ERISA*

*Litig.*, 586 F. Supp. 2d 732, 803 (S.D. Tex. 2008) (awarding multiplier of 5.2); *In re Cardinal*

*Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 768 (S.D. Ohio 2007) (awarding multiplier of 6); *In*

*re Rite Aid Sec. Litig.*, 362 F. Supp. 2d 587, 589-90 (E.D. Pa. 2005) (awarding multiplier of

6.96).

Class Counsel spent approximately 4087 hours litigating and settling this matter.  Swartz

Decl. ¶ 44; Hayber Decl. ¶ 22; Winebrake Decl. ¶ 27.  The time spent by Class Counsel is

described in Class Counsel's Declarations and Class Counsel's contemporaneous time records

attached thereto.  *See* Ex. C (O&G Time Summary); Ex. D (O&G Contemporaneous Time

Records); Hayber Decl. ¶ 22 (Hayber Law Firm Time Summary); Hayber Decl. Ex. A (Hayber

Law Firm Contemporaneous Time Records); Winebrake Decl. ¶ 27(W&S Time Summary);

Winebrake Decl. Ex. 2 (W&S Contemporaneous Time Records).  The hours worked by Class

Counsel result in a lodestar of approximately $1,512,247.00.  Swartz Decl. ¶ 47; Hayber Decl. ¶

21; Winebrake Decl. ¶ 27.  Class Counsel's request for an award that is almost identical to their

lodestar is reasonable, particularly in light of the excellent result achieved for the class.  *See Tiro*

*v. Public House Invs., LLC*, No. 11 Civ. 7679, 2013 WL 4830949, at *12, *15-16  (S.D.N.Y.

Sept. 10, 2013) (finding that where the lodestar was "virtually identical to the percentage of

recovery," class counsel's request for 33 1/3% as attorney's fees was well within the range of

reasonableness).

Class Counsel's requested fee is also reasonable because Class Counsel will continue to

perform work on this matter after final approval is granted.  *See Sewell*, 2012 WL 1320124, at

*13 (quoting *Bellifemine v. Sanofi-Aventis U.S. LLC*, No. 07 Civ. 2207, 2010 WL 3119374, at *6

(S.D.N.Y. Aug. 6, 2010)); *Beckman*, 2013 WL 1803736, at \*14.  Among other things, Class

Counsel will be required to prepare for and attend the final fairness hearing, answer class

member questions (especially after the fund is distributed), answer questions from the claims

administrator, and negotiate and possibly litigate disagreements with Defendants about the

administration of the settlement and distribution of the fund.  Swartz Decl. ¶ 51.  In light of the

fact that Class Counsel will likely perform additional work after the final approval hearing, Class

Counsel's request is "even more reasonable than it appears at first glance."  *Beckman*, 2013 WL

1803736, at \*14; *see also Aros*, 2012 WL 3060470, at \*7.

## IV.   Class Counsel Are Entitled to Reimbursement of Expenses Under the Settlement Agreement.

Class Counsel request reimbursement of $67,150.62 in out-of-pocket expenses to be paid

from the Fund.  Swartz Decl. ¶ 56; Hayber Decl. ¶ 23; Winebrake Decl. ¶ 28.  "[A]ttorneys may

be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their

clients, as long as they were 'incidental and necessary' to the representation of those clients."  *In*

*re Indep. Energy Holdings PLC Sec. Litig.*, 2003 WL 22801724, at \*2 n.1 (citation and internal

quotation marks omitted).  Here, Class Counsel's actual expenses of $67,150.62 were incidental

and necessary to the representation of the Class.  Swartz Decl. ¶ 56.  These expenses include

court and process server fees, postage and courier fees, transportation, working meals,

photocopies, electronic research, expert fees, and Plaintiffs' share of the mediator's fees.  *Id.* Ex.

G (O&G Costs); Hayber Decl. ¶ 23, Ex. A (Hayber Law Firm Time and Costs Summary);

Winebrake Decl. ¶ 28, Ex. 2 (W&S Time and Costs Summary).

## <u>CONCLUSION</u>

For the reasons set forth above, Plaintiffs respectfully request that the Court grant their

Motion for Attorneys' Fees and Reimbursement of Expenses, and enter an Order: (i) awarding

attorneys' fees in the amount of $1,500,000.00, which represents 33% of the Fund; and (ii)

reimbursing $67,150.62 in out-of-pocket expenses that Class Counsel incurred in this action.

Dated: July 21, 2014
      New York, New York

                          Respectfully submitted,

                          **OUTTEN & GOLDEN LLP**
                          By:

                          /s/ *Justin M. Swartz*
                          Justin M. Swartz (admitted *pro hac vice*)
                          JMS@outtengolden.com
                          Juno Turner (admitted *pro hac vice*)
                          jturner@outtengolden.com
                          3 Park Avenue, 29th Floor
                          New York, New York 10016
                          Telephone:  (212) 245-1000
                          Facsimile:  (212) 977-4005

                          **The Hayber Law Firm, LLC**
                          Richard Eugene Hayber (ct 11629)
                          rhayber@hayberlawfirm.com
                          Erick I. Díaz Vázquez (ct 27023)
                          ediaz@hayberlawfirm.com
                          221 Main Street, Suite 502
                          Hartford, CT 06106
                          Telephone:  (860) 522-8888
                          Facsimile:  (860) 218-9555

                          **Winebrake & Santillo, LLC**
                          Peter Winebrake (admitted *pro hac vice*)
                          pwinebrake@winebrakelaw.com
                          715 Twining Rd
                          Dresher PA, 19025
                          Telephone:  (215) 884-2491
                          Facsimile: (215) 884-2492

                          **Attorneys for Plaintiffs, the**
                          **Collective, and the Class**

## **CERTIFICATION OF SERVICE**

I hereby certify that on July 21, 2014, a copy of the within document was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system and by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. A complete, duplicate copy of this document will be forwarded directly to Judge Young in Boston, MA. Parties may access this filing through the Court's CM/ECF System.

_ /s/ Justin M. Swartz_
Justin M. Swartz