IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| **ROBERT G. KIEFER, EDWARD B. ROACH, DAVID PAGANO, MARKITA P. ROBINSON, JASON TURNER, GARLAND OSBORN, STEPHEN MANOLAKIS, FRANK RAKOWSKI, DENNIS SANOSKE, ERIC EVERHART, TIMOTHY PORTER, BRIAN PEREIRA, DONNA OAKES, GREGG SIME, FRANK SEYMOUR, AND ALLEN ZAYAS,** individually and on behalf of others similarly situated, <br><br>                    Plaintiffs, <br><br>     v. <br><br> **MORAN FOODS, LLC and MORAN FOODS, INC.,** together d/b/a **SAVE-A-LOT, LTD.,** <br><br>                    Defendants. | No. 12-CV-756 (WGY) <br><br><br> JULY 21, 2014 |

**DECLARATION OF JUSTIN M. SWARTZ IN SUPPORT OF PLAINTIFFS' MOTIONS FOR CERTIFICATION OF THE SETTLEMENT CLASSES, FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT, APPROVAL OF THE FLSA SETTLEMENT, APPROVAL OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES, AND <u>APPROVAL OF SERVICE AWARDS</u>**

I, Justin M. Swartz, declare as follows:

1. I am a partner at Outten & Golden LLP ("O&G"), which, together with The Hayber Law Firm, LLC ("HLF") and Winebrake & Santillo, LLC ("W&S"), are attorneys for Plaintiffs.  O&G is a 30+ attorney firm based in New York City that represents plaintiffs in a wide variety of employment matters, including individual and class action litigation involving wage and hour, discrimination, and harassment claims, as well as contract and severance negotiations.

2. I make these statements based on personal knowledge and would so testify if called as a witness at trial.

3. Class Counsel have substantial experience prosecuting and settling employment class actions, including wage and hour class actions, and are well-versed in wage and hour law and class action law.

4. O&G attorneys "have substantial experience prosecuting and settling employment class actions, including wage and hour class actions[,] and are well-versed in wage and hour and class action law."  *Johnson v. Brennan*, No. 10 Civ. 4712, 2011 WL 1872405, at *2 (S.D.N.Y. May 17, 2011) (internal quotation marks omitted); *accord Yuzary v. HSBC Bank USA, N.A.*, No. 12 Civ. 3693, 2013 WL 1832181, at *4; *see also Capsolas v. Pasta Res., Inc.*, No. 10 Civ. 5595, 2012 WL 1656920, at *2 (S.D.N.Y. May 9, 2012) (O&G attorneys "have years of experience prosecuting and settling wage and hour class actions, and are well-versed in wage and hour law and in class action law"); *Alli v. Boston Mkt. Corp.*, No. 10 Civ. 4, 2011 WL 6156938, at *2 (D. Conn. Dec. 9, 2011) (O&G counsel are "qualified and experienced in the issues raised in" wage and hour overtime litigation); *McMahon v. Olivier Cheng Catering & Events, LLC*, No. 08 Civ. 8713, 2010 WL 2399328 at *6 (S.D.N.Y. Mar. 3, 2010) (O&G "are experienced employment

lawyers with good reputations among the employment law bar . . . [and] have prosecuted and favorably settled many employment law class actions, including wage and hour class actions"); *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 158 (S.D.N.Y. 2008) (O&G lawyers have "an established record of competent and successful prosecution of large wage and hour class actions, and the attorneys working on the case are likewise competent and experienced in the area"); and have served as lead counsel on numerous class and collective actions, including *Capsolas*, 2012 WL 1656920, at *2 (appointing O&G as class counsel); *Johnson*, 2011 WL 1872405, at *2 (same); and *Clark v. Ecolab, Inc.*, Nos. 07 Civ. 8623, *et al.*, 2009 WL 6615729, at *5 (S.D.N.Y. Nov. 27, 2009) (same), among others.

5.  HLF lawyers also are experienced in prosecuting wage and hour class and collective actions and have been appointed class counsel numerous times based on that experience. *See, e.g.*, *Aros v. United Rentals, Inc.*, Nos. 10 Civ. 73, *et al.*, 2012 WL 3060470, at *6 (D. Conn. July 26, 2012) (HLF and O&G consist of "experienced employment lawyers with good reputations among the employment law bar. They have prosecuted and favorably settled many employment law class actions, including wage and hour class actions."); *Alli*, 2012 WL 1356478, at *2 (appointing Richard E. Hayber of HLF as class counsel; finding counsel to be "experienced").

6.  W&S lawyers also are "qualified, experienced and capable" in wage and hour class action litigation and have been appointed class counsel based on that experience. *See, e.g.*, *Craig v. Rite Aid Corp.*, No. 08 Civ. 2317, 2013 WL 84928, at *8, *12 (M.D. Penn. Jan. 7, 2013) ("Class Counsel are experienced wage and hour class action litigators with decades of accomplished complex class action experience between them and that the Class Members have benefitted tremendously from able counsel's representation"); *Edelen v. Am. Residential Servs.,*

*LLC*, 11 Civ. 2744, 2013 WL 3816986, at *3, *7 (D. Md. July 22, 2013) (appointing W&S as class counsel; finding "plaintiff's attorneys are qualified, experienced, and capable" as shown "by their background in litigating wage-and-hour class action lawsuits"); *Cuevas v. Citizens Fin. Grp.*, 283 F.R.D. 95, 101 (E.D.N.Y. 2012) (recognizing that W&G has "been appointed class counsel for dozens for wage and hour class claims across the country"), *vacated on other grounds*, 526 Fed. App'x 19 (2d Cir. 2013).

7. Class Counsel's skill and experience litigating wage and hour cases were directly responsible for the favorable settlement.

**Nature of Plaintiffs' Claims**

8. Plaintiffs are current and former employees of Defendants who have worked as Assistant Store Managers ("ASMs"). Plaintiffs allege that Defendants violated the Fair Labor Standards Act ("FLSA") and state labor laws by failing to pay ASMs one and a half times their regular rate for all hours worked over 40 hours per week.

**The Overtime Litigation**

9. On March 9, 2011, Plaintiff Edward B. Roach filed a class action in the Superior Court of the State of Connecticut, asserting class claims on behalf of current and former ASMs in the State of Connecticut in which he claimed that Defendants' method of calculating the overtime premium pay owed to them violated the Connecticut Minimum Wage Act ("CMWA"). The case was then transferred to the Complex Litigation Docket in the Judicial District of Hartford, No. HHD-CV-11-6023386S (X04), and captioned *Roach v. Moran Foods Inc.* ("*Roach*"). On March 28, 2011, Defendants filed a motion for summary judgment on one of Roach's theories of liability, which the Court granted on March 16, 2012.

4

10. On May 18, 2012, Kiefer filed this class and collective action lawsuit in the United States District Court for the District of Connecticut, captioned *Kiefer v. Moran Foods Inc., d/b/a Save-A-Lot, LTD.* ("*Kiefer*"), on behalf of current and former ASMs, in which he claimed that Defendants' method of calculating the overtime premium pay owed to them violated the FLSA, and also asserted related Rule 23 class claims against Defendants under the CMWA for the same overtime pay policy. On August 1, 2012, Defendants filed a motion to dismiss *Kiefer* and/or to stay the state law claims. On February 19, 2013, the Court denied the motion to dismiss and granted the motion to stay the state law claims.

11. On December 10, 2012, Roach appealed the Court's summary judgment order in *Roach*.

12. On December 17, 2012, Kiefer filed a motion for FLSA conditional certification, which the Court granted on March 12, 2013. On January 28, 2013, Defendants filed a motion for summary judgment in *Kiefer*, which the Court denied on May 2, 2013 after full briefing and argument. Between April 5, 2013, and August 21, 2013, 890 individuals joined *Kiefer* as FLSA opt-in plaintiffs.

13. On March 25, 2013, David Pagano filed a class action lawsuit in the Philadelphia County Court of Common Pleas, No. 130303582, *Pagano v. Supervalu Inc.* ("*Pagano*") (together with *Roach* and *Kiefer*, the "Litigation"), asserting class claims on behalf of current and former ASMs in the State of Pennsylvania in which he claimed that Defendants' method of calculating the overtime premium pay owed to them violated the Pennsylvania Minimum Wage Act ("PMWA").

14. On December 3, 2013, Pagano filed an Amended Complaint alleging a claim under the FLSA. Defendants removed the action to the Eastern District of Pennsylvania.

5

Plaintiffs then successfully moved to transfer the *Pagano* action to the District of Connecticut and to this Court.  On March 11, 2014, this Court granted Plaintiffs' motion to consolidate *Pagano* with this action.  ECF No. 312.

**Investigation and Discovery**

15. Before initiating this action, Class Counsel conducted a thorough investigation.

16. This included investigation and legal research on the underlying merits of the class claims, the likelihood of obtaining liquidated damages and an extended FLSA statute of limitations, the proper measure of damages, and the likelihood of class certification.

17. Class Counsel also researched Defendants' likely affirmative defenses and their counterparts under state law.

18. Class Counsel also conducted in-depth interviews with each of the Plaintiffs to determine the hours that they worked, the wages they were paid, and other information relevant to their claims.

19. Class Counsel also obtained and reviewed numerous documents from Plaintiffs related to their employment with Save-a-Lot, including pay records, offer letters, employee handbooks, and other related documents.

20. The Parties completed extensive discovery.  In *Roach*, between March 2011 and March 2012, the Parties engaged in substantial discovery and discovery motion practice, which also related to the claims in *Kiefer* and *Pagano*.  In *Kiefer*, between August 2012 and June 2013, the Parties also engaged in substantial discovery and discovery motion practice, including substantial document production, several Fed. R. Civ. P. 30(b)(6) depositions, and depositions of several Plaintiffs and opt-in plaintiffs, which also related to the claims in *Roach* and *Pagano*.  In *Pagano*, on July 30, 2013, the Court entered a discovery order with a class certification

discovery deadline of September 15, 2013. Thereafter, Plaintiffs served discovery requests on Defendants.

**Settlement Negotiations**

21. On or around June 17, 2013, Roach, Kiefer, Pagano, and Defendants agreed to stay the Litigation in anticipation of mediation.

22. On June 24, 2013, Kiefer and Defendants submitted a stipulation and order to the *Kiefer* Court whereby the Parties agreed to a stay of proceedings pending mediation. On July 18, 2013, Kiefer and Defendants entered into an agreement tolling the limitations period on the state wage and hour claims of the putative classes in the states of Illinois, Massachusetts, New Jersey, New York, North Carolina, Maryland, Oregon, and Ohio, for whom Plaintiffs had anticipated amending their complaints ("Tolling Agreement").

23. On or around August 29, 2013, Roach and Defendants submitted a joint letter to the Connecticut Appellate Court requesting that it continue to stay the *Roach* appeal and requesting that the case be remanded to the Superior Court for approval of the settlement.

24. On August 19 and 20, 2013, the Parties participated in two all-day mediation sessions in New York, conducted by an experienced class action mediator, Hunter Hughes of Rogers & Hardin LLP in Atlanta, Georgia.

25. Class Counsel did significant work to prepare for the mediation. They held several pre-mediation conference calls with the mediator, submitted a letter outlining Defendants' vulnerabilities and acknowledging risk, and compiled damage calculations, including reviewing and analyzing information about the number of employee workweeks in the class period and class member salary information, and other data necessary to calculate damages.

26. At the mediation, the parties came to an agreement in principle, and signed a term sheet memorializing their agreements, which included the settlement amount. Over the next several months, the parties continued to negotiate additional terms of the settlement, and finalized the Settlement Agreement on November 26, 2013.

27. All parties and counsel had signed the settlement agreement as of December 11, 2013. The parties entered into an addendum to the Settlement Agreement addressing the allocation formula and limitations periods for Groups A and D on February 11, 2014. The parties subsequently entered into an additional addendum superseding the February 11, 2014 Addendum. The parties later entered into an additional Addendum addressing settlement awards for members of Group A who worked in Connecticut and Pennsylvania.

28. A true and correct copy of the Settlement Agreement with Addenda is attached hereto as **Exhibit A.**

29. At all times during the settlement negotiation process, negotiations were conducted on an arm's-length basis.

**Risks of the Litigation**

30. Although Plaintiffs believe their case is strong, Plaintiffs recognize that it is subject to considerable risk. Among other things, Class Counsel recognize the risk of not prevailing on their fluctuating workweek argument given significant authority against it in other Circuits.

31. There is no evidence here pertaining to whether Defendants could withstand a greater judgment or not.

32. The risk of obtaining class certification and maintaining it through trial also is present. The Court has not certified any Rule 23 Classes yet, and the Parties anticipate that such a determination would be reached only after intense, exhaustive briefing.

33. In opposing class certification, Defendants could argue that individualized questions preclude class certification. Risk, expense, and delay permeate such processes. Settlement eliminates this risk, expense, and delay.

34. In addition, were the case to proceed, Defendants likely would challenge the determination that Plaintiffs may proceed on their FLSA claims on behalf of a collective pursuant to 29 U.S.C. § 216(b). Settlement eliminates the risk and delay inherent in this process.

**The Settlement Fund**

35. The settlement represents a substantial recovery for Class Members, particularly in light of the risks of litigation. These risks included the risk of losing class certification, having the collective action decertified, losing on the merits, and losing on appeal, in addition to the risk of Defendant prevailing on a fluctuating workweek argument.

36. Here, Defendants have agreed to settle this case for a substantial amount, $4,500,000.

**Plaintiffs' Motion for Preliminary Approval and to Amend the Complaint**

37. On February 11, 2014, Plaintiffs filed a Motion for Preliminary Approval of Class Action Settlement ("Motion for Preliminary Approval"), in which they requested, among other relief, that the Court grant preliminary approval of the Settlement Agreement, conditionally certify the settlement class, and grant Plaintiffs leave to amend the complaint. ECF No. 305.

38. On March 11, 2014, the Court granted Plaintiffs' Motions for Preliminary Approval and to for Leave to Amend the Complaint, directed that notice be mailed to Class Members, and set the date for the final fairness hearing. ECF No. 311.

39. On July 18, 2014, Plaintiffs filed their Second Amended Complaint. ECF No. 316.

**CAFA Notice**

40. Defendants sent notices to federal and state authorities required by the Class Action Fairness Act ("CAFA") on or around February 20, 2014. The 90-day CAFA notice period concluded on May 21, 2014. No federal or state authorities commented on the settlement or objected to it.

**Claims Administration**

41. The parties retained Settlement Services, Inc. ("SSI") to administer the settlement. Since the claims administrator sent out the Notices, Class Counsel and staff have responded to numerous class members' questions about the terms of the settlement and the amount of their settlement award.

42. Class Counsel expects to respond to more Class Member inquiries after final approval, especially after checks are issued, as is common in wage and hour class actions. A true and correct copy of the claims administrator's declaration, the Declaration of Mark Patton ("Patton Decl.") is attached hereto as **Exhibit B**.

**Time Spent on the Litigation**

43. As of July 18, 2014, O&G has spent more than 2999 hours litigating and settling this litigation, including time spent by attorneys, paralegals, law clerks, and administrative assistants. Although O&G is relatively large for a plaintiffs' side employment law firm, a small

team of attorneys were utilized at any one time in order to minimize duplication of efforts and maximize billing judgment. O&G also made every effort to have work performed by the attorney or paralegal with the lowest hourly rate who was able to perform the work effectively. Attached as **Exhibit C** ("O&G Time Summary") are summaries of the time spent by each attorney, paralegal, and support staff member as of July 18, 2014, and the costs incurred.

44. The hours reported are reasonable for a case of this complexity and size and were compiled from contemporaneous time records maintained by each attorney, paralegal, and support staff person participating in the case.

45. Attached as **Exhibit D** ("O&G Contemporaneous Time Records") are O&G's contemporaneous time records.

46. As of July 18, 2014, O&G's total lodestar on the case was $1,171,514.50. As of July 18, 2014, Class Counsel's total lodestar on the case was $1,512,247.00. Class Counsel's request for one third of the fund, or $1,500,000.00, is approximately equal to their lodestar.

47. Class Counsel's efforts to date have been without compensation, and their entitlement to payment has been wholly contingent upon achieving a good result.

48. These hours are reasonable for a case like this one and were compiled from contemporaneous time records maintained by each attorney, paralegal, and support staff participating in the case.

49. Class Counsel used a small team of attorneys at any one time in order to minimize duplication of efforts and maximize billing judgment and made every effort to have the work performed by the attorney or paralegal with the lowest hourly rate who was able to effectively perform it.

50. The requested attorneys' fees are not based solely on time and effort already expended; they are also meant to compensate Class Counsel for time that they will be required to spend administering the settlement in the future. In our experience, administering class settlements of this nature and size requires a substantial and ongoing commitment. For example, since the Notices were mailed, Class Counsel and staff have responded to dozens of inquiries from class members requesting information regarding the terms of the settlement and the amount of their settlement award. Class Counsel expects to respond to more class member inquiries after final approval, especially after checks are issued. Class Counsel also expects to spend additional time working on this case, including preparing for and attending the final fairness hearing, answering class member questions, answering questions from the claims administrator, and negotiating and possibly litigating disagreements with Defendant about administering the settlement and distributing the fund. *See, e.g.*, *Nash v. CVS Caremark Corp.*, No. 09 Civ. 79, 2013 WL 684836, at *1 (D.R.I. Feb. 25, 2013) (granting in part plaintiffs' motion to order defendants to comply with class settlement agreement); *Johnson*, 2012 WL 6584019, at *1-3 (resolving dispute over whether cy pres designee was appropriate); *Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548, ECF Nos. 73, 74 (S.D.N.Y. Apr. 16, 2012) (allowing late opt-in to participate in class settlement) (attached hereto as **Exhibit E**); *Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05 Civ. 3452, 2009 WL 466148, at *1-2 (S.D.N.Y. Feb. 24, 2009) (granting plaintiff's motion for contempt sanctions and ordering defendants to comply with the Court's orders).

51. Class Counsel undertook to prosecute this action without any assurance of payment for their services, litigating the case on a wholly contingent basis in the face of tremendous risk. Wage and hour cases of this type are, by their very nature, complicated and time-consuming. Lawyers undertaking representation of large numbers of affected employees in

wage and hour actions inevitably must be prepared to make a tremendous investment of time, energy and resources. Due also to the contingent nature of the customary fee arrangement, lawyers are asked to be prepared to make this investment with the very real possibility of an unsuccessful outcome and no fee of any kind. Class Counsel stood to gain nothing in the event the case was unsuccessful. Here, Plaintiffs' retainer agreements with Class Counsel specify that Class Counsel could apply to the Court for one-third of a class-wide recovery and that Plaintiffs would pay Class Counsel one third of any individual recovery. Copies of those retainer agreements are attached hereto as **Exhibit F**.

52. O&G ordinarily and regularly bills clients on an hourly fee basis, based upon each attorney's standard hourly rate. Currently, O&G's rates range from $550 to $1000 per partner's hour, $575 to $650 per counsel's hour, $250 to $450 per associate's hour, $220 per law clerk's hour, and $170 to $215 per paralegal's hour. The firm's clients regularly accept and pay O&G's hourly rates.

53. Based upon O&G's records, in 2011, approximately 30% of the hours lawyers spent on client matters were billed to paying clients. There is no shortage of hourly work at O&G. Thus, when O&G lawyers spend time on contingency matters, they do so at significant opportunity cost for the firm. Indeed, O&G frequently turns away hourly matters, including hourly litigation matters, in order to enable its attorneys to work on contingency matters, primarily (though not exclusively) class actions.

54. To date, Class Counsel has worked without compensation of any kind, and the fee has been wholly contingent upon the result achieved.

**Costs**

55.     As of July 18, 2014, O&G has incurred approximately $56,525.90 in out-of-pocket costs prosecuting this litigation.  As of July 18, 2014, Class Counsel has incurred approximately $67,150.62 in out-of-pocket costs prosecuting this litigation.  These costs were incidental and necessary to the prosecution of this lawsuit and include court and process server fees, postage and courier fees, transportation, working meals, photocopies, electronic research, expert fees, and Plaintiffs' share of the mediator's fees.  A summary of O&G's itemized costs is attached as **Exhibit G** ("O&G Costs").

**Efforts of the Named Plaintiffs**

56.     Named Plaintiffs Robert G. Kiefer, Edward B. Roach, David Pagano, Markita P. Robinson, Jason Turner, Garland Osborn, Stephen Manolakis, Frank Rakowski, Dennis Sanoske, Eric Everhart, Timothy Porter, Brian Pereira, Donna Oakes, Gregg Sime, Frank Seymour, and Allen Zayas have made important contributions to the prosecution and fair resolution of this action on behalf of Class Members.

57.     They assisted Class Counsel's investigation and prosecution of the claims by providing detailed factual information regarding their job duties and other information relevant to their claims.

58.     Named Plaintiff Edward B. Roach prepared to have his deposition taken and sat for deposition.

59.     Roach also filed a retaliation claim with the Connecticut Department of Labor after he was dismissed by Defendant, which he has resolved as part of the Settlement Agreement.

60.     Named Plaintiffs Robert G. Kiefer and David Pagano also prepared for and sat for depositions.

61. Kiefer, Pagano, and Eric Everhart also submitted declarations in support of Plaintiffs' motion for conditional certification pursuant to 29 U.S.C. § 216(b).

I declare under penalty of perjury, under 28 U.S.C. § 1746, that the foregoing is true and correct.


Executed this 21st day of July, 2014
New York, New York.

/s/ *Justin M. Swartz*
Justin M. Swartz
**Outten & Golden LLP**
3 Park Avenue, 29th Floor
New York, NY 10016
(212) 245-1000

**CERTIFICATION OF SERVICE**

      I hereby certify that on July 21, 2014, a copy of the within document was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system and by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. A complete, duplicate copy of this document will be forwarded directly to Judge Young in Boston, MA. Parties may access this filing through the Court's CM/ECF System.

         */s/ Justin M. Swartz*
        Justin M. Swartz